Case No. 14-1427

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

---

**DEVIN COPELAND p/k/a DERICO, MARIEO OVERTON**,

Plaintiffs-Appellants,

v.

**JUSTIN BIEBER, USHER RAYMOND IV p/k/a USHER, HEATHER BRIGHT, Individually and d/b/a B-RHAKA PUBLISHING, RAY ROMULUS a/k/a RAYRO and d/b/a PLEASE ENJOY THE MUSIC, and JONATHON YIP, Individually and d/b/a PRODUCTS OF THE STREET, and JEREMY REEVES, Individually and d/b/a SUMPHU, UNIVERSAL MUSIC CORPORATION, SONY/ATV MUSICAL PUBLISHING, LLC., BIEBER TIME PUBLISHING, LLC., WB MUSIC GROUP, STAGE THREE MUSIC (U.S.), INC., STAGE THREE MUSIC, LLC., AND JONETTA PATTON**

Defendants-Appellees.

---

On appeal for the United States District Court for the Eastern District of Virginia, Norfolk Division Case No. 2:13-cv-00246-AWA-TEM
The Honorable Arenda L. Wright Allen

---

### JOINT APPENDIX

---

Duncan G. Byers
Byers Law Group
142 w. York Street, Suite 910
Norfolk, VA 23510
(757) 227-3340
duncan.byers@byerslawgroup.com
admin@byerslawgroup.com
*Counsel for Appellants*
*Devin Copeland and*
*Marieo Overton*

Stephen E. Noona.
Kaufman & Canoles, P.C.
150 W. Main Street, Ste. 2100
Norfolk, VA 23510
(757) 624-3239
senoona@kaufcan.com
*Counsel for Appellees Justin*
*Bieber, Universal Music Corp.,*
*Universal Music Corp.,LLC*
*and The Island Def Jam Music*
*Group*

Howard Weitzman
Jeremiah T. Reynolds
Kinsella Weitzman Iser Kump & Aldisert
808 Wilshire Blvd., 3rd Floor
Santa Monica, CA 90401
Telephone: 310-566-9800
Facsimile: 310-566-9884
hweitzman@kwikalaw.com
jreynolds@kwikalaw.com
*Counsel for Appellees Justin Bieber,*
*Universal Music Corp.,LLC and*
*The Island Def Jam Music Group*

Jonathan D. Davis, Esq.
Jonathan D. Davis, P.C.
99 Park Avenue, Suite 1600
New York, NY 10016
(212) 687-5464
jdd@jddavispc.com
*Attorney for Appellee Usher Raymond IV*
*p/k/a "Usher"*

Nathan Muyskens
Virginia State Bar No. 39168
Loeb & Loeb LLP
901 New York Avenue NW
Suite 300 East
Washington, DC 20001
(202) 618-5000
nmuyskens@loeb.com

James H. Freeman, Esq
1515 Broadway, 11th Floor
New York, NY 10036
(212) 931-8535
James@JHFreemanLaw.com
*Counsel for Ray Romulus a/k/a Rayro,*
*Individually and d/b/a Please Enjoy the*
*Music; Jonathan Yip, Individually and*
*d/b/a Products of the Street, and Jeremy*
*Reeves, Individually and d/b/a SUMPHU*

Barry I. Slotnick *(pro hac vice)*
Cheng L. Chen *(pro hac vice)*
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154
(212) 407-4000
bslotnick@loeb.com
lchen@loeb.com
*Counsel for Appellees Heather Bright, Individually and d/b/a B-RHAKA Publishing*
*LLC, WB Music Corp. and Sony/ATV Music Publishing LLC.*

# TABLE OF CONTENTS

<u>Description</u>                                                                    <u>Page. No.</u>

**Complaint**                                                                        JA001
    1.1 Exhibit 1                                               JA020

**Motion to Dismiss Copyright Claims as a Matter of Law
Pursuant to Rule 12(b)(6)**                                                          JA023
    17.1  Proposed Order Granting Motion to Dismiss
    Copyright Claims Pursuant to Rule 12 (b)(6)                 JA027

**Memorandum of Law in Support of the Universal Music
Corp. (UMC) and Island Def Jam Music Group (DJM)**                                   JA031

**Declaration of Jeremiah T. Reynolds in Support of the**                            JA061
**Motion to Dismiss Copyright Claims Pursuant to Rule
12(b)(6)**
    Exhibit A- Compact Disc                                     JA067
    Exhibit B- JB "Somebody to Love" Lyrics                     JA068
    Exhibit C- Compact Disc and Copyright    Registration      JA072
    Exhibit D- CD "Somebody to Love" Lyrics                     JA074

**Response in Support of and Joinder in Motion to Dismiss
Copyright Claim by Def's UMC and DJM**                                               JA076

**Motion for Joinder in UMC and DJM's Motion to Dismiss**                            JA080

**Motion to Appear Pro Hac Vice –Jonathan Davis**                                    JA085

Plaintiff's Memo in Opposition to Universal's Motion to Dismiss for Failure to State Claim     JA089

     Exhibit A - Declaration of  Devin Copeland     JA112

     Exhibit B - Analysis of Duncan L. Wood     JA115

     Exhibit C - Appendix 1 to Analysis of DL Wood     JA137

Joinder by Def. U. Raymond in the Motion to Dismiss the Complaint with UMC and DJM     JA185

Reply to Memorandum in Opposition to Motion to Dismiss for Failure to State Claim by UMC and DJM     JA190

Motion for Joinder in UMC and DJM's Reply in Support of their Motion to Dismiss by B-Rhaka Publishing, H. Bright, Sony/ATV Music Publishing, LLC, and WB Music Corp.     JA211

Motion for Joinder in UMC and DJM's Reply in Support of their Motion to Dismiss by U. Raymond     JA216

Order regarding Dismissal     JA221

Order Granting Motion to Dismiss with Prejudice     JA244

Judgment  in a Civil Action     JA255

Notice of Appeal     JA256

Transcript of Proceeding     JA259

Order Correcting the Record and Allowing the Filing of Substitute Copies of Previously Filed Exhibits     JA298

     Exhibit 1 – Transmittal Letter

     Exhibit 2 – Signed Receipt

_____

**PHYSICAL EXHIBITS SUBMITTED WITH
PHYSICAL COPIES OF APPELLANTS' OPENING
BRIEF AND JOINT APPENDIX:**

MUSIC TRACKS REVIEWED BY THE TRIAL COURT
IN CONJUNCTION WITH ITS ORDER GRANTING
MOTION TO DISMISS (JA244)

1.   **"BIEBER CD"**:  Exhibit A to Docket Entry 19
      (JA061) and subject of the Draft Order at JA298, ¶ 1.
      The CD contains two music tracks:
      Track 1:  the song "Somebody to Love," performed
                by Justin Bieber (the "Bieber Version")
      Track 2:  the song "Somebody to Love," performed
                By Justin Bieber and featuring Usher
                Raymond IV (the "Remix Version")

2.   **"MY STORY II CD"**:  Exhibit C to Docket Entry
      19 (JA061) and subject of the Draft Order at
      JA298, ¶ 1.  The CD contains at Track 3 the song
      "Somebody to Love," performed by Devin Copeland
      p/k/a De Rico (the "Copeland Version")

3.   **"USHER RAYMOND IV DEMO CD"**: tendered to
      the trial court at oral argument on March 7, 2014
      (JA259) and subject of the Draft Order at JA298, ¶ 3.
      The CD contains a single Track of the song
      "Somebody to Love," performed by Usher Raymond
      IV (the "Demo Version")

Case No. 14-1427

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

---

**DEVIN COPELAND d/b/a DERICO, MARIEO OVERTON**,
Plaintiffs-Appellants,

v.

**JUSTIN BIEBER**, **USHER RAYMOND IV p/k/a USHER, HEATHER
BRIGHT, Individually and d/b/a B-RHAKA PUBLISHING, RAY
ROMULUS a/k/a RAYRO and d/b/a PLEASE ENJOY THE MUSIC, and
JONATHON YIP, Individually and d/b/a PRODUCTS OF THE STREET,
and JEREMY REEVES, Individually and d/b/a SUMPHU, UNIVERSAL
MUSIC CORPORATION, SONY/ATV MUSICAL PUBLISHING, LLC.,
BIEBER TIME PUBLISHING, LLC., WB MUSIC GROUP, STAGE THREE
MUSIC (U.S.), INC., STAGE THREE MUSIC, LLC., AND JONETTA
PATTON**
Defendants-Appellees.

---

On appeal for the United States District Court for the Eastern District of Virginia,
Norfolk Division Case No. 2:13-cv-00246-AWA-TEM
The Honorable Arenda L. Wright Allen

---

### JOINT APPENDIX

---

Duncan G. Byers
Byers Law Group
142 w. York Street, Suite 910
Norfolk, VA 23510
(757) 227-3340
Duncan.byers@byerslawgroup.com
admin@byerslawgroup.com
*Counsel for Appellants*
*Devin Copeland and Marieo Overton*

Stephen E. Noona.
Kaufman & Canoles, P.C.
150 W. Main Street, Ste. 2100
Norfolk, VA 23510
(757) 624-3239
senoona@kaufcan.com
*Counsel for Appellees Justin Bieber,*
*Universal Music Corp.,LLC and*
*The Island Def Jam Music Group*

Howard Weitzman
Jeremiah T. Reynolds
Kinsella Weitzman Iser Kump & Aldisert
808 Wilshire Blvd., 3rd Floor
Santa Monica, CA 90401
Telephone: 310-566-9800
Facsimile: 310-566-9884
hweitzman@kwikalaw.com
jreynolds@kwikalaw.com
*Counsel for Appellees Justin Bieber,
Universal Music Corp.,LLC and
The Island Def Jam Music Group*

Jonathan D. Davis, Esq.
Jonathan D. Davis, P.C.
99 Park Avenue, Suite 1600
New York, NY 10016
(212) 687-5464
jdd@jddavispc.com
*Attorney for Appellee Usher Raymond IV
p/k/a "Usher"*

Nathan Muyskens
Virginia State Bar No. 39168
Loeb & Loeb LLP
901 New York Avenue NW
Suite 300 East
Washington, DC 20001
(202) 618-5000
nmuyskens@loeb.com

James H. Freeman, Esq
1515 Broadway, 11th Floor
New York, NY 10036
(212) 931-8535
James@JHFreemanLaw.com
*Counsel for Ray Romulus a/k/a Rayro,
Individually and d/b/a Please Enjoy the
Music; Jonathan Yip, Individually and
d/b/a Products of the Street, and Jeremy
Reeves, Individually and d/b/a SUMPHU*

Barry I. Slotnick *(pro hac vice)*
Cheng L. Chen *(pro hac vice)*
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154
(212) 407-4000
bslotnick@loeb.com
lchen@loeb.com
*Counsel for Appellees Heather Bright, Individually and d/b/a B-RHAKA Publishing
LLC, WB Music Corp. and Sony/ATV Music Publishing LLC.*

Jonetta Patton
J Pat Management
Music Artists Management Company
3996 Pleasantdale Road, Suite 104A
Doraville, GA 30340-4200

# TABLE OF CONTENTS

<u>Description</u>                                                                              <u>Page. No.</u>

Complaint                                                                                 JA001
    1.1 Exhibit 1                                                                  JA020

Motion to Dismiss Copyright Claims as a Matter of Law                 JA023
Pursuant to Rule 12(b)(6)
    17.1  Proposed Order Granting Motion to Dismiss                      JA027
    Copyright Claims Pursuant to Rule 12 (b)(6)

Memorandum of Law in Support of the Universal Music                  JA031
Corp. (UMC) and Island Def Jam Music Group (DJM)

Declaration of Jeremiah T. Reynolds in Support of the                   JA061
Motion to Dismiss Copyright Claims Pursuant to Rule
12(b)(6)
    Exhibit A- Compact Disc                                               JA067
    Exhibit B- JB "Somebody to Love" Lyrics                          JA068
    Exhibit C- Compact Disc and Copyright    Registration        JA072
    Exhibit D- CD "Somebody to Love" Lyrics                         JA074

Response in Support of and Joinder in Motion to Dismiss               JA076
Copyright Claim by Def's UMC and DJM

Motion for Joinder in UMC and DJM's Motion to Dismiss             JA080

Motion to Appear Pro Hac Vice –Jonathan Davis                          JA085

i

Plaintiff's Memo in Opposition to Universal's Motion to Dismiss for Failure to State Claim     JA089

     Exhibit A - Declaration of  Devin Copeland     JA112
     Exhibit B - Analysis of Duncan L. Wood     JA115
     Exhibit C - Appendix 1 to Analysis of DL Wood     JA137

Joinder by Def. U. Raymond in the Motion to Dismiss the Complaint with UMC and DJM     JA185

Reply to Memorandum in Opposition to Motion to Dismiss for Failure to State Claim by UMC and DJM     JA190

Motion for Joinder in UMC and DJM's Reply in Support of their Motion to Dismiss by B-Rhaka Publishing, H. Bright, Sony/ATV Music Publishing, LLC, and WB Music Corp.     JA211

Motion for Joinder in UMC and DJM's Reply in Support of their Motion to Dismiss by U. Raymond     JA216

Order regarding Dismissal     JA221

Order Granting Motion to Dismiss with Prejudice     JA244

Judgment  in a Civil Action     JA255

Notice of Appeal     JA256

Transcript of Proceeding     JA259

Order Correcting the Record and Allowing the Filing of Substitute Copies of Previously Filed Exhibits     JA298

     Exhibit 1 – Transmittal Letter
     Exhibit 2 – Signed Receipt

_____

**PHYSICAL EXHIBITS SUBMITTED WITH
PHYSICAL COPIES OF APPELLANTS' OPENING
BRIEF AND JOINT APPENDIX:**

MUSIC TRACKS REVIEWED BY THE TRIAL COURT
IN CONJUNCTION WITH ITS ORDER GRANTING
MOTION TO DISMISS (JA244)

1.  **"BIEBER CD"**:  Exhibit A to Docket Entry 19
    (JA061) and subject of the Draft Order at JA298, ¶ 1.
    The CD contains two music tracks:
    Track 1:  the song "Somebody to Love," performed
             by Justin Bieber (the "Bieber Version")
    Track 2:  the song "Somebody to Love," performed
             By Justin Bieber and featuring Usher
             Raymond IV (the "Remix Version")

2.  **"MY STORY II CD"**:  Exhibit C to Docket Entry
    19 (JA061) and subject of the Draft Order at
    JA298, ¶ 1.  The CD contains at Track 3 the song
    "Somebody to Love," performed by Devin Copeland
    p/k/a De Rico (the "Copeland Version")

3.  **"USHER RAYMOND IV DEMO CD"**: tendered to
    the trial court at oral argument on March 7, 2014
    (JA259) and subject of the Draft Order at JA298, ¶ 3.
    The CD contains a single Track of the song
    "Somebody to Love," performed by Usher Raymond
    IV (the "Demo Version")

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



RECEIVED

MAY − 2 2013

CLERK, US DISTRICT COURT
NORFOLK, VA

DEVIN COPELAND P/K/A
DE RICO and

MAREIO OVERTON,

     Plaintiffs,

        v.

                               Case No.: 2:13 cv 246

JUSTIN BIEBER,
     An Individual,

        Serve:
        Howard Weitzman, Esq.
        Kinsella Weitzman Iser Kump & Aldisert
        3rd Floor
        808 Wilshire Blvd
        Santa Monica, CA 90401
        310-566-9800
        Fax: 310-566-9884
        Email: HWeitzman@kwikalaw.com

USHER RAYMOND IV p/k/a "USHER",
     An Individual,

        Serve:
        Usher Raymond IV p/k/a "Usher" c/o
        J Pat Management
        Music Artists Management Company
        3996 Pleasantdale Road, Suite 104A
        Doraville, GA 30340-4200

HEATHER BRIGHT,
        Individually and d/b/a
        B-RHAKA PUBLISHING,

---

*Copeland v. Bieber et al.*
Case No. _____ cv_____; Complaint

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

Serve:
>       Heather Bright d/b/a
>       B-RHAKA Publishing
>       1616 Vista Del Mar, 2nd Floor
>       Los Angeles, CA 90028

RAY ROMULUS a/k/a RAYRO,
>       Individually and d/b/a
>       PLEASE ENJOY THE MUSIC,

>       Serve:
>       Ray Romulus a/k/a RAYRO d/b/a
>       Please Enjoy the Music
>       10960 Wilshire Blvd, Floor 5
>       Los Angeles, CA 90024-3708

JONATHAN YIP,
>       Individually and d/b/a
>       PRODUCTS OF THE STREET,

>       Serve:
>       Jonathan Yip d/b/a
>       Products of the Street
>       3625 Dellvale Place
>       Encino, CA 91436

JEREMY REEVES,
>       Individually and d/b/a
>       SUMPHU,

>       Serve:
>       Jeremy Reeves d/b/a
>       SUMPHU, c/o
>       Universal Music Corp.
>       ATTN: Copyright D
>       99440 Collections Center Drive
>       Chicago, IL 60693

UNIVERSAL MUSIC CORP.,

>       Serve:
>       Universal Music Corp., c/o

---

*Copeland v. Bieber et al.*
Case No. _____ cv _____ ; Complaint

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE  19801

UNIVERSAL MUSIC PUBLISHING GROUP,

Serve:
Universal Music Publishing Group c/o
CT Corporation System
818 W. 7th Street, Suite 200
Los Angeles, CA 90017

SONY/ATV MUSIC PUBLISHING, LLC,

Serve:
Sony/ATV Music Publishing c/o
The Prentis-Hall Corp. System, Inc.
2711 Centerville Road, Suite 400
Wilmington, DE 19808

BIEBER TIME PUBLISHING, LLC,

Serve:
Bieber Time Publishing, LLC c/o
Corporation Service Company
2711 Centreville Road, Ste. 400
Wilmington, DE  19808

WB MUSIC CORP.,

Serve:
WB Music Corp. c/o
CT Corporation System
818 W. Seventh St.
Los Angeles, CA  90017

THE ISLAND DEF JAM MUSIC GROUP,
A subsidiary of Universal Music Group

Serve:
The Island Def Jam Music Group c/o

---

*Copeland v. Bieber et al.*
Case No. _____ cv _____; Complaint

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

Page 3 of 19

CT Corporation System
818 W. Seventh St.
Los Angeles, CA 90017

STAGE THREE MUSIC (U.S.) INC.,

Serve:
Stage Three Music (U.S.) Inc. c/o
Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808

B-RHAKA PUBLISHING,

Serve:
B-RHAKA Publishing, LLC c/o
United Corporate Services, Inc.
874 Walker Road, Suite C
Dover, DE 19904

STAGE THREE MUSIC, LLC,

Serve:
Stage Three Music, LLC c/o
Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808

PLEASE ENJOY THE MUSIC,

Serve:
Please Enjoy the Music
10960 Wilshire Blvd, Floor 5
Los Angeles, CA 90024-3708

PRODUCTS OF THE STREET,

Serve:
Products of the Street
3625 Dellvale Place
Encino, CA 91436

---

*Copeland v. Bieber et al.*
Case No. _____ cv_____; Complaint

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

Page 4 of 19

-JA004-

SUMPHU,

      Serve:
      SUMPHU c/o
      Universal Music Corp.
      ATTN: Copyright D
      99440 Collections Center Drive
      Chicago, IL 60693

and

JONETTA PATTON,

      Serve:
      Jonetta Patton
      J Pat Management
      Music Artists Management Company
      3996 Pleasantdale Road, Suite 104A
      Doraville, GA 30340-4200

      Defendants.

## COMPLAINT

COMES NOW plaintiffs Devin Copeland p/k/a De Rico and Mareio Overton (collectively "Plaintiffs"), by counsel, and for their Complaint against defendants Justin Bieber, Usher Raymond IV p/k/a "Usher," Heather Bright, Ray Romulus a/k/a RayRo, Jonathan Yip, Jeremy Reeves, Universal Music Corporation, Universal Music Publishing Group, Sony/ATV Music Publishing LLC, Bieber Time Publishing, LLC, WB Music Corporation, The Island Def Jam Music Group, Stage Three Music (U.S.) Inc., B-RHAKA Publishing, Stage Three Music LLC, Please Enjoy the Music, Products of the Street, Sumphu, and Jonetta Patton (collectively "Defendants"), state as follows:

---

*Copeland v. Bieber et al.*
Case No. _____ cv _____; Complaint

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

## INTRODUCTION

1.  This is an action in law and equity for copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*. Defendants violated the Copyright Act of 1976 by infringing Plaintiffs' copyrights in a music and sound recording owned by Plaintiffs Devin Copeland p/k/a "De Rico" and Mareio Overton entitled "Somebody to Love" thereby unfairly profiting from such use and damaging Plaintiffs. Plaintiffs are seeking damages and injunctive relief.

## JURISDICTION AND VENUE

2.  This is an action for copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*. This Court has subject matter jurisdiction over the claims herein under 28 U.S.C. §§ 1331 and 1338 because this action is based upon violations of federal copyright statutes. This Court has general jurisdiction over the Defendants based upon the nature and extent of Defendants' contacts with this forum. This Court has specific jurisdiction over the Defendants on the basis that acts constituting the infringement underlying this case occurred in whole or in part in the Commonwealth of Virginia.

3.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim of infringement occurred in this district.

## PARTIES

4.  Plaintiff Devin Copeland ("Copeland") is an individual who is currently residing in Cheaspeake, Virginia.

---

*Copeland v. Bieber et al.*
Case No. _____ cv _____; Complaint

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

5.    Plaintiff Marcio Overton ("Overton") is an individual who is currently residing in Portsmouth, Virginia.

6.    Defendant Justin Bieber ("Bieber") is an individual who, upon information and belief, is currently residing in the State of California.

7.    Defendant Usher Raymond IV p/k/a ("Usher") is an individual who, upon information and belief, is currently residing in the State of Georgia.

8.    Defendant Heather Bright (d/b/a B-RHAKA Publishing) is an individual believed to be a resident of California.

9.    Defendant Ray Romulus (a/k/a "RayRo" also d/b/a Please Enjoy the Music) is an individual believed to be a resident of California.

10.    Defendant Jonathan Yip (d/b/a Product of the Streets) is an individual believed to be a resident of California.

11.    Defendant Jeremy Reeves (d/b/a Sumphu) is an individual believed to be a resident of California.

12.    Defendant Universal Music Corp. ("UMC") is an entity within the Universal Music Group of companies and is a California corporation with its principal place of business at 2100 Colorado Avenue, Santa Monica, CA 90404.  UMC's agent for service of process is CT Corporation System, 818 W 7th St., Suite 200, Los Angeles, CA 90017.

13.    Defendant Universal Music Publishing Group Inc. ("UMPG") is a global music publishing operation, a division of UMG, and is a Delaware corporation having a business address at 2100 Colorado Avenue, Santa Monica, CA 90404.  UMPG's agent for service of process is

---

*Copeland v. Bieber et al.*
Case No. _____ cv _____ ; Complaint

Page 7 of 19

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

-JA007-

CT Corporation System, 818 W 7th St, Suite 200, Los Angeles, CA 90017.

14.     Defendant Sony/ATV Music Publishing, LLC ("Sony") is a Delaware limited liability company with offices located at 8 Music Square W., Nashville, TN 37203. Sony's agent for service of process is The Prentice-Hall Corporation System, Inc., 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

15.     Defendant Bieber Time Publishing LLC ("Bieber Time") is a Delaware limited liability company. Bieber Time's agent for service of process is the Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

16.     Defendant WB Music Corp. ("WB") is a Delaware corporation. WB's agent for service of process is The Prentice-Hall Corporation System, Inc., 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

17.     Defendant Island Def Jam Music Group ("Island") is a record label, a division of UMG Recordings, Inc., and is a Delaware corporation having an address at 2100 Colorado Avenue, Santa Monica, CA 90404. Island's agent for service of process is CT Corporation, 818 W 7th St, Suite 200, Los Angeles, CA 90017.

18.     Defendant Stage Three Music (U.S.), Inc. ("Stage Three") is a Delaware corporation. Stage Three's agent for service of process is The Prentice-Hall Corporation System, Inc., 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

19.     Defendant B-RHAKA Publishing ("B-RHAKA") is, upon information and belief, an entity owned and operated by defendant Heather Bright, having a principal place of business located at 2850 Ocean Park Blvd., Suite 300, Santa Monica, CA 90405-4084. B-RHAKA's

*Copeland v. Bieber et al.*
Case No. _____cv_____; Complaint

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

Page 8 of 19

-JA008-

agent for service of process is United Corporate Services, Inc., 874 Walker Rd., Suite C, Dover, DE 19904.

20.  Defendant Stage Three Music, LLC ("STM") is, upon information and belief, a Delaware limited liability company servable through Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

21.  Defendant Please Enjoy the Music ("PEM") is, upon information and belief, an entity operated by defendant Ray Romulus, and servable through Sony/ATV Music Publishing LLC, P.O. Box 1273, Nashville, TN 37202. *See* Paragraph 9 above.

22.  Defendant Products of the Street ("POS") is, upon information and belief, owned and controlled by defendant Jonathan Yip, with all rights in the works at issue controlled and administered by WB Music Corp., 75 Rockefeller Plaza, New York, NY 10019. POS's agent for service of process is CT Corporation System, 818 W. 7th Street, Los Angeles, CA 90007.

23.  Defendant Sumphu is, upon information and belief, owned and controlled by defendant Jeremy Reeves, with all rights in the works at issue controlled and administered by WB Music Corp., 75 Rockefeller Plaza, New York, NY 10019. Sumphu's agent for service of process is CT Corporation System, 818 W. 7th Street, Los Angeles, CA 90007.

24.  Defendant Jonetta Patton is an individual who, upon information and belief, is currently residing in the State of Georgia, who owns and operates J Pat Management, Music Artists Management Company, 3996 Pleasantdale Road, Suite 104A, Doraville, GA 30340-4200.

*Copeland v. Bieber et al.*
Case No. _____ cv_____; Complaint

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

Page 9 of 19

25.    Collectively, Romulus, Yip, and Reeves work as "The Stereotypes."

## FACTS COMMON TO ALL COUNTS

26.    Plaintiff Copeland, who performs under the name "De Rico," is a writer and singer in the Rhythm and Blues ("R&B") genre of music. Copeland currently holds valid copyrights on numerous songs.

27.    Plaintiff Overton is a songwriter who often collaborates with Copeland on material.

28.    In 2008, Plaintiffs began collaborating on a number of songs to be professionally performed and recorded by Copeland and released as an album. During that time, Plaintiffs independently composed, produced and created an original musical composition titled "Somebody to Love."

29.    On or around March of 2008, Copeland recorded the song "Somebody to Love," which was included on his album "My Story II."

30.    Plaintiffs applied to the U.S. Copyright Office for the rights in "My Story II," including the track "Somebody to Love."[1]  On October 2, 2008, the U.S. Copyright Office issued Copeland Copyright Registration No. PAu 3-554-480, attached as Exhibit 1.

31.    Copeland and Overton are, and at all relevant times have been, the owners of valid copyright in the work at issue, the song "Somebody to Love."

32.    In June 2007, Copeland met Laura Jones ("Jones"), a talent and concert promoter.

---

[1]  The issued registration erroneously failed to name Overton, and was issued as to the lyrics alone, despite the sound recording being deposited with the application. A Correction has been submitted to the U.S. Copyright Office.

---

*Copeland v. Bieber et al.*
Case No. _____ cv _____; Complaint

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

33.    In October and November 2009, Jones introduced Copeland to several individuals, including Peter Stockton ("Stockton"), Kevin Lawson ("Lawson"), and Malik Brooks of Sangreel Media ("Sangreel"). Sangreel, upon information and belief, is a company that scouts and recruits new musical artist for recording labels, such as Island, Sony, and RCA. Sangreel indicated it was interested in promoting Plaintiffs' songs.

34.    Plaintiffs provided copies of their registered and recorded works, including "Somebody to Love," to Stockton, Lawson, and Brooks so that they could, in turn, provide promotional copies of the works to the recording companies they worked with in the music industry.

35.    In the course of numerous conversations, Stockton, Lawson, and Brooks informed Plaintiffs that they had presented the music on "My Story II" to numerous people, including Usher Raymond IV ("Usher"). Usher is a renowned R&B recording artist and television personality with an international fan base and significant musical success. He also has extensive experience songwriting and producing music.

36.    On January 5, 2009, Copeland participated in a telephone conference with Lawson and an individual who identified herself as Jonetta Patton ("Patton"), Usher's mother and on-again, off-again manager. During that telephone conference, Patton informed Copeland that both she and Usher had listened to the music on his album, including "Somebody to Love," and were interested in having Copeland re-record the album and tour with Usher that summer.

37.    Sangreel never returned any of its copies of Copeland's "My Story II," and Plaintiffs heard nothing further from Patton or any other representative of Usher.

---

*Copeland v. Bieber et al.*
Case No. _____ cv_____; Complaint

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

Page 11 of 19

-JA011-

38.    Without any authority or consent, Patton and Usher conspired with songwriters and producers Ray Romulus, Jonathan Yip, Jeremy Reeves (collectively known as the Stereotypes) and Heather Bright to directly copy Plaintiffs' song "Somebody to Love," intending to appropriate Plaintiffs' intellectual property as their own. Usher, who at the time was preparing to record his album "Raymond v. Raymond," recorded the infringing song as a demo track with the Stereotypes producing. Usher uploaded a video of his demo performance on the website YouTube as early as February 28, 2010.

39.    Justin Bieber is an R&B performer and songwriter. Bieber, then just 13 years old, was discovered in 2008 by promoter Scooter Braun ("Braun") who first observed Bieber through a series of performance videos Bieber made and posted on the YouTube website.

40.    In 2008, Braun formed a partnership, Raymond Braun Media Group ("RBMG"), with Usher who agreed to mentor Bieber. RBMG immediately signed Bieber as its first performer. Soon thereafter, Bieber signed with Island Records, which resulted in a joint venture between the label and RBMG. Bieber hired Braun as his manager and Ryan Good, a former assistant to Usher, as his road manager.

41.    Usher decided not to use his infringing version of the song "Somebody to Love" on his album. At that time, Bieber was preparing to record his first full length album, My World 2.0. Upon information and belief, Usher and the Stereotypes brought the song "Somebody to Love" to Bieber.

42.    Bieber agreed to record his infringing version of "Somebody to Love" with Usher performing the background vocals and the Stereotypes producing the song.

---

*Copeland v. Bieber et al.*
Case No. _____cv_____; Complaint

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

Page 12 of 19

43.     Bieber released his album "My World 2.0" in the spring of 2010, and it debuted at number one on the U.S. Billboard 100.

44.     The Bieber version of "Somebody to Love" was included on the album, and released as the album's second single on or about April 20, 2010. The song peaked at number 15 in the U.S. Billboard charts, charted well in many other countries, and was certified platinum.

45.     On June 25, 2010, Usher released an infringing version of "Somebody to Love" as a remix, with himself singing the lead vocals and Bieber performing the backup vocals.

46.     In late summer of 2010, Overton heard Bieber's version of "Somebody to Love" on the radio. He immediately contacted Copeland and informed him of the song and stated that it was clearly copied from the Copeland/Overton version of "Somebody to Love." Prior to that time, neither Plaintiff was aware of the Bieber version of "Somebody to Love."

47.     A comparison of Bieber's version of "Somebody to Love" with Plaintiff's copyrighted version shows the following points of congruence between the two works:

   a.   Both compositions bear the same title;

   b.   Both compositions share the same time signature;

   c.   Both compositions have a repeating underlying Keystone Beat Pattern ("KBP," which is the underlying simplest arrangement of repeating beat-patterns in a musical piece) 2-measure rhythm pattern for the entire song;

   d.   Both introductions are spoken, rather than being an instrumental or sung;

   e.   Both choruses use the same hook, "I…need somebody to love";

---

*Copeland v. Bieber et al.*
Case No. _____ cv_____; Complaint

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

Page 13 of 19

-JA013-

f. Both use one measure of strategic silence just prior to or at the beginning of the chorus;

g. Both use a scalar 7-chord to start the chorus;

h. Both use a scalar 4 minor 9-chord in the 2nd measure of the chorus;

i. Both are 9 measures long for the chorus-proper;

j. Both use the "call and response" form for the chorus-proper;

k. Both use nearly identical time values and sequences in the first phrase of each chorus;

l. Both use nearly identical time values and sequences in the second phrase of each chorus;

m. Both use nearly identical timings of "call and response" entry points within a measure;

n. Both use nearly identical timings of "call and response" exit points within a measure;

o. The calls of both versions share nearly identical opening lyrics (with a single word difference: "just");

p. The calls of both versions share identical order and placements of the lyrics relative to their respective time values in each measure; and

q. The calls of both versions share identical treatments (the last word of the lyric, "love," being a two-syllable long held note).

48.    In addition, a statistical analysis of (i) a 52-song sample of 2009 – 2011 Billboard "Hot 100" Songs, (ii) both versions of "Somebody to Love," (iii) Songs with Writing Credits to Justin Bieber *et al.*, and (iv) Songs with Writing Credits to the Stereotypes *et al.* reveals that:

---

*Copeland v. Bieber et al.*
Case No. _____ cv _____; Complaint

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

Page 14 of 19

-JA014-

    (a)  while, absent copying, there is essentially a zero probability for the number of points of congruence between the two versions of "Somebody to Love,"

    (b)  there is a statistically negligible occurrence of those points of congruence in either the 2009-2011 Billboard sample or in the set of songs written by the members of the team claiming authorship on the Bieber version of "Somebody to Love."

In sum, the points of congruence (the shared unique musical structures including timing, lyrics, etc.) that show Bieber's version of "Somebody to Love" to have been created from the Overton/Copeland version appear only in those two versions of the song and not in the general population of that music genre or in the other works by the purported authors of the Bieber version.

49.    In addition to the multiple album and single sales, Plaintiffs' copyrighted work is also being infringed by and through sheet music sales and live concert performances. Bieber has performed the song on numerous occasions, including as a part of his set list on his "My World" Tour, which included a performance in Norfolk, Virginia, and televised appearances on the 2010 MTV Video Music Awards and on the Today show, among others.

50.    Bieber is currently performing the song as part of the setlist for his ongoing "Believe" Tour.

51.    Each and every Defendant, jointly and severally, have claimed rights to the Bieber and Usher versions of Plaintiffs' work, have jointly and severally infringed Plaintiffs' copyrights by and through the copying, revising, recording, performance, distribution and sales of the

---

*Copeland v. Bieber et al.*
Case No. _____ cv _____ ; Complaint

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

Page 15 of 19

-JA015-

infringing works, and/or conspired to infringe Plaintiffs' copyrights, and are therefore liable for the infringing acts.

52.    Each and every Defendant was either directly involved in recording and/or performing the infringing works, or was directly involved in obtaining and providing Plaintiffs' copyrighted work so that the infringing activities could take place.

53.    Each and every Defendant has an obvious and direct financial interest in Bieber and Usher copying, recording, and performing their infringing versions of "Somebody to Love."

54.    Each and every Defendant knew of the infringing activity and, despite that knowledge, induced, caused, or materially contributed to the infringement.

55.    Defendants continue to infringe Plaintiffs' copyrights, thereby unfairly profiting from such use and damaging Plaintiffs.

## COUNT I
## COPYRIGHT INFRINGEMENT

56.    Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 55 as though fully set forth herein.

57.    Defendants' acts as alleged constitute copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*

58.    Upon information and belief, by such wrongful acts, Defendants have and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiffs.

59.    Plaintiffs have no adequate remedy at law, and have been damaged in an amount not less than Ten Million and 00/100 Dollars ($10,000,000.00) or other such amount as may be proven at trial.

---

*Copeland v. Bieber et al.*
Case No. _____ cv _____ ; Complaint

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

Page 16 of 19

## COUNT II
## CONTRIBUTORY INFRINGEMENT

60.     Plaintiffs repeat and re allege each and every allegation of paragraphs 1 through 59 as though fully set forth herein.

61.     Defendants' acts as set forth above constitute contributory infringement in that (a) there was and continues to be direct copyright infringement of Plaintiffs' work, (b) Defendants knew of the infringement, and (c) each of the Defendants materially contributed to the infringement.

62.     Upon information and belief, by such wrongful acts, Defendants have and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiffs.

63.     Plaintiffs have no adequate remedy at law, and have been damaged in an amount not less than Ten Million and 00/100 Dollars ($10,000,000.00) or other such amount as may be proven at trial.

## COUNT III
## VICARIOUS INFRINGEMENT

64.     Plaintiffs repeat and re allege each and every allegation of paragraphs 1 through 63 as though fully set forth herein.

65.     Defendants' acts as set forth above constitute vicarious infringement in that (a) Defendants possessed the right and ability to supervise the infringing conduct, and (b) Defendants have an obvious and direct financial interest in the exploitation of Plaintiffs' copyrighted materials.

*Copeland v. Bieber et al.*
Case No. _____ cv_____; Complaint

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

66.    Upon information and belief, by such wrongful acts, Defendants have and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiffs.

67.    Plaintiffs have no adequate remedy at law, and have been damaged in an amount not less than Ten Million and 00/100 Dollars ($10,000,000.00) or other such amount as may be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an Order of the Court:

68.    Granting a preliminary and permanent injunction restraining Defendants, their officers, directors, principals, agents, servants, employees, successors and assigns, and all individuals acting in concert or participation with it, from infringing Plaintiffs' copyrights;

69.    Ordering the termination of Defendants' copyright registrations for any and all rights claimed in the song "Somebody to Love";

70.    Directing Defendants to account to Plaintiffs for any and all profits derived by Defendants from the infringed works and/or performances;

71.    Granting Plaintiff a monetary judgment against Defendants for Plaintiffs' actual damages and any of Defendants' additional profits in an amount not less than Ten Million and 00/100 Dollars ($10,000,000.00) or other such amount as may be proven at trial;

72.    Granting Plaintiff punitive damages against Defendants due to their willful and malicious acts in an amount to be proven at trial and in accordance with statute and/or common law;

---

*Copeland v. Bieber et al.*
Case No. _____cv_____; Complaint

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

73.　Granting Plaintiff his reasonable attorneys' fees, costs, and disbursements incurred herein pursuant to 17 U.S.C. § 505 ("Remedies for infringement: Costs and attorney's fees"); and

74.　Awarding Plaintiff such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff requests a trial by jury.

Date: May 1, 2013　　　　　　　　　　DEVIN COPELAND and

MAREIO OVERTON

Of Counsel

Duncan G. Byers, Esquire
Virginia Bar No. 48146
Jeffrey D. Wilson, Esquire
Virginia Bar No. 75734
BYERS LAW GROUP
142 W York Street, Suite 910
Norfolk, VA 23510
(757) 227-3340 Telephone
(757) 227-3341 Facsimile
*duncan.byers@byerslawgroup.com*
*jdwilson@byerslawgroup.com*
*admin@byerslawgroup.com*

*Counsel for Plaintiffs Devin Copeland and Mareio Overton*

---

*Copeland v. Bieber et al.*
Case No. _____cv_____; Complaint

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

Page 19 of 19

-JA019-

# EXHIBIT 1

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**
## PAu 3-554-480

**Effective date of
registration:**

October 2, 2008

## Title

Title of Work: My Story II

Contents Titles: XOXO; Get it back; Somebody to Love; I'll try; Fly chicks; Go off; Play me;
Around the World; Guardian Angel; Swervie; Give it up; Circles; Life of the
Party; Baby Boy

## Completion/Publication

Year of Completion: 2008

## Author

■ Author: Devin Derico Copeland

Work made for hire: No

Citizen of: United States

Year Born: 1988

Anonymous: No                    Pseudonymous: No

## Copyright claimant

Copyright Claimant: Devin Derico Copeland

4956 Old Pughsville Rd, Chesapeake, VA, 23321

## Certification

Name: Roxane Copeland

Date: September 26, 2008

Correspondence: Yes

Appeal: 14-1427     Doc: 30     Filed: 08/01/2014     Pg: 32 of 317

**Registration #:** PAU003554480
**Service Request #:** 1-128842742

DeRico Musick Inc
4956 Old Pughsville Rd
Chesapeake, VA 23321

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| DEVIN COPELAND p/k/a DE RICO and MAREIO OVERTON, | |
| Plaintiffs, | |
| v. | |
| JUSTIN BIEBER, USHER RAYMOND IV p/k/a "USHER," HEATHER BRIGHT, Individually and d/b/a B-RHAKA PUBLISHING, RAY ROMULUS a/k/a RAYRO and d/b/a PLEASE ENJOY THE MUSIC, JONATHAN YIP, Individually and d/b/a PRODUCTS OF THE STREET, JEREMY REEVES, Individually and d/b/a SUMPHU, UNIVERSAL MUSIC CORP., SONY/ATV MUSICAL PUBLISHING, LLC, BIEBER TIME PUBLISHING, LLC, WB MUSIC CORP., THE ISLAND DEF JAM MUSIC GROUP, STAGE THREE MUSIC (U.S.), INC., STAGE THREE MUSIC, LLC AND JONETTA PATTON, | **Civil Action No. 2:13-cv-246 AWA/TEM** |
| Defendants. | |

**MOTION TO DISMISS COPYRIGHT CLAIMS AS A MATTER OF LAW PURSUANT
TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Defendants Universal Music Corp. and The Island Def Jam Music Group, a division of

UMG Recordings Inc. (incorrectly named as "Island Def Jam Music Group") ("Defendants"), by

counsel, move this Court to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure because Plaintiffs Devin Copeland and Mareio Overton's

("Plaintiffs") copyright claims fail as a matter of law.  The grounds and authorities in support of

this motion are set forth in the Defendants' Memorandum of Law in Support of the Universal

Music Corp. and The Island Def Jam Music Group Defendants' Motion to Dismiss Complaint

for Failure to State a Claim as a Matter of Law filed with this motion.

Attached as **Exhibit 1** to this motion is a proposed order granting the requested relief.

Dated:  June 28, 2013                     Respectfully submitted,


  _/s/ Stephen E. Noona_
Stephen E. Noona
Virginia State Bar No. 25377
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com

Howard Weitzman (*pro hac vice*)
Jeremiah T. Reynolds (*pro hac vice*)
Kinsella Weitzman Iser Kump & Aldisert
808 Wilshire Blvd., 3rd Floor
Santa Monica, CA  90401
Telephone:  310-566-9800
Facsimile:  310-566-9884
hweitzman@kwikalaw.com
jreynolds@kwikalaw.com

*Attorneys for Universal Music Corp. and The
Island Def Jam Music Group, a division of UMG
Recordings, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2013, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Duncan G. Byers
Virginia State Bar No. 48146
Jeffrey D. Wilson
Virginia State Bar No. 75734
Byers Law Group
142 W. York Street, Suite 910
Norfolk, VA 23510
Telephone: 757-227-3340
Facsimile: 757-227-3341
duncan.byers@byerslawgroup.com
jdwilson@byerslawgroup.com
admin@byerslawgroup.com

*Attorneys for Plaintiffs*
*Devin Copeland and Mareio Overton*

Stephen E. Noona
Virginia State Bar No. 25377
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: 757-624-3239
Facsimile: 757-624-3169
senoona@kaufcan.com

*Attorney for Defendants Justin Bieber and*
*Bieber Time Publishing LLC,*
*Universal Music Corp., The Island Def Jam Music Group,*
*a division of UMG Recordings, Inc. and Usher Raymond, IV, p/k/a Usher*

Jonathan D. Davis, Esq. (*pro hac vice* application to be filed)
Jonathan D. Davis, P.C.
99 Park Avenue, Suite 1600
New York, New York 10016
Telephone: 212- 687-5464
Facsimile: 212- 557-0565
jdd@jddavispc.com

*Attorneys for Defendant*
*Usher Raymond, IV, p/k/a Usher*

*/s/ Stephen E. Noona*

Stephen E. Noona
Virginia State Bar No. 25377
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com

12469585v2

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

|  |  |
|---|---|
| DEVIN COPELAND p/k/a DE RICO and MAREIO OVERTON,<br><br>     Plaintiffs,<br><br>v.<br><br>JUSTIN BIEBER, USHER RAYMOND IV p/k/a "USHER," HEATHER BRIGHT, Individually and d/b/a B-RHAKA PUBLISHING, RAY ROMULUS a/k/a RAYRO and d/b/a PLEASE ENJOY THE MUSIC, JONATHAN YIP, Individually and d/b/a PRODUCTS OF THE STREET, JEREMY REEVES, Individually and d/b/a SUMPHU, UNIVERSAL MUSIC CORP., SONY/ATV MUSICAL PUBLISHING, LLC, BIEBER TIME PUBLISHING, LLC, WB MUSIC CORP., THE ISLAND DEF JAM MUSIC GROUP, STAGE THREE MUSIC (U.S.), INC., STAGE THREE MUSIC, LLC AND JONETTA PATTON,<br><br>     Defendants. | Civil Action No. 2:13-cv-246 AWA/TEM |

**[PROPOSED] ORDER GRANTING MOTION TO DISMISS COPYRIGHT CLAIMS AS A MATTER OF LAW PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

On this day came Defendants Universal Music Corp. and The Island Def Jam Music Group, a division of UMG Recordings, Inc. (incorrectly named as "Island Def Jam Music Group") ("Defendants"), upon their Motion to Dismiss Copyright Claims as a Matter of Law Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Motion to Dismiss Copyright"), and upon consideration of the arguments set forth in the Motion for Extension of Time, and for good cause shown, it is

ORDERED that the Motion to Dismiss Copyright is granted.

Dated: _____, 2013

                                       _____
                                       Arenda Wright Allen, District Judge
                                       United States District Court
                                       Eastern District of Virginia

**WE ASK FOR THIS:**

  */s/Stephen E. Noona*＿＿＿＿＿＿＿＿
Stephen E. Noona
Virginia State Bar No. 25377
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com

Howard Weitzman (*pro hac vice*)
Jeremiah T. Reynolds (*pro hac vice*)
Kinsella Weitzman Iser Kump & Aldisert
808 Wilshire Blvd., 3rd Floor
Santa Monica, CA  90401
Telephone:  310-566-9800
Facsimile:  310-566-9884
hweitzman@kwikalaw.com
jreynolds@kwikalaw.com

*Attorneys for Defendants Universal Music Corp.*
*and The Island Def Jam Music Group, a division*
*of UMG Recordings, Inc.*

12483117v1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| DEVIN COPELAND p/k/a DE RICO and MAREIO OVERTON,<br><br>        Plaintiffs,<br><br>v.<br><br>JUSTIN BIEBER, USHER RAYMOND IV p/k/a "USHER," HEATHER BRIGHT, Individually and d/b/a B-RHAKA PUBLISHING, RAY ROMULUS a/k/a RAYRO and d/b/a PLEASE ENJOY THE MUSIC, JONATHAN YIP, Individually and d/b/a PRODUCTS OF THE STREET, JEREMY REEVES, Individually and d/b/a SUMPHU, UNIVERSAL MUSIC CORP., SONY/ATV MUSICAL PUBLISHING, LLC, BIEBER TIME PUBLISHING, LLC, WB MUSIC CORP., THE ISLAND DEF JAM MUSIC GROUP, STAGE THREE MUSIC (U.S.), INC., STAGE THREE MUSIC, LLC AND JONETTA PATTON,<br><br>        Defendants. | Civil Action No. 2:13-cv-246 AWA/TEM |

**MEMORANDUM OF LAW IN SUPPORT OF THE UNIVERSAL MUSIC CORP. AND DEF JAM MUSIC GROUP DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM AS A MATTER OF LAW**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ...........................................................................................................1

II.    SUMMARY OF ALLEGATIONS IN THE COMPLAINT.................................................2

III.   PLAINTIFFS' CLAIM FOR COPYRIGHT INFRINGEMENT FAIL AS A
MATTER OF LAW .......................................................................................................3

     A.    Infringement Of A Musical Composition Requires Substantial Similarity
Of Protected Elements ....................................................................................7

     B.    As A Matter Of Law, Plaintiffs Cannot Satisfy *Either* The Extrinsic Or
Intrinsic Tests For Copyright Infringement ..................................................9

          1.    The Extrinsic Test: The Works Lack Substantial Similarity in the
Objective Elements of the Compositions.....................................10

          2.    Plaintiffs' List of Alleged Similarities in the Complaint Identifies
Only Unprotectable, Generic Elements .......................................17

          3.    The Intrinsic Test: No Listener Could Reasonably Find Plaintiffs'
and Defendants' Songs Substantially Similar..............................19

     C.    Plaintiffs' Second Claim For Contributory Copyright Infringement And
Third Claim For Vicarious Infringement Fail As A Matter Of Law. ..................21

          1.    Plaintiffs have not pled any facts showing contributory
infringement.................................................................................21

          2.    Plaintiffs also fail to plead any facts demonstrating vicarious
infringement.................................................................................22

IV.   CONCLUSION.............................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>FEDERAL CASES</u>

*Acuff-Rose Music, Inc. v. Jostens, Inc.*,
    155 F.3d 140 (2d Cir. 1998) ................................................................................ 16

*Alberto-Culver Co. v. Andrea Dumon, Inc.*,
    466 F.2d 705 (7th Cir. 1972) ............................................................................... 14

*Alehouse Mgmt., Inc. v. Raleigh Ale House, Inc.*,
    205 F.3d 137 (4th Cir. 2000) ................................................................................. 9

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,
    367 F.3d 212 (4th Cir. 2004) ................................................................................. 6

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ................................. 3, 4

*Basketball Mktg. Co., Inc. v. FX Digital Media, Inc.*,
    257 F. App'x 492 (3d Cir. 2007) ......................................................................... 22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ......................... 4, 22, 23

*Bucklew v. Hawkins, Ash, Baptie & Co.*,
    329 F.3d 923 (7th Cir. 2003) ............................................................................... 19

*Cable/Home Communication Corp. v. Network Productions, Inc.*,
    902 F.2d 829 (11th Cir. 1990) ............................................................................. 22

*Christianson v. West Pub. Co.*,
    149 F.2d 202 (9th Cir. 1945) ................................................................................. 5

*CoStar Group, Inc. v. LoopNet, Inc.*,
    373 F.3d 544 (4th Cir. 2004) ............................................................................... 21

*Cottrill v. Spears*,
    2003 WL 21223846 *10 (E.D. Pa.) ........................................................ 16, 18, 19

*Damiano v. Sony Music Entertainment, Inc.*,
    975 F.Supp. 623 (D.N.J. 1997) ........................................................................... 20

*Eaton v. NBC*,
    972 F.Supp. 1019 (E.D. Va. 1997) ..................................................................... 11

*Feist Publ., Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ........................................................................................ 8, 15

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
    443 F.2d 1159 (2d Cir.1971)...................................................................... 22

*Hobbs v. John*,
    2012 WL 5342321 (N.D. Ill.) ........................................................... 14, 19

*Incredible Tech., Inc. v. Virtual Tech., Inc.*,
    400 F.3d 1007 (7th Cir. 2005) ................................................................... 9

*Intersong-USA v. CBS, Inc.*,
    757 F.Supp. 274 (S.D.N.Y. 1991) ..................................................... 18, 19

*Jacobsen v. Deseret Book Co.*,
    287 F.3d 936 (10th Cir. 2002) ........................................................... 10, 17

*Johnson v. Gordon*,
    409 F.3d 12 (1st Cir. 2005) ........................................................... passim

*Jorgensen v. Epic/Sony Records*,
    351 F.3d 46 (2d Cir. 2003) ....................................................................... 9

*Life Music, Inc. v. Wonderland Music Co.*,
    241 F.Supp. 653 (S.D.N.Y. 1965) .......................................................... 20

*McRae v. Smith*,
    968 F.Supp. 559 (D. Colo. 1997) ........................................................... 16

*Nelson v. PRN Prods., Inc.*,
    873 F.2d 1141 (8th Cir. 1989) .................................................................. 4

*NelsonSabales, Inc. v. Morningside Dev., LLC*,
    284 F.3d 505 (4th Cir. 2002) ................................................................. 22

*Northern Music Corp. v. King Record Distr. Co.*,
    105 F.Supp. 393 (S.D.N.Y. 1952) ...................................................... 11, 18

*Peter F. Gaito Archit., LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010)............................................................... passim

*Peter Pan Fabrics, Inc. v. Martin Weiner Corp*,
    274 F.2d 487 (2d Cir. 1960)................................................................... 10

*Peters v. West*,
    692 F.3d 629 (7th Cir. 2012) ............................................................. 4, 16

*Phillips v. LCI Int'l Inc.*,
    190 F.3d 609 (4th Cir.1999) .................................................................... 6

*Pyatt v. Raymond IV*,
    2011 WL 2078531 *5 (S.D.N.Y.)........................................... 7, 14, 17, 18

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000).................................................................... 6

*Scratchborneo v. Arc Music Corp.*,
    357 F.Supp. 1393 (S.D.N.Y. 1973) ............................................................ 15

*Secretary of State for Defence v. Trimble Navigation Ltd.*,
    484 F.3d 700 (4th Cir. 2007) ......................................................... 6, 15

*Tessler v. NBC Universal, Inc.*,
    2009 WL 866834 *3 (E.D. Va. 2009),
    *aff'd*, 364 F. App'x 5 (4th Cir. Feb. 4, 2010) (Jackson, J.) ...................................... 4, 7, 19

*Tisi v. Patrick*,
    97 F.Supp.2d 539 ...................................................................... 19

*U–Haul Intern., Inc. v. WhenU.com, Inc.*,
    279 F.Supp.2d 723 (E.D.Va.2003) ..................................................... 22

*United States v. Mariscal*,
    285 F.3d 1127 (9th Cir. 2002) ........................................................ 15

*Universal Furniture Intern., Inc. v. Collezione Europa USA, Inc.*,
    618 F.3d 417 (4th Cir. 2010) .................................................. 8, 10, 20

*Wihtol v. Wells*,
    231 F.2d 550 (7th Cir. 1956) ......................................................... 17

*Zella v. E.W. Scripps Co.*,
    529 F.Supp.2d 1124 (C.D. Cal. 2007) .................................................. 5


## FEDERAL STATUTES

Federal Rule of Civil Procedure 12(b)(6) ........................................................ passim

Federal Rule of Evidence 201(b) ........................................................... 15


## TREATISES

3-12 Nimmer on Copyright
    § 12.10 .................................................................................... 10

## I.    **INTRODUCTION**

Defendants Universal Music Corp. and The Island Def Jam Music Group, a division of UMG Recordings Inc. (incorrectly named as "Island Def Jam Music Group") ("Defendants") move to dismiss Plaintiffs' Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiffs Devin Copeland and Mareio Overton's ("Plaintiffs") copyright claims fail as a matter of law.

Plaintiffs allege that their song, "Somebody To Love," and the song, "Somebody To Love," performed by Justin Bieber, are substantially similar.  Plaintiffs' claims are specious, as will be demonstrated once the Court conducts its own evaluation.  Indeed, it is well-established in federal copyright jurisprudence that the Court must not accept Plaintiffs' legal conclusions and conclusory allegations of similarity as fact.  Instead, the Court must examine the works themselves to assess whether a reasonable jury could find them to be substantially similar.  Simply put, there is no similarity between the two songs, except for the use of a common, unprotectible phrase in the choruses.  Even a cursory review of the melody and lyrics of Plaintiffs' and Defendants' songs demonstrates that there are <u>no</u> protectible similarities between the two works.  Both songs use the indisputably common phrase, "I need somebody to love," but the similarities end there.  It is well-established that the shared use of this type of common phrase cannot properly form the basis for an action for copyright infringement.  This conclusion is especially bolstered in this case given the numerous prior songs that have specifically used the same phrase (or similar variants) – most notably, the iconic songs from Jefferson Airplane and Queen of the same name.  Accordingly, Plaintiffs' copyright claims (including their claims for indirect liability under the theories of contributory and vicarious infringement) fail because they cannot establish substantial similarity as a matter of law.

## II.    SUMMARY OF ALLEGATIONS IN THE COMPLAINT

Plaintiffs allege they produced and composed a song entitled "Somebody to Love" in 2008, which was recorded by Copeland and included on his album, "My Story II." (Compl., ¶¶ 28-30.) Plaintiffs allege that Copeland obtained a copyright registration in the lyrics that same year, and later submitted a corrected registration naming Overton and including the sound recording for the song. (*Id.*, ¶ 30.) Copeland claims he met a third-party promoter named Laura Jones, who introduced Copeland to third-parties Peter Stockton, Kevin Lawson ("Lawson"), and Malik Brooks of Sangreel Media ("Sangreel"). (*Id.*, ¶¶ 32-33.) Plaintiffs allege they were "informed" that Sangreel provided copies of their works, including "Somebody to Love," to defendant Usher Raymond IV ("Usher"), a renowned R&B artist and television personality. (*Id.*, ¶ 34.)

Copeland claims he participated in a telephone conversation on January 5, 2009 with Lawson and a person who claimed to be Usher's mother and "on-again, off-again manager," defendant Jonetta Patton, and that this individual said that both she and Usher listened to Copeland's album and were interested in having him re-record it and tour with Usher. (Compl., ¶ 37.) Plaintiffs claim their music was never returned by Sangreel and neither Usher nor Patton further contacted them.[1] (*Id.*, ¶ 36.)

Plaintiffs allege that Usher, Patton, the producers known as "the Stereotypes, defendants Ray Romulus, Jonathan Yip, and Jeremy Reeves, and defendant and songwriter Heather Bright somehow conspired to copy Plaintiffs' song. (*Id.*, ¶ 38.) Plaintiffs allege that Usher and the

---

[1] Defendants accept Plaintiffs' allegations of access to their work as true, as they must, because they are irrelevant to the Court's analysis on substantial similarities as a matter of law. However, as Plaintiffs' allegations present the proverbial "parade of hypotheticals" that the Supreme Court has determined are not sufficient under *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868 (2009), Defendants reserve the right to challenge Plaintiffs' fanciful allegations at the appropriate time.

Stereotypes brought the allegedly infringing version of "Somebody to Love" to Bieber, who

agreed to record it.  (*Id.*, ¶ 42.)  Plaintiffs allege that both Bieber and Usher have released

infringing versions of the song, and that there are a number of similarities between Plaintiffs'

song and the Usher/Bieber version.  (*Id.*, ¶¶ 43-48.)  Plaintiffs allege that Defendants have

infringed their copyright, and set forth claims for Copyright Infringement (Count I), Contributory

Infringement (Count II), and Vicarious Infringement (Count III).  (Compl., ¶¶ 49-67.)

## III.    PLAINTIFFS' CLAIM FOR COPYRIGHT INFRINGEMENT FAIL AS A MATTER OF LAW

A complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if a plaintiff fails to

plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The "[f]actual

allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.  In

considering a motion to dismiss, the Court accepts well-pleaded facts as true, but not legal

conclusions or conclusory allegations that merely recite a claim's elements.  *See Ashcroft v.*

*Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868 (2009).  "[L]abels and conclusions"

or "formulaic recitation[s] of the elements of a cause of action" are insufficient to state a

cognizable claim.  *Twombly,* 550 U.S. at 555.  It is now settled that "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice .... [Rule

8] does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions." *Iqbal,* 556 U.S. at 678-79.

Federal courts have not hesitated to dispose of copyright claims on Rule 12(b)(6) motions

where the allegedly infringing work is not "substantially similar" to the plaintiff's work as a

matter of law. *See Tessler v. NBC Universal, Inc.*, 2009 WL 866834 *3-6 (E.D. Va. 2009), *aff'd,*

364 F. App'x 5 (4th Cir. Feb. 4, 2010) (Jackson, J.) (dismissing copyright claim on Rule 12(b)(6) motion for lack of substantial similarity); *see also Peters v. West*, 692 F.3d 629, 636 (7th Cir. 2012) (affirming 12(b)(6) dismissal of claim for infringement of music composition); *Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1143-1144 (8th Cir. 1989) (holding that "reasonable minds could not differ as to the absence of substantial similarity" and thus that the "trial judge could properly determine the matter of substantial similarity as a matter of law and did so by granting defendants' motion to dismiss"); *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945) ("There is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss."); *Zella v. E.W. Scripps Co.*, 529 F.Supp.2d 1124, 1130 (C.D. Cal. 2007) (citing cases and noting that "[f]or fifty years, courts have followed this rather obvious principle and dismissed copyright claims that fail from the face of the complaint (and in light of all matters properly considered on a motion to dismiss)").

"The question of substantial similarity is by no means exclusively reserved for resolution by a jury . . . and we have repeatedly recognized that, in certain circumstances, it is entirely appropriate for a district court to resolve that question as a matter of law, 'either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar.'" *Peter F. Gaito Archit., LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (citation omitted). "The same principles hold true," the Court found, "when a defendant raises the question of substantial similarity at the pleadings stage on a motion to dismiss." *Id.* at 64. Indeed, "[w]hen a court is called upon to consider whether [two] works are substantially similar,

no discovery or fact-finding is typically necessary, because 'what is required is only a visual [or oral] comparison of the works." *Id.*

Importantly, a district court is <u>not</u> constrained to the four corners of the complaint when judging substantial similarity at the pleadings stage. "Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage, we have held that when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir.1999)). "In reviewing the dismissal of a complaint under Rule 12(b)(6)," courts can "properly take judicial notice of matters of public record." *Secretary of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

Courts can consider "any documents incorporated in the complaint by reference" (*Peter F. Gaito*, 602 F.3d at 64) such as documents which are not attached to the complaint but "are integral to the complaint and authentic." *Trimble Navigation*, 484 F.3d at 705; *see also Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (holding that "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing suit" can be considered on a motion to dismiss). As explained by the Fourth Circuit, these exceptions to the general rule reflect that "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'" *Am. Chiropractic*, 367 F.3d at 234 (citation omitted).

In support of this motion, Defendants herewith submit sound recordings of the parties' respective compositions, as well as written copies of the lyrics.  (Declaration of Jeremiah Reynolds ("Reynolds Decl."), Exhs. A-D.)  Although these materials were not attached to Plaintiffs' Complaint, they are expressly referred to in the Complaint (see Complaint at ¶¶ 29-31 (Plaintiffs' composition), and ¶¶ 42-43 (Defendants' composition)) and are properly considered by the Court on a motion to dismiss.  The decision in *Tessler* (E.D. Va.) is particularly instructive.

In *Tessler*, after comparing the respective works as part of a motion to dismiss, the magistrate judge issued a report and recommendation that the plaintiff's copyright claim be dismissed for lack of substantial similarity.  The plaintiff contested "the Magistrate Judge's finding that the Court had authority to review and compare the copyrighted and alleged infringing works for the purpose of deciding" a motion to dismiss.  2009 WL 866834 *3.  The district court disagreed, holding that it could consider all documents attached to or referenced by the complaint.  *Id.*  This included "material posted on the MSNBC.com website" because the complaint contained allegations "incorporating the content found on such website by reference and bringing it within the scope of the pleadings."  *Id.*  In reaching this decision, Judge Jackson also held that materials submitted and authenticated by the moving party were "appropriately considered because they are incorporated by reference, integral to Plaintiff's complaint, and authentic..." and appropriately considered under Fourth Circuit law.  *Id.*; *see also Pyatt v. Raymond IV*, 2011 WL 2078531 *5 (S.D.N.Y.) (holding, in dismissing claim for infringement of musical composition, that "[a]lthough Plaintiffs did not attach the works at issue to the Complaint, the Court may nonetheless consider them because they were clearly relied on by Plaintiffs in commencing this suit").

Here, as in *Tessler* and *Pyatt*, Plaintiffs' complaint expressly refers to and incorporates the allegedly infringed and infringing songs by reference, identifying Plaintiffs' composition as the recording of "Somebody to Love" on the album "My Story II," and identifying Defendants' allegedly infringing composition as the recording of "Somebody to Love" on the Bieber album "My World 2.0." Compl. ¶¶ 30, 43-44. Plaintiffs' allegations of infringement are predicated on the recordings and lyrics of these compositions. *See*, *e.g.*, Compl. ¶ 47. Further, the authenticity of these materials is not disputable and, therefore, they are properly considered in assessing substantial similarity at the pleading stage.[2]

## A.  Infringement Of A Musical Composition Requires Substantial Similarity Of Protected Elements

To prevail on its claim for copyright infringement, Plaintiffs "must establish 'ownership of the copyright by the plaintiff and copying by the defendant.'" *Universal Furniture Intern., Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010) (citation omitted). Paragraph 30 alleges that Plaintiffs own a registered copyright to the composition contained in their recording of "Somebody to Love," Compl. ¶ 30, and that allegation must be accepted as true on this motion. Paragraph 38 also alleges that certain Defendants "conspired . . . to directly copy Plaintiffs' song 'Somebody to Love.'" Despite these allegations, Plaintiffs have still not pled a viable claim for copyright infringement.

Copyright law does not protect against the copying of ideas; rather, it protects only the copying of *original expressions* of an idea. As explained by the U.S. Supreme Court: "Not all

---

[2] Plaintiffs' counsel provided the lyrics for their composition, (Reynolds Decl., ¶ 5, Ex. D) and Defendants obtained the official copy of Plaintiffs' sound recording that was submitted to the United States Copyright Office by Plaintiffs. (*Id.*, ¶ 4, Ex. C.) As to the allegedly infringing song, Defendants have provided the exact recording from the "My World 2.0" album that is referenced in the complaint, along with the official lyrics to that version of Bieber's song. (*Id.*, Exs. A, B.)

copying . . . is copyright infringement." *Feist Publ., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340,

361 (1991); *see also Johnson v. Gordon*, 409 F.3d 12, 17-18 (1st Cir. 2005) ("[I]t is important to

note that copying does not invariably constitute copyright infringement . . . ."). "[C]opyright

protection may extend only to those components of a work that are original to the author," *Feist*,

499 U.S. at 348, and thus to prove infringement, the plaintiff must prove the "copying of

constituent elements of the work that are original." *Id.* at 361[3]; *see also Alehouse Mgmt., Inc. v.*

*Raleigh Ale House, Inc.*, 205 F.3d 137, 143 (4th Cir. 2000) (affirming summary judgment on

claim of infringement of copyrighted architectural plans where a comparison of the plans

"shows, at most, the imitation of an idea or a concept, but not a copying of the plans

themselves"); *Incredible Tech., Inc. v. Virtual Tech., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005)

(holding that "the copyright laws preclude appropriation of only those elements of the work that

are protected by the copyright").

Accordingly, "[p]roof of wrongful copying is a two-step process." *Johnson*, 409 F.3d at

18. First, the plaintiff must show that, "as a factual matter, the defendant copied the plaintiff's

copyrighted material." *Id.* "Second, the plaintiff must establish that the copying is actionable by

'prov[ing] that the copying of the copyrighted material was so extensive that it rendered the

infringing and copyrighted works 'substantially similar.'" *Id.*; *see also Incredible Tech.* 400

F.3d at 1011 (7th Cir. 2005) (finding that actual copying was "pretty clear" but that court had to

address "second question" of whether "the defendant unlawfully appropriated the plaintiff's

protectible expression by taking material of substance and value"); *Jorgensen v. Epic/Sony*

*Records*, 351 F.3d 46, 51 (2d Cir. 2003) ("To satisfy the second element of an infringement

claim—the 'unauthorized copying' element—a plaintiff must show both that his work was

---

[3] All emphasis added unless otherwise stated.

'actually copied' <u>and</u> that the portion copied amounts to an 'improper or unlawful appropriation.'").

In the Fourth Circuit, the question of whether there has been an improper appropriation of protected expression is divided into extrinsic and intrinsic components:

> Substantial similarity is a two-prong test.  The plaintiff must show that the two works are (1) 'extrinsically similar because they contain substantially similar ideas that are subject to copyright protection' and (2) 'intrinsically similar in the sense that they express those ideas in a substantially similar manner from the perspective of the intended audience of the work.'

*Universal Furniture*, 618 F.3d at 435 (citation omitted)

"The extrinsic analysis looks to 'external criteria' of 'substantial similarities in both ideas and expression.'"  *Id.* at 435-436 (citation omitted).  "In assessing intrinsic similarity, the factfinder looks to the 'total concept and feel of the works, but <u>only</u> as seen through the eyes of the  . . . intended audience of the plaintiff's work.'"  *Id.* at 436 (citation omitted; emphasis added).  Historically, this intrinsic test has been "phrased . . . as whether 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'"  *Id.* (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp*, 274 F.2d 487, 489 (2d Cir. 1960)).

### B.    As A Matter Of Law, Plaintiffs Cannot Satisfy *Either* The Extrinsic Or Intrinsic Tests For Copyright Infringement

The allegations in the Complaint that Plaintiffs' Song and Defendants' Song are substantially similar are irrelevant and must be disregarded by the Court.  The law is clear that in reviewing a copyright infringement claim on a motion to dismiss or motion for summary judgment, "the works themselves supersede and control contrary descriptions of them," including "any contrary allegations, conclusions or descriptions of the works contained in the pleadings."  *Peter F. Gaito*, 602 F.3d at 64 (quoting 3-12 Nimmer on Copyright § 12.10).

"When a district court considers the original work and the allegedly copyrighted work in deciding a 12(b)(6) motion, the legal effect of the works are determined by the works themselves rather than by the allegations in the complaint." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941-942 (10th Cir. 2002). In short, the Court's own eyes and ears control, not Plaintiffs' self-serving claims of similarity.

Defendants submit that once the Court listens to the recordings of the parties' compositions and compares their lyrics side-by-side, it will be immediately and overwhelmingly obvious that Plaintiffs' and Defendants' songs are entirely dissimilar, except for the use of the unprotectible, common phrase, "I need somebody to love" in their respective choruses. Although this phrase was not appropriated from Plaintiffs, federal courts have held time and time again, in cases perfectly analogous to this one, that this is not an appropriation of protected expression and not copyright infringement.

### 1.    The Extrinsic Test: The Works Lack Substantial Similarity in the Objective Elements of the Compositions

Here, as in *Eaton v. NBC*, 972 F.Supp. 1019, 1026 (E.D. Va. 1997), a comparison of the objective elements of the parties' songs "instantly discloses significant substantial differences between [them], so much so that no reasonable jury, properly instructed, could find that the objective, copyrightable elements [of each] are substantially similar."

In music plagiarism cases, melody is paramount. "It is in the melody of the composition or the arrangement of notes or tones that originality must be found." *Northern Music Corp. v. King Record Distr. Co.*, 105 F.Supp. 393, 400 (S.D.N.Y. 1952). This "arrangement or succession of musical notes . . . are the finger prints of the composition, and establish its identity." *Id.* And yet, in listening to Plaintiffs' and Defendants' songs, it is apparent that there

are <u>no</u> similarities in the melodies of the two works.  Plaintiffs <u>concede</u> as much.  Paragraph 47 of the Complaint identifies several purported similarities between the songs, but no mention is made of their melodies.

Song lyrics are likewise critical, but here too, there is no substantial similarity between Plaintiffs' and Defendants' songs.  The Complaint alleges: "Both choruses use the same hook, 'I . . . need somebody to love.'"  Compl. ¶ 47(e).  But this is the <u>only</u> similarity in the lyrics, as shown below:

| SOMEBODY TO LOVE | SOMEBODY TO LOVE |
|---|---|
| Written by: Devin "DeRico" Copeland | Written by: Justin Bieber, Heather Bright, Ray Romulus, Jonathan Yip, and Jeremy Reeves |

| | |
|---|---|
| INTRO:<br><br>Thought we was forever,<br><br>I guess I gotta accept the consequences that Life throws at me…<br><br>VERSE:<br><br>Can't believe I'm upset with you,<br><br>don't wanna have to say this—we're through.<br><br>I thought I had the best thing in the world.<br><br>You  seem to wanna go and do your thing.<br><br>Guess I gotta let you do you.<br><br>No need for me to keep you in this bond.<br><br>So you can go….<br><br>don't wait ….<br><br>No need for you to take up my space.<br><br>I'm on the way to find someone for me.<br><br>It's not right, I know.<br><br>I've gotta go.<br><br>Don't want you here if u are not happy…..<br><br><br>Chorus:<br><br>I NEED SOMEBODY TO LOVE……..<br><br>I NEED SOMEBODY TO LOVE……..<br><br>CAUSE I KEEP GOIN THROUGH THE SAME OLD THINGS<br><br>SOMEBODY TO LOVE….<br><br>CAUSE I KEEP GOIN THROUGH THE | For you I'd write a symphony<br><br>I'd tell the violins, it's time to sink or swim... Watch 'em play for you.<br><br>For you I'd be runnin' a thousand miles... Just to get where you are<br><br>Step to the beat of my heart.<br><br>I don't need a whole lot coming from you I admit<br><br>I'd rather give you the world or we can share mine.<br><br>I know I won't be the first one giving you all this attention.<br><br>But baby listen<br><br><br>I  just need somebody to love<br><br>I don't need too much... Just somebody to love<br><br>Somebody to love<br><br>I don't need nothing else... I promise... Girl I swear<br><br>I just need somebody to love.<br><br>(I need somebody… I, I need somebody)<br><br>(I need somebody... I, I need somebody to love)<br><br><br>Everyday I'll bring the sun around...<br><br>I'll sweep away the clouds... Smile for me, smile for me.<br><br>I would take every second, every single time, spend it like my last dime. |

| SAME OLD THINGS | |
|---|---|
| VERSE 2: | You could have it all |
| It's a rap, | Anything you want I can bring... Give you the finer things yeah. |
| Going back | But what I really want |
| Into the game—things ain't the same no more. | I can't find cause money can't buy me somebody to love. |
| On the move, | |
| And we're through, | |
| So glad I broke up with you. | |
| Does it hurt? | |
| No way ….. Can't believe I wanted to stay | |
| With you …so blue…and stupid of me to | |
| See it was no romance and we don't live in France | |
| There's no love around floating in the air …. | |
| So you can go….don't | |

Just like ideas, copyright law does not protect common phrases.  The case law is legion with decisions <u>rejecting</u> that the appropriation of a short phrase such as "I need somebody to love" – particularly one that is cliché and common in prior songs – amounts to substantial similarity.

The First Circuit rejected an identical claim in *Johnson*, where the plaintiff alleged substantial similarity in two songs' use of the phrase "You're the One for Me":

> In his unrelenting effort to establish copyright infringement, the plaintiff clings to the one undeniable similarity between the two songs: the use of the phrase "You're the One for Me" in the title and lyrics of each song. While this usage is similar, it is also common. The record reflects, as does the United States Copyright Office's Registered Works Database, that hundreds of composers have registered songs capturing the same sentiment in the same verbiage. It is thus readily apparent that this lyric is too trite to warrant copyright protection.

*Johnson*, 409 F.3d at 24.

Likewise, the court in *Pyatt* rejected that pop star Usher's use of a short, repeating phrase in his song "Caught Up" was substantially similar to a prior composition of the same name:

> The only similarity between the songs is the phrase "caught up," which also serves as the title of both songs and is spoken repeatedly by the narrator in both songs. The phrase "caught up," however, is used commonly in everyday speech . . . . [and] [c]ommon phrases are not subject to copyright protection.

2011 WL 2078531 *8 (inner quotations and citation omitted).

Similarly, the court in *Hobbs v. John*, 2012 WL 5342321 (N.D. Ill.) granted a 12(b)(6) motion to dismiss a claim alleging that the lyrics to Elton John's "Nikita" infringed the lyrics of the plaintiff's song "Natasha." The Court noted that in the "hook" of each song, the "title/women's names are each repeated four times and then the names are combined with the phrases 'you'll never know,' 'you will never know,' 'to hold you,' and 'I need you.'" *Id.* *6. The Court held that the two works were not substantially similar as a matter of law, finding that the phrases at issue "are commonly used in musical lyrics" and reiterating the established rule that "short phrases that do not express an 'appreciable amount of original text' are not subject to copyright protection." *Id.* (quoting *Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 711 (7th Cir. 1972); *see also Scratchborneo v. Arc Music Corp.*, 357 F.Supp. 1393, 1404 (S.D.N.Y. 1973) ("Nor will substantial similarity be found if only a small, common phrase appears in both the accused and complaining songs; unless the reappearing phrase is especially unique or qualitatively important, there is no basis for inferring copying.").

The phrases "somebody to love" and "I . . . need somebody to love" are common, short phrases. As a matter of law, they do not contain the "appreciable amount of original expression" necessary to protect them under copyright law. Even accepting as true for purposes of a 12(b)(6) motion that Defendants copied this unoriginal phrase from Plaintiffs' song, it was "free for the taking,"[4] *Feist*, 499 U.S. at 349, and this shared lyric does not constitute substantial similarity. *See id.*

This is all the more true given that the phrase "I need somebody to love" exists in the "prior art" of music compositions, separate and apart from it being a common English phrase. Music group "Jefferson Airplane" released the iconic song "Somebody to Love" decades ago, in which the chorus uses repeating variations of the phrase "somebody to love."[5] http://www.metrolyrics.com/somebody-to-love-lyrics-jefferson-airplane.html. Rock group "Queen" released their song "Somebody to Love" decades ago, and it too repeats the phrase "somebody to love" in the chorus and outro. http://www.metrolyrics.com/somebody-to-love-lyrics-queen.html. The fact that "somebody to love" is not just a common phrase, but has also been used in the titles and lyrics of prior music compositions, is fatal to Plaintiffs' claim of substantial similarity.[6] *See Peters*, 692 F.3d at 635 (affirming dismissal of infringement claim

---

[4] Needless to say, Defendants vehemently deny that Plaintiffs' lyric was the inspiration for Defendants' song, but for purposes of a 12(b)(6) motion, this allegation must be assumed true.

[5] The existence and lyrics of these historic songs are not reasonably disputed, and so the Court can take judicial notice of these works and consider them in connection with this motion. Fed. R. Evid. 201(b); *Trimble Navigation*, 484 F.3d at 705; *United States v. Mariscal*, 285 F.3d 1127, 1131 (9th Cir. 2002).

[6] Just as the sentiment is a common one, the song title is ubiquitous. The Court may take judicial notice of no less than six (6) prior songs with the same popular title as noted by Wikipedia. *See, e.g.,* "Somebody to Love" (Jefferson Airplane song), 1967; "Somebody to Love" (Queen song), 1976; "Somebody to Love" (Suzy Bogguss song), 1998; "Somebody to Love", a song by Chris Isaak from the album *Always Got Tonight*, 2006; "Somebody to Love", a song by

against Kanye West where the phrase "what does not kill me, makes me stronger" was "repeatedly invoked in song lyrics over the past century," and holding: "The ubiquity of this common saying, together with its repeated use in other songs, suggests that West's title and lyric do not infringe . . . ."); *Cottrill v. Spears*, 2003 WL 21223846 *10 (E.D. Pa.) (granting summary judgment regarding use of the same title and lyric "what you see is what you get" and holding: "[w]hile the titles of the songs and use of the lyric phrase are the same, this similarity is not probative of copying as the phrase is a cliché and can be found in prior art."); *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 143-144 (2d Cir. 1998) (finding that the lyric "You've got to stand for somethin'/Or you're gonna fall for anything" "lacked the requisite originality to warrant protection" because of its "widespread popular usage"); *McRae v. Smith*, 968 F.Supp. 559, 566 (D. Colo. 1997) (granting summary judgment where the "lyrics of the songs have only six words in common—'every minute, every hour and every day,'" which were "not unique or original to plaintiff" and had "appear[ed] in at least 8 songs that predate the songs at issue").

Apart from the melody and lyrics, there are numerous other material differences between the parties' compositions. Most notable to the listener, the songs differ greatly in their style and feel. Defendants' song, which is in the pop music genre, is an upbeat, electronic dance song. Plaintiffs' song, in contrast, is in the R&B genre and has a more melancholy feel in comparison to Defendants' work. The differences in the styles and moods of Plaintiffs' and Defendants' works further compel a finding that there is no substantial similarity as a matter of law. *See Pyatt*, 2011 WL 2078531 *9 (relying on fact that the "musical motifs [were] extremely dissimilar" as between the plaintiff's and defendants' works: the plaintiffs' song took "strong

---

Nelly Furtado from *Loose*, 2006; and "Somebody to Love" (Leighton Meester song), 2009; http://en.wikipedia.org/wiki/Somebody_to_Love.  Even more significantly, an online search of the Copyright Office records *reveals over 300 works* with "Somebody to Love" as a title incorporated in musical and other works**.**

influence from Jamaican dancehall and hip hop," whereas "Usher's song is R&B with unmistakable Motown influences;" and in addition, "Usher's song has a fast, steady beat when compared to Pyatt's song, which has a slower, more languid, beat").

## 2. Plaintiffs' List of Alleged Similarities in the Complaint Identifies Only Unprotectable, Generic Elements

Plaintiffs cannot dispute, and the Complaint does not dispute in its allegations, that Plaintiffs' and Defendants' have different melodies and lyrics, with different styles, moods, and tempos. In other words, the Complaint cannot and does not dispute that these songs sound nothing alike. Instead, as was true in all of the cases cited above in which infringement claims were disposed of by Rule 12(b)(6) motion, Plaintiffs cling to supposed similarities in various generic features of the songs that are not copyrightable, and which do not result in the songs sounding similar (let alone substantially similar).

It should be noted that the Court is not bound by Plaintiffs' allegations of similarities; the songs speak for themselves. *See Peter F. Gaito*, *supra*, 602 F.3d at 64; *Jacobsen*, 287 F.3d at 941-942. In any event, the similarities alleged by Plaintiffs concern unprotectible elements of their song.

Plaintiffs allege, for example, that "[b]oth compositions bear the same title." Compl. ¶ 47(a). Courts have consistently held, however, that titles are not protectible under copyright. *See Wihtol v. Wells*, 231 F.2d 550, 553 (7th Cir. 1956) ("We agree that the title [of a copyrighted song], in itself, is not subject to copyright protections."); *see also Johnson*, 409 F.3d at 24 (rejecting that shared usage of "You're the One for Me" in title supported finding of infringement; *Pyatt*, 2011 WL 2078531 *8 (same as to title "Caught Up"); *Cottrill*, 2003 WL 21223846 * 10 (same as to title "What You See is What You Get").

17

Plaintiffs allege that the parties' songs have the same "time signature"—to wit, they are in 4/4 time, in which there are four bears per measure.  (Compl. ¶ 47(b).)  This is an unprotected, unoriginal element of a musical composition.  *See, e.g., Cottrill*, 2003 WL 21223846 *9 (describing "4/4 time" as a "basic musical element" which was "characteristic" to pop music).

Plaintiffs likewise cite a supposed similar "rhythm pattern" between the songs—claiming each uses a "keystone beat" pattern that repeats.  (Compl. ¶ 47(b)-(c).)  To the contrary, the Court will discern no meaningful similarities in the rhythm patterns of the songs upon listening to them (slower, syncopated beat of plaintiffs' work versus up-tempo, steady dance beat of the accused work).  Any similarity that exists would not be discernible by the "intended audience" of the songs from whose perspective substantial similarity is adjudged.  Regardless, it is axiomatic that rhythm patterns are <u>unprotected</u> under copyright law as lacking in originality.  *See Intersong-USA v. CBS, Inc.*, 757 F.Supp. 274, 282 (S.D.N.Y. 1991) (listing "eighth note rhythm" as among the "common elements . . . found in many other well-known songs" and, as such, "ordinary, unprotectible expression"); *Northern Music*, 105 F.Supp. at 400 (noting that "originality of rhythm is a rarity, if not an impossibility").

Plaintiffs also cite two alleged similarities in the harmonic progressions of the song: "Both use a scalar 7-chord to start the chorus" and "Both use a scalar 4 minor 9-chord in the second measure of the chorus."  Compl. ¶¶ 47(g)-(h).  Again, courts have uniformly rejected that similar chord progressions indicate substantial similarity, as there are a finite number of chords, and these chord choices have existed since the beginning of modern music.  *See Cottrill*, 2003 WL 21223846 *9 (rejecting that songs were substantially similar based on fact that "both verses end and begin with an A minor chord"); *Johnson*, 409 F.3d at 23 (describing a "III, II harmonic progression" as a "stereotypical building block of musical composition" that "lacks originality"

and "is unprotectable"); *Tisi v. Patrick*, 97 F.Supp.2d 539, 548-549 (granting summary judgment

and holding that a "I-V chord progression" was "not copyrightable as a matter of law");

*Intersong*, 757 F.Supp. at 282 (describing songs' "use of a certain harmonic progression" as

"'scenes a faire,' or ordinary, unprotectible expression").

 Even taking Plaintiffs' allegations of these, and other unprotectible similarities (e.g., use

of commonplace "call and response" structure) at face value, "the various components and

features that defendants allegedly misappropriated are generalized concepts and ideas."  *Peter F.*

*Gaito*, 602 F.3d at 68.  A plaintiff "can't prove infringement by pointing to features of his work

that are found in the defendant's work as well but that are so rudimentary, commonplace,

standard or unavoidable that they do not serve to distinguish one's work within a class of works

from another."  *Hobbs*, 2012 WL 5342321 *5 (quoting *Bucklew v. Hawkins, Ash, Baptie & Co.*,

329 F.3d 923, 929 (7th Cir. 2003)).  That is precisely what Plaintiffs attempt to do here.  *See*

*Tessler v. NBC Universal, Inc.*, 2009 WL 866834 *5 ( "There is no copyright in the ideas and

themes that Plaintiff seeks to protect.")

  **3.**   **The Intrinsic Test: No Listener Could Reasonably Find Plaintiffs' and**

   **Defendants' Songs Substantially Similar**

 Any lingering question as to whether Plaintiffs have identified genuine similarities

between Defendants' song and the copyrightable elements of their own song is answered by

simply listening to the music.  The Court must be guided by its "good eyes and common sense,"

or, in this case, its good ears and common sense.  *Peter F. Gaito*, 602 F.3d at 66.  Even were all

of the allegations in Paragraph 47 of the Complaint correct—they are not—Plaintiffs cannot

escape the indisputable fact that the intended audience for these works would <u>not</u> "regard their

aesthetic appeal as the same" as required to find substantial similarity under the intrinsic test.

*Universal Furniture*, 618 F.3d at 436.  The district court's comments in *Damiano v. Sony Music*

*Entertainment, Inc.*, 975 F.Supp. 623, 631 (D.N.J. 1997) fit nicely here:

> To the ear of this court, there is no substantial similarity in the structure,
> instrumentation or melody of the two songs.  These songs "speak" for themselves
> and no reasonable factfinder could find substantial similarity . . . . The overall
> effect of the two pieces is quite dissimilar—put simply, they just don't sound
> alike.  (Emphasis added.)

The case of *Life Music, Inc. v. Wonderland Music Co.*, 241 F.Supp. 653 (S.D.N.Y. 1965)

is highly analogous to the instant case.  The plaintiff there sought a preliminary injunction in a

case alleging that the defendant's song "Supercalifragilisticexpialidocious" infringed the

plaintiffs' song "Supercalafajalistickespeealadojus"—which "tongue twister," for convenience,"

the court referred to as "the word."  *Id.* at 654.  The Court "listened to phonograph records of

both works" and held that "as an average observer . . . there is no discernible similarity between

the music of both songs."  *Id.* at 655.  In summing up the baselessness of the plaintiff's claim, the

Court stated: "[I]t is my opinion that plaintiffs have seized upon the employment of 'the word' in

two otherwise dissimilar songs, as the basis for an unfounded claim of infringement."  *Id.* at 656.

That comment is equally apropos here.  Plaintiffs have seized upon Defendants' use of

the phrase "somebody to love" in "two otherwise dissimilar songs" to assert an "unfounded

claim of infringement."  The effect of Plaintiffs' claim is to seek a monopoly over the use of this

common, cliché phrase which, for all the reasons described above, cannot be protected under

copyright law.


Moreover, when one considers the overall aesthetic appeal of each work in terms of how

the central idea is expressed, the dissimilarities between the two songs become even more stark.

For example, the theme of both songs surrounds the same, unprotectible idea: a male narrator

expressing his need for "somebody to love."  However, the songs express that unprotectible idea

in entirely opposite ways.  Plaintiffs' Song finds the male protagonist describing the break-up of

an apparently bad relationship, and lamenting that he managed to stay so long in a loveless,

unhappy union.  The song is a meditation on the narrator's experience in a painful relationship,

and, ultimately, it culminates with the singer telling his unhappy lover to "go on," so as not to

"take up [his] space" anymore.  By contrast, Defendants' Song is an upbeat, up-tempo, and

hopeful expression of the narrator's quest and attempt to attract love, and his attempt to woo a

potential girlfriend by showering her with gifts and attention, promising to "write her a

symphony" and, otherwise, to give her "the finer things."  Accordingly, the mood and themes of

the two works approach the quest for "somebody to love" from entirely opposite points of view.

Thus, an intrinsic comparison of the parties' works demonstrates, without any question,

that Plaintiffs' copyright claim fails as a matter of law.  Defendants' motion to dismiss for failure

to state a claim should be granted without leave.

C.    **Plaintiffs' Second Claim For Contributory Copyright Infringement And**

**Third Claim For Vicarious Infringement Fail As A Matter Of Law.**

1.    **Plaintiffs have not pled any facts showing contributory infringement.**

A plaintiff alleging contributory copyright infringement must plead and prove that the

defendant "with knowledge of the infringing activity, induces, causes or materially contributes to

the infringing conduct of another."  *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th

Cir. 2004).  "The standard for knowledge is objective: know or have reason to know."

*Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 845 (11th Cir.

1990) (citation and internal quotation marks omitted).  "Inadvertent participation in infringing

activities does not give rise to contributory liability."  *Basketball Mktg. Co., Inc. v. FX Digital

Media, Inc.*, 257 F. App'x 492, 495 (3d Cir. 2007).  A plaintiff must show that the defendant's

participation was substantial.  *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir.1971).

Of course, there can be no finding of contributory infringement unless the plaintiff first proves direct infringement by another party.  *See U–Haul Intern., Inc. v. WhenU.com, Inc.*, 279 F.Supp.2d 723, 731 (E.D.Va.2003).   As discussed above, Plaintiff's claim for direct infringement fails as a matter of law.

Further, Plaintiffs do not plead any <u>facts</u> showing contributory copyright infringement by Defendants.  Instead, Plaintiffs include a "formulaic recitation of the elements of a cause of action" for contributory infringement, which is insufficient to state a cognizable claim.  *See Twombly*, *supra*, 550 U.S. at 555.  Accordingly, Plaintiffs' second claim for contributory infringement fails as a matter of law.

## 2.    Plaintiffs also fail to plead any facts demonstrating vicarious infringement.

"[T]o establish vicarious liability, a copyright owner must demonstrate that the vicarious infringer possessed: (1) the right and ability to supervise the infringing activity; and (2) an obvious and direct financial interest in the exploited copyrighted materials."  *NelsonSabales, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002).

As with their claim for contributory infringement, Plaintiffs fail to plead any facts supporting a claim for vicarious liability against Defendants, instead merely reciting the elements of the claim.  Such a pleading does not set forth a cognizable claim for copyright infringement. *See Twombly*, *supra*, 550 U.S. at 555.

## IV.    <u>CONCLUSION</u>

For all the reasons stated above, this Court should grant the Defendants' motion and dismiss Plaintiffs' complaint as a matter of law.

Dated:  June 28, 2013                    Respectfully submitted,


                                          /s/ Stephen E. Noona
                                         Stephen E. Noona
                                         Virginia State Bar No. 25377
                                         Kaufman & Canoles, P.C.
                                         150 W. Main Street, Suite 2100
                                         Norfolk, VA  23510
                                         Telephone:  757-624-3239
                                         Facsimile:  757-624-3169
                                         senoona@kaufcan.com

                                         Howard Weitzman (*pro hac vice*)
                                         Jeremiah T. Reynolds (*pro hac vice*)
                                         Kinsella Weitzman Iser Kump & Aldisert
                                         808 Wilshire Blvd., 3rd Floor
                                         Santa Monica, CA  90401
                                         Telephone:  310-566-9800
                                         Facsimile:  310-566-9884
                                         hweitzman@kwikalaw.com
                                         jreynolds@kwikalaw.com

                                         *Attorneys for Universal Music Corp. and The Island Def Jam Music Group, a division of UMG Recordings, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2013, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Duncan G. Byers
Virginia State Bar No. 48146
Jeffrey D. Wilson
Virginia State Bar No. 75734
Byers Law Group
142 W. York Street, Suite 910
Norfolk, VA  23510
Telephone:  757-227-3340
Facsimile:  757-227-3341
duncan.byers@byerslawgroup.com
jdwilson@byerslawgroup.com
admin@byerslawgroup.com

*Attorneys for Plaintiffs*
*Devin Copeland and Mareio Overton*

Stephen E. Noona
Virginia State Bar No. 25377
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com

*Attorney for Defendants Justin Bieber and*
*Bieber Time Publishing LLC,*
*Universal Music Corp., The Island Def Jam Music Group,*
*a division of UMG Recordings, Inc. and Usher Raymond, IV, p/k/a Usher*

Jonathan D. Davis, Esq. (*pro hac vice* application to be filed)
Jonathan D. Davis, P.C.
99 Park Avenue, Suite 1600
New York, New York 10016
Telephone:  212- 687-5464
Facsimile:  212- 557-0565
jdd@jddavispc.com

*Attorneys for Defendant*
*Usher Raymond, IV, p/k/a Usher*

_/s/ Stephen E. Noona_
Stephen E. Noona
Virginia State Bar No. 25377
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com

12481120v1
10645.00014/178820.1

25

Case 2:13-cv-00246-AWA-TEM  Document 19  Filed 06/28/13  Page 1 of 6 PageID# 144

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

DEVIN COPELAND p/k/a DE RICO and MAREIO OVERTON,

        Plaintiffs,

v.

JUSTIN BIEBER, USHER RAYMOND IV p/k/a "USHER," HEATHER BRIGHT, Individually and d/b/a B-RHAKA PUBLISHING, RAY ROMULUS a/k/a RAYRO and d/b/a PLEASE ENJOY THE MUSIC, JONATHAN YIP, Individually and d/b/a PRODUCTS OF THE STREET, JEREMY REEVES, Individually and d/b/a SUMPHU, UNIVERSAL MUSIC CORP., SONY/ATV MUSICAL PUBLISHING, LLC, BIEBER TIME PUBLISHING, LLC, WB MUSIC CORP., THE ISLAND DEF JAM MUSIC GROUP, STAGE THREE MUSIC (U.S.), INC., STAGE THREE MUSIC, LLC AND JONETTA PATTON,

        Defendants.

Civil Action No. 2:13-cv-246 AWA/TEM

**DECLARATION OF JEREMIAH T. REYNOLDS IN SUPPORT OF THE MOTION TO DISMISS COPYRIGHT CLAIMS AS A MATTER OF LAW PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

## DECLARATION OF JEREMIAH REYNOLDS

I, Jeremiah Reynolds, declare as follows:

1.      I am a partner at Kinsella Weitzman Iser Kump & Aldisert, LLP, attorneys for

Universal Music Corp. and The Island Def Jam Music Group and Justin Bieber and Bieber Time

Publishing, LLC ("Defendants").

2.      Attached hereto as **Exhibit A** is a true and correct copy of a compact disc ("CD")

containing the song, "Somebody To Love," performed by Justin Bieber, and written by Justin

Bieber, Heather Bright, Ray Romulus, Jonathan Yip, and Jeremy Reeves.  Exhibit A also

contains the remix version of "Somebody To Love," performed by Justin Bieber and featuring

Usher Raymond IV p/k/a "Usher."   The physical CD containing the two songs will be filed in

hard copy with the Clerk's office along with this motion and declaration.

3.      Attached hereto as **Exhibit B** are the official lyrics to "Somebody To Love,"

written by Justin Bieber, Heather Bright, Ray Romulus, Jonathan Yip, and Jeremy Reeves.

Exhibit B also contains the official lyrics to the remix version of "Somebody To Love."

4.      Attached hereto as **Exhibit C** is a true and correct copy of a certification letter

and CD from the United States Copyright Office, certifying that the CD is a true representation

of the work entitled "My Story II" as deposited by Devin Copeland with a claim of copyright

registered under PAu 3-554-480.  The physical CD containing the two songs will be filed in hard

copy with the Clerk's office along with this motion and declaration.

5.      Attached hereto as **Exhibit D** are the official lyrics to "Somebody To Love,"

written by Devin Copeland.  These lyrics were provided to counsel for Defendants by counsel for

the Plaintiffs on June 12, 2013.

10645.00014/178820.1

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed this 27th day of June 2013, at Santa Monica, California.

Jeremiah Reynolds

10645.00014/178820.1

Dated:  June 28, 2013

Respectfully submitted,


 */s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25377
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com

Howard Weitzman (*pro hac vice*)
Jeremiah T. Reynolds (*pro hac vice*)
Kinsella Weitzman Iser Kump & Aldisert
808 Wilshire Blvd., 3rd Floor
Santa Monica, CA  90401
Telephone:  310-566-9800
Facsimile:  310-566-9884
hweitzman@kwikalaw.com
jreynolds@kwikalaw.com

*Attorneys for Defendants Justin Bieber and*
*Bieber Time Publishing LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2013, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Duncan G. Byers
Virginia State Bar No. 48146
Jeffrey D. Wilson
Virginia State Bar No. 75734
Byers Law Group
142 W. York Street, Suite 910
Norfolk, VA  23510
Telephone:  757-227-3340
Facsimile:  757-227-3341
duncan.byers@byerslawgroup.com
jdwilson@byerslawgroup.com
admin@byerslawgroup.com

*Attorneys for Plaintiffs*
*Devin Copeland and Mareio Overton*

Stephen E. Noona
Virginia State Bar No. 25377
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com

*Attorney for Defendants Justin Bieber and*
*Bieber Time Publishing LLC,*
*Universal Music Corp., The Island Def Jam Music Group,*
*a division of UMG Recordings, Inc. and Usher Raymond, IV, p/k/a Usher*

Jonathan D. Davis, Esq. (*pro hac vice* application to be filed)
Jonathan D. Davis, P.C.
99 Park Avenue, Suite 1600
New York, New York 10016
Telephone:  212- 687-5464
Facsimile:  212- 557-0565
jdd@jddavispc.com

*Attorneys for Defendant*
*Usher Raymond, IV, p/k/a Usher*

_/s/ Stephen E. Noona_
Stephen E. Noona
Virginia State Bar No. 25377
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com

12481038v1

# Exhibit A

**(Compact disc to be hand-delivered to the Clerk for filing.)**

# Exhibit B

**SOMEBODY TO LOVE**

FOR YOU I'D WRITE A SYMPHONY
I'D TELL THE VIOLINS, IT'S TIME TO SINK OR SWIM... WATCH 'EM PLAY FOR YOU.
FOR YOU I'D BE RUNNIN' A THOUSAND MILES... JUST TO GET WHERE YOU ARE
STEP TO THE BEAT OF MY HEART.
I DON'T NEED A WHOLE LOT COMING FROM YOU I ADMIT
I'D RATHER GIVE YOU THE WORLD OR WE CAN SHARE MINE.
I KNOW I WON'T BE THE FIRST ONE GIVING YOU ALL THIS ATTENTION.
BUT BABY LISTEN

I  JUST NEED SOMEBODY TO LOVE
I DON'T NEED TOO MUCH... JUST SOMEBODY TO LOVE
SOMEBODY TO LOVE
I DON'T NEED NOTHING ELSE... I PROMISE... GIRL I SWEAR
I JUST NEED SOMEBODY TO LOVE.
(I NEED SOMEBODY... I, I NEED SOMEBODY)
(I NEED SOMEBODY... I, I NEED SOMEBODY TO LOVE)

EVERYDAY I'LL BRING THE SUN AROUND...
I'LL SWEEP AWAY THE CLOUDS... SMILE FOR ME, SMILE FOR ME.
I WOULD TAKE EVERY SECOND, EVERY SINGLE TIME, SPEND IT LIKE MY LAST
DIME.

YOU COULD HAVE IT ALL
ANYTHING YOU WANT I CAN BRING... GIVE YOU THE FINER THINGS YEAH.
BUT WHAT I REALLY WANT
I CAN'T FIND CAUSE MONEY CAN'T BUY ME SOMEBODY TO LOVE.

**SOMEBODY TO LOVE W/ USHER**
FOR YOU I'D WRITE A SYMPHONY
I'D TELL THE VIOLINS, IT'S TIME TO SINK OR SWIM... WATCH 'EM PLAY FOR YOU.
FOR YOU I'D BE RUNNIN' A THOUSAND MILES... JUST TO GET WHERE YOU ARE

STEP TO THE BEAT OF MY HEART.
I DON'T NEED A WHOLE LOT COMING FROM YOU I ADMIT
I'D RATHER GIVE YOU THE WORLD OR WE CAN SHARE MINE.
I KNOW I WON'T BE THE FIRST ONE GIVING YOU ALL THIS ATTENTION.
BUT BABY LISTEN

I  JUST NEED SOMEBODY TO LOVE
I DON'T NEED TOO MUCH... JUST SOMEBODY TO LOVE
SOMEBODY TO LOVE
I DON'T NEED NOTHING ELSE... I PROMISE... GIRL I SWEAR
I JUST NEED SOMEBODY TO LOVE.
(I NEED SOMEBODY... I, I NEED SOMEBODY)
(I NEED SOMEBODY... I, I NEED SOMEBODY TO LOVE)

(USHER)
EVERYDAY I'LL BRING THE SUN AROUND...
I'LL SWEEP AWAY THE CLOUDS... SMILE FOR ME, SMILE FOR ME.
I WOULD TAKE EVERY SECOND, EVERY SINGLE TIME, SPEND IT LIKE MY LAST DIME.
STEP TO THE BEAT OF MY HEART.

I DON'T NEED A WHOLE LOT, BUT FOR YOU I NEED
RATHER GIVE YOU THE WORLD OR WE CAN SHARE MINE
I KNOW I WON'T BE THE FIRST ONE
GIVING YOU ALL THIS ATTENTION
BUT BABY LISTEN

(JUSTIN/USHER)
I JUST NEED SOMEBODY TO LOVE
I DON'T NEED TOO MUCH
JUST SOMEBODY TO LOVE
I DON'T NEED NOTHING ELSE
I PROMISE GIRL, I SWEAR
I JUST NEED SOMEBODY TO LOVE

(JUSTIN)
YOU COULD HAVE IT ALL
ANYTHING YOU WANT I CAN BRING... GIVE YOU THE FINER THINGS YEAH.

(USHER)
BUT WHAT I REALLY WANT
I CAN'T FIND CAUSE MONEY CAN'T BUY ME SOMEBODY TO LOVE.

# Exhibit C

**(Part of Exhibit C is a compact disc to be hand-delivered to the Clerk for filing.)**

*LIBRARY OF CONGRESS*

## Copyright Office
## of the United States
*WASHINGTON, D.C.*

**THIS IS TO CERTIFY** that the attached  compact disc is a true representation of the work entitled **MY STORY II** deposited in the Copyright Office with claim of copyright registered under **PAu 3-554-480**.

**THIS IS TO CERTIFY ALSO**, that the attached photocopies are a true representation of the front of compact disc and front of the compact disc cover deposited with this registration.

**THIS IS TO CERTIFY FURTHER**, that beginning October 1, 2006 the Office discontinued the practice of stamping incoming deposits with accession stamp dates.   Incoming deposits are now identified with barcode labels.

**IN WITNESS WHEREOF**, the seal of this Office is affixed hereto on June 19, 2013.



Maria A. Pallante
Register of Copyrights

By:    Jarletta Walls
Supervisory Copyright Specialist
Records Research and Certification Section
Information and Records Division

Use of this material is governed by the U.S. copyright law 17 U.S.C. 101 et seq.

# Exhibit D

# SOMEBODY TO LOVE
### Written by: Devin "DeRico" Copeland

**INTRO:**
Thought we was forever,
I guess I gotta accept the consequences that Life throws at me…

**VERSE:**
Can't believe I'm upset with you,
don't wanna have to say this---we're through.
I thought I had the best thing in the world.
You  seem to wanna go and do your thing.
Guess I gotta let  you do you.
No need for me to keep you in this bond.
So you can go….
don't wait ….
No need for you to take up my space.
I'm on the way to find someone for me.
It's not right, I know.
I've gotta go.
Don't want you here if u are not happy…..

**Chorus:**
I NEED SOMEBODY TO LOVE……..
I NEED SOMEBODY TO LOVE……..
CAUSE I KEEP GOIN THROUGH THE SAME OLD THINGS
SOMEBODY TO LOVE….
CAUSE I KEEP GOIN THROUGH THE SAME OLD THINGS

**VERSE 2:**
It's a rap,
Going back
Into the game---things ain't the same no more.
On the move,
And we're through,
So glad I broke up with you.
Does it hurt?
No way ….. Can't believe I wanted to stay
With you …so blue..and stupid of me to
See it was no romance and we don't live in France
There's no love around floating in the air ….
So you can go….don't

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DEVIN COPELAND p/k/a DE RICO and MAREIO
OVERTON,

        Plaintiffs,

v.

JUSTIN BIEBER, USHER RAYMOND IV p/k/a
"USHER," HEATHER BRIGHT, Individually and
d/b/a B-RHAKA PUBLISHING, RAY ROMULUS
a/k/a RAYRO and d/b/a PLEASE ENJOY THE
MUSIC, JONATHAN YIP, Individually and d/b/a
PRODUCTS OF THE STREET, JEREMY REEVES,
Individually and d/b/a SUMPHU, UNIVERSAL
MUSIC CORP., SONY/ATV MUSICAL
PUBLISHING, LLC, BIEBER TIME PUBLISHING,
LLC, WB MUSIC CORP., THE ISLAND DEF JAM
MUSIC GROUP, STAGE THREE MUSIC (U.S.),
INC., STAGE THREE MUSIC, LLC AND
JONETTA PATTON,

        Defendants.

**Civil Action No. 2:13-cv-246
AWA/TEM**

## RESPONSE IN SUPPORT OF AND JOINDER IN MOTION TO DISMISS COPYRIGHT CLAIM AS A MATTER OF LAW FILED BY DEFENDANTS UNIVERSAL MUSIC CORP. AND THE ISLAND DEF JAM MUSIC GROUP

Defendants Justin Bieber and Bieber Time Publishing LLC ("Bieber Defendants"), by

counsel, without prejudice to their motion to dismiss for lack of jurisdiction and improper venue,

hereby respond in support of and join the Motion to Dismiss Plaintiffs' Copyright Claim as a

Matter of Law ("UMG Motion to Dismiss") filed by the defendants Universal Music Corp. and

The Island Def Jam Music Group ("UMG Defendants") and request that this Court dismiss

Plaintiffs' Complaint for all the reasons set forth in the UMG Motion to Dismiss.  The Bieber

Defendants join in and adopt the grounds and authorities in support of the UMG Motion to

Dismiss as set forth in the UMG Defendants' Memorandum of Law In Support filed in support of their UMG Motion To Dismiss.

Dated:  June 28, 2013                    Respectfully submitted,


                                          _/s/ Stephen E. Noona_____
                                         Stephen E. Noona
                                         Virginia State Bar No. 25377
                                         Kaufman & Canoles, P.C.
                                         150 W. Main Street, Suite 2100
                                         Norfolk, VA  23510
                                         Telephone:  757-624-3239
                                         Facsimile:  757-624-3169
                                         senoona@kaufcan.com

                                         Howard Weitzman (*pro hac vice*)
                                         Jeremiah T. Reynolds (*pro hac vice*)
                                         Kinsella Weitzman Iser Kump & Aldisert
                                         808 Wilshire Blvd., 3rd Floor
                                         Santa Monica, CA  90401
                                         Telephone:  310-566-9800
                                         Facsimile:  310-566-9884
                                         hweitzman@kwikalaw.com
                                         jreynolds@kwikalaw.com

                                         *Attorneys for Defendants Justin Bieber and*
                                         *Bieber Time Publishing LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2013, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Duncan G. Byers
Virginia State Bar No. 48146
Jeffrey D. Wilson
Virginia State Bar No. 75734
Byers Law Group
142 W. York Street, Suite 910
Norfolk, VA  23510
Telephone:  757-227-3340
Facsimile:  757-227-3341
duncan.byers@byerslawgroup.com
jdwilson@byerslawgroup.com
admin@byerslawgroup.com

*Attorneys for Plaintiffs*
*Devin Copeland and Mareio Overton*

Stephen E. Noona
Virginia State Bar No. 25377
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com

*Attorney for Defendants Justin Bieber and*
*Bieber Time Publishing LLC,*
*Universal Music Corp., The Island Def Jam Music Group,*
*a division of UMG Recordings, Inc. and Usher Raymond, IV, p/k/a Usher*

Jonathan D. Davis, Esq. (*pro hac vice* application to be filed)
Jonathan D. Davis, P.C.
99 Park Avenue, Suite 1600
New York, New York 10016
Telephone:  212- 687-5464
Facsimile:  212- 557-0565
jdd@jddavispc.com

*Attorneys for Defendant*
*Usher Raymond, IV, p/k/a Usher*

3

_/s/ Stephen E. Noona_
Stephen E. Noona
Virginia State Bar No. 25377
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com

_12477748v1_

4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

---------------------------------------------------------X

                   :

DEVIN COPELAND P/K/A DE RICO, and  :  No. 2:13cv246 (AWA/TEM)
MAREIO OVERTON,               :

                   :  **DEFENDANTS' JOINDER IN**
          Plaintiffs,     :  **UNIVERSAL MUSIC CORP. AND THE**
                   :  **ISLAND DEF JAM MUSIC GROUP'S**
     -against-        :  <u>**MOTION TO DISMISS**</u>
                   :

JUSTIN BIEBER, USHER RAYMOND IV  :
P/K/A USHER, HEATHER BRIGHT, RAY  :
ROMULUS A/K/A RAYRO, JONATHAN  :
YIP, JEREMY REEVES, UNIVERSAL  :
MUSIC CORP., UNIVERSAL MUSIC  :
PUBLISHING, LLC, SONY/ATV MUSIC  :
PUBLISHING, LLC, BIEBER TIME  :
PUBLISHING, LLC, WB MUSIC CORP.,  :
THE ISLAND DEF JAM MUSIC GROUP,
STAGE THREE MUSIC (U.S.) INC., B-
RHAKA PUBLISHING, STAGE THREE
MUSIC, LLC, PLEASE ENJOY THE MUSIC,
PRODUCTS OF THE STREET, SUMPHU,
and JONETTA PATTON,

         Defendants.

---------------------------------------------------------X

     PLEASE TAKE NOTICE that defendants Heather Bright, Sony/ATV Music Publishing,

LLC, WB Music Corp., and B-RHAKA Publishing, LLC join in defendants Universal Music

Corp. and The Island Def Jam Music Group's ("Universal Defendants") motion to dismiss

(Docket Entry No. 17) ("Motion to Dismiss").

     On June 28, 2013, the Universal Defendants, by and through their counsel, filed the

Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to

Federal Rule of Civil Procedure 12(b)(6).

Defendants Heather Bright, Sony/ATV Music Publishing, LLC, WB Music Corp., and B-RHAKA Publishing, LLC incorporate by reference, as if fully set forth herein, all facts, authorities and arguments set forth therein and submitted in support thereof, including, without limitation, all facts, authorities and arguments set forth in the memorandum, declarations and exhibits submitted by the Universal Defendants in support of the Motion to Dismiss.

Based upon the facts, authorities and arguments set forth in the Motion to Dismiss, Defendants Heather Bright, Sony/ATV Music Publishing, LLC, WB Music Corp., and B-RHAKA Publishing, LLC respectfully request that the Court grant the Motion to Dismiss and dismiss all of Plaintiff's alleged causes of action against Defendants Heather Bright, Sony/ATV Music Publishing, LLC, WB Music Corp., and B-RHAKA Publishing, LLC pursuant to Federal Rule of Civil Procedure 12(b)(6).

Nothing herein is intended to waive or relinquish, and Defendants Heather Bright, Sony/ATV Music Publishing, LLC, WB Music Corp., and B-RHAKA Publishing, LLC expressly reserve, any and all of their defenses, challenges and arguments to and/or relating to the alleged causes of action asserted against each of them, and specifically reserve their rights to challenge the sufficiency of the allegations in the Complaint should the purported claims against them not be dismissed.

Respectfully submitted,

Dated:   New York, New York
         July 3, 2013                    Loeb & Loeb LLP


By: */s/ Nathan J. Muyskens*
    Nathan J. Muyskens (VA 39168)
    901 New York Avenue, NW
    Suite 300 East
    Washington, DC, 20001
    Telephone: 202.618.5000

    Barry I. Slotnick (*pro hac vice pending*)
    Linna Chen (*pro hac vice pending*)
    345 Park Avenue
    New York, NY  10154
    Telephone: 212.407.4000

    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2013, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Duncan G. Byers
Jeffrey D. Wilson
Byers Law Group
142 W. York Street, Suite 910
Norfolk, VA 23510
duncan.byers@byerslawgroup.com
jdwilson@byerslawgroup.com
admin@byerslawgroup.com
*Attorneys for Plaintiffs*
*Devin Copeland and Mareio Overton*

Stephen E. Noona
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
senoona@kaufcan.com
*Attorney for Defendants Justin Bieber and*
*Bieber Time Publishing LLC,*
*Universal Music Corp., The Island Def Jam Music Group,*
*a division of UMG Recordings, Inc. and Usher Raymond, IV, p/k/a Usher*

Jonathan D. Davis, Esq. (*pro hac vice* application to be filed)
Jonathan D. Davis, P.C.
99 Park Avenue, Suite 1600
New York, New York 10016
Telephone: 212- 687-5464
Facsimile: 212- 557-0565
jdd@jddavispc.com
*Attorneys for Defendant Usher Raymond, IV, p/k/a Usher*

Stephen E. Noona
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
senoona@kaufcan.com
*Attorneys for Defendants Justin Bieber and Bieber Time Publishing LLC*

By: */s/ Nathan Muyskens*
Nathan Muyskens
Virginia State Bar No. 39168
901 New York Avenue NW
Suite 300 East
Washington, D.C. 20001
Telephone:  (202) 618-5000
Facsimile:  (202) 618-5001
nmuyskens@loeb.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

APPLICATION TO QUALIFY AS A FOREIGN ATTORNEY UNDER LOCAL CIVIL RULE 83.1(D) AND LOCAL
CRIMINAL RULE 57.4

In Case Number **2:13 cv 246**, Case Name **Copeland v. Bieber, et al.**
Party Represented by Applicant: **Usher Raymond IV**

To: The Honorable Judges of the United States District Court for the Eastern District of Virginia

PERSONAL STATEMENT

FULL NAME (no initials, please). **Jonathan David Davis**
Bar Identification Number **1840321**    State **NY**    **Also admitted in NJ.**
Firm Name **Jonathan D. Davis, P.C.**
Firm Phone # **212-687-5464**    Direct Dial # _____    FAX # **212-557-0565**
E-Mail Address **jdd@jddavispc.com**
Office Mailing Address **99 Park Avenue, Suite 1600, New York, New York 10016**

Name(s) of federal court(s) in which I have been admitted **Southern and Eastern Districts of New York; District of New Jersey; Second and Sixth Circuit Courts of Appeal; and the United States Supreme Court.**
I certify that the rules of the federal court in the district in which I maintain my office extend a similar *pro hac vice* admission privilege to members of the bar of the Eastern District of Virginia.

I have not been reprimanded in any court nor has there been any action in any court pertaining to my conduct or fitness as a member of the bar.

I hereby certify that, within ninety (90) days before the submission of this application, I have read the Local Rules of this Court and that my knowledge of the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Federal Rules of Evidence is current.

I am ____ am not **x** a full-time employee of the United States of America, and if so, request exemption from the admission fee.

_____
(Applicant's Signature)

I, the undersigned, do certify that I am a member of the bar of this Court, not related to the applicant; that I know the applicant personally, that the said applicant possesses all of the qualifications required for admission to the bar of this Court; that I have examined the applicant's personal statement. I affirm that his/her personal and professional character and standing are good, and petition the court to admit the applicant *pro hac vice*.

_____    **7/16/2013**
(Signature)                              (Date)
Stephen E. Noona              **25367**
(Typed or Printed Name)       (VA Bar Number)

Court Use Only:

Clerk's Fee Paid _____ *or* Exemption Granted _____

The motion for admission is GRANTED _____ *or* DENIED _____

_____    _____
(Judge's Signature)              (Date)

Dated: July 16, 2013

Respectfully submitted,

_/s/ Stephen E. Noona_
Stephen E. Noona
Virginia State Bar No. 25377
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: 757-624-3239
Facsimile: 757-624-3169
senoona@kaufcan.com

Jonathan D. Davis, Esq. (*pro hac vice* application to be filed)
Jonathan D. Davis, P.C.
99 Park Avenue, Suite 1600
New York, New York 10016
Telephone: 212- 687-5464
Facsimile: 212- 557-0565
jdd@jddavispc.com

*Attorneys for Defendant Usher Raymond, IV, p/k/a Usher*

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2013, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Duncan G. Byers
Virginia State Bar No. 48146
Jeffrey D. Wilson
Virginia State Bar No. 75734
Byers Law Group
142 W. York Street, Suite 910
Norfolk, VA 23510
Phone: 757-227-3340
Facsimile: 757-227-3341
duncan.byers@byerslawgroup.com
jdwilson@byerslawgroup.com
admin@byerslawgroup.com

*Attorneys for Plaintiffs*
*Devin Copeland and Mareio Overton*

Stephen E. Noona
Virginia State Bar No. 25377
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: 757-624-3239
Facsimile: 757-624-3169
senoona@kaufcan.com

*Attorney for Defendants Justin Bieber and*
*Bieber Time Publishing LLC, Universal Music*
*Corp., The Island Def Jam Music Group,*
*a division of UMG Recordings, Inc. and*
*Usher Raymond, IV, p/k/a Usher*

Howard Weitzman (*pro hac vice*)
Jeremiah T. Reynolds (*pro hac vice*)
Kinsella Weitzman Iser Kump & Aldisert
808 Wilshire Blvd., 3rd Floor
Santa Monica, CA 90401
Telephone: 310-566-9800
Facsimile: 310-566-9884
hweitzman@kwikalaw.com
jreynolds@kwikalaw.com

*Attorneys for Defendants Justin Bieber
and Bieber Time Publishing LLC*

Nathan Muyskens
Virginia State Bar No. 39168
Loeb & Loeb LLP
901 New York Avenue NW
Suite 300 East
Washington, DC  20001
Telephone:  202-618-5000
Facsimile:  202-618-5001
nmuyskens@loeb.com

Barry I. Slotnick *(pro hac vice)*
Cheng L. Chen *(pro hac vice)*
Loeb & Loeb LLP
345 Park Avenue
New York, NY  10154
Telephone:  212-407-4000
Facsimile:  212-407-4990
bslotnick@loeb.com
lchen@loeb.com

*Attorneys for Heather Bright, B-RHAKA
Publishing LLC, WB Music Corp. and
Sony/ATV Music Publishing LLC*

                                    */s/ Stephen E. Noona*
                                    Stephen E. Noona
                                    Virginia State Bar No. 25377
                                    Kaufman & Canoles, P.C.
                                    150 W. Main Street, Suite 2100
                                    Norfolk, VA  23510
                                    Telephone:  757-624-3239
                                    Facsimile:  757-624-3169
                                    senoona@kaufcan.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

DEVIN COPELAND P/K/A DE RICO and
MAREIO OVERTON,

    Plaintiffs,

v.

                                       Case No.: 2:13cv00246

JUSTIN BIEBER, USHER RAYMOND IV p/k/a
USHER, HEATHER BRIGHT, B-RHAKA
PUBLISHING, RAY ROMULUS, SUMPHU,
JONATHAN YIP, PLEASE ENJOY THE MUSIC,
JEREMY REEVES, PRODUCTS OF THE STREET,
UNIVERSAL MUSIC CORP, UNIVERSAL MUSIC
PUBLISHING GROUP,SONY/ATV MUSIC
PUBLISHING, LLC, BIEBER TIME PUBLISHING,
LLC, WB MUSIC CORP., THE ISLAND DEF JAM
MUSIC GROUP, STAGE THREE MUSIC (US) INC,
STAGE THREE MUSIC, LLC, and JONETTA PATTON,

    Defendants.

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS UNIVERSAL MUSIC CORP. AND DEF
JAM MUSIC GROUP'S RULE 12(b)(6) MOTION TO DISMISS COMPLAINT FOR
FAILURE TO STATE A CLAIM**

    COMES NOW plaintiffs Devin Copeland p/k/a De Rico and Mareio Overton

(collectively, "Plaintiffs") and file this, their Response to Defendants Justin Bieber and Bieber

Time Publishing, LLC's ("Defendants") Rule 12(b)(6) And 12(b)(3) Motion to Dismiss

Complaint for Failure to State a Claim(the "Motion").  In support of which, Plaintiffs state as

follows:

---

*Copeland v. Bieber et al.*                                      Byers Law Group
Case No. 2:13cv246; Opp. To Mtn. Dismiss            www.byerslawgroup.com
Page 1 of 23

## INTRODUCTION

Plaintiffs Devine Copeland and Mareio Overton are songwriters who wrote and arranged the infringed song "Somebody to Love" in 2007 in and around Portsmouth, Virginia. They wrote and recorded the song with the intention of submitting it to talent scouts, producers, established performers and other industry professionals with the intent of having Copeland re-record it professionally and release it under the name De Rico or to sell the song to an established performer.

In late 2008 – early 2009, Copeland's recording of "Somebody to Love" reached Usher Raymond, who records professionally as "Usher," and Joneta Patton. Jonetta Patton had a conversation with Copeland in which she discussed the possibility of having him re-record "Somebody to Love" and several others, releasing it with Raymond's assistance, and touring with Raymond as an opening act. Copeland never heard anything else from Raymond or Patton. However, prior to the end of 2009, unbeknownst to Plaintiffs, Raymond recorded a version of the infringing work "Somebody to Love" (the "infringing work"). Soon thereafter, Justin Bieber, the then-rising star, recorded a version of the infringing work and released it on his first full-length album, My World 2.0.

Defendants mischaracterize Plaintiffs' contentions and reach a conclusion which is contrary to both fact and law, and they seek to have a "battle of experts" on the matter without presenting an expert while ignoring comprehensive factual claims presented in Plaintiffs' Complaint based upon the preliminary analysis by Plaintiffs' music expert, Duncan Woods.

---

Defendants focus the majority of their analysis on the lyrical compositions of the songs, focusing on the minutia of unprotected words and phrases. Plaintiffs acknowledge that there are differences between the lyrics of the two arrangements. However, Defendants attempt to discount the numerous points of convergence between the two works beyond their identical titles, including sharing the same time signature, having spoken introductions, hook, chord progressions, measures, chorus "call and response," time values, melodies, and other structural similarities. Defendants also attempt to gloss over the similarities in the impression of the songs, particularly in musical expression of the choruses. The similarities become even more apparent when heard through the ears of the intended audience.

Because there is an issue of fact regarding substantial similarities in the melodies, hook, and other structural arrangements of the songs as a whole, and because Plaintiff has sufficiently pled claims for vicarious and contributory liability, the court should deny Defendants' Motion to Dismiss.

## STANDARDS OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure provides that "a pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Traditionally, "[a] motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint.... [I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

---

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court amplified the standard, noting that, to survive a motion to dismiss, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). Although Rule 8 does not require "detailed factual allegations," it does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. Id. at 555. As Judge Niemeyer noted in *Francis v. Giacomelli*, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). When considering a motion under Fed. R. Civ. P. 12(b)(6), the Court must assume Plaintiff's well-pleaded allegations to be true, and views all facts in the light most favorable to the Plaintiff. *See Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Although a plaintiff must describe the acts constituting copyright infringement with "some specificity," copyright claims are not subject to "particularity in pleading." *Maverick Recording Co. v. Goldshteyn*, No.CV-05-4523 (DGT), 2006 WL 2166870, at *3 (E.D.N.Y. July 31, 2006) (citation omitted); Salerno v. City Univ. of N.Y., 191 F. Supp. 2d 352, 356 (S.D.N.Y. 2001) ("[Plaintiffs] argue without benefit of authority that there is a heightened pleading requirement for violations of copyright law. However, there is no such heightened requirement for copyright claims.").

A determination that no substantial similarity exists as a matter of law is "appropriate if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the nonmoving party, that no reasonable juror could find substantial similarity of

---

ideas and expression.'" *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 142 (5th Cir.2004) (citing

*Peel & Co. v. The Rug Mkt.*, 238 F.3d 391, 395 (5th Cir.2001)).  The Court should identify

whether " a mature record will include sufficient evidence of substantial similarity to create a

triable issue of fact on that question. "  *Huthwaite, Inc. v. Sunrise Assisted Living, Inc*., 261

F.Supp.2d 502 (E.D. Va., 2003) (citing *Eaton v. Nat'l Broadcasting Co*., 972 F.Supp. 1019, 1023

(E.D.Va.1997) (considering substantial similarity issue in summary judgment analysis).

## ARGUMENT

### I.    Plaintiffs Prove All the Elements Necessary to Have a Valid Claim of Copyright Infringement.

Under section 501(a) of the Copyright Act, "[a]nyone who violates any of the exclusive

rights of the copyright owner…is an infringer of the copyright."  To make a prima facie case of

copyright infringement, a plaintiff must first produce a valid copyright and then must establish

that the defendant, without authorization, copied the protected work.  *Nelson-Salabes, Inc. v.*

*Morningside, Dev., LL*C, 284 F.3d 505, 513 (4th Cir. 2002) (citing *Towler v. Sayles*, 76 F.3d

579, 581 (4th Cir. 1996)).  Because actual copying is in many cases very difficult to prove, a

plaintiff may establish copying indirectly by showing that the defendant (1) had access to the

copyrighted work and (2) that substantial similarity exists between the copyrighted work and the

infringing work.  *Keeler Brass Co. v. Continental Brass Co*., 862 F.2d 1063, 1065 (4th Cir.

1988).

Plaintiffs meet the burden of substantial similarity as a "threshold for copying as a factual matter" because they own a valid copyright, they properly alleged that Defendants had access to Plaintiffs' version of the song, and because Plaintiffs have the opinion of an expert in the field that there are substantial similarities between the Copeland and Bieber versions of the song.  Any further proof of substantial similarity would require deliberation of a jury and cannot be decided as a matter of law.

Defendants have not disputed that Plaintiffs own a valid copyright or that they had access to Copeland's version of the song, but confine their argument to the issue of substantial similarity.   Because Defendants cannot show the works are not substantially similar, the Court should deny their Motion.

**A.  Defendants' Motion to Dismiss Must Be Denied where, as Here, Plaintiffs Show Similarities Probative of copying between the works.**

A prima facie showing of substantial similarity requires that the plaintiff establish the substantial similarity of both the ideas of the two works and the expression of those ideas. *Dawson v. Hinshaw Music Inc*., 905 F.2d 731, 732 (4th Cir.).  Courts refer to this first prong as an "extrinsic" or "objective" inquiry while they characterize the second prong as an "intrinsic" or "subjective" inquiry, which analyzes the "total concept and feel" of the works. *Id.* (citing, *inter alia, Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir.1984).

A showing of substantial similarity or improper appropriation is a two-prong test.  *See X-It Products v. Walter Kidde Portable Equipment*, 155 F.Supp.2d 577, 612 (E.D. Va. 2001);

---

(citing *Baldine v. Furniture Comfort Corp.*, 956 F.Supp. 580, 585 (M.D.N.C.1996. ) First, "a plaintiff must show—typically by expert testimony—that the works in question are extrinsically similar because they contain substantially similar ideas that are subject to copyright protection." *Id*. Second, "a plaintiff must satisfy the subjective, or intrinsic, portion of the test by showing substantial similarity in how those ideas are expressed." *Id*. This portion of the test considers whether the intended audience could determine that the works are substantially similar, without the benefit of expert testimony. *See id*.

In determining substantial similarity, the threshold question is whether the similarities are not merely *de minimis*. If a plaintiff is able to show that the similarities are not *de minimis*, then they must be considered substantial for purposes of copyright analysis. *See Davis v. Gap, Inc*., 246 F.3d 152, 173 (2d Cir. 2001); *see also Tufenkian Import/Export V. v. Einstein Moomjy*, 338 F.3d 127 (2nd Cir., 2003) ("the copying amounts to an improper or unlawful appropriation,… [when] the amount that was copied is 'more than *de minimis*.'"); *SMS v. ASP*, 560 F.3d 53, 59 (1st Cir. 2009); *Sandoval v. New Line Cinema Corp*., 147 F.3d 215, 217 (2d Cir. 1998) (referring to *de minimis* copying as "so trivial as to fall below the quantitative threshold of substantial similarity").

Defendants hinge their entire argument on the lack of substantial similarity between Copeland's song and Bieber's version. Defendants have done this by mischaracterizing the basis of Plaintiffs argument for substantial similarity. To succeed, Defendants' argument requires that the Court determine, as a matter of law, the similarities between the two songs, a determination

often left to the jury. *Warner Bros. Inc. v. American Broadcasting Companies, Inc.*, 720 F.2d

231, 239, 222 USPQ 101 (2d Cir. 1983).

### 1. Intrinsic Analysis.

Intrinsic similarity is a subjective inquiry. *See Towler v. Sayles*, 76 F.3d 579, 583-84

(4th Cir. 1996). Unlike the extrinsic analysis, an "'analytic dissection' of protected and

unprotected elements is inappropriate under the intrinsic prong, given that the ordinary observer

does not make this distinction." *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc*.,

618 F.3d 417, 437 (4th Cir. 2010) (citing *Taylor Corp. v. Four Seasons Greetings, LLC*, 403

F.3d 958, 966 (8th Cir. 2005)). Instead of focusing on non-protectable elements, the court

should concentrate "on whether the ordinary, reasonable observer would find the [two works], as

a whole, to be substantially similar." *Id*.; *see also Hennon v. Kirkland's Inc*., 64 F.3d 657 (4th

Cir. 1995) ("Courts then look to the entire work, including the unprotectible expression, to

determine if the two works are substantially similar in expression."); *Peters v. Kanye West*, 776

F.Supp.2d 742, 750-51, 97 U.S.P.Q.2d 2019 (N.D. Ill., 2011) (citing cases). Courts in this

district have been hesitant to make a finding of no substantial similarity under this test, preferring

to leave the matter to the jury. *See Innovative Legal Mktg., LLC v. Mkt. Masters-Legal,* 852

F.Supp.2d 688, 702 (E.D. Va., 2012)) ("Substantial similarity analysis is 'largely a matter of

fact' – requiring a perceptual, aesthetic judgment – and is often inappropriate for summary

judgment."), *cf. Shaw v. Lindheim*, 919 F.2d 1353, 1355 (9th Cir.1990).

In the Fourth Circuit, a claim of "substantial similarity" in the copyright context is usually assessed under the "ordinary observer" test, by which courts evaluate similarity based on "the ordinary and reasonable layperson's overall impression of the two works, not on a detailed comparison of the two works, focusing on the individual differences." *Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg.*, LLC, 827 F.Supp.2d 607 (E.D. Va., 2011). Despite the Defendants assertions that their own intrinsic analysis is "indisputable" and "without question," courts have noted, and Plaintiffs agree, that the notion of intrinsic similarity can be a slippery one because it requires the court to inquire into "the `total concept and feel' of the works," but only as seen through the eyes of the ordinary observer. *Dawson v. Hinshaw Music, Inc.*, 905 F.2d 731, 733 (4th Cir. 1990). This ordinary observer is to be a member of "the intended audience of the plaintiff's work." *Id*. And, an "'analytic dissection' of protected and unprotected elements is inappropriate . . . given that the ordinary observer does not make this distinction." *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc*., 618 F.3d 417, 437 (4th Cir. 2010) (citing *Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 966 (8th Cir. 2005)). Instead of focusing on non-protectable elements, the court should concentrate "on whether the ordinary, reasonable observer would find the [two works], as a whole, to be substantially similar." *Id*.

However, the Fourth Circuit has clarified that the "ordinary observer" is not, by definition, a "lay person" but a member of the intended audience. When performing the intrinsic analysis, the Court "must consider the nature of the intended audience of the Plaintiff's work." *Dawson v. Hinshaw Music, Inc.*, 905 F.2d 731, 736 (4th Cir. 1990). And, "if the intended audience is more narrow in that it possesses specialized expertise, relevant to the purchasing

decision, that lay people would lack . . ." then the Court's focus is properly upon whether a "member of the intended audience would find the two works to be substantially similar." *Dawson*, 905 F.2d at 736. "Such an inquiry may include, and in no doubt in many cases will [possibly] require, admission of testimony . . . from those who possess expertise with reference to the tastes and perceptions of the intended audience." *Id*.

Here, the intended audience is not and has never been the lay public. Plaintiff's work has been submitted to industry professionals – agents, writers, producers, and performers – with the intention of Plaintiffs finding work in the music industry as writers and/or performers. *See* Declaration of Devin Copeland, Attached herein as Exhibit A. "Somebody to Love" has never been sold or offered for sale to the public, either through hard copy or electronic (download) purchase. Exh. A, ¶¶s 4-6. Whether or not a "lay" person would find substantial similarity between the works is thus not applicable to the inquiry made by this Court. The appropriate question is whether or not a music industry professional would find substantial similarity between the works. This is an important consideration. Industry professionals need to be concerned about marketability and avoiding competition in the marketplace for music. What a music industry professional would consider similarities will be different than that of a lay person. For a professional, the overall "feel" of a song will undoubtedly be more closely scrutinized with a more experienced ear, and a concern for making and losing money in the marketplace. And, details of musical structure that may be underplayed to the ear of the lay person (either because the similarities while important are subtle musical structures or because of intentional acts - for example, by simply masking musical similarities with such tricks as increasing the relative

*Copeland v. Bieber et al.*
Case No. 2:13cv246; Opp. To Mtn. Dismiss
Page 10 of 23

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

-JA098-

volume of vocals to the background music, etc.) may be clear and obvious to the ear of an industry professional.  And because the intended market for Plaintiffs' work is the industry professional, it is appropriate that the works, as a whole, be viewed through the ears of music industry professionals rather than the lay public.

Defendants seek to limit the court's scope in this matter by claiming that Plaintiffs "have seized on the phrase "somebody to love" in two songs that they imply share no other similarities, as if the court were comparing a few words written on a page.   Plaintiffs readily admit there are differences between their version and the versions of Usher and Bieber, particularly with the differences in lyrics and the beat patterns of the songs.  Plaintiffs never alleged that the songs are identical, though that would clearly make the Court's job easier, only that the songs are substantially similar in their feel, hook, chorus, rhythm patterns, spoken introductions, among other things.  And in comparing the songs, especially the chorus, there is a progression wherein the intrinsic similarities are more obvious between the Copeland and Usher versions than between the Copeland and Bieber versions.  Which makes sense, because the songs were recorded in the order Copeland – Usher – Bieber.[1]

When Plaintiffs wrote and recorded "Somebody to Love," it was done with the intention of attracting a successful producer to help Copeland re-record the song or to find a successful music artist who could take the song and re-record it with a successful producer.  In either event,

---

[1]   The Copeland and Bieber versions are already before the Court as Exhibits to Defendants' Motion to Dismiss.  The Usher version is attached as Exhibit Q to Declaration of Jeffrey D. Wilson, filed on July 19, 2013, in support of Plaintiffs' Response to Defendants Justin Bieber and Bieber Time Publishing, LLC's Rule 12(b)(2) and 12(b)(3) Motion to Dismiss for Lack of Jurisdiction and Improper Venue, and is incorporated herein.

*Copeland v. Bieber et al.*                                                    BYERS LAW GROUP
Case No. 2:13cv246; Opp. To Mtn. Dismiss                    WWW.BYERSLAWGROUP.COM
Page 11 of 23

-JA099-

Plaintiffs expected the producer (and potential artist) to add stylistic changes to the basic structure of the song. By listening to the progression of the songs – from Copeland's recording, to Usher's recording, to Bieber's recording – that is exactly what can be heard, stylistic changes. Of course, the lyrics had to change, but to keep the value of the underlying song, they writers had to keep the "hook," that part of the chorus that is instantly identifiable with the song – the part listeners will sing to themselves in the car or shower ("I... need somebody to loooooove!"). Not just five words, but five words sang in the same pattern, with the same repetitions and cadence, and drawn out to the response in the call-and-response structure of the chorus. While the similarities of the songs are obvious when heard by an industry professional, they are also obvious when heard by a lay person, especially in the structure and feel of the chorus.

Defendants attack the idea that the title of the song itself, "Somebody to Love," exists in prior art and is a common phrase. In support, they ask the Court to take judicial notice of several works, including songs by Jefferson Airplane and Queen, that share the title and the phrase "Somebody to Love," as if the title itself were dispositive of the issue of similarity. In fact, these identically named songs provide a prime baseline.[2] By listening to the Jefferson Airplane and Queen song, any observer can see how dramatically dissimilar they are to each other and the Copeland, Bieber, and Usher versions of the song, and, importantly, how dissimilar is the phrasing, cadence, and intonation, of the "cliché'" phrase "Somebody to Love" between the three (Jefferson Airplane vs. Queen vs. Copeland/Usher/Bieber). This cannot be said when comparing

---

[2]  For reference, Jefferson Airplane's "Somebody to Love" can be heard at http://www.youtube.com/watch?v=YIkoSPqjaU4, and Queen's "Somebody to Love" can be heard at http://www.youtube.com/watch?v=wVR38mm4Hzg.

---

*Copeland v. Bieber et al.*                                    BYERS LAW GROUP
Case No. 2:13cv246; Opp. To Mtn. Dismiss              WWW.BYERSLAWGROUP.COM
Page 12 of 23

-JA100-

Copeland, Bieber, and Usher's versions. The overwhelming similarity of the lyrics and melody of the Copeland/Usher/Bieber choruses is enough, in and of itself, to find substantial similarity. *See Santrayll v. Burrell*, No. 91 Civ. 3166, 1996 WL 134803, at *2 (S.D.N.Y. Mar.25, 1996).

Next, Defendants claim that the two works are dissimilar because they are of "different style and feel" and then they apply their own musical labels, slotting Plaintiff's version as "R&B" and Usher and Bieber's versions as "pop music," and claiming that Plaintiffs' version has "a more melancholy feel." Subjective labels placed by Defendants do not make an argument against the actual similarity of the works. *See LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 442, 101 U.S.P.Q.2d 1283 (S.D.N.Y., 2011) (noting that infringement can exist even when protected work and accused work are in different media). The court's "inquiry focuses on whether the alleged infringer has misappropriated "the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." *Id.*

Plaintiffs believe it is clear that there are enough similarities to prevent the Court from removing the issue from the provenance of the jury at this stage.

### 2. Extrinsic Analysis

The extrinsic inquiry is an objective one on which expert testimony may be relevant. *Dawson v. Hinshaw Music, Inc.*, 905 F.2d 731, 733 (4th Cir.1990). In their Motion, Defendants focus overwhelmingly on the lyrics, sifting through what they believe to be protectable or non-protectable, as if that, alone, is dispositive of the issue. However, works can be substantially similar despite the presence of disparities and presence of non-protectable elements. In *Swirsky*

---

*v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004), the court effectively summed up the breadth of the

analysis, stating:

> [T]o disregard chord progression, key, tempo, rhythm, and genre is to ignore the
> fact that a substantial similarity can be found in a combination of elements, even
> if those elements are individually unprotected. Thus, although chord progressions
> may not be individually protected, if in combination with rhythm and pitch
> sequence, they show the chorus of Thank God to be substantially similar to the
> chorus of One, infringement can be found . . . In analyzing musical compositions
> under the extrinsic test, we have never announced a uniform set of factors to be
> used. We will not do so now. Music, like software programs and art objects, is not
> capable of ready classification into only five or six constituent elements; music is
> comprised of a large array of elements, some combination of which is protectable
> by copyright . . . Other courts have taken account of additional components of
> musical compositions, including melody, harmony, rhythm, pitch, tempo,
> phrasing, structure, chord progressions, and lyrics. There is no one magical
> combination of these factors that will automatically substantiate a musical
> infringement suit; each allegation of infringement will be unique. So long as the
> plaintiff can demonstrate, through expert testimony that addresses some or all of
> these elements and supports its employment of them, that the similarity was
> "substantial" and to "protected elements" of the copyrighted work, the extrinsic
> test is satisfied.

*Id*. at 849.

It is in the choice and combination of those "elements," as well as modifications to them,

that makes musical works original in whole or in part.  Defendants have attempted to lead the

Court down the rabbit hole of looking at each individual "element" rather than originality of the

choices and organization of the elements of the songs taken as a whole.  "[N]o approach can

completely divorce pitch sequence and rhythm from harmonic chord progression, tempo, and

key, and thereby support a conclusion that the compositions are dissimilar as a matter of law."

*Swirsky*, 376 F.3d at 848.  "To pull these elements out of a song individually, without also

looking at them in combination, is to perform an incomplete and distorted musicological

---

*Copeland v. Bieber et al.*                                                    BYERS LAW GROUP
Case No. 2:13cv246; Opp. To Mtn. Dismiss                              WWW.BYERSLAWGROUP.COM
Page 14 of 23

-JA102-

analysis." *Id*. This is exactly what Defendants have attempted to accomplish. They pick and choose individual elements to call "unprotectable" and then ask the Court to dismiss Plaintiff's case based upon a single element, relying upon citations to court cases that were dismissed because the alleged copying was based upon those single elements.[3] Defendants cannot win their argument piece-by-piece while ignoring the combinations of elements and the whole of the works. Plaintiffs have claimed original portions and combinations in their work, with expert analysis supporting those assertions.

Even if the Court were to accept Defendants' argument that there are no "elements" or "components" in Plaintiffs' work that are original in and of themselves, the combinations of those elements, in whole or in part, are still original and protectable expression. "It is well settled that a jury may find a combination of unprotectable elements to be protectable under the extrinsic test because `the over-all impact and effect indicate substantial appropriation.'" *Three Boys Music v. Bolton, 212 F.3d 477 (9th Cir. 2000),* citing *Sid and Marty Krofft Television Prods., Inc. v. McDonald's Corp.* 562 F.3d at 1169 (quoting *Malkin v. Dubinsky*, 146 F. Supp. 111, 114 (S.D.N.Y. 1956)). Further, "an arrangement of a limited number of notes can garner copyright protection." *Swirsky v. Carey*, 376 F.3d 841, 851-52 (9th Cir. 2004). Or, a limited number of other (otherwise unprotectable) elements can support a finding of substantial similarity. *See Three Boys Music v. Bolton, 212 F.3d 477, 485 (9th Cir. 2000)* (upholding jury finding of substantial similarity based upon (1) the title hook phrase (including the lyric, rhythm,

---

[3]   In addition, Defendants rely upon cases such as *Cottrill v. Spears*, 2003 WL 21223846 (E.D. Pa.) where the plaintiffs had not "demonstrated which particular features of the two works" they were claiming as similar. Clearly the Court doesn't have that impediment in this case.

*Copeland v. Bieber et al.*                                        BYERS LAW GROUP
Case No. 2:13cv246; Opp. To Mtn. Dismiss                WWW.BYERSLAWGROUP.COM
Page 15 of 23

-JA103-

and pitch); (2) the shifted cadence; (3) the instrumental figures; (4) the verse/chorus relationship; and (5) the fade ending).

Defendants argue that there are no similarities in the melodies of the works, and that "Plaintiffs concede as much." (their emphasis). For this assertion, Defendants cite to ¶ 47 of the Complaint, stating that there is "no mention . . . of [the songs'] melodies." The Oxford English Dictionary defines "melody" as "1. A sequence of notes that is musically satisfying; a tune. 2. The arrangement of musical notes to form a tune. 3. The main part in harmonized music." Compact Oxford English Dictionary, 634 (3d Ed. 2005). Plaintiffs' Complaint alleges that the works at issue contain the following common structural elements:

- Both compositions have a repeating underlying Keystone Beat Pattern ("KBP," which is the underlying simplest arrangement of repeating beat-patterns in a musical piece) 2-measure rhythm pattern for the entire song;

- Both use one measure of strategic silence just prior to or at the beginning of the chorus;

- Both use a scalar 7-chord to start the chorus;

- Both use a scalar 4 minor 9-chord in the 2nd measure of the chorus;

- Both are 9 measures long for the chorus-proper;

- Both use nearly identical time values and sequences in the first phrase of each chorus;

- Both use nearly identical time values and sequences in the second phrase of each chorus;

---

*Copeland v. Bieber et al.*                                        BYERS LAW GROUP
Case No. 2:13cv246; Opp. To Mtn. Dismiss                WWW.BYERSLAWGROUP.COM
Page 16 of 23

-JA104-

- Both use nearly identical timings of "call and response" entry points within a
  measure;

- Both use nearly identical timings of "call and response" exit points within a
  measure;

- The calls of both versions share nearly identical opening lyrics (with a single
  word difference: "just");

- The calls of both versions share identical order and placements of the lyrics
  relative to their respective time values in each measure; and

- The calls of both versions share identical treatments (the last word of the lyric,
  "love," being a two-syllable long held note).

Defendants' claim that Plaintiffs have conceded that the melodies are not the same is

therefore unfounded. Further, the preliminary expert report of Duncan L. Wood, attached herein

as Exhibit B, that melody is both important and copied in the later versions of "Somebody to

Love." It is proper for the Court to consider the preliminary report of Mr. Wood. First, the report

is referenced and relied upon by Plaintiffs in the Complaint at ¶¶s 47 and 48. Second, "[t]he

extrinsic test often requires analytical dissection of a work and expert testimony." *Three Boys*,

212 F.3d at 485.

The extrinsic test demands similarity in "protected elements of the copyrighted work. . .

." *Swirsky v. Carey*, 376 F.3d at 845. Thus, "it is essential to distinguish between the protected

and unprotected material in a plaintiff's work." *Id.* There is no uniform set of factors for

analyzing a musical composition when applying the extrinsic test; "this is because a musical

---

*Copeland v. Bieber et al.*                                      BYERS LAW GROUP
Case No. 2:13cv246; Opp. To Mtn. Dismiss                WWW.BYERSLAWGROUP.COM
                    Page 17 of 23

-JA105-

composition can be comprised of a number of otherwise unprotectable elements, including lyrics, rhythm, pitch, cadence, melody, harmony, tempo, phrasing, structure, chord progression, instrumental figures, and others." *Straughter v. Raymond*, Case No. CV 08-2170 CAS (CDCa, August 19, 2011), *citing Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004). The *Swirsky* court provides a significant review of cases and commentary analyzing various musical components. *Swirsky*, 376 F.3d at 849. And even something as minimal as a repetition four times of the words "uh-oh" to a rhythm is entitled to protection. *Santrayll v. Burrell,* No. 91 Civ. 3166, 1996 WL 134803, *2 (S.D.N.Y. Mar.25, 1996) ("[T]he repetition of the non-protectable word `uh-oh' in a distinctive rhythm comprises a sufficiently original composition to render it protectable by the copyright laws.")

As the *Swirsky* court noted: "There is no one magical combination of [ ] factors that will automatically substantiate a musical infringement suit; each allegation of infringement will be unique. So long as the plaintiff can demonstrate, through expert testimony that addresses some or all of these elements and supports its employment of them, that the similarity was 'substantial' and to 'protected elements' of the copyrighted work, the extrinsic test is satisfied." *Swirsky*, 376 F.3d at 849.

### a.  Preliminary Analysis by Duncan L. Wood.[4]

Plaintiffs engaged an expert, Duncan L. Wood, to provide a preliminary analysis prior to bringing suit. *See* Wood Analysis, attached as Exhibit. B.

---

[4]   The opinion of Duncan L. Wood, attached herein, is a preliminary report relied upon by Plaintiffs and is not offered as Mr. Wood's final opinion for the purposes of discovery and/or trial.

---

*Copeland v. Bieber et al.*                                      BYERS LAW GROUP
Case No. 2:13cv246; Opp. To Mtn. Dismiss              WWW.BYERSLAWGROUP.COM

In his report, Mr. Wood identified seventeen (17) similarities ("points of congruence")
between the works at issue, as pled in the Complaint.  And, despite Defendants assertions to the
contrary, Mr. Wood found not only seventeen (17) similarities between the works, he also stated
that at least ten (10) of the points of congruence are either substantially or strikingly similar.  *See*
Wood Analysis, pp. 20-21, ¶¶ 5, 6, and 10 -17. Mr. Wood concluded:  After consideration of all
the aspects of both song versions which have been tested and compared, not only to each other,
but to many other songs, including those by Bieber *and* the Stereotypes, as well as including any
other relevant information found in the course of this inquiry, I am forced to conclude that
DeRico Copeland's song *is* the original and that Bieber *et al.*'s version copyrighted 2 years later
has borrowed heavily from Copeland's version, whether intentionally or not, because there is no
other explanation that encompasses *all* of the observed congruences between the two songs.

A review of both the Complaint and Wood Analysis clearly shows that the extrinsic test
is satisfied.

## II.    Plaintiffs Pled Facts Sufficient to Support Claims for Contributory Infringement.

Defendants claim that Plaintiffs have failed to plead facts showing contributory and/or
vicarious infringement, and have merely included a "formulaic recitation of the elements" of
each of the causes of action."

However, the Complaint alleges 1) that each and every defendant is named as a copyright
claimant on the infringing works and 2) that each and every defendant was either directly

---

*Copeland v. Bieber et al.*                                     BYERS LAW GROUP
Case No. 2:13cv246; Opp. To Mtn. Dismiss                WWW.BYERSLAWGROUP.COM
                        Page 19 of 23

-JA107-

involved in recording and/or performing the infringing works, or was directly involved in obtaining and providing Plaintiffs' copyrighted work so that the infringing activities could take place.  By claiming copyright ownership, each and every defendant is vested by the Copyright Act with the" exclusive right to reproduce, distribute copies of, and prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106.  By statute, each and every Defendant by definition through their claim to rights in the infringing work possessed the right and ability to supervise the infringing conduct and have a direct and obvious financial interest in the exploitation of Plaintiff's copyrighted materials.

In addition, Plaintiffs' have asserted that "each and every Defendant, jointly and severally, have claimed rights to the Bieber and Usher versions of Plaintiffs' work, have jointly and severally infringed Plaintiffs' copyrights by and through the copying, revising, recording, performance, distribution and sales of the infringing works . . ."  Complaint, ¶ 51.  Further, "each and every Defendant was either directly involved in recording and/or performing the infringing works, or was directly involved in obtaining and providing Plaintiffs' copyrighted work so that the infringing activity could take place."  Complaint, ¶ 52.

In addition, a simple review of the CD cover for "My World 2.0" (submitted as an Exhibit to Plaintiffs' Opposition to Defendants Motion to Dismiss for Lack of Jurisdiction) reveals that Island Def Jam claims copyrights on the back cover of the CD insert.  Further, the back insert of the CD shows that the CD was distributed by Universal Music Group.  Defendants Bright and Bieber are named in the credits on the album and for the track "Somebody to Love."

---

*Copeland v. Bieber et al.*                                                    BYERS LAW GROUP
Case No. 2:13cv246; Opp. To Mtn. Dismiss                        WWW.BYERSLAWGROUP.COM
Page 20 of 23

-JA108-

And a summary of the relevant facts as known at this point are detailed in Plaintiffs' Complaint in ¶¶s 32-46 and 49-54.  Defendants' requests that Counts II and III should therefore be denied.

### III.    Conclusion.

Despite Defendants' assertions, the musical works at issue are substantially similar when analyzed with both the intrinsic and extrinsic analysis prongs of the Fourth Circuit test.  Further, Plaintiffs have pled sufficient facts to defeat Defendants' Motion to Dismiss Counts II and III (Vicarious Infringement and Contributory Infringement). and, therefore, survive Defendants' Motion.

**WHEREFORE,**

Plaintiffs respectfully request this Honorable Court Deny Defendants' Motion to Dismiss.

Dated: July 19, 2013                              Respectfully submitted,

                                                  */s/Duncan G. Byers*
                                                  Duncan G. Byers
                                                  Virginia State Bar No. 48146
                                                  Jeffrey D. Wilson
                                                  Virginia State Bar No. 75734
                                                  BYERS LAW GROUP
                                                  142 W. York Street, Suite 910
                                                  Norfolk, VA  23510
                                                  Phone:  757-227-3340
                                                  Facsimile:  757-227-3341
                                                  duncan.byers@byerslawgroup.com
                                                  jdwilson@byerslawgroup.com
                                                  admin@byerslawgroup.com

                                                  *Attorneys for Plaintiffs*
                                                  *Devin Copeland and Mareio Overton*

---

*Copeland v. Bieber et al.*                              BYERS LAW GROUP
Case No. 2:13cv246; Opp. To Mtn. Dismiss                  WWW.BYERSLAWGROUP.COM
Page 21 of 23

-JA109-

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2013, I will electronically file the foregoing, with the

Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF)

to the following:

Stephen E. Noona
Virginia State Bar No. 25377
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: 757-624-3239
Facsimile: 757-624-3169
senoona@kaufcan.com

Howard Weitzman *(pro hac vice application to be filed)*
Jeremiah T. Reynolds *(pro hac vice application to be filed)*
Kinsella Weitzman Iser Kump & Aldisert
808 Wilshire Blvd., 3'd Floor
Santa Monica, CA 90401
Telephone: 310-566-9800
Facsimile: 310-566-9884
hweitzman@kwikalaw.com
jreynolds@kwikalaw.com

*Attorneys for Defendants Justin Bieber, Universal Music*
*Corp., Bieber Time Publishing, LLC and The Island Def*
*Jam Music Group*

Jonathan D. Davis, Esq. (*pro hac vice* application to be filed)
Jonathan D. Davis, P.C.
99 Park Avenue, Suite 1600
New York, New York 10016
Telephone:  212- 687-5464
Facsimile:  212- 557-0565
jdd@jddavispc.com

*Attorneys for Defendant Usher Raymond, IV p/k/a Usher*

---

*Copeland v. Bieber et al.*
Case No. 2:13cv246; Opp. To Mtn. Dismiss
Page 22 of 23

BYERS LAW GROUP
WWW.BYERSLAWGROUP.COM

Nathan Muyskens
Virginia State Bar No. 39168
Loeb & Loeb LLP
901 New York Avenue NW
Suite 300 East
Washington, DC  20001
Telephone:  202-618-5000
Facsimile:  202-618-5001
nmuyskens@loeb.com

Barry I. Slotnick *(pro hac vice)*
Cheng L. Chen *(pro hac vice)*
Loeb & Loeb LLP
345 Park Avenue
New York, NY  10154
Telephone:  212-407-4000
Facsimile:  212-407-4990
bslotnick@loeb.com
lchen@loeb.com

*Attorneys for Heather Bright, B-RHAKA
Publishing LLC, WB Music Corp. and
Sony/ATV Music Publishing LLC*

---

*Copeland v. Bieber et al.*                                     BYERS LAW GROUP
Case No. 2:13cv246; Opp. To Mtn. Dismiss          WWW.BYERSLAWGROUP.COM
                        Page 23 of 23

-JA111-

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

DEVIN COPELAND P/K/A DE RICO and
MAREIO OVERTON,

    Plaintiffs,

v.

                                 Case No.: 2:13cv00246

JUSTIN BIEBER, USHER RAYMOND IV p/k/a
USHER, HEATHER BRIGHT, B-RHAKA
PUBLISHING, RAY ROMULUS, SUMPHU,
JONATHAN YIP, PLEASE ENJOY THE MUSIC,
JEREMY REEVES, PRODUCTS OF THE STREET,
UNIVERSAL MUSIC CORP, UNIVERSAL MUSIC
PUBLISHING GROUP,SONY/ATV MUSIC
PUBLISHING, LLC, BIEBER TIME PUBLISHING,
LLC, WB MUSIC CORP., THE ISLAND DEF JAM
MUSIC GROUP, STAGE THREE MUSIC (US) INC,
STAGE THREE MUSIC, LLC, and JONETTA PATTON,

    Defendants.

## DECLARATION OF PLAINTIFF DEVIN COPELAND IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS UNIVERSAL MUSIC CORP. AND DEF JAM MUSIC GROUP'S MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM AS A MATTER OF LAW

      I, Devin Copeland, professionally known as De Rico hereby state and declare as follows:

      1.     I am over the age of 18 and am of sound mind.  All of the information set forth herein is accurate and based upon my personal knowledge.

      2.     I am a singer, songwriter, and music producer currently residing in Portsmouth, Virginia.

      3.     As referenced in the Complaint in the above-referenced matter, I co-wrote and recorded the song "Somebody to Love."

      4.     My recording of the song "Somebody to Love" was never intended to be sold to the general public, nor has it ever been sold or made available as a digital download to the general public.

5.    I recorded the song "Somebody to Love" with the sole intention of submitting it to music industry professionals for the purposes of obtaining a recording contract or finding an established music artist to record the song. The intended audience of the song were music industry professionals, including singers, songwriters, producers, talent scouts, and managers.

6.    The only access the general public had to the song was through a posting on the site of my management company, Tuff Luvv Entertainment.

I declare under penalty of law of the United States of America and the Commonwealth of Virginia that the foregoing is true and correct. Executed this __ day of July, 2013 in Norfolk, Virginia.

FURTHER DECLARANT SAYETH NOT.

Devin Copeland

Respectfully submitted: July __, 2013

/s/
Duncan G. Byers, Esquire
Virginia Bar No. 48146
Jeffrey D. Wilson, Esquire
Virginia State Bar No. 75734
BYERS LAW GROUP
142 W York Street, Suite 910
Norfolk, VA 23510
(757) 227-3340 Telephone
(757) 227-3341 Facsimile
admin@byerslawgroup.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the __th of July, 2013, the foregoing Declaration of Devin Copeland was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing (NEF) to the following:

_/s/_ _____

Duncan G. Byers, Esquire
Virginia Bar No. 48146
Jeffrey D. Wilson, Esquire
Virginia State Bar No. 75734
BYERS LAW GROUP
142 W York Street, Suite 910
Norfolk, VA 23510
(757) 227-3340 Telephone
(757) 227-3341 Facsimile
admin@byerslawgroup.com
_Attorneys for Plaintiffs_

# *A Comparative Analysis of 2 Songs Entitled, "Somebody to Love", Copyrighted at Two Different Times by Two Different Composers*

CONFIDENTIALITY NOTICE: This document is for the sole use of the intended recipient(s) and may contain confidential and privileged information or otherwise be protected by law. Any access, use, copy, disclosure or distribution of this document by anyone other than the intended recipient(s) is unauthorized and prohibited.

Written by Music Analyst, Duncan L. Wood, on behalf of Plaintiff, DeRico Copeland. Wood is the published author of the internationally reviewed book, <u>The Perfect Guitarist</u>. He is currently co-owner of DnD Music in Chesapeake, VA. Wood has been a full-time teacher of various types of guitar & bass, music theory and composition for 26 years. He is also a performer, composer, and recording artist who has been interviewed and performed on TV and radio many times. Wood graduated from Lynchburg College with a B.S. degree in Psychology in 1988 with a specialization in learning theory, cognitive processes and creative problem-solving.

## <u>INTRODUCTION, DEFINITIONS, ASSUMPTIONS AND METHODS</u>

- **In order to compare songs as to the possibility of *substantial similarity*, we must compare more than just the individual critical elements of the songs.** Instead, to be both truly accurate as well as thorough in our analysis, we must examine the songs in their entirety with an eye towards both the *total number* of elements they share in common as well as the *statistical likelihood* that these commonalities did *not* occur by chance, but were, instead, the result of copying.

- The basic assumption in this analysis is that the more *differences* there are between the two compositions, the *less* likely it is that there was substantial similarity. Conversely, the more *likenesses* there are between the two compositions, the *more* likely that there has been substantial similarity.

- Likenesses in *structures*[1], patterns or other characteristics in each of the compositions shall be considered to be ***points of congruence***[2].

- In this comparison of compositions, the DeRico Copeland version (©2008) shall be considered the *original* against which the Justin Bieber, Jeremy Reeves, Jonathan Yip, Ray Romulus[3] and Heather Bright[4], version (©2010) will be compared due to the earlier date of copyright. Reeves,

---

[1] *Source:* **Wikipedia;** *Structure* = The arrangement of and relations between the parts or elements of something complex [*Analyst's note:* in music, this could refer to verse, chorus, bridge, tag-lines, et cetera...].

[2] *Source:* **Wikipedia; Congruence** is the state achieved by coming together, the state of agreement, harmony, conformity, or correspondence; coming from the Latin *congruō* meaning "I meet together, I agree". In geometry, [for example] two figures are congruent if they have the same shape and size.

[3] *Source:* WIKIPEDIA; *Stereotypes* are a R&B/hip hop/dance production team created in 2003, composed of **Jonathan Yip, Ray Romulus** and **Jeremy Reeves**. They were listed as Top 10 Songwriters and Producers to Watch in the June 5, 2010 *Billboard* magazine.

[4] *Source: www.idolator.com*;  When Bright, who also co-wrote Justin Bieber's hit "Somebody To Love", is asked to explain how Bieber got songwriting credit for that song (as it was originally written for Usher), Bright has no answer. "Umm… How did he get a writing credit on it?… That's an interesting question. I don't know."

Yip and Romulus (collectively known as the Stereotypes), are also listed as the producers[5] of the song.

- For convenience's sake, either "Bieber *et al.*[6]" or simply "Bieber" will be used to refer to the composers of the 2010 version of "***Somebody to Love",*** Justin Bieber's name being first in the list of writing credits.[7]

- Contributory conclusions (i.e., conclusions for each topic of concern) by the music analyst (Duncan L. Wood) shall be in *red* font at the end of each topic or sub-topic as needed. Additional comments, clarifications or explanations of marked importance that bear on the subject shall be in black font with ==yellow== highlights. Comments and conclusions by the statistical analyst (John Massey) shall be in blue font.  The analysis and underlying data employed by John Massey are attached as Appendix 1.

- All examples and comparisons of the two pieces have been placed in the key of A minor, this key being the easiest to use for examples by virtue of being an all-naturals key (normally having no sharps or flats).

- Both pieces will be contrasted and compared at the same tempo, said tempo (116 bpm) being the mid-point between their two different original tempos.  This is so that there will be no favor shown to either composition.  At the same time, each composition shall be heard at its original tempo to establish the context of each.

- To comprehensively investigate the question of substantial similarity, four data sources are analyzed using music theory, as well as, descriptive and inferential statistical methods.  The data sources include:

1) Two versions of "Somebody to Love," the 2008 Copeland version and the 2010 Bieber *et al.* version.

2) An impartially drawn, representative sample (N[umber] = 52) of top charting songs taken from the "Billboard Hot100" for the years 2009-2011.  After selection of the songs, the Billboard Hot

---

[5] *Source:* **WIKIPEDIA**;  "… A producer has many roles that may include, but are not limited to, gathering ideas for the project, selecting songs and/or musicians, coaching the artist and musicians in the studio, controlling the recording sessions, and supervising the entire process through mixing and mastering. Producers often take on a wider entrepreneurial role, with responsibility for the budget, schedules, and negotiations…".

[6] *Source:* **WIKIPEDIA**; "Somebody to Love"; Speaking about the song, Bieber said, "It's basically about somebody to love. It's cool. It's young. It's nice. I think it's like a universal record." *Analyst's note:* It is both my own experience and the observation of other songwriters I've known (including one Grammy Award-winner) that, when asked what their song was about or what inspired it, they would offer much more than Bieber did, which was to essentially repeat the title of the song.  This lack of detail in Bieber's response implies strongly that he truly had little or nothing to do with the composition of "Somebody to Love" because he to have no *intimate* knowledge of its writing.  It seemed obvious to me early in my analysis that the work on the Bieber version of "Somebody to Love" was likely done by professionals who had probably worked together before.  Evidence found later appears to support that impression.  Additional Source: www.rap-up.com/2010/07/02/10, Interview with Jonathan Yip.*[Question asked by the interviewer]* **How did you get "Somebody to Love" in Justin Bieber's hands?**
**Jon:** Basically, it was originally made for Usher, and he cut it and everything, but I guess the label didn't know what they wanted to do with the record. So the same day we were actually creating the record, we had Perez Hilton in the studio. He was like, "Ya know what, that would be good for Justin Bieber." And we were like, "Hey, we'd love for it to be for Justin Bieber as well." So the minute that Jive wasn't sure what they wanted to do with the record for Usher, we backtracked and went to [Bieber's manager] Scooter [Braun] and told him, "Yo, do you want to cut this for Justin?" and he was like, "Yup." So that's kinda how it happened. Usher's now back on the record, on the remix, so we can't really complain. It's now Justin's current single.

[7] *Analyst's note:*  This is only to make it easier for reference purposes in this analysis.

100[8] Peak Rank is used to determine the peak (highest achieved rank) for each song.  The mean (average) peak rank for the sample song set is 14.5 from the top of the listings.  Sources of the songs included three Hal Leonard published books:

- <u>Top Hits of 2010</u>. Milwaukee: Hal Leonard Corporation, 2010.
- <u>Chart Hits of 2010-2011</u>. Milwaukee: Hal Leonard Corporation, 2011.
- <u>Chart Hits of 2009-2010</u>. Milwaukee: Hal Leonard Corporation, 2010.

3) The population of songs (N = 11, including "Somebody to Love") with Justin Bieber listed as a co-writer in the credits. Sources of the songs for analysis included two Hal Leonard published books.

- <u>Justin Bieber My World</u>. Milwaukee: Hal Leonard Corporation, 2010.
- <u>Justin Bieber My World 2.0</u>. Milwaukee: Hal Leonard Corporation, 2011

4) The population of songs (N = 18, including "Somebody to Love") with Jeremy Reeves, Jonathan Yip, Ray Romulus listed as writers or co-writers in the credits.  Sheet music is available for only 1 of the 17 songs.  Data will be gathered for the remaining songs by listening to recordings or searching the Stereotypes website, *Wikipedia.com* or *Billboard.com*.

Analytical comparisons have been made between the structural components of the two versions of "Somebody to Love" to determine points of congruence, incongruence or tendencies.  These same characteristics have been used to compare the two versions of the song with the 3 song sets, which include the representative sample song set, the Bieber song set and the Stereotypes song set.  Finally, comparisons have been made between the Bieber song set, the Stereotypes song set and the representative sample song set.  This multi-faceted investigation should reveal the congruences and tendencies across the data sets, as well as points of incongruence.  When the individual findings are considered collectively, the results should show the relationship between the two versions of "Somebody to Love" as well as the relationship of the two versions compared with the sample song set, the Bieber song set and the Stereotypes song set. The complete data set and Statistical Analysis document can be found in Appendix A.

## <u>TOPICAL ANALYSIS</u>

1. *TITLE:*

    The choice of the same title (in this case, "Somebody to Love") is not unheard of in the music industry.

➢ Since both compositions bear the same title, I must consider this to be the **(1)** *first* **point of congruence.**

---

[8]*Source:* **WIKIPEDIA**; *Billboard Hot 100*; ...United States music industry standard <u>singles</u> popularity chart issued weekly by <u>Billboard</u> magazine. Chart rankings are based on radio play and sales...

**2.  *TIME SIGNATURE:***

   In both cases, the *time signature*[9] is 4/4.  However, 4/4 time is the most common time in composition.

➢ It is unreasonable to conclude anything definitive based on like time signatures other than that they *are* the same rather than different.  Again, since both compositions share the same time signature, this is **the (2)** *second* **point of congruence.**

**3.  *TEMPOS*[10] *& KEYSTONE BEAT PATTERNS*[11]*(KBP):***

▪ Copeland uses a repeating KBP 2-*measure*[12] pattern for the entire song at circa 101 bpm.  It is a *syncopated*[13] rhythm.



Copeland Basic Rhythm 2-measure Pattern

1   ah  2   3   ah  4   &   1   ah  2   3   & ah 4  e  &

▪ Bieber also implements a repeating KBP 2-measure pattern for the entire song at circa 130 bpm.  It is a standard up-tempo dance beat.



Bieber Basic Rhythm 2-measure Pattern

1   2   3   4   1   2   3   4   &

The tempo of each composition is appropriate, each to its own intended task---that is, the underlying driving rhythm and faster-paced tempo of the Bieber *et al.* version is perfect for a modern dance song aimed at younger age groups.  It has a more straightforward 4/4 time up-tempo dance beat which lends itself to a more athletic style of dance that would be popular with an audience more interested in the dancing than the story being told.  In contrast to this, the more complicated rhythm and slower pace of the Copeland version would likely appeal to an audience

---

[9] *Source: The Perfect Guitarist*, ©2008 Duncan L. Wood; *Time signatures* are a musical notation near the beginning of the staff indicating the number of beats to a measure and which kind of note equals a beat.

[10] *Source: The Perfect Guitarist*, ©2008 Duncan L. Wood; The speed of the beats played in sequence is the **tempo**.

[11] *Source:* Duncan L. Wood; A **basic rhythm** is defined here as the underlying simplest arrangement of repeating beat-patterns in a musical piece.

[12] *Source:* **WIKIPEDIA**; In musical notation, a bar (or measure) is a segment of time defined by a given number of beats, each of which are assigned a particular note value.

[13] *Source: Free Online Dictionary*; *Syncopation*, A shift of accent in a passage or composition that occurs when a normally weak beat is stressed.

who might well be equally interested in the story as well as eliciting a slower, less athletic dance style.  ==If my goal were to modify the 2008 version of "Somebody to Love" into a stronger dance tune, Copeland's KBP and tempo are the first things I would change.==

➢ Once more, though, the fact that *both* compositions have a repeating underlying KBP 2-measure rhythm pattern for the *entire* song is the **(3) *third* point of congruence.**

The research indicated:

The presence of a KBP was investigated across the three song sets.  A KBP was found in both the Stereotypes (10) and Bieber (6) song sets and occurred enough to conclude it is a typical device likely to be found in their songs.  A statistically significant presence of a KBP was *not* found in the "Billboard Hot 100" song set.  Specifically, a KBP lasting the entire song was not used in the Bieber song set at all and was found in Stereotypes songs only twice.  **While using a KBP for the entire song is a point of congruence for the two versions of "Somebody to Love", it is *not* so for the Bieber and Stereotypes song populations**. ---*John Massey, Statistical Analyst*

4. ***SONG LYRICS***[14]:

<u>Introduction</u>

**In both cases, the introductions of the compositions *speak* their respective themes:**

a)  In the Copeland version, the speaker states, "Yeah, thought we was forever…I guess I gotta accept the consequences that Life throws at me…", which sets up the story to follow in the verse by begging the question as to what the "…consequences of Life…" are in this song.

b)  In the Bieber *et al.* version, the vocalists chant, "Gotta keep you closer---feels so right", which doesn't really do much to tell the listener more than the obvious---the speaker wants her because it feels good.

➢ Since both introductions are *spoken*, rather than being an instrumental or sung, this is the **(4) *fourth* point of congruence.**

The research indicated:

The use of a spoken introduction was rarely used in the 52-song "Billboard Hot 100" sample set (4), Bieber song set (1) or the Stereotypes song set (4). Thus, its use in the Bieber *et al.* version of "Somebody to Love" would not be expected. ---*John Massey, Statistical Analyst*

---

[14] *Analyst's note:*  ==Generally speaking, songs are constructed with **verse**, **chorus** and **bridge**.  **Verses** tell the story, while the **chorus** shares the **theme** (the broader idea; the underlying message of a song).  The **bridge** is an adjunct to both verse and chorus which provides yet another perspective that should relate in some way to both story and theme.==

*Verse & Chorus*

The verses of the two songs are different. The chorus (the hook), however, is the same with the exception of the use of the word "just."

➢ The use of the hook, "I…need somebody to love", in the chorus of the Bieber *et al.* version constitutes the **(5)** *fifth* **point of congruence.**

**5.** ***CHORD CHOICES IN VERSE & CHORUS STRUCTURES:***

*Verses*

a) Copeland's verse is 15 measures long, consisting of a 4-measure pattern repeated 3½ times for a total of 14 measures. The additional fifteenth measure has no chord or rhythmic accompaniment, meaning that there is nothing heard but the lone vocal for that measure. This is a musical device (*strategic silence*) for drawing attention through the use of contrast.

The 4-measure pattern itself starts with the scalar *4*-chord for two measures followed by the scalar *1*-chord, also called the *tonic* or *root* chord, for two more measures, giving a total of 4.

b) Bieber's verse is also 15 measures long, also consisting of a 4-measure pattern, also starting with the scalar *4*-chord for one measure, goes to the scalar *6*-chord for one measure, then changes to the scalar *7*-chord for two measures for a total of 15. *Analyst's note:* the Bieber *et al.* version also has a silent rhythmic measure, but it is placed at the first measure of the chorus rather than the last measure of the verse, as was the case in the Copeland version. This means the placement of the strategic silence measure is essentially the same in both versions.

Once again, the possibility certainly exists that two or more songwriters might use some of the same chord choices to build a verse. However, it *is* unusual for different songwriters to not only *start* with the same chord for the *same* overall *number* of measures *and* to use the *same* chord to set up the chorus (not forgetting also having identical lyrics excepting one word, "just").

The research data indicated:

• That *both* versions of "Somebody to Love" used an *odd* number of verse-measures is quite unusual. Only one song in the 52-song "Billboard Hot 100" sample and one song in the Bieber *et al.* song set used an odd number of verse-measures. *None* of the songs in the Stereotypes, et al. song set used an odd number of verse-measures.
• Both versions used the same chord in the first measure of the verse, the scalar 4-chord. This chord choice is unusual and unlikely, given the analysis of the three song sets.
• Both versions used KBP through the entire song. As noted above, this is unusual based on analysis of the three song sets.
• Both versions used a spoken introduction. As noted above, this is unusual based on analysis of the three song sets.

Use of any *one* of these four characteristics was found to be unusual in the three song sets.  Furthermore, *none* of the songs in the three song sets examined contained all four characteristics.  **To find *all four* represented in both versions of "Somebody to Love" must be considered extraordinary.** ---*John Massey, Statistical Analyst*

At best, the Bieber *et al.* songwriters *could* have heard the original version of the song and thus been *unconsciously* influenced, so much so that the structures they "created" were largely the same.  However, conscious or not, this *still* constitutes substantial similarity.  At worst, they are guilty of deliberately copying and then deliberately attempting to disguise having done so, and *that* is certainly substantial similarity coupled with the desire to escape justice.

It was observed in the analysis of the two songs in question that *both* songs made use of a device for calling attention to the chorus in the same place for the same amount of time.  The device consists of strategic silence (stopping the accompaniment) in order to increase contrast between verse and chorus.  In the original Copeland version, all accompaniments stopped for one measure.  In the Bieber *et al.* version, essentially everything but the bass was stopped for the same amount of time.  Examination of all the songs in the different sets revealed that this device was found in only a few of all the songs tested, and that there were differences between each of those compared to each other as well as to the two versions of "Somebody to Love".  Only the two versions of "Somebody to Love" were consistent with each other in their use of this device.

➢ The use of one measure of strategic silence just prior to or at the beginning of the chorus shall be considered the **(6)** *sixth* **point of congruence.**

### *Choruses*

a) Copeland's chorus begins with the scalar 7-chord, for one measure only, then goes directly to a $iv_9$ (the scalar 4-chord as a minor 9) for two measures, followed by two measures of $i_7$ (the tonic as a minor 7th ).  This scalar 4-chord to tonic-chord pattern is repeated for a total of 8 measures.  To this, add the one measure of the scalar 7-chord, giving us a total of 9 measures for the chorus.

b) Bieber's chorus *also* starts with the scalar 7-chord, also for one measure only, then starts a pattern starting with exactly the same chord as the Copeland version, the $iv_9$ (the scalar 4-chord as a minor 9), then shifting to a scalar 6-chord before returning to the scalar 7-chord for 2 additional measures.  This pattern repeats for a total of 8 measures.  Add to this the starting 7-chord for one measure and this gives us a total of 9 measures for the *chorus-proper*[15].

The research data indicated:

---

[15] *Source:* **Duncan L. Wood**; the *Chorus-proper* consists of the chorus without tag-lines; it is the core of the structure that remains unchanged in further repetitions.  The reason for making this distinction is because songwriters may use different lyrics to preface a chorus or to finish/add on to a chorus.

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 133 of 317

- Both versions used a scalar 7-chord to begin the chorus.  This chord choice to begin a chorus did *not* occur in *any* song in the three song sets.
- Both versions used a scalar 4-chord in a minor 9 form to begin the chorus' second measure.  This chord choice was *not* used to begin the second chorus measure in *any* of the songs in the three song sets.  Furthermore, the scalar 4-chord in a minor 9 form was not used anywhere in any of the songs in the three song sets.
- Both versions have a chorus with the same *odd* number of measures (9). Inspection of the three songs sets revealed *two* of the "Billboard Hot 100" song set, *two* of the Stereotypes song set and *one* of the Bieber song set contained an *odd* number of chorus measures.

Use of any *one* of these three characteristics was found to be unusual in the three song sets.  Furthermore, none of the songs in any of the song sets used all three characteristics.  **The presence of all three characteristics in the two versions of "Somebody to Love" are not likely to have occurred by chance and their collective presence in the two versions must be considered extraordinary and unlikely to have occurred independently of each other.** ---*John Massey, Statistical Analyst*

c)  After the chorus-proper, there is a 4-measure add-on of the repeated tag-line (as mentioned earlier in this narrative), but I do not consider this to truly be part of the chorus.  It is worth mentioning at this point that the *publishers* of the Bieber *et al.* version chose to treat these tag-lines as being part of the chorus, which could have been for convenience's sake---but I would not do it myself because they do not contribute substantively to the chorus other than to buy time for more dancing.

The research data indicated:

While tag lines are used in the Bieber *et al.* version of "Somebody to Love," they are not statistically significant in the 52-song "Billboard Hot 100" sample set.  Tag lines are found in some Stereotypes (6) songs and Bieber (2) songs. The quantities are not enough to definitively say tag lines are a common device used in their songs. ---*John Massey, Statistical Analyst*

➢ The fact that both versions use a scalar 7-chord to start the chorus is our **(7)** *seventh* **point of congruence.**
➢ The fact that both versions use a scalar 4 minor 9-chord in the 2nd measure of the chorus is our **(8)** *eighth* **point of congruence.**
➢ The fact that both versions are 9 measures long for the chorus-proper is our **(9)** *ninth* **point of congruence.**

**6.** *CALL AND RESPONSE:*  Adding to our still growing list of congruencies, both chorus versions of "Somebody to Love" are constructed using a *call and response* form[16].

*Analyst's note:* The *chorus* shares the theme of a song with the listener (that is, what it's really all about after you get past the details of the story contained in the verse).  The chorus is also the most likely part of a song to contain the hook.  Unlike the verse, where the words change as a means to continuing the story, the lyrics of the chorus usually don't change from one part of the song to another.

a) Copeland's version has the harmony voice sing/call out the lyrics, "I just need somebody to love, somebody to love" while the lead voice responds with "'Cause I keep goin' through the same old things".   On the next go-round, the lyric is shortened to, "Somebody to love…", while the response remains the same as before.

b) Bieber's version also has the harmony voice sing/call out the same lyrics, "I just need somebody to love," while the lead voice answers back, saying "I, I don't need too much, just somebody to love".  Then, just as the Copeland version does, the harmony voice calls out again with a freshly shortened lyric, "Somebody to love…", and the lead voice answers back with a new lyric this time, "I don't need nothing else.  I promise, girl, I swear, I just need somebody to love".  Finally, the harmony and lead voices join together in singing the tag-lines, "I need somebody; I, I need somebody.  I need somebody; I, I need somebody", strengthening the hook even further by saying "[I need]somebody" while implying "to love".  However, the great value of the person who is presumably the subject of the song in the Bieber, et al. version (implied by the verse) is immediately contradicted by the chorus, wherein Bieber, et al. emphatically states that, essentially, *anyone* will do:

I just need somebody to love
I-I don't need too much
Just need somebody to love. (Somebody to love)
I don't need nothing else
I promise, girl, I swear.
I just need somebody to love.
I need somebody, I-I need somebody.
I need somebody, I-I need somebody.

In fact, Bieber's chorus uses the phrase, "somebody to love", a total of 4 times (highlighted in green), and "I need somebody" another 4 times (marked in gray), all of which serve to collectively reinforce the title, "Somebody to Love".

---

[16] *Source:* **Wikipedia;** In music, a *call and response* is a succession of two distinct phrases usually played [or sung---*DLW*] by different musicians, where the second phrase is heard as a direct commentary on or response to the first. It corresponds to the call-and-response pattern in human communication and is found as a basic element of musical form…in many traditions.

<span style="color:blue">The research data indicated:</span>

<ul>
<li>Both versions used "call and response".</li>
<li>The <em>absence</em> of "call and response" in the 52-song "Billboard Hot 100" sample set <em>was</em> statistically significant.</li>
<li>"Call and response" was <em>not</em> found in any of the Bieber-credited songs.</li>
<li>The presence of "call and response" in the Stereotypes song set was minimal, occurring only twice.</li>
</ul>

"Call and response" was not found to be a significant characteristic of the three song sets.  Its presence in the two versions of "Somebody to Love" must be considered unusual and unlikely to have occurred by chance. ---*John Massey, Statistical Analyst*

➢ Both versions use the infrequently used "call and response" form for the chorus-proper, giving us our **(10)** *tenth* **point of congruence.**

## 7. *COMPARISON OF MELODIES[17] IN THE CHORUS: Time Values & Phrasings*

*Timing[18]* shall be examined relative to 2 different aspects:

(1) time values and sequences of the notes in each of the phrases that make up the collective whole of the chorus according to voice by each composer, and

(2) timing of the *call and response* entry and exit points for each phrase by composer.  The phrases themselves are referred to by number (#) and voice, those being the *harmony voice*-melody and the *lead voice*-melody.

---

[17]**Source:** Duncan L. Wood;  the word, "melody" or the plural form, "melodies", refer to a series of possibly different pitches (tones) of possibly different lengths (time values) played in linear fashion to form patterns that are normally evocative of emotions and memorable (if they are good!).

[18] **Source:** Duncan L. Wood; The word, "timing" used here refers to the values of the different notes that comprise the respective melodies of the two different versions of the song in question.  The possibilities range from an eighth note (the fastest or smallest time value) up to the whole note (the slowest or longest time value).   Put together, the time values of a song have an inherent rhythm that will generally be divisible by 2, called *duple* time, or divisible by 3, called *triple* time (also often called *waltz* time).  These most basic rhythms will be indicated by the *time signature* at the beginning of a piece.  The most common time signatures are 4/4 (duple) and 3/4 (triple).  "Somebody to Love" is in 4/4 time, for example.

(1) <u>TIME VALUES in SEQUENCE</u>



- The **blue** arrow in the representative sample of music above points to the additional word, "just", in the Bieber version.
- The **red** arrow points to the eighth rest which is present only in the Copeland version.

a) In the Copeland *harmony voice*-melody, phrase #1 starts with an *eighth rest* followed by 7 eighth notes in a row in the first measure of the chorus.

1) [1st measure] *eighth rest*-eighth-eighth-eighth-eighth-eighth-eighth-*tied eighth*, [2nd measure] *tied* whole note,                                                  [3rd measure] *tied* dotted quarter note
2) Total measures used (in part or in full) by first melodic statement (the *call*) = **3**.
b) In the Bieber *harmony voice*-melody, phrase #1 starts with 8 eighth notes in a row in the first measure.

1) [1st measure] eighth-eighth-eighth-eighth-eighth-eighth-eighth-*tied eighth*, [2nd measure] *tied dotted half note- tied eighth- tied eighth*, [3rd measure] *tied half note*
2) Total measures used (in part or in full) by first melodic statement (the *call*) = **3**.

   **In *both* the Copeland and the Bieber versions of Phrase #1 of the *harmony voice*-melody**, the first measure of the chorus is populated by eighth notes (the fastest notes) and immediately followed by long held notes which last all the way into the 3rd measure respective to the start of the melodic phrase, "I (just) need somebody to love…".   The **blue** arrow in the representative sample of music above points to the additional word, "just", in the Bieber version.  The **red** arrow points to the eighth rest which is present only in the Copeland version.

➢ Since both versions of "Somebody to Love" share nearly identical time values and sequences in the first phrase of each chorus, this is the **(11)** *eleventh* **point of congruence**.

Appeal: 14-1427   Doc: 30   Filed: 08/01/2014   Pg: 136 of 317



c) In the Copeland *harmony voice*-melody, <u>phrase #2 starts on the "& of 2"</u> with 5 eighth notes in a row in the first measure of the phrase.

1) [1st measure] eighth-eighth-eighth-eighth-eighth-*tied* eighth,                    [2nd measure] *tied* whole note,                    [3rd measure] *tied* dotted quarter note

2) Total measures used (in part or in full) by 2nd melodic statement (the *call*) = **3**.

d) In the Bieber *harmony voice*-melody, <u>phrase #2 starts on the "& of 2"</u> with 5 eighth notes in a row in the first measure of the phrase.

1) [1st measure] eighth-eighth-eighth-eighth-eighth-eighth-eighth-*tied* eighth,
   [2nd measure] *tied* dotted half note- *tied* eighth- *tied* eighth,
   [3rd measure] *tied* half note

2) Total measures used (in part or in full) by 2nd melodic statement (the *call*) = **3**.

**In *both* the Copeland and the Bieber versions of Phrase #2 of the *harmony voice*-melody,** there are 5 eighth notes which start on the "& of 2" (in the brown box) and immediately followed by long held notes which last all the way into the 3rd measure respective to the start of the melodic phrase, "somebody to love…".

➤ Since both versions of "Somebody to Love" nearly identical time values and sequences in the second phrase of each chorus, this is the **(12)** *twelfth* **point of congruence**.



e) Comparison of the two responses by the lead voices in phrase #1 are different enough as to merit no further examination.  They are independently written insofar as the melodies are concerned.



f) Comparison of the two responses by the lead voices in phrase #2 is different enough to merit no further examination.  They are independently written insofar as the melodies are concerned.

In *both* the Copeland and the Bieber versions of Phrase #2 of the *lead voice*-melody, no reason for further examination was discovered, and it is the opinion of this analyst that they are independently written as concerns their respective melodic phrasings.

The research data indicated:

- Both versions of the song used all eighth notes in the first chorus measure. This eighth note pattern was *not* significantly present in the 52-song "Billboard Hot 100" sample set. *No* songs in the Bieber or Stereotypes song sets used this pattern.
- Both versions of the song used a long held note in the second chorus measure. *No* songs in any of the three song sets reflected this timing in the second chorus measure.

Thus, *none* of the songs in the three song sets matched the timings of the two measures found in the two versions of "Somebody to Love". This is not surprising, given the probability of doing so is only 3 in 12,321, yet the two versions of "Somebody to Love" have the *same* first measure timings and *equivalent* timings for the second measure---this is highly unlikely to have occurred by chance. ---*John Massey, Statistical Analyst*

(2) CALL AND RESPONSE TIMINGS

The *call and response* timings of the entry and exit points of harmony and melody voices for both versions of "Somebody to Love" were compared.



(1) CALL: Examination of the Copeland *call* (harmony voice) in the chorus shows that the call occurs at the end of the first lead-response, "…'Cause I keep goin' through the same old things". The entry point is on **Beat 2**, marked by the **blue** arrow. The exit point is on the **first note** of the 3rd measure marked by the **black** arrow.

(2) CALL: Examination of the Bieber *call* (harmony voice) in the chorus reveals that his first repetition of the call also occurs at the end of the first lead-response, "…I don't need too much,

just somebody to love". The entry point is on **Beat 2**, marked by the **blue** arrow. The exit point, like Copeland's version, is also on the **first note** of the 3rd measure marked by the **black** arrow.

**(3) RESPONSE:** Examination of the Copeland *response* (melody voice) shows that the response occurs on the "&" of the first beat (also known as the *up*beat), singing "'Cause I keep goin' through the same old things".

**(4) RESPONSE:** Examination of the Bieber *response* (melody voice) shows that, once again, like the Copeland version, the response occurs on the "&" of the first beat (also known as the *up*beat), singing different words ("I don't need nothing else…").

Clearly, the two examples are nearly identical in their timings of entry and exit within a measure for both the call and the response in the above samples. The odds of this are 1 out of 4096 when considering *only the timings*---not impossible, but *very* unlikely.

➤ Since both versions of "Somebody to Love" share nearly identical timings of "call and response" *entry* points within a measure, this is the **(13) *thirteenth* point of congruence**.
➤ Since both versions of "Somebody to Love" share nearly identical timings of "call and response" *exit* points within a measure, this is the **(14) *fourteenth* point of congruence**.

Additionally, both versions use the identical lyric-choices for the *call* in the same order with the word, "love", being treated as a two-syllable long held note for exactly the same amount of time in both versions.

➤ Since the *calls* of both versions of "Somebody to Love" also share *identical*:

1) opening lyrics (the word, "just" in the Bieber version was inserted for reason of rhythm [that is, for the purpose of dancing], "I need somebody to love" *vs.* "I *just* need somebody to love")
2) order and placements of the lyrics relative to their respective time values in each measure
3) treatments (the last word of the lyric, "love", being a two-syllable long held note),

these constitute the **(15) *fifteenth*, (16) *sixteenth* and (17) *seventeenth* points of congruence**.

**8. *COMPARISON OF MELODIES IN THE CHORUS: Pitch Values & Phrasings***

**The second component of melody to be examined is that of *pitch*[19].** The pitch, or frequency of vibration of a given note, determines how high or low it sounds to the ear. Pitch shall be examined relative to relevant note sequences (those that bear on copyright infringement) for both the melody and harmony voices in both versions of "Somebody to Love".

**In writing a song, the composer must, for every note, choose whether the *next* pitch to be written should** (a) remain the same, (b) change upwards, or (c) change downwards. If choice-paths *b* or *c* are taken, the next choice is how *far* upwards or downwards to go. It is extremely

---

[19] ***Source:*** Duncan L. Wood; The word, "pitch" used here refers to the frequencies of the notes being examined. In Western music, the pitches of the notes are labeled by the letters **A** through **G** with adjustments being accomplished by the use of accidentals (sharps, flats and naturals).

Appeal: 14-1423    Doc: 30    Filed: 08/01/2014    Pg: 140 of 317

rare for this latter choice to exceed an octave (an 8th).  Most often, these pitch-choices are an interval of a 2nd or a 3rd at a time, which are much smaller shifts in pitch.  Each choice connects to the next and, along the way, form patterns, both large and small.  The patterns are called the *melodic contour*, defined as the shape of the rising and falling pitches of a melody over time.

**The most important point in pitch-choice is when the supporting chord is struck (sounded).**  Because of the way in which our brains function as regards the processing of sound, there is a small window within which the melody must be supported by the chord being played at that time.  If the most important notes of the melody are not also contained within the chord, there will be *dissonance*[20] (notes that do *not* sound good together).  Dissonance is only bearable with quick resolution to *consonance*[21] (notes that *do* sound good together).  The greatest single issue in this regard is time---that is, how long a "bad" note (one which is *not* a member of the supporting chord) is allowed.

**Melodies can *start* from *any* note in the musical spectrum, but the most important note normally occurs in direct relationship to an actual or implied chord.**  In the case of "Somebody to Love", wherein both versions have been put into the key of *A minor* in order to have a fair contrast and comparison of the two versions, I have provided samples of the relevant sections of the music in question from the choruses of each version.  All the voices start on members of the set of pitches that make up each supporting chord.  However, each voice in the two versions also starts on a *different* pitch than the other even when using the *same* supporting chord.  In the case of Copeland, the sample of the harmony voice, phrase #1, shows that he starts on the pitch of *G*, which is the *tonic* (the root) of the supporting G Major chord, and the *strongest* choice to the ear is the tonic.  Bieber *et al.,* on the other hand, chose to start on *B*, the 3rd of the G Major chord, and this is the nearest harmony to the Copeland choice of *G*.

---

[20] *Source:* Wiktionary; **dissonance** (*plural* **dissonances**): (1) a harsh, discordant combination of sounds, (2) [*music*] conflicting notes that are not overtones of the note or chord sounding, (3) a state of disagreement or conflict.

[21] *Source:* Wiktionary; **consonance** (*plural* **consonances**): [*music*] harmony; agreement; lack of discordance.



For the purpose of examining and comparing the overall melodic movements of both versions of the selected sample sections of the two choruses, numbers were assigned to each pitch-shift within the diatonic scale.  If, for example, a given pitch changed from **A** up to **B**, this equaled a change of **+1**.  If the reverse was true, and the pitch-shift was from **B** to **A**, then this was equal to **-1**.  A "**\*0**" represents an octave shift, which might be assigned a value of +7 except for the curious phenomenon of *octave equivalence*. To quote Ernst Terhardt, Prof. Dr.-Ing., Extraordinarius i.R., of Technische Universität München Institut, "In tonal music, a number of fundamental auditory characteristics of tones play an important role, and one of these characteristics is *affinity*.  Affinity means that tones may be perceived as similar in certain aspects; that in some respect a tone may be replaced by another one; and that one tone may even be confused with another one.  These criteria apply practically only to two musical intervals, namely, the *octave*, and, to a lesser degree, the *fifth*.  At least within the framework of tonal music, the affinity of tones being in an *octave* interval is so pronounced that this relationship is termed *octave equivalence*. For successive tones, affinity becomes apparent in the fact that repetition of a musical phrase in a "transposition" by an octave, or, to a lesser extent, by a fifth, is hardly perceived as a transposition at all - the transposition is often hardly noticed.  So, indeed, affinity is a kind of similarity."  What this means in *this* context is that shifts in successive tones spanning an octave are *almost* like staying on the same note.  An example of this can be found in the popular melody of "Over the Rainbow" from the movie, <u>The Wizard of Oz</u>, where removal of the octave shift in the first two notes of the song really doesn't appreciably change the ability

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 142 of 317

to recognize nor the beauty of the melody. Proof of this is found in the rendering of the same song as done by "Izzy" (Israel Kamakawiwo'ole) in his "Somewhere Over the Rainbow". Because of this, the +7 was adjusted to *0 for the analysis and comparison for both Copeland and Bieber versions, where applicable.

a) **Copeland** starts with the tonic *G* of the chord, **G** Major, for 3 notes in a row, then pops up to the octave *G,* then leaves it using descending *passing tones*[22] as a set up to the last pitch (*F*) of the first measure in the sample shown above. This last pitch (*F*) is particularly cunning in that it is simultaneously the 7th of the *G* chord *and* the 3rd of the *Dm9* chord which follows, supporting the second and third measures, and it anticipates the change immediately to the 9th of the chord (*E*). Examination of the pitch-shift patterns (the contour) of the Copeland sample reveals that the 3 level *G* pitches and the octave that begin the phrase lead to a descending ramp contour which effectively ends with the *E* (the long held note). The overall melodic contour pitch-shift = -.250.

b) **Bieber** *et al.* starts with the 3rd of the chord (*B*), then uses *auxiliary tones*[23] for the rest of the first measure in the sample shown above (*i.e.*, the pitch changes one step down then returns to the original pitch), then culminates in a long held *C* (dotted half note), that ramps downwards to a *B* then *G*, which note holds on well into the third measure before stopping. [This might best be described as a long held *phrase* since it is composed of more than one pitch, despite that first pitch being a much longer time value (dotted half note)]. The overall melodic contour pitch-shift = -.200.

---

[22] **Source: www.musictheory.net;** A *passing tone* (PT) is approached by step and then continues by step in the same direction.
[23] **Source: www.teoria.com;** *Neighbor note* or *auxiliary tone* are one or more notes that move from the main note by either diatonic or chromatic steps before returning again to the main note. They can be ascending or descending.

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 143 of 317



a) **Copeland** starts with the 7th (**G**) of the chord, **Am7**, then repeats the same pitch pattern (as was done before in Phrase #1) for the words, "somebody to love". The overall melodic contour pitch-shift = -.333.

b) **Bieber et al.** again starts with the 3rd of the **G** Major chord (**B**), then continues a lesser version of the same idea (as was done before in Phrase #1) for the words, "somebody to love" by going to the auxiliary tone and returning to the pitch, **B,** before repeating the same pitch pattern in measures 2 & 3 as was done in Phrase #1.  The overall melodic contour pitch-shift = -.286.

Given that the above observations are true, it is *suspicious* to me rather than simply coincidental that:

1. Both the initial pitch Copeland chose for the first measure and the initial pitch chosen by Bieber *et al.* are the closest harmony notes in the music universe---3rds (**G** versus **B**).  The reason for suspicion is that this is the easiest place from which to construct a like melody which would retain the feel and much of the effectiveness of a hook one wanted to copy.  Furthermore, the manipulation would be undetected by even a trained observer if they had never heard the original.

2. The same is also true for the initial pitches in both versions of the second measure---3rds (*E* versus *C*).

3. Comparisons of Phrase # 1 by both composers reveal a difference in Average Pitch-Shift of only -.05, both phrases being in the negative.  Comparisons of Phrase #2 by both composers show an Average Pitch-Shift difference of only -.047 (which rounds to -.05, once more).  Again, both phrases were in the negative.  These figures mean that these two phrases are very similar despite starting on different notes.  It also supports the earlier statement that the two melodies have a harmony-like relationship to each other.

**9.  *CONCLUSIONS:***

**The task I was assigned was to determine the relationship, if any, between these two songs of different copyright dates in a fair and unbiased manner, then to render my personal judgment as to that relationship or the lack thereof.**  To that end, I have responded to each category of inquiry separately before looking at the relationships between them *in toto*.  I also chose to employ a mathematician/statistical analyst (John Massey) to help design and implement means of independent testing.

Here is a list of the points of significant consideration:

Total Congruence List:

1. Both compositions bear the same title.

2. Both compositions share the same time signature. *Congruences 1 & 2 simply raise the question of authorship: does one song have anything to do with the other?*

3. Both compositions have a repeating underlying KBP 2-measure rhythm pattern for the *entire song*.  *The use of a KBP for the entire song was quite rare for any of the three song sets we examined, which corresponds with my professional experience. This is not unheard of, but is a point that adds to the overall similarity.*

4. Both introductions are *spoken*, rather than being an instrumental or sung. *Our statistical sampling revealed that a spoken introduction is unusual across all sample/population groups analyzed.  Once again, this corresponds with my professional experience in that it is not unheard but it is unusual, and adds to the overall similarity.*

5. Both choruses use the same hook, "I…need somebody to love".  *Only one word ("just") was added to the version that was copyrighted 2 years later than the original.  Otherwise, they are identical hooks lyrically.  The words "somebody to love" are not unusual at all.  But what makes the hook unique as a whole is combination of rhythm, lyrics, pitch, and placement of the notes within the measure.  The hooks are strikingly similar.*

6. Both use one measure of strategic silence just prior to or at the beginning of the chorus.  *Our test group of songs showed that strategic silences were occasionally used for dramatic effect, but* none *of the songs were* exactly *the same in their usage of this technique except for the two versions of "Somebody to Love".  Strategic silences are not unusual. However, the use in these two songs for the same musical effect is unusual, and constitutes a substantial similarity between the songs.*

**7.** Both versions use a scalar 7-chord to start the chorus. *None of the songs tested used a scalar 7-chord to begin the chorus. This includes all of the songs with writing credits to the Stereotypes or Bieber, so it is reasonable to say that this constitutes substantial similarity between the two versions of the song, "Somebody to Love", despite being just one chord and not copyrightable by itself. This analysis corresponds with my professional experience; the scalar 7-chord is not unusual, but using the scalar 7-chord to start a chorus is very unusual.*

**8.** Both versions use a scalar 4 minor 9-chord in the 2nd measure of the chorus. *Once again, none of the other songs tested used a scalar 4 minor 9-chord in the second measure of the chorus. This includes all of the songs with writing credits to the Stereotypes or Bieber. Consequently, this must also be considered a substantial similarity between the two versions of "Somebody to Love". The scalar 4 minor 9-chord is fairly rare in and of itself, and for it to appear at the same time and the same place in both songs makes it a similarity that is difficult to explain if the works were independently created.*

**9.** Both versions are 9 measures long for the chorus-proper. *The use of an odd number of chorus measures is extremely rare, occurring only three times in the song sets tested. One of the three was in a song written by the Stereotypes in 2007. In would consider this a similarity worthy of inclusion as a point of congruence only when looking at all the congruences as a whole.*

**10.** Both versions use the "call and response" form for the chorus-proper. *Once again, this is a technique of arrangement that can be implemented in a variety of ways. Its relevance here is that it is implemented essentially identically, as evidenced by the below points (13-17) of congruence. Even though "call and response" is not a new or unheard of musical technique, it is not used very often, and here the call and response structure is virtually identical. This is strikingly similar, and one of the strongest points of similarity between the songs.*

**11.** Both versions of "Somebody to Love" use nearly identical time values and sequences in the *first* phrase of each chorus. *Only three (6%) of the Billboard 100 songs we tested began a chorus with all eighth notes and none of the Bieber or Stereotypes songs did so. Musically, they are virtually identical; i.e., strikingly similar.*

**12.** Both versions of "Somebody to Love" use nearly identical time values and sequences in the *second* phrase of each chorus. *No songs in any of the three song sets reflected this timing in their second chorus measure. Only the 2 versions of "Somebody to Love" shared this characteristic in common. However, I would consider this a substantial similarity rather than a striking similarity.*

**13.** Both versions of "Somebody to Love" use nearly identical timings of "call and response" *entry* points within a measure.

**14.** Both versions of "Somebody to Love" use nearly identical timings of "call and response" *exit* points within a measure.

**15.** The *calls* of both versions of "Somebody to Love" share nearly **identical** opening lyrics (one word different, "just").

**16.** The *calls* of both versions of "Somebody to Love" share **identical** order and placements of the lyrics relative to their respective time values in each measure.

**17.** The *calls* of both versions of "Somebody to Love" share **identical** treatments (the last word of the lyric, "love", being a two-syllable long held note).

In my first exposure to the song version by Bieber, et al., it took about 10 seconds into hearing the chorus before I was sure that what I was hearing derived from the version written by DeRico Copeland. The reasons for this sureness took much more time to think through, explain, then

prove.  I believe that a layman would have little difficulty in hearing the similarity between the choruses of each version given that they were in the same key and at the same tempo.  It is my opinion that the difference between the expert's ear and the layman's is that the expert is not as blinded by the differences in tempo, key, rhythm and lyric.  It is my carefully considered opinion that there exists striking similarity between the two versions of "Somebody to Love" when all seventeen congruences are considered together.  This opinion is supported by the mathematical analysis:  my statistician says, "*That two songs could be written independently with these combined 17 similarities is so ridiculously small that the chances must be considered zero.*"  Another way of saying this is that the odds are in excess of a *trillion to one* that Bieber's version could have been written without borrowing heavily from the Copeland version.

After consideration of all the aspects of both song versions which have been tested and compared, not only to each other, but to many other songs, including those by Bieber *and* the Stereotypes, as well as including any other relevant information found in the course of this inquiry, I am forced to conclude that DeRico Copeland's song *is* the original and that Bieber *et al.*'s version copyrighted 2 years later has borrowed heavily from Copeland's version, whether intentionally or not, because there is no other explanation that encompasses *all* of the observed congruences between the two songs.

Duncan L. Wood

10-24-2012

ANALYSIS OF DUNCAN L. WOOD

APPENDIX 1

Statistical Analysis of 2009 – 2011 Pop Songs and Two Versions of "Somebody to Love" as Written by Copeland and Bieber

CONFIDENTIALITY NOTICE: This document is for the sole use of the intended recipient(s) and may contain confidential and privileged information or otherwise be protected by law. Any access, use, copy, disclosure or distribution of this document by anyone other than the intended recipient(s) is unauthorized and prohibited.

This analysis has been prepared for and in conjunction with Duncan L. Wood of DnD Enterprises, music analyst hired by DeRico Copeland, in order to investigate the possibility of copyright infringement. The statistical procedures and tests presented here were prepared by John Massey, Ed.D. Dr. Massey holds a BA degree in mathematics from Elon College (now Elon University), an MTS degree in mathematics from the College of William and Mary and an Ed.D. degree in Community College Curriculum and Instruction from Virginia Tech. Dr. Massey taught mathematics and statistics courses at Tidewater Community College before serving as academic dean at the Chesapeake Campus of TCC. He planned and developed the Norfolk Campus of TCC and served as the campus' first Provost. For the past eleven years, he established the college's Facilities Planning and Development department and served as the Director. As Director, he was responsible for the development of 1,000,000 square feet of new academic spaces for the college. Throughout his administrative career, Dr. Massey has used his statistical background for evaluation and planning purposes.

**The statistical analysis includes a review of a representative sample of pop songs from the 2009 – 2011 era and a review of the two versions of "Somebody to Love."** The Copeland version was written in 2008 and the Bieber version in 2010. The selected sample reflects pop writing of this period and will allow the best comparison of the song to the music trends and writing styles of the day. The same critical elements are considered for both the sample and the song in question.

**The sample consists of 41 songs taken from 2009-2011 era as representative of the pop song genre of the period.** The conjectures and arguments made in the narrative are tested against the sample as well as the two versions of "Somebody to Love." Though seemingly small in size, the sample of 41 songs, meets the criteria for an acceptable sample size needed to form conclusions regarding the population of pop songs from the era. As with any sample of a population there is always a chance the sample does not reflect the actual population.

**$X^2$ (chi-square) is the selected test of significance for the nonparametric data measured on nominal scales for a one-sample case.** In all instances, appropriate degrees of freedom have been used and all results are evaluated against an appropriate critical value for a .01 level of significance. Social science research has demonstrated the .01 level of significance is an appropriate level for statistical tests.

**A null hypothesis ($H_0$) and an alternative hypothesis ($H_a$) are stated for each test.** Retention or rejection of the null hypothesis is made as a result of comparing the value of the sample $X^2$ against the critical value. $X^2$ values greater than the critical value allow the null hypothesis to be rejected and the alternative hypothesis supported as tenable. Values less than the critical value retain the null hypothesis as tenable. Statistical tests never "prove" a result. Instead, they give strong evidence the hypothesis is true or false. The actual population characteristic or measure is never known unless the entire population is evaluated.

**Data collected for each song in the sample and the two versions of "Somebody to Love" included:**

1. name of the song
2. **Key** of the song
3. scalar number of the 1st chord of the first measure of the **Verse**
4. scalar number of the 1st chord of the first measure of the **Chorus**
5. whether the **Introduction** was instrumental, sung or spoken
6. whether the **Verse** or **Chorus** followed the introduction
7. transition chord number (i.e., the last chord prior) to the **Chorus** was identified
8. number of measures in the **Verse**
9. number of measures in the **Chorus**
10. each chord in the **Chorus** was identified by scalar number
11. each song was researched regarding the presence of a **call/response** characteristic and whether the call was associated with either the **Lead** or **Harmony** voices

**From the two versions of "Somebody to Love," additional information found included:**

Statistical Analysis of 2009 – 2011 Pop Songs and Two Versions of "Somebody to Love" as Written by Copeland and Bieber

1. note timings for each potential measure (given that the smallest note time value was an eighth note, ♪). The same must still be done to the sixteenth note level for this analysis to be completely accurate as regards the two songs in this case.
2. note pitches for each measure.

**Finally, a complete investigation of the melodies of each version has yet to be performed.** Due to time constraints, further analysis of the additional variables against the sample has not been completed to date.

The first hypothesis tested stated that the *number* of songs with an *even* number of measures in the verse was *equal* to the number of *odd* measures in the verse in our statistical sample of "hit" songs from the Billboard 100. This hypothesis assumed no predisposed musical convention for how many measures are used to write songs. The statistical test resulted in the rejection of the null hypothesis in favor of the alternative hypothesis that the number of songs with an odd number of measures does *not* equal the number of even measures. This rejection of the null hypothesis indicates the variances in the frequencies observed in the representative sample are *not* the result of random sampling fluctuation. Instead, there must be some explanation or cause for the variances observed.

**In this instance, the table reveals all of the songs are written with an *even* number of measures in the verse.** Both the Copeland and Bieber versions contain *15* measures for the verse. The use of an odd number of measures was not found in the representative sample. That both versions have the same number of verse measures and the number is odd raises questions regarding what *other* elements of the two versions are the same yet *different* from pop music of the era sampled.

**Both the Copeland and Bieber versions of the song contain 9 measures for the chorus.** Duncan Wood, the music analyst in charge of this project, says that the Bieber version adds an additional 4 measures to the chorus in order to extend the length of the chorus. The additional 4 measures, while technically belonging to the chorus, consist only of a repeated tag-line and do not contribute substantively to the chorus. Thus, the choruses examined here are essentially the *same* as regards the number of measures.

The second hypothesis tested stated the quantity of songs in our statistical sample of "hit" songs from the Billboard 100 with an even number of measures in the chorus was *equal* to the number of odd measures in the chorus. The alternative hypothesis stated that the number of odd measures was *less* than the number of even measures in the sample. The null hypothesis was rejected in favor of the alternative hypothesis. This indicates the variances in the frequencies observed in the representative sample are not the result of random sampling fluctuation. Instead, there must be some explanation or cause for the variances observed. In this instance, the table reveals *fewer* songs (only 2) were written with an *odd* number of chorus measures. That the Copeland and Bieber versions *both* have an odd number of chorus measures (9) is in direct contrast with pop music of the era tested.

A review of the sampled data reveals the occurrence of *odd* numbers of measures is quite unusual for verses or choruses. That the two versions of the songs have the same number of verse measures (15) and the same number of primary chorus measures (9) is remarkable based on the sample of BILLBOARD songs from 2009-2011.

**Both the Copeland and Bieber versions begin the song's introduction by speaking instead of singing or using only instruments.** A null hypothesis stated the likelihood was equal for beginning a song one of these three ways. The $X^2$ statistic was significant indicating a difference in song introductions. Inspection of the data revealed a small portion of the sampled songs had a spoken introduction. Again, the Copeland and Bieber versions differ from the representative sample, yet both versions use the same type of introduction.

**Both the Copeland and Bieber versions of the song use the same scalar number chord (4) to begin the song's verse.** A null hypothesis stated any of seven chord choices are equally likely to begin a song's verse. The null hypothesis was rejected. The data reveals the key's tonic chord is used to a greater extent than other chords. The "4" chord appeared only 17% of the time. The choice of the "4" chord to begin the verse is unusual, in terms of our statistical measurements, yet *both* versions of the song have the *same* first chord to start the verses.

Statistical Analysis of 2009 – 2011 Pop Songs and Two Versions of "Somebody to Love" as Written by Copeland and Bieber

**Both the Copeland and Bieber versions of the song use the 7-chord to transition/set-up the chorus.** The test hypothesis stated there is no difference between the chord choices selected to transition to the chorus. The null hypothesis was rejected and the alternate hypothesis supported as tenable. Inspection of the test data reveals 4- and 5- scalar chord numbers were the predominant transition to the chorus. The 7 chord was rarely used as the transition chord, equaling only 9.7% of the sample.

**Both versions of the song use a 4-measure pattern for the same overall number of measures in the chorus.** {Time has not permitted testing the frequency a 4-measure pattern occurs in pop music. The results of this test are important as part of a summary consideration of chord choices for the verses.} Both the Copeland and Bieber versions use (1) the same unlikely chord in the first measure of the verse, (2) the same 4-measure pattern, and (3) the same transition chord. The likelihood that *all three* of these characteristics would be found in a song in the pop music genre is highly unlikely. The probability a song has all three is at best .0051 or 5.1 ten thousandths. More likely the data will show an even smaller number with further testing.

 **Moving on to consideration of the chorus, both the Copeland and Bieber versions use the same beginning chord, the 7-chord.** The null hypothesis tested stated there is no difference in the choice of chords used for the first chord measure. The hypothesis was rejected. There *is* a difference in chords selected for the first chorus measure. Inspection of the data reveals the predominant chords for the first measure are the "1" and "4" chords. The "7" chord did not appear as the first chord of the first measure of the chorus in *any* of the sample songs. The lack of any "7" chords as the first chord of the first measure of the chorus does not mean they are missing in the population of 2009 – 2010. Instead, the lack of the "7" chord in our sample simply means that it is likely to be rarely found. So, while the use of the 7-chord for the first measure is highly unusual, *both* the Copeland and Bieber versions use this chord for the first chord of the first measure of the chorus.

Another interesting choice for the chorus found in the two versions is the use of the $iv_9$ (the 4-chord as a minor 9) in the chorus. Wood pointed out early on in our analysis that the use of a 4-chord as a minor 9 in *both* songs was unusual. **In my testing, I found that the choice of the $iv_9$ (rather than a straight minor or minor 7th) is *not* found in the representative sample, yet *both* the Copeland and Bieber versions use this variant of the "4" chord.** The choice of this chord cannot be explained by random sampling fluctuation.

**The Copeland and Bieber versions both use the "7" chord for the first measure and the "4" chord for the second measure.** This two-measure pattern found in the chorus is not found in *any* of the representative sample songs. The choice of this pattern cannot be explained by random sampling fluctuation.

**Both the Copeland and Bieber versions use a "call and response" technique in the chorus.** "Call and response" appears in numerous songs in a variety of genres. According to Wood, typically, the lead voice issues the call and the harmony voice provides the response. Both the Copeland and Bieber versions reverse the traditional order in favor of one that has the harmony voice making the call and the lead voice providing the response. Investigation of the sampled songs revealed only *one* of the 41 songs used a true call and response technique as it is currently defined. Contemporary pop music is nearly absent of call/response in this sample from 2009-2011, yet both the Copeland and Bieber not only use "call and response", but both use it *opposite* the traditional way. However, Wood does point out that traditional understanding of "call and response" should probably be updated to allow for more modern variations. Also, the one song from the sample that used "call and response" was found to be configured in the same manner as the Copeland/Bieber versions. Consequently, this usage would have to be considered *unlikely*, but not unique.

**Additional analysis reveals a number of other similarities and congruences between the two versions.** However, time has not permitted a statistical evaluation of the representative sample to determine if these congruences are either common in the pop music world or significantly different. For example, the rhythm measure just prior to the start of the chorus in each version is empty of the rhythm section (a whole note rest). This is believed by Wood to also be unusual and needs to be tested further to establish just how

Statistical Analysis of 2009 – 2011 Pop Songs and Two Versions of "Somebody to Love" as Written by Copeland and Bieber

unusual the use of this technique *is* as compared to the sample considering that *both* the Copeland and Bieber versions use it.

**Timing values/choices for the melody in each version for each measure of the chorus has not yet been addressed in depth nor the combination of chords and timings for each chorus measure.** The probability that Copeland and Bieber would select the same timing (all eighth notes) in the first measure (p = 1/18) and the same chord (G) for the first measure (p = 1/7) is at best .00793.

The probability for selecting the chord is actually smaller than 1/7 if acceptable variations of the chord are considered. This occurs in the selection of the chord for the second chorus measure. Both Copeland and Bieber selected the unusual $iv_9$ chord (already demonstrated to be significantly different than choruses in the sample). iv and $iv_7$ were two other potential "4" chord choices according to Wood. Conservatively, the probability for selecting the second chord is 1/9. When other chord choice variations are considered, the probability falls even lower.

In the second chord measure, Copeland selects a whole note while the Bieber version uses a dotted half note and two eighth notes. These timings can be considered equivalent timings. The use of the eighth notes at the end of the measure does not alter the essence of the song. Allowing for equivalent timings instead of exact timings changes the probability for selecting equivalent timings to 2/18 or 1/9. Thus, the probability of selecting the same chord and equivalent timing for the second chorus measure is at best .01234.

**Given the low probability of matching either of the two measures as stand alone measures, it is even more improbable they wrote the same two-measure sequence.** The probability to do so is .000098 or 9.8 in a hundred thousand.

There are measures in both versions that use a 1/16 note. Changing timings to include 1/16 note choices across the entire song would reduce the probabilities even further. This is not necessary given that the low probability at the eighth note speed clearly reveals these measures were not likely written by chance. The probability/likelihood is essentially 0.

**Finally, when comparing the Copeland and Bieber versions for chorus measure timings, the measure one timings are found to be exactly the same.** Four other measures (2,4,5,6) are found to be equivalent. Thus, 5 of the 9 measures are equal or equivalent. The probability that the timing of five measures would be equal or equivalent is .0000085 or 8.5 in a million or essentially 0.

**As evidenced by the data, there is a strong correlation between the Copeland and Bieber versions of "Somebody to Love".** Numerous congruences have been found between the two versions of the song. ==At the same time, the versions are significantly different from other pop songs of the 2009-2011 era.== Writing the two versions of the song could not have occurred by chance. Given that the Copeland version was written first (2008 vs. 2010), the data and statistical analysis strongly suggest the Bieber version could *not* have been written independently from the prior Copeland version.

Sample of Billboard "Hot 100" Songs Released 2009-2011 and Copyrighted 2008-2010 and

Two Versions of "Somebody to Love"

(All Other Justin Bieber Songs Excluded)

indicates Bionomial test required
all other questions require use of $X^2$

| Sng # | Song Title | Copyright Year | Highest Rank Billboard Hot 100 | Song Key | Intro Sing | Intro Speak | First Meas. V or C | Present in the Song Y or N | Lasts Entire Song Y or N | Chord #1st Measur | Number of Measure | M1 Chord# | M1 #Chords | M2 Chord# | M2 #Chords | M3 Chord# | M3 #Chords | M4 Chord# | M4 #Chords | M5 Chord# | M5 #Chords | M6 Chord# | M6 #Chords | M7 Chord# | M7 #Chords | M8 Chord# | M8 #Chords | M9 Chord# | M9 #Chords | M10 Chord# |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Airplanes | 2010 | 2 | F#m | 0 | 0 | C | Y | N | 1 | 16 | 1 | 1 | 6 | 2 | 1 | 1 | 6 | 2 | 1 | 1 | 6 | 2 | 1 | 1 | 6 | 2 | 1 | 1 | 6 |
| 2 | Bad Romance | 2009 | 2 | Am | 1 | 0 | N | Y | N | 1 | 20 | 6 | 1 | 7 | 1 | 1 | 1 | 3 | 1 | 6 | 1 | 7 | 1 | 5 | 1 | 1 | 1 | 6 | 1 | 7 |
| 3 | Alejandro | 2009 | 5 | Bm | 0 | 1 | V | Y | N | 1 | 12 | 6 | 2 | 7 | 2 | 6 | 2 | 7 | 2 | 6 | 2 | 6 | 2 | 7 | 2 | 6 | 2 | 7 |
| 4 | Billionaire | 2010 | 4 | A | 1 | 0 | C | N | N | 1 | 24 | 4 | 1 | 5 | 1 | 6 | 1 | 6 | 1 | 4 | 1 | 5 | 1 | 6 | 1 | 6 | 1 | 4 | 1 | 5 |
| 5 | Breakeven | 2008 | 12 | Bb | 0 | 1 | V | N | N | 6 | 8 | 4 | 2 | 5 | 2 | 4 | 2 | 5 | 2 | 4 | 2 | 5 | 2 | 4 | 2 | 5 | 2 | 6 | 1 | 1 |
| 6 | Live Like We're Dying | 2008 | 18 | C | 1 | 0 | V | N | N | 6 | 8 | 4 | 2 | 1 | 2 | 4 | 2 | 1 | 2 | 4 | 2 | 1 | 2 | 4 | 2 | 1 | 2 | 1 | 1 | 1 |
| 7 | California Gurls | 2010 | 1 | F | 0 | 1 | V | N | N | 1 | 8 | 1 | 2 | 5 | 2 | 1 | 2 | 5 | 2 | 1 | 2 | 5 | 2 | 5 | 2 | 1 | 2 | 5 |
| 8 | Cooler Than Me | 2009 | 6 | Bb | 0 | 0 | C | Y | N | 4 | 16 | 4 | 3 | 6 | 1 | 4 | 3 | 6 | 1 | 4 | 3 | 6 | 1 | 6 | 1 | 5 | 1 | 4 | 3 | 6 |
| 9 | Hey, Soul Sister | 2009 | 3 | E | 1 | 0 | V | Y | N | 1 | 16 | 4 | 1 | 5 | 3 | 4 | 1 | 5 | 3 | 4 | 1 | 1 | 5 | 5 | 1 | 5 | 1 | 6 | 2 | 4 |
| 10 | Today Was A Fairytale | 2010 | 2 | G | 0 | 0 | V | N | N | 1 | 16 | 4 | 1 | 1 | 1 | 6 | 1 | 5 | 1 | 4 | 1 | 1 | 1 | 5 | 1 | 5 | 1 | 5 | 2 | 4 |
| 11 | Mine | 2010 | 3 | G | 1 | 0 | V | N | N | 4 | 16 | 4 | 1 | 1 | 1 | 5 | 1 | 6 | 2 | 4 | 1 | 1 | 1 | 5 | 1 | 6 | 2 | 4 | 1 | 4 |
| 12 | Misery | 2010 | 14 | G | 1 | 0 | V | Y | N | 4 | 10 | 6 | 2 | 5 | 2 | 6 | 2 | 5 | 2 | 6 | 2 | 5 | 2 | 6 | 2 | 5 | 2 | 6 | 2 | 6 |
| 13 | Need You Now | 2009 | 2 | E | 0 | 0 | V | N | N | 1 | 14 | 1 | 1 | 1 | 1 | 3 | 1 | 3 | 1 | 1 | 1 | 1 | 1 | 3 | 1 | 3 | 1 | 4 | 1 | 4 |
| 14 | There Goes My Baby | 2010 | 25 | Am | 0 | 1 | C | N | N | 1 | 16 | 1 | 2 | 6 | 2 | 1 | 2 | 7 | 1 | 1 | 2 | 6 | 1 | 7 | 1 |  |  |  |
| 15 | Your Love Is My Drug | 2010 | 4 | F | 0 | 0 | V | N | N | 1 | 8 | 1 | 1 | 5 | 2 | 3 | 2 | 3 | 2 | 1 | 1 | 5 | 2 | 3 | 2 | 3 | 2 | 1 | 1 | 5 |
| 16 | Who Ya Want From Me | 2009 | 10 | Bm | 0 | 0 | V | Y | N | 1 | 16 | 6 | 2 | 1 | 2 | 6 | 2 | 1 | 2 | 6 | 2 | 1 | 2 | 6 | 2 | 1 | 2 | 6 | 1 | 1 |
| 17 | When I Look At You | 2009 | 16 | Em | 0 | 0 | V | N | N | 1 | 24 | 3 | 1 | 3 | 1 | 7 | 1 | 7 | 1 | 1 | 1 | 1 | 1 | 6 | 1 | 6 | 1 | 3 | 1 | 3 |
| 18 | Nothin On You | 2010 | 1 | Bb | 1 | 0 | C | Y | N | 1 | 16 | 1 | 1 | 4 | 1 | 1 | 1 | 4 | 1 | 1 | 1 | 4 | 1 | 1 | 1 | 5 | 1 | 5 | 1 | 4 |
| 19 | Just The Way You Are | 2010 | 1 | F | 1 | 0 | V | N | N | 1 | 16 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 6 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 4 |
| 20 | Teenage Dream | 2010 | 1 | Bb | 0 | 0 | V | N | N | 1 | 24 | 4 | 2 | 5 | 1 | 4 | 2 | 5 | 1 | 4 | 2 | 5 | 1 | 4 | 2 | 5 | 1 | 4 | 2 | 4 |
| 21 | Empire State Of Mind | 2009 | 1 | F | 0 | 0 | V | Y | Y | 1 | 16 | 4 | 1 | 4 | 1 | 1 | 1 | 5 | 3 | 4 | 1 | 4 | 1 | 1 | 1 | 1 | 1 | 5 | 1 | 4 |
| 22 | Replay | 2009 | 2 | F#m | 0 | 0 | C | N | N | 1 | 24 | 1 | 1 | 6 | 2 | 3 | 1 | 7 | 1 | 1 | 1 | 6 | 1 | 3 | 1 | 7 | 1 | 1 | 1 | 6 |
| 23 | Fireflies | 2009 | 1 | Eb | 0 | 0 | V | N | N | 5 | 8 | 4 | 2 | 5 | 2 | 4 | 2 | 1 | 2 | 4 | 2 | 4 | 3 | 4 | 2 | 2 | 2 |  |  |  |
| 24 | Whatcha Say | 2009 | 1 | Bb | 1 | 0 | C | N | N | 4 | 24 | 1 | 1 | 1 | 1 | 6 | 1 | 5 | 1 | 1 | 1 | 1 | 1 | 6 | 1 | 3 | 1 | 1 | 1 | 1 |
| 25 | Back To December | 2010 | 6 | D | 0 | 0 | V | N | N | 1 | 24 | 1 | 1 | 1 | 1 | 3 | 1 | 3 | 1 | 1 | 1 | 1 | 1 | 4 | 1 | 4 | 1 | 1 | 1 | 1 |
| 26 | King Of Anything | 2010 | 32 | Db | 1 | 0 | V | N | N | 1 | 20 | 6 | 1 | 4 | 1 | 1 | 1 | 5 | 1 | 6 | 1 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| 27 | Obsessed | 2009 | 7 | Eb | 1 | 0 | V | Y | Y | 4 | 8 | 4 | 1 | 6 | 1 | 4 | 1 | 6 | 1 | 6 | 2 | 4 | 2 | 6 | 1 |  |  |  |
| 28 | Battlefield | 2009 | 10 | Em | 0 | 0 | V | Y | Y | 1 | 8 | 7 | 1 | 4 | 2 | 7 | 1 | 6 | 2 | 7 | 3 | 6 | 2 | 7 | 2 | 6 | 2 | 7 |
| 29 | Firework | 2010 | 1 | Ab | 0 | 0 | V | N | N | 1 | 24 | 1 | 2 | 1 | 2 | 6 | 1 | 4 | 1 | 1 | 1 | 1 | 2 | 1 | 1 | 4 | 1 | 1 | 1 | 2 |
| 30 | Forget You | 2010 | 2 | C | 0 | 0 | C | N | N | 1 | 16 | 1 | 2 | 2 | 2 | 4 | 2 | 1 | 1 | 1 | 2 | 2 | 2 | 4 | 2 | 1 | 1 | 1 | 1 | 2 |
| 31 | Give A Little More | 2010 | 86 | Dm | 0 | 0 | V | N | N | 1 | 16 | 1 | 1 | 1 | 1 | 1 | 1 | 4 | 1 | 1 | 1 | 4 | 1 | 5 | 1 | 5 | 1 | 1 | 1 |  |
| 32 | Kiss A Girl | 2008 | 16 | D | 0 | 0 | V | Y | N | 1 | 12 | 1 | 1 | 5 | 1 | 4 | 1 | 4 | 1 | 1 | 1 | 5 | 1 | 6 | 1 | 4 | 1 | 5 | 1 | 2 |
| 33 | The House That Built Me | 2009 | 28 | F | 0 | 0 | V | N | N | 1 | 16 | 4 | 1 | 1 | 1 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 4 | 1 | 1 | 1 |  |
| 34 | Little Lion Man | 2009 | 45 | F | 0 | 0 | V | N | N | 6 | 16 | 6 | 2 | 1 | 1 | 6 | 2 | 1 | 1 | 6 | 2 | 1 | 1 | 5 | 2 | 6 | 1 | 1 |
| 35 | Marry Me | 2009 | 34 | C | 0 | 0 | V | N | N | 1 | 24 | 1 | 1 | 5 | 1 | 1 | 1 | 5 | 1 | 1 | 1 | 6 | 1 | 5 | 1 | 4 | 1 | 4 | 1 | 1 |
| 36 | Raise Your Glass | 2010 | 1 | G | 0 | 0 | V | Y | N | 1 | 16 | 1 | 3 | 4 | 1 | 4 | 3 | 5 | 1 | 1 | 3 | 4 | 1 | 4 | 3 | 5 | 1 | 1 | 3 | 4 |
| 37 | Secrets | 2009 | 21 | D | 0 | 0 | V | N | N | 1 | 16 | 1 | 1 | 4 | 1 | 1 | 1 | 4 | 1 | 1 | 1 | 4 | 1 | 1 | 1 | 1 | 1 | 4 |  |  |
| 38 | September | 2009 | 36 | Bb | 0 | 0 | V | N | N | 6 | 8 | 1 | 1 | 4 | 1 | 1 | 1 | 6 | 1 | 1 | 1 | 4 | 1 | 1 | 1 | 6 |  |  |  |
| 39 | We R Who We R | 2010 | 1 | Fm | 0 | 0 | V | N | N | 1 | 16 | 5 | 3 | 3 | 1 | 5 | 3 | 3 | 1 | 5 | 3 | 3 | 1 | 5 | 3 | 3 | 1 | 3 | 3 | 3 |
| 40 | What's My Name (NO INT) | 2010 | 1 | F#m | 0 | 0 | C | Y | N | 1 | 16 | 1 | 1 | 3 | 1 | 6 | 1 | 6 | 2 |  |  |  |  |  |  |  |  |  |  |  |
| 41 | Already Gone | 2009 | 13 | A | 0 | 0 | V | Y | N | 1 | 12 | 1 | 1 | 6 | 2 | 4 | 1 | 1 | 1 | 5 | 1 | 6 | 2 | 4 | 1 |  |  |  |

AJM 10/20/12

Sample of Billboard "Hot 100" Songs Released 2009-2011 and Copyrighted 2008-2010 and
Two Versions of "Somebody to Love"
(All Other Justin Bieber Songs Excluded)

| Sng # | Song Title | Copyright Year | Highest Rank Billboard Hot 100 | Song Key | Intro Sing | Intro Speak | First Meas. V or C | Present in the Song (Beat Pattern) Y or N | Lasts Entire Song Y or N | Chord #1st Measur | Number of Measure | Measure 1 Chord # | Measure 1 # Chords | 2 Chord # | 2 # Chords | 3 Chord # | 3 # Chords | 4 Chord # | 4 # Chords | 5 Chord # | 5 # Chords | 6 Chord # | 6 # Chords | 7 Chord # | 7 # Chords | 8 Chord # | 8 # Chords | 9 Chord # | 9 # Chords | 10 Chord # |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 42 | Chances | 2009 | 83 | Bb | 0 | 0 | V | N | N | 1 | 8 | 4 | 2 | 5 | 1 | 4 | 2 | 5 | 1 | 6 | 2 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | |
| 43 | The Climb | 2009 | 4 | E | 0 | 0 | V | N | N | 1 | 12 | 1 | 1 | 1 | 1 | 4 | 1 | 2 | 2 | 1 | 1 | 1 | 1 | 6 | 2 | 4 | 1 | 1 | 1 | |
| 44 | Come Back To Me | 2008 | 63 | E | 0 | 0 | V | N | N | 1 | 8 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 4 | 1 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | |
| 45 | Fallin' For You | 2009 | 12 | E | 0 | 0 | V | N | N | 1 | 16 | 1 | 1 | 5 | 1 | 4 | 1 | 5 | 1 | 1 | 1 | 5 | 1 | 4 | 1 | 5 | 1 | 1 | 1 | 5 |
| 46 | Her Diamonds | 2009 | 23 | G | 0 | 0 | V | N | N | 1 | 16 | 1 | 1 | 5 | 1 | 2 | 1 | 4 | 1 | 1 | 1 | 5 | 1 | 2 | 1 | 4 | 1 | 1 | 1 | 2 |
| 47 | Here We Go Again | 2009 | 15 | F | 0 | 0 | V | N | N | 1 | 12 | 1 | 4 | 1 | 3 | 5 | 1 | 5 | 1 | 2 | 1 | 2 | 1 | 4 | 1 | 4 | 1 | 1 | 1 | 4 |
| 48 | Life After You | 2009 | 36 | F | 0 | 0 | V | N | N | 6 | 12 | 4 | 2 | 5 | 2 | 4 | 2 | 5 | 1 | 4 | 2 | 5 | 2 | 4 | 2 | 6 | 1 | 4 | 2 | 6 |
| 49 | New Divide | 2009 | 6 | Fm | 0 | 0 | V | N | N | 1 | 16 | 1 | 1 | 1 | 1 | 7 | 1 | 4 | 1 | 1 | 1 | 3 | 1 | 7 | 1 | 7 | 1 | 1 | 1 | 3 |
| 50 | Party in the USA | 2009 | 2 | G | 0 | 0 | V | N | N | 1 | 14 | 1 | 3 | 6 | 2 | 1 | 3 | 6 | 2 | 1 | 3 | 6 | 2 | 1 | 3 | 6 | 2 | 1 | 3 | 6 |
| 51 | Smile | 2009 | 31 | E | 0 | 0 | V | N | N | 1 | 20 | 1 | 1 | 5 | 1 | 4 | 1 | 2 | 1 | 1 | 1 | 1 | 1 | 5 | 1 | 4 | 1 | 2 | 1 | 5 |
| 52 | You Belong With Me | 2008 | 2 | G | 0 | 0 | V | N | N | 1 | 24 | 1 | 1 | 1 | 1 | 5 | 1 | 5 | 1 | 2 | 1 | 2 | 1 | 4 | 1 | 4 | 1 | 1 | 1 | |

C =  Copeland
B =  Bieber, et. al

| C | Somebody to Love | 2008 | Did Not Chart | Am | 0 | 1 | V | Y | Y | 4 | 15 | 7 | 1 | 4 | 1 | 4 | 1 | 1 | 1 | 1 | 1 | 4 | 1 | 4 | 1 | 1 | 1 | 1 | 1 | |
| B | Somebody to Love | 2010 | 15 | Am | 0 | 1 | V | Y | Y | 4 | 15 | 7 | 1 | 4 | 1 | 6 | 1 | 7 | 1 | 7 | 1 | 4 | 1 | 6 | 1 | 7 | 1 | 7 | 1 | 4 |

Tag Lin

-JA743-

AJM 10/20/12

Sample of Billboard "Hot 100" Songs Released 2009-2011 and Copyrighted 2008-2010 and
Two Versions of "Somebody to Love"
(All Other Justin Bieber Songs Excluded)

| # Chords | 11 Chord # | 11 # Chords | 12 Chord # | 12 # Chords | 13 Chord # | 13 # Chords | 14 Chord # | 14 # Chords | 15 Chord # | 15 # Chords | 16 Chord # | 16 # Chords | 17 Chord # | 17 # Chords | 18 Chord # | 18 # Chords | 19 Chord # | 19 # Chords | 20 Chord # | 20 # Chords | 21 Chord # | 21 # Chords | 22 Chord # | 22 # Chords | 23 Chord # | 23 # Chords | 24 Chord # | 24 # Chords | 25 Chord # | 25 # Chords | 26 Chord # | 26 # Chords | 27 Chord # | 27 # Chords |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 1 | 3 | 1 | 6 | 1 | 7 | 1 | 5 | 1 | 1 | 1 | | | | | | | | | | | | | | | | | | | | | | |
| 2 | 6 | 2 | 7 | 2 | 6 | 2 | 7 | 2 | 6 | 2 | 7 | 2 | 1 | 2 | 2 | | 5 | 1 | | | 1 | 2 | 5 | 1 | | | | | | | | | | |
| 1 | 1 | 2 | 6 | 2 | 4 | 1 | 4 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | | | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 2 | 1 | 2 | 5 | 2 | 1 | 2 | 5 | 2 | 1 | 2 | 5 | 2 | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 4 | 3 | 6 | 1 | 4 | 3 | 6 | 1 | 4 | 1 | 5 | 1 | 5 | 1 | | | | | | | | | | | | | | | | | | | | |
| 2 | 6 | 2 | 5 | 1 | 1 | 2 | 4 | 1 | 6 | 2 | 5 | 1 | 1 | 2 | 4 | 1 | 6 | 2 | 5 | 1 | 1 | 4 | 4 | 1 | 6 | 2 | 5 | 1 | | | | | | |
| 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 2 | 6 | 2 | 5 | 2 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 4 | 1 | 4 | 1 | 4 | 1 | 6 | 1 | 6 | 1 | | | | | | | | | | | | | | | | | | | | | | | | |
| 2 | 3 | 2 | 3 | 2 | 1 | 1 | 5 | 2 | 3 | 2 | 3 | 2 | | | | | | | | | | | | | | | | | | | | | | |
| 2 | 6 | 2 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 7 | 1 | 7 | 1 | 1 | 1 | 1 | 1 | 6 | 1 | 6 | 1 | 3 | 1 | 3 | 1 | 7 | 1 | 7 | 1 | 1 | 1 | 1 | 1 | 6 | 1 | 6 | 1 | 3 | 1 | 3 | 1 | 7 | 1 |
| 1 | 2 | 1 | 2 | 1 | 3 | 1 | 3 | 1 | 5 | 1 | 5 | 1 | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 1 | 1 | 6 | 1 | 6 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 4 | 2 | 5 | 1 | 4 | 2 | 5 | 1 | 4 | 2 | 5 | 1 | | | | | | | | | | | | | | | | | | | | | | |
| 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 3 | 1 | 7 | 1 | 1 | 1 | 6 | 1 | 3 | 1 | 7 | 1 | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 6 | 1 | 5 | 1 | 4 | 1 | 1 | 1 | 6 | 1 | 3 | 1 | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 3 | 1 | 3 | 1 | 4 | 1 | 4 | 1 | 1 | 1 | 5 | 1 | 4 | 1 | 4 | 1 | 6 | 1 | 5 | 1 | | | | | | | | | | | | | | |
| 1 | 4 | 2 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 3 | 6 | 2 | 7 | 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 6 | 1 | 4 | 1 | 1 | 1 | 2 | 1 | 6 | 1 | 4 | 1 | | | | | | | | | | | | | | | | | | | | | | |
| 2 | 4 | 2 | 1 | 1 | 1 | 2 | 2 | 2 | 4 | 3 | 1 | 1 | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 4 | 1 | 4 | 1 | 6 | 1 | 5 | 1 | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 1 | 1 | 5 | 1 | 4 | 1 | 4 | 1 | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 6 | 1 | 6 | 1 | 4 | 1 | 4 | 1 | 1 | 1 | 1 | 1 | 4 | 1 | 4 | 1 | 1 | 1 | 5 | 1 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | |
| 1 | 5 | 1 | 4 | 1 | 6 | 1 | 5 | 1 | 4 | 1 | 4 | 1 | 5 | 1 | 5 | 1 | 4 | 1 | 4 | 1 | 4 | 1 | 4 | 1 | | | | | | | | | | |
| 1 | 4 | 3 | 5 | 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 6 | 3 | 1 | 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 5 | 3 | 3 | 1 | 5 | 1 | 3 | 1 | 3 | 1 | 5 | 3 | 3 | 1 | 3 | 1 | 3 | 1 | | | | | | | | | | | | | | | | |

AJM 10/20/12

Sample of Billboard "Hot 100" Songs Released 2009-2011 and Copyrighted 2008-2010 and
Two Versions of "Somebody to Love"
(All Other Justin Bieber Songs Excluded)

| | 11 | | 12 | | 13 | | 14 | | 15 | | 16 | | 17 | | 18 | | 19 | | 20 | | 21 | | 22 | | 23 | | 24 | | 25 | | 26 | | 27 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords |
| 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 4 | 1 | 4 | 2 | 1 | 1 | 1 | 1 | | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 4 | 1 | 5 | 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 3 | 5 | 1 | 5 | 1 | 2 | 1 | 2 | 1 | 4 | 1 | 4 | 1 | 1 | 1 | | | | | | | | | | | | | | | | | | | | | |
| 1 | 4 | 1 | 1 | 1 | 5 | 1 | 5 | 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 7 | 1 | 4 | 1 | 6 | 1 | 6 | 1 | 7 | 1 | 7 | 1 | 1 | 1 | 1 | 1 | 7 | 1 | 4 | 1 | | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1 | 6 | 1 | 4 | 1 | 1 | 1 | 5 | 1 | 4 | 1 | 2 | 1 | 1 | 1 | 2 | 1 | 4 | 1 | 4 | 1 | | | | | | | | | | | | | | | |

| 1 | 6 | 1 | 7 | 1 | 7 | 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

es

AJM 10/20/12

Sample of Billboard "Hot 100" Songs Released 2009-2011 and Copyrighted 2008-2010 and
Two Versions of "Somebody to Love"
(All Other Justin Bieber Songs Excluded)

| 28 | | 29 | | 30 | | 31 | | 32 | | 33 | | 34 | | Tag Lines | Call Response | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Use of Tag Lines yes/no | Call/ Response | First Measure Chorus | First Measure Verse |
| | | | | | | | | | | | | | | Y | 0 | 1 | 0 |
| | | | | | | | | | | | | | | Y | 0 | 0 | 0 |
| | | | | | | | | | | | | | | Y | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 1 | 0 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 1 | 0 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | Y | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 1 | 0 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | Y | 0 | 0 | 1 |
| 7 | 1 | 1 | 1 | 1 | 1 | 6 | 1 | 6 | 1 | 1 | 1 | 1 | 1 | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 1 | 0 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 1 | 0 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 1 | 0 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 1 | 0 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 1 | 0 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |

AJM 10/20/12

Sample of Billboard "Hot 100" Songs Released 2009-2011 and Copyrighted 2008-2010 and
Two Versions of "Somebody to Love"
(All Other Justin Bieber Songs Excluded)

| 28 | | 29 | | 30 | | 31 | | 32 | | 33 | | 34 | | Use of Tag Lines | Call/ Response | First Measure | First Measure |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | yes/no | | Chorus | Verse |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | Y | 0 | 0 | 1 |
| | | | | | | | | | | | | | | Y | 1 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| | | | | | | | | | | | | | | N | 0 | 0 | 1 |
| Totals | | | | | | | | | | | | | | | 1 | 9 | 42 |

| | | | | | | | | | | | | | | N | 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | Y | 1 |

AJM 10/20/12

Sample of Billboard "Hot 100" Songs Released 2009-2011 and Copyrighted 2008-2010
(Justin Bieber Songs Excluded)

| Sng # | Song Title | Sng Key | Intro Sing | Intro Speak | First Measure V or C | Chord #1st Measure | # of Measures | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Airplanes | F#m | 1 | 0 | C | 1 | 16 | 1 | 6 | 1 | 6 | 1 | 6 | 1 | 6 | | | | |
| 2 | Bad Romance | Am | 1 | 0 | C | 1 | 20 | 6 | 7 | 1 | 3 | 6 | 7 | 5 | 1 | 6 | 7 | 1 | 3 |
| 3 | Alejandro | Bm | 0 | 1 | V | 1 | 12 | 6 | 7 | 6 | 7 | 6 | 7 | 6 | 7 | 6 | 7 | 6 | 7 |
| 4 | Billionaire | A | 1 | 0 | C | 1 | 24 | 4 | 5 | 6 | 6 | 4 | 5 | 6 | 6 | 4 | 5 | 1 | 6 |
| 5 | Breakeven | Bb | 0 | 1 | V | 6 | 8 | 4 | 5 | 4 | 5 | 4 | 5 | 4 | 5 | 6 | 1 | | |
| 6 | Live Like We're Dying | C | 1 | 0 | V | 6 | 8 | 4 | 1 | 4 | 1 | 4 | 1 | 4 | 1 | 1 | 1 | | |
| 7 | California Gurls | F | 0 | 1 | V | 1 | 8 | 1 | 5 | 1 | 5 | 1 | 5 | 1 | 5 | 1 | 5 | 1 | 5 |
| 8 | Cooler Than Me | Bb | 0 | 0 | C | 4 | 16 | 4 | 6 | 4 | 6 | 4 | 6 | 6 | 6 | 5 | 4 | 6 | 4 |
| 9 | Hey, Soul Sister | E | 1 | 0 | V | 1 | 16 | 4 | 5 | 4 | 5 | 4 | 5 | 4 | 5 | | | | |
| 10 | Today Was A Fairytale | G | 0 | 0 | V | 1 | 16 | 4 | 4 | 5 | 4 | 4 | 5 | 5 | 5 | 4 | 4 | 6 | 5 |
| 11 | Mine | G | 1 | 0 | V | 4 | 16 | 4 | 1 | 5 | 6 | 4 | 1 | 5 | 6 | 4 | 4 | | |
| 12 | Misery | G | 1 | 0 | V | 4 | 10 | 6 | 5 | 6 | 5 | 5 | 6 | 5 | 6 | 5 | 5 | | |
| 13 | Need You Now | E | 0 | 0 | V | 4 | 14 | 1 | 1 | 3 | 3 | 1 | 1 | 3 | 3 | 4 | 4 | 4 | 4 |
| 14 | There Goes My Baby | Am | 0 | 1 | C | 1 | 16 | 1 | 6 | 1 | 7 | 1 | 6 | 6 | 7 | | | | |
| 15 | Your Love Is My Drug | F | 0 | 1 | V | 1 | 8 | 1 | 5 | 3 | 3 | 1 | 5 | 3 | 3 | 1 | 5 | 3 | 3 |
| 16 | What Ya Want From Me | Bm | 0 | 0 | V | 1 | 16 | 6 | 1 | 6 | 1 | 6 | 1 | 6 | 1 | 6 | 1 | 6 | |
| 17 | When I Look At You | Em | 0 | 0 | V | 1 | 24 | 3 | 3 | 7 | 7 | 1 | 1 | 6 | 6 | 3 | 3 | 7 | 7 |
| 18 | Nothin On You | Bb | 1 | 0 | C | 4 | 16 | 4 | 4 | 2 | 2 | 3 | 3 | 5 | 5 | 4 | 4 | 2 | 2 |
| 19 | Just The Way You Are | F | 1 | 0 | V | 1 | 16 | 1 | 1 | 6 | 6 | 1 | 1 | 1 | 1 | 1 | 1 | 6 | |
| 20 | Teenage Dream | G | 0 | 0 | V | 1 | 24 | 4 | 5 | 4 | 5 | 4 | 5 | 4 | 5 | 4 | 5 | | |
| 21 | Empire State Of Mind | F | 0 | 0 | V | 1 | 16 | 4 | 1 | 5 | 4 | 1 | 5 | 4 | 4 | | | | |
| 22 | Replay | F#m | 0 | 0 | C | 1 | 24 | 1 | 6 | 3 | 7 | 1 | 6 | 3 | 7 | 1 | 6 | 3 | 7 |
| 23 | Fireflies | Eb | 0 | 0 | V | 5 | 8 | 4 | 5 | 4 | 1 | 4 | 4 | 4 | 2 | | | | |
| 24 | Whatcha Say | Bb | 1 | 0 | C | 4 | 24 | 4 | 1 | 6 | 5 | 4 | 1 | 6 | 3 | 4 | 1 | 6 | 5 |
| 25 | Back To December | D | 0 | 0 | V | 1 | 24 | 1 | 1 | 3 | 3 | 4 | 1 | 5 | 1 | 1 | 3 | 3 | |
| 26 | King Of Anything | Db | 1 | 0 | V | 1 | 20 | 6 | 4 | 1 | 5 | 5 | 6 | 4 | 1 | 5 | 1 | 2 | 6 |
| 27 | Obsessed | Eb | 1 | 0 | V | 4 | 8 | 4 | 6 | 4 | 6 | 4 | 6 | | | | | | |
| 28 | Battlefield | Em | 0 | 0 | V | 1 | 8 | 4 | 7 | 4 | 7 | 6 | 7 | 6 | 7 | 6 | 7 | 6 | 7 |
| 29 | Firework | Ab | 0 | 0 | V | 1 | 24 | 1 | 2 | 6 | 4 | 1 | 2 | 6 | 4 | 1 | 2 | 6 | 4 |
| 30 | Forget You | C | 0 | 0 | C | 1 | 16 | 1 | 2 | 4 | 1 | 1 | 2 | 4 | 1 | 1 | 2 | 4 | 1 |
| 31 | Give A Little More | Dm | 0 | 0 | V | 1 | 16 | 1 | 1 | 1 | 1 | 4 | 4 | 5 | 5 | 1 | 1 | 1 | 1 |
| 32 | Kiss A Girl | D | 0 | 0 | V | 1 | 12 | 1 | 5 | 4 | 1 | 4 | 1 | 5 | 6 | 4 | 5 | 2 | 1 |
| 33 | The House That Built M | F | 0 | 0 | V | 1 | 16 | 4 | 1 | 4 | 1 | 1 | 2 | 2 | 1 | 1 | 4 | 4 | 6 |
| 34 | Little Lion Man | F | 0 | 0 | V | 6 | 16 | 6 | 1 | 6 | 1 | 1 | 6 | 1 | 5 | 5 | | | |
| 35 | Marry Me | C | 0 | 0 | V | 1 | 24 | 1 | 1 | 5 | 5 | 6 | 5 | 4 | 4 | 1 | 1 | 5 | 5 |
| 36 | Raise Your Glass | G | 0 | 0 | V | 1 | 16 | 1 | 4 | 5 | 1 | 4 | 4 | 5 | 1 | 1 | 4 | 4 | 5 |
| 37 | Secrets | Eb | 0 | 0 | V | 1 | 8 | 1 | 3 | 6 | 4 | 1 | 3 | 6 | 4 | | | | |
| 38 | September | Bb | 0 | 0 | V | 6 | 8 | 1 | 4 | 5 | 4 | 1 | 4 | 6 | 4 | 6 | 1 | | |
| 39 | We R Who We R | Fm | 0 | 0 | V | 5 | 6 | 5 | 3 | 5 | 3 | 5 | 3 | 5 | 3 | 5 | 3 | 5 | 3 |
| 40 | What's My Name (NO I | F#m | 0 | 0 | C | 1 | 16 | 1 | 3 | 6 | 6 | 1 | 3 | 6 | 6 | | | | |
| 41 | Already Gone | A | 0 | 0 | V | 1 | 12 | 1 | 5 | 6 | 4 | 1 | 5 | 6 | 4 | | | | |
| 42 | Chances | Bb | 0 | 0 | V | 1 | 16 | 4 | 5 | 4 | 5 | 6 | 4 | 1 | 1 | | | | |
| 43 | The Climb | E | 0 | 0 | V | 1 | 12 | 1 | 1 | 4 | 2 | 1 | 1 | 6 | 4 | 1 | 1 | | |
| 44 | Come Back To Me | E | 0 | 0 | V | 1 | 8 | 1 | 1 | 1 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 4 | |
| 45 | Fallin' For You | E | 0 | 0 | V | 1 | 16 | 1 | 5 | 4 | 5 | 1 | 5 | 4 | 5 | 1 | 5 | 4 | 5 |
| 46 | Her Diamonds | G | 0 | 0 | V | 1 | 16 | 1 | 5 | 2 | 4 | 1 | 5 | 2 | 4 | 1 | 2 | | |
| 47 | Here We Go Again | G | 0 | 0 | V | 1 | 18 | 4 | 1 | 1 | 5 | 5 | 2 | 2 | 4 | 4 | 1 | 1 | 5 |
| 48 | Life After You | G | 0 | 0 | V | 6 | 12 | 4 | 1 | 1 | 5 | 5 | 4 | 4 | 6 | 4 | 6 | 4 | 1 |
| 49 | New Divide | Fm | 0 | 0 | V | 1 | 16 | 4 | 1 | 1 | 7 | 4 | 1 | 3 | 7 | 7 | 1 | 3 | 7 |
| 50 | Party in the USA | G | 0 | 0 | V | 1 | 14 | 1 | 6 | 1 | 6 | 1 | 6 | 1 | 6 | 1 | 6 | | |
| 51 | Smile | E | 0 | 0 | V | 1 | 20 | 2 | 1 | 5 | 4 | 2 | 1 | 5 | 4 | 2 | 1 | 5 | 6 |
| 52 | You Belong With Me | G | 0 | 0 | V | 1 | 24 | 1 | 1 | 5 | 5 | 2 | 2 | 4 | 4 | | | | |

## Sample of Billboard "Hot 100" Songs Released 2009-2011 and Copyrighted 2008-2010
### (Justin Bieber Songs Excluded)

| 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | Chrd # of |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chord # | Chord # | Chord # | Chord # | Chord # | Chord # | Chord # | Chord # | Chord # | Chord # | Chord # | Chord # | Chord # | Chord # | Chord # | Chord # | Chord # | Chord # | Chord # | Chord # | Chord # | Chord # | |
| | | | | | | | | | | | | | | | | | | | | | | 8 |
| 6 | 7 | 5 | 1 | | | | | | | | | | | | | | | | | | | 16 |
| 6 | 7 | 6 | 7 | 1 | 5 | 1 | 5 | | | | | | | | | | | | | | | 20 |
| 4 | 4 | 3 | 3 | 3 | 3 | | | | | | | | | | | | | | | | | 18 |
| | | | | | | | | | | | | | | | | | | | | | | 10 |
| | | | | | | | | | | | | | | | | | | | | | | 10 |
| 1 | 5 | 1 | 5 | | | | | | | | | | | | | | | | | | | 16 |
| 4 | 6 | 4 | 5 | | | | | | | | | | | | | | | | | | | 16 |
| | | | | | | | | | | | | | | | | | | | | | | 8 |
| 1 | 4 | 6 | 5 | 1 | 4 | 6 | 5 | 1 | 4 | 6 | 5 | | | | | | | | | | | 24 |
| | | | | | | | | | | | | | | | | | | | | | | 10 |
| | | | | | | | | | | | | | | | | | | | | | | 12 |
| 4 | | | | | | | | | | | | | | | | | | | | | | 13 |
| | | | | | | | | | | | | | | | | | | | | | | 8 |
| 1 | 5 | 3 | 3 | | | | | | | | | | | | | | | | | | | 16 |
| | | | | | | | | | | | | | | | | | | | | | | 11 |
| 1 | 1 | 6 | 6 | 3 | 3 | 7 | 7 | 1 | 1 | 6 | 6 | 3 | 3 | 7 | 7 | 1 | 1 | 6 | 6 | 1 | 1 | 34 |
| 3 | 3 | 5 | 5 | | | | | | | | | | | | | | | | | | | 16 |
| 6 | 1 | 1 | 1 | | | | | | | | | | | | | | | | | | | 16 |
| 4 | 5 | 4 | 5 | | | | | | | | | | | | | | | | | | | 16 |
| | | | | | | | | | | | | | | | | | | | | | | 10 |
| 1 | 6 | 3 | 7 | | | | | | | | | | | | | | | | | | | 16 |
| | | | | | | | | | | | | | | | | | | | | | | 8 |
| 4 | 1 | 6 | 3 | | | | | | | | | | | | | | | | | | | 16 |
| 4 | 4 | 1 | 5 | 4 | 4 | 6 | 5 | | | | | | | | | | | | | | | 20 |
| | | | | | | | | | | | | | | | | | | | | | | 12 |
| | | | | | | | | | | | | | | | | | | | | | | 6 |
| | | | | | | | | | | | | | | | | | | | | | | 12 |
| 1 | 2 | 6 | 4 | | | | | | | | | | | | | | | | | | | 16 |
| 1 | 2 | 4 | 1 | | | | | | | | | | | | | | | | | | | 16 |
| 4 | 4 | 6 | 5 | | | | | | | | | | | | | | | | | | | 16 |
| 4 | 4 | | | | | | | | | | | | | | | | | | | | | 14 |
| 4 | 4 | 1 | 1 | 4 | 4 | 1 | 1 | 5 | 5 | 1 | 1 | 1 | 1 | | | | | | | | | 26 |
| | | | | | | | | | | | | | | | | | | | | | | 8 |
| 6 | 5 | 4 | 4 | 5 | 5 | 4 | 4 | 1 | 1 | 4 | 4 | | | | | | | | | | | 24 |
| | | | | | | | | | | | | | | | | | | | | | | 12 |
| | | | | | | | | | | | | | | | | | | | | | | 8 |
| | | | | | | | | | | | | | | | | | | | | | | 12 |
| 5 | 3 | 5 | 3 | 5 | 3 | 5 | 3 | 5 | 3 | 5 | 3 | | | | | | | | | | | 24 |
| | | | | | | | | | | | | | | | | | | | | | | 8 |
| | | | | | | | | | | | | | | | | | | | | | | 8 |
| | | | | | | | | | | | | | | | | | | | | | | 8 |
| | | | | | | | | | | | | | | | | | | | | | | 10 |
| 4 | 4 | 1 | 1 | | | | | | | | | | | | | | | | | | | 16 |
| | | | | | | | | | | | | | | | | | | | | | | 12 |
| | | | | | | | | | | | | | | | | | | | | | | 10 |
| 5 | 2 | 2 | 4 | 4 | 1 | | | | | | | | | | | | | | | | | 18 |
| 5 | 5 | | | | | | | | | | | | | | | | | | | | | 14 |
| 4 | 6 | 6 | 7 | 7 | 1 | 1 | 7 | | | | | | | | | | | | | | | 20 |
| | | | | | | | | | | | | | | | | | | | | | | 10 |
| 4 | 1 | 5 | 4 | 2 | 1 | | | | | | | | | | | | | | | | | 18 |
| | | | | | | | | | | | | | | | | | | | | | | 8 |

AJM 10/20/12

Sample of Billboard "Hot 100" Songs Released 2009-2011 and Copyrighted 2008-2010
(Justin Bieber Songs Excluded)

| 1a | 2a | 3a | 4a | 5a | 6a | 7a | 8a | 9a | 10a | 11a | 12a | 13a | 14a | 15a | 16a | 17a | 18a | 19a | 20a | 21a | 22a |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| # Chords | # Chords | # Chords | # Chords | # Chords | # Chords | # Chords | # Chords | # Chords | # Chords | # Chords | # Chords | # Chords | # Chords | # Chords | # Chords | # Chords | # Chords | # Chords | # Chords | # Chords | # Chords |
| 1 | 2 | 1 | 2 | 1 | 2 | 1 | 2 | | | | | | | | | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | | |
| 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 | 2 | 1 | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | | | | | |
| 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | | | | | | | | | | | | |
| 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 | 1 | | | | | | | | | | | | |
| 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | | | | | | |
| 3 | 1 | 3 | 1 | 3 | 1 | 1 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 1 | 1 | | | | | | |
| 1 | 3 | 1 | 3 | 1 | 3 | 1 | 1 | | | | | | | | | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 1 | 2 | 1 | 2 | 1 | 2 | 1 | 2 | 1 | 4 | 1 |
| 1 | 1 | 1 | 2 | 1 | 1 | 1 | 2 | 1 | 1 | | | | | | | | | | | | |
| 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | | | | | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | | | | |
| 2 | 2 | 2 | 1 | 2 | 2 | 1 | 1 | | | | | | | | | | | | | | |
| 1 | 2 | 2 | 2 | 1 | 2 | 2 | 2 | 1 | 2 | 2 | 2 | 1 | 2 | 2 | 2 | | | | | | |
| 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | | | | | | | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | |
| 2 | 1 | 2 | 1 | 2 | 1 | 2 | 1 | 2 | 1 | 2 | 1 | 2 | 1 | 2 | 1 | | | | | | |
| 1 | 1 | 1 | 3 | 1 | 1 | 1 | 3 | 1 | 1 | | | | | | | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | |
| 2 | 1 | 2 | 2 | 2 | 3 | 2 | 2 | | | | | | | | | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | | | | | | | | | | | |
| 1 | 1 | 1 | 2 | 1 | 1 | 1 | | | | | | | | | | | | | | | |
| 2 | 1 | 2 | 1 | 2 | 3 | 2 | 2 | 2 | 3 | 2 | 1 | | | | | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | | | |
| 2 | 2 | 2 | 1 | 2 | 2 | 2 | 1 | 2 | 2 | 2 | 1 | 2 | 2 | 3 | 1 | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | |
| 2 | 1 | 2 | 1 | 2 | 1 | 2 | 1 | | | | | | | | | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | | | | |
| 3 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | | | | | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | | | | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | | | | | | | | | | | |
| 3 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 3 | 1 |
| 1 | 1 | 1 | 2 | 1 | 1 | 1 | 2 | | | | | | | | | | | | | | |
| 1 | 1 | 2 | 1 | 1 | 1 | 2 | | | | | | | | | | | | | | | |
| 2 | 1 | 2 | 1 | 2 | 1 | 1 | | | | | | | | | | | | | | | |
| 1 | 1 | 1 | 2 | 1 | 1 | 2 | 1 | 1 | 1 | | | | | | | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 1 | 1 | | | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | | | | | |
| 1 | 4 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 4 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | |
| 2 | 2 | 2 | 1 | 2 | 2 | 2 | 1 | 2 | 1 | 1 | 1 | 1 | 1 | | | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | |
| 3 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | | | | | | | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | | | | | | | | | | |

AJM 10/20/12

Sample of Billboard "Hot 100" Songs Released 2009-2011 and Copyrighted 2008-2010
(Justin Bieber Songs Excluded)

| 23a | 24a | 25a | 26a | 27a | 28a | 29a | 30a | 31a | 32a | 33a | 34a |
|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| Chords | Chords | Chords | Chords | Chords | Chords | Chords | Chords | Chords | Chords | Chords | Chords |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| 2 | 1 | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| 1 | 1 | 1 | 1 | | | | | | | | |
| | | | | | | | | | | | |
| 1 | 1 | | | | | | | | | | |
| | | | | | | | | | | | |
| 3 | 1 | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

10

AJM 10/20/12

Sample of Billboard "Hot 100" Songs Released 2009-2011 and Copyrighted 2008-2010

Justin Bieber Songs Excluded

Data Tables and Statistical Tests

| | Test One | Test Three | | Test One | Test Three | Test Two | | Test Four | Test Five | | Test Six | | | | Test Se |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Song Number | Number of Verse Measures | Number of Chorus Measures | | Odd # Verse Measures | Odd # Chorus Measures | Tag Lines | | Keystone Beat Pattern | KBP entire song | | Introduction Instrumental 36 | Sung 11 | Spoken 4 | | Verse/C After Introdu v |
| 1 | 16 | 8 | | | | 1 | | 1 | | | | | | | |
| 2 | 20 | 16 | | | | 1 | | 1 | | | | | | | NA |
| 3 | 12 | 20 | | | | 1 | | 1 | | | | | | | 1 |
| 4 | 24 | 18 | | | | | | 1 | | | | | | | 1 |
| 5 | 8 | 10 | | | | | | | | | | | | | 1 |
| 6 | 8 | 10 | | | | | | | | | | | | | 1 |
| 7 | 8 | 16 | | | | | | | | | | | | | 1 |
| 8 | 16 | 16 | | | | | | 1 | | | | | | | 1 |
| 9 | 16 | 8 | | | | | | | | | | | | | 1 |
| 10 | 16 | 24 | | | | 1 | | | | | | | | | 1 |
| 11 | 16 | 10 | | | | | | | | | | | | | 1 |
| 12 | 10 | 12 | | | | | | | | | | | | | 1 |
| 13 | 14 | 13 | | | 1 | | | | 1 | | | | | | 1 |
| 14 | 16 | 8 | | | | | | | | | | | | | 1 |
| 15 | 8 | 16 | | | | | | | | | | | | | 1 |
| 16 | 16 | 11 | | | 1 | 1 | | | | | | | | | 1 |
| 17 | 24 | 34 | | | | | | | | | | | | | 1 |
| 18 | 16 | 16 | | | | | | | | | | | | | 1 |
| 19 | 16 | 16 | | | | | | | | | | | | | 1 |
| 20 | 24 | 16 | | | | | | | | | | | | | 1 |
| 21 | 16 | 10 | | | | | | 1 | 1 | | | | | | 1 |
| 22 | 24 | 16 | | | | | | | | | | | | | 1 |
| 23 | 8 | 8 | | | | | | | | | | | | | 1 |
| 24 | 24 | 16 | | | | | | | | | | | | | 1 |
| 25 | 24 | 20 | | | | | | | | | | | | | 1 |
| 26 | 20 | 12 | | | | | | | | | | | | | 1 |
| 27 | 8 | 6 | | | | | | 1 | 1 | | | | | | 1 |
| 28 | 8 | 12 | | | | | | 1 | 1 | | | | | | 1 |
| 29 | 24 | 16 | | | | | | | | | | | | | 1 |
| 30 | 16 | 16 | | | | | | | | | | | | | 1 |
| 31 | 16 | 16 | | | | | | | | | | | | | 1 |
| 32 | 12 | 14 | | | | | | | | | | | | | 1 |
| 33 | 16 | 26 | | | | | | | | | | | | | 1 |
| 34 | 16 | 8 | | | | | | | | | | | | | 1 |
| 35 | 24 | 24 | | | | | | | | | | | | | 1 |
| 36 | 16 | 12 | | | | | | 1 | | | | | | | 1 |
| 37 | 8 | 8 | | | | | | | | | | | | | 1 |
| 38 | 8 | 12 | | | | | | | | | | | | | 1 |
| 39 | 6 | 24 | | | | | | | | | | | | | 1 |
| 40 | 16 | 8 | | | | | | | | | | | | | 1 |
| 41 | 12 | 8 | | | | | | | | | | | | | 1 |
| 42 | 8 | 8 | | | | | | | | | | | | | 1 |
| 43 | 12 | 10 | | | | | | | | | | | | | 1 |
| 44 | 8 | 16 | | | | | | | | | | | | | 1 |
| 45 | 16 | 12 | | | | | | | | | | | | | 1 |
| 46 | 16 | 10 | | | | | | | | | | | | | 1 |
| 47 | 19 | 18 | | 1 | | 1 | | | | | | | | | 1 |
| 48 | 12 | 14 | | | | 1 | | | | | | | | | 1 |
| 49 | 16 | 20 | | | | | | | | | | | | | 1 |
| 50 | 14 | 10 | | | | | | | | | | | | | 1 |
| 51 | 20 | 18 | | | | | | | | | | | | | 1 |
| 52 | 24 | 8 | | | | | | | | | | | | | 1 |
| Total | | | | 1 | 2 | 7 | | 16 | 5 | | | | | | 42 |

$X^2 = (o-e)^2/e$    Where o is the observed value and e is the expected value

Null hypothesis rejected when $X^2$ is greater or to the right of the critical value of the test statistic.

AJM 10/20/12

Sample of Billboard "Hot 100" Songs Released 2009-2011 and Copyrighted 2008-2010

Justin Bieber Songs Excluded

Data Tables and Statistical Tests

$z(y) = (t-np)/(npq)^{.5}$    Where t is the observed value, n is the total value, p is the probability of "success" and q is the probability of "non-succe
np represents the "expected" values + or - .5 (adjustment made to make test more conservative)
Null hypothesis rejected when z(y) is less than or to the lwdr of the critical value of the test statistic.

All tests at .01 level

**Test One**     Songs with an Odd Number of Verse Measures

| | n | t | p | q | np | t-np | npq | (t-np)/(npq)^.5 | |
|---|---|---|---|---|---|---|---|---|---|
| Odd | 52 | 1 | 0.5 | 0.5 | 26 | -25 | 13 | -6.93 | |

**Test Two**     Songs with Tag Lines

| | n | t | p | q | np | t-np | npq | (t-np)/(npq)^.5 | |
|---|---|---|---|---|---|---|---|---|---|
| Tag Lines | 52 | 7 | 0.5 | 0.5 | 26 | -18.5 | 13 | -5.13 | |

**Test Three**     Songs with an Odd Number of Chorus Measures

| | n | t | p | q | np | t-np | npq | (t-np)/(npq)^.5 | |
|---|---|---|---|---|---|---|---|---|---|
| Odd | 52 | 2 | 0.5 | 0.5 | 26 | -23.5 | 13 | -6.52 | |

**Test Four**     Songs have a Keystone Beat Pattern

| | n | t | p | q | np | t-np | npq | (t-np)/(npq)^.5 | |
|---|---|---|---|---|---|---|---|---|---|
| Keystone Beat Patt | 52 | 16 | 0.5 | 0.5 | 26 | -9.5 | 13 | -2.63 | |

**Test Five**     Keystone Beat Patten Lasts Entire Song

| | n | t | p | q | np | t-np | npq | (t-np)/(npq)^.5 | |
|---|---|---|---|---|---|---|---|---|---|
| KBP lasts entire son | 16 | 5 | 0.5 | 0.5 | 8 | -2.5 | 4 | -1.25 | |

**Test Six**     Frequency of Song Introductions Sung, Spoken or Instrumental are Equal.

| | o | e | o-e | (o-e)^2 | (o-e)^2/e |
|---|---|---|---|---|---|
| Sung | 11 | 17 | -6 | 36 | 2.12 |
| Spoken | 4 | 17 | -13 | 169 | 9.94 |
| Instrumental | 36 | 18 | 18 | 324 | 18.00 |
| | | | | $X^2 =$ | 30.06 |

**Test Seven**     After the Introduction, the Number of Songs Beginning with the Verse Equals the Number of Songs Beginning with a Chorus

| | n | t | p | q | np | t-np | npq | (t-np)/(npq)^.5 | |
|---|---|---|---|---|---|---|---|---|---|
| Begin Chorus | 51 | 9 | 0.5 | 0.5 | 25.5 | -16 | 13 | -4.48 | |

**Test Eight**     First Measure 1st Chord is the Same for the Chorus and Verse

| | n | t | p | q | np | t-np | npq | (t-np)/(npq)^.5 | |
|---|---|---|---|---|---|---|---|---|---|
| Same 1st Chord | 52 | 32 | 0.5 | 0.5 | 26 | 6.5 | 13 | 1.80 | |

**Test Nine**     There is No Difference in the Frequency of Use of the 1st Chord Used in the 1st Verse Measure

| o | e | o-e | (o-e)^2 | (o-e)^2/e |
|---|---|---|---|---|

AJM 10/20/12

Sample of Billboard "Hot 100" Songs Released 2009-2011 and Copyrighted 2008-2010
Justin Bieber Songs Excluded
Data Tables and Statistical Tests

| | | | | | |
|---|---|---|---|---|---|
| Chord #1 | 38 | 7.43 | 30.57 | 934.61 | 125.81 |
| Chord #2 | 0 | 7.43 | -7.43 | 55.18 | 7.43 |
| Chord #3 | 0 | 7.43 | -7.43 | 55.18 | 7.43 |
| Chord #4 | 7 | 7.43 | -0.43 | 0.18 | 0.02 |
| Chord #5 | 2 | 7.43 | -5.43 | 29.47 | 3.97 |
| Chord #6 | 5 | 7.43 | -2.43 | 5.90 | 0.79 |
| Chord #7 | 0 | 7.43 | -7.43 | 55.18 | 7.43 |
| | 52 | | | $X^2$ = | 152.88 |

**Test Ten**   The frequencies of the 1st chord in the first chorus measure are equal.

| | o | e | o-e | $(o-e)^2$ | $(o-e)^2/e$ |
|---|---|---|---|---|---|
| Chord #1 | 24 | 7.43 | 16.57 | 274.61 | 36.97 |
| Chord #2 | 1 | 7.43 | -6.43 | 41.33 | 5.56 |
| Chord #3 | 1 | 7.43 | -6.43 | 41.33 | 5.56 |
| Chord #4 | 19 | 7.43 | 11.57 | 133.90 | 18.02 |
| Chord #5 | 1 | 7.43 | -6.43 | 41.33 | 5.56 |
| Chord #6 | 6 | 7.43 | -1.43 | 2.04 | 0.27 |
| Chord #7 | 0 | 7.43 | -7.43 | 55.18 | 7.43 |
| | 52 | | | $X^2$ = | 79.38 |

**Test Eleven**   The first chord in the second measure of the chorus is equally distributed across seven scalar chord numbers.

| | o | e | o-e | $(o-e)^2$ | $(o-e)^2/e$ |
|---|---|---|---|---|---|
| Chord #1 | 16 | 7.43 | 8.57 | 73.47 | 9.89 |
| Chord #2 | 2 | 7.43 | -5.43 | 29.47 | 3.97 |
| Chord #3 | 4 | 7.43 | -3.43 | 11.76 | 1.58 |
| Chord #4 | 7 | 7.43 | -0.43 | 0.18 | 0.02 |
| Chord #5 | 14 | 7.43 | 6.57 | 43.18 | 5.81 |
| Chord #6 | 6 | 7.43 | -1.43 | 2.04 | 0.27 |
| Chord #7 | 3 | 7.43 | -4.43 | 19.61 | 2.64 |
| | 52 | | | $X^2$ = | 24.19 |

**Test Twelve**   The scalar 4-chord is used as a minor 9.

| | n | t | p | q | np | t-np | npq | (t-np)/(npq)^.5 |
|---|---|---|---|---|---|---|---|---|
| 4-chord minor9 | 38 | 0 | 0.5 | 0.5 | 19 | -18.5 | 10 | -6.00 |

**Test Thirteen**   Songs with Call/Response

| | n | t | p | q | np | t-np | npq | (t-np)/(npq)^.5 |
|---|---|---|---|---|---|---|---|---|
| Call/Response | 52 | 1 | 0.5 | 0.5 | 26 | -24.5 | 13 | -6.80 |

AJM 10/20/12

Sample of Billboard "Hot 100" Songs Released 2009-2011 and Copyrighted 2008-2010

Justin Bieber Songs Excluded

Data Tables and Statistical Tests

**Test Nine** — Distribution of 1st Chords for First Measure of the Verse.

| Scalar Chord Number | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| 1 |  |  |  |  |  |  |  |
| 1 |  |  |  |  |  |  |  |
| 1 |  |  |  |  |  |  |  |
| 1 |  |  |  |  |  |  |  |
| 6 |  |  |  |  |  | 1 |  |
| 6 |  |  |  |  |  | 1 |  |
| 1 | 1 |  |  |  |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 5 |  |  |  |  | 1 |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 6 |  |  |  |  |  | 1 |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 6 |  |  |  |  |  | 1 |  |
| 5 |  |  |  |  | 1 |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 6 |  |  |  |  |  | 1 |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| **Total** | **38** | **0** | **0** | **7** | **2** | **5** | **0** |

**Test Ten** — Distribution of 1st Chord for First Measure of the Chorus.

| Scalar Chord Number | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| 1 | 1 |  |  |  |  |  |  |
| 6 |  |  |  |  |  | 1 |  |
| 6 |  |  |  |  |  | 1 |  |
| 4 |  |  |  | 1 |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 6 |  |  |  |  |  | 1 |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 6 |  |  |  |  |  | 1 |  |
| 3 |  |  | 1 |  |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 6 |  |  |  |  |  | 1 |  |
| 4 |  |  |  | 1 |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 6 |  |  |  |  |  | 1 |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 5 |  |  |  |  | 1 |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 4 |  |  |  | 1 |  |  |  |
| 1 | 1 |  |  |  |  |  |  |
| 2 |  | 1 |  |  |  |  |  |
| S2 |  |  |  |  |  |  |  |
| **Total** | **24** | **1** | **1** | **19** | **1** | **6** | **0** |

**Test Eight** — 1st Verse 1st Chord = 1st Chorus 1st Chord

Total: **32**

**Test Seven** (partial) — Chorus

Total: **9**

-JA155-

AJM 10/20/12

Sample of Billboard "Hot 100" Songs Released 2009-2011 and Copyrighted 2008-2010

Justin Bieber Songs Excluded

Data Tables and Statistical Tests

**Test Eleven**

Distribution of 1st Chord for Second Measure of the Chorus.

| Scalar Chord Number | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| 6 | | | | | | 1 | |
| 7 | | | | | | | 1 |
| 7 | | | | | | | 1 |
| 5 | | | | | 1 | | |
| 5 | | | | | 1 | | |
| 1 | 1 | | | | | | |
| 5 | | | | | 1 | | |
| 6 | | | | | | 1 | |
| 5 | | | | | 1 | | |
| 4 | | | | 1 | | | |
| 1 | 1 | | | | | | |
| 5 | | | | | 1 | | |
| 1 | 1 | | | | | | |
| 6 | | | | | | 1 | |
| 5 | | | | | 1 | | |
| 1 | 1 | | | | | | |
| 3 | | | 1 | | | | |
| 4 | | | | 1 | | | |
| 1 | 1 | | | | | | |
| 5 | | | | | 1 | | |
| 4 | | | | 1 | | | |
| 6 | | | | | | 1 | |
| 5 | | | | | 1 | | |
| 1 | 1 | | | | | | |
| 1 | 1 | | | | | | |
| 4 | | | | 1 | | | |
| 6 | | | | | | 1 | |
| 7 | | | | | | | 1 |
| 2 | | 1 | | | | | |
| 2 | | 1 | | | | | |
| 1 | 1 | | | | | | |
| 5 | | | | | 1 | | |
| 4 | | | | 1 | | | |
| 1 | 1 | | | | | | |
| 1 | 1 | | | | | | |
| 4 | | | | 1 | | | |
| 3 | | | 1 | | | | |
| 4 | | | | 1 | | | |
| 3 | | | 1 | | | | |
| 3 | | | 1 | | | | |
| 5 | | | | | 1 | | |
| 5 | | | | | 1 | | |
| 1 | 1 | | | | | | |
| 1 | 1 | | | | | | |
| 5 | | | | | 1 | | |
| 5 | | | | | 1 | | |
| 1 | 1 | | | | | | |
| 5 | | | | | 1 | | |
| 1 | 1 | | | | | | |
| 6 | | | | | | 1 | |
| 1 | 1 | | | | | | |
| 1 | 1 | | | | | | |
| **Total** | **16** | **2** | **4** | **7** | **14** | **6** | **3** |

| chorus | |
|---|---|
| meas. 1 | meas. 2 |
| 1st Chrd # | 1st Chrd # |
| 1 | 6 |
| 6 | 7 |
| 6 | 7 |
| 4 | 5 |
| 4 | 5 |
| 4 | 1 |
| 1 | 5 |
| 4 | 6 |
| 4 | 5 |
| 4 | 4 |
| 4 | 1 |
| 6 | 5 |
| 1 | 1 |
| 1 | 6 |
| 1 | 5 |
| 6 | 1 |
| 3 | 3 |
| 4 | 4 |
| 1 | 1 |
| 4 | 5 |
| 4 | 4 |
| 1 | 6 |
| 4 | 5 |
| 4 | 1 |
| 1 | 1 |
| 6 | 4 |
| 4 | 6 |
| 4 | 7 |
| 1 | 2 |
| 1 | 2 |
| 1 | 1 |
| 1 | 5 |
| 4 | 4 |
| 6 | 1 |
| 1 | 1 |
| 1 | 4 |
| 1 | 3 |
| 1 | 4 |
| 5 | 3 |
| 1 | 3 |
| 1 | 5 |
| 4 | 5 |
| 1 | 1 |
| 1 | 1 |
| 1 | 5 |
| 1 | 5 |
| 4 | 1 |
| 4 | 5 |
| 4 | 1 |
| 1 | 6 |
| 2 | 1 |
| 1 | 1 |

AJM 10/20/12

Billboard "Hot 100" Songs Released 2009-2011 and Copyrighted 2008-2010
Justin Bieber Songs Excluded
Hypotheses Tested

**Test One**   1 What is the hypothesis   $H_0: =$   The proportion of song verses with an odd number of measures equals the proportion of
song verses with an even number of measures.  p = .5 and q =.5
$H_a: =$   The proportion of song verses with an odd number of measures is less than the
proportion of song verses with an even number of measures.  p < .5

2 What is the sampling distribution of the statistic   Normal distribution is approximated for use with the Binomial test

3 What is the critical value of the test statistic?   -2.3263 at the .01 level   z = -2.3262  a = .01

4 What is the value of the test statistic?   -6.93

5 What is the conclusion?
The test statistic is to the left of the critical value indicating a rejection of the null hypothesis and acceptance of the alternate hypothesis.
Inspection of the data revealed one of the songs contained an odd number of verse measures.

**Test Two**   1 What is the hypothesis   $H_0: =$   Proportion of songs with tag lines equals proportion that do not.
$H_a: =$   Proportion of songs with tag lines is less than those that do not

2 What is the sampling distribution of the statistic   Normal distribution is approximated for use with the Binomial test

3 What is the critical value of the test statistic?   -2.3263 at the .01 level   z = -2.3262  a = .01

4 What is the value of the test statistic?   -5.13

5 What is the conclusion?
The test statistic is to the left of the critical value indicating a rejection of the null hypothesis and acceptance of the alternate hypothesis.
Inspection of the data revealed only seven songs used tag lines.

**Test Three**   1 What is the hypothesis   $H_0: =$   The proportion of song choruses with an odd number of measures equals the proportion
of song choruses with an even number of measures.  p = .5 and q =.5
$H_a: =$   The proportion of song choruses with an odd number of measures is less than the
proportion of song choruses with an even number of measures.  p < .5

2 What is the sampling distribution of the statistic   Normal distribution is approximated for use with the Binomial test

3 What is the critical value of the test statistic?   -2.3263 at the .01 level   z = -2.3262  a = .01

4 What is the value of the test statistic?   -6.52

5 What is the conclusion?
The test statistic is to the left of the critical value indicating a rejection of the null hypothesis and acceptance of the alternate hypothesis.
Inspection of the data revealed only two songs contained an odd number of chorus measures.

**Test Four**   1 What is the hypothesis   $H_0: =$   The proportion of songs with a keystone beat pattern (KBP) is the same as songs without.

$H_a: =$   The proportion of songs with a KBP is less than the proportion of songs without a KBP.

2 What is the sampling distribution of the statistic   Normal distribution is approximated for use with the Binomial test

3 What is the critical value of the test statistic?   -2.3263 at the .01 level   z = -2.3262  a = .01

4 What is the value of the test statistic?   -2.63

5 What is the conclusion?
The test statistic is to the left of the critical value indicating a rejection of the null hypothesis and acceptance of the alternate hypothesis.
Inspection of the data revealed 16 songs contained a KBP.

**Test Five**   1 What is the hypothesis   $H_0: =$   The proportion of songs with a KBP that lasts the entire song is no different than the propor
of songs with a KBP that does not last the entire song.
$H_a: =$   The proportion of songs with a KBP that lasts the entire song is less than the proportion of s
with a KBP that does not last the entire song.

2 What is the sampling distribution of the statistic   Normal distribution is approximated for use with the Binomial test

3 What is the critical value of the test statistic?   -2.3263 at the .01 level   z = -2.3262  a = .01

16

AJM 10/20/12

Billboard "Hot 100" Songs Released 2009-2011 and Copyrighted 2008-2010
Justin Bieber Songs Excluded
Hypotheses Tested

4 What is the value of the test statistic?    -1.25

5 What is the conclusion?
The test statistic value is to the right of the critical value.  Thus the null hypothesis is accepted as tenable.
Differences between the proportions of songs with a KBP for the entire song and not the entire song are due to random chance.
Given the small size of n (16), caution must be observed regarding any outcome of the test.

**Test Six**    1 What is the hypothesis    $H_0:=$   The frequency of song introductions sung, spoken or written are equal.
$H_a:=$   The frequency of song introductions sung, spoken or written are not equal.

2 What is the sampling distribution of the statistic $X^2$    2 Degrees of Freedom

3 What is the critical value of the test statistic?    9.21    at .01 level with 2 Degrees of Freedom

4 What is the value of the test statistic?    30.06

5 What is the conclusion?
The test statistic value exceeds the critical value.  Thus the null hypothesis is rejected and the alternative hypothesis is tenable.
The frequency of song introductions sung, spoken or written are not equal.  Inspection of the data reveals spoken introductions are
rare and occurred only 4 times.

**Test Seven**    1 What is the hypothesis    $H_0:=$   After the introduction, the proportion of songs beginning with the verse or chorus are equal
$H_a:=$   After the introduction, the proportion of songs beginning with the chorus is less than the ver

2 What is the sampling distribution of the statistic Normal distribution is approxi z = -2.3262 a = .01

3 What is the critical value of the test statistic?    -2.3263 at the .01 level

4 What is the value of the test statistic?    -4.48

5 What is the conclusion?
The test statistic is to the left of the critical value indicating a rejection of the null hypothesis and acceptance of the alternate hypothesis.
Inspection of the data revealed only nine songs began with the chorus after an introduction.

**Test Eight**    1 What is the hypothesis    $H_0:=$   The proportion of songs with the same first chord in the chorus and verse is the same as
the proportion of songs that have a different first chord.
$H_a:=$   The proportion of songs with the same first chord in the chorus and verse is less than the
proportion that have a different first chord.

2 What is the sampling distribution of the statistic Normal distribution is approximated for use with the Binomial test

3 What is the critical value of the test statistic?    -2.3263 at the .01 level        z = -2.3262  a = .01

4 What is the value of the test statistic?    1.80

5 What is the conclusion?
The test statistic value is to the right of the critical value.  Thus the null hypothesis is accepted as tenable.
The first measure first chords are the same for the chorus and verse and any variation observed is due to chance.
Review of the data indicates 32 of the 52 songs  begin the first measure of the verse and chorus with the same chord..

**Test Nine**    1 What is the hypothesis    $H_0:=$   There is no difference is the scalar number of the first chord used in the verse first measure.
$H_a:=$   There is a difference in the scalar number of the first chord used in the verse first measure.

2 What is the sampling distribution of the statistic $X^2$        6 Degrees of Freedom

3 What is the critical value of the test statistic?    16.81    at the .01 level with 6 degrees of freedom.

4 What is the value of the test statistic?    152.88

5 What is the conclusion?
The test statistic value exceeds the critical value.  Thus the null hypothesis is rejected and the alternative hypothesis is tenable.
The differences in chord choices for the first verse do not occur by chance.  Inspection of the data indicates a strong preference (73%) for us
chord #1 or the tonic as the first chord of the verse.  While selection of chord #4 does occur as the first chord for the verse,  the representativ
sample found it occuring only 13.5% of the time.

**Test Ten**    1 What is the hypothesis    $H_0:=$   There is no difference in the chord choices used in the first measure of a chorus.
$H_a:=$   There is a difference in the chord choices used in the first measure of a chorus.

Billboard "Hot 100" Songs Released 2009-2011 and Copyrighted 2008-2010
Justin Bieber Songs Excluded
Hypotheses Tested

2 What is the sampling distribution of the statistic $X^2$          6 Degrees of Freedom

3 What is the critical value of the test statistic?     16.81          at the .01 level with 6 degrees of freedom.

4 What is the value of the test statistic?     79.38

5 What is the conclusion?
The test statistic value exceeds the critical value.  Thus, the null hypothesis is rejected and the alternative hypothesis is tenable.
The differences in chord choices for the first measure of the chorus do not occur by chance.
Inspection of the frequencies chords are selected reveals 82.7% of the chords selected for the first measure are chords #1 or #4
Inspection of the use of the #7 chord reveals it was not used in the sampled songs as the first chord.

| **Test Eleven** | 1 What is the hypothesis | $H_0:$ = | There is no difference in the chord choices used in the second measure of a chorus. |
| | | $H_a:$ = | There is a difference in the chord choices used in the second measure of a chorus. |

2 what is the sampling distribution of the statistic $X^2$          6 Degrees of Freedom

3 what is the critical value of the test statistic?     16.81          at the .01 level with 6 degrees of freedom.

4 What is the value of the test statistic?     24.19

5 what is the conclusion?
The test statistic value exceeds the critical value.  Thus the null hypothesis is rejected and the alternative hypothesis is tenable.
The differences observed in the sample set are not due to chance.
Inspection of the frequencies chords are selected reveals 57.7% of the chords selected for the second measure are chords #1 or #5.
Inspection of the use of the #4 chord reveals it was used 13.5% of the time.

| **Test Twelve** | 1 What is the hypothesis | $H_0:$ = | The scalar-4 chord is used in the minor 9 form as often as other forms of the #4 chord. |
| | | $H_a:$ = | The scalar-4 chord is used less in the minor 9 form. |

2 what is the sampling distribution of the statistic' Normal distribution is approximated for use with the Binomial test

3 what is the critical value of the test statistic?     -2.3263 at the .01 level          $z = -2.3262$   $a = .01$

4 What is the value of the test statistic?     -6.00

5 what is the conclusion?
The test statistic is to the left the critical value.
The null hypothesis is rejected in favor of the alternate hypothesis.
Inspection of the data revealed the minor9 form of the scalar-4 chord was not used.

| **Test Thirteen** | 1 What is the hypothesis | $H_0:$ = | The proportion of songs using call/response is the same as the songs that do not. |
| | | $H_a:$ = | The proportion of songs using call/response is less than the songs that do not. |

2 what is the sampling distribution of the statistic' Normal distribution is approximated for use with the Binomial test

3 what is the critical value of the test statistic?     -2.3263 at the .01 level          $z = -2.3262$   $a = .01$

4 What is the value of the test statistic?     -6.80

5 what is the conclusion?
The test statistic is to the left the critical value.
The null hypothesis is rejected in favor of the alternate hypothesis.
Inspection of the data revealed only one occurance of call/response.

AJM 10/20/12

Appeal: 14-1423    Doc: 30    Filed: 08/01/2014    Pg: 170 of 317

Billboard "Hot 100" Songs Released 2009-2011 and Copyrighted 2008-2010
Justin Bieber Songs Excluded
Hypotheses Tested

tion

songs

AJM 10/20/12

Billboard "Hot 100" Songs Released 2009-2011 and Copyrighted 2008-2010
Justin Bieber Songs Excluded
Hypotheses Tested

.
rse.

.

sing the
ve

Case 2:13-cv-00246-AWA-TEM  Document 39-3  Filed 07/19/13  Page 26 of 48 PageID# 323

Population of Songs with Writing Credits to Justin Bieber
"Somebody to Love" Excluded
Copyrighted 2007-2010

| Song # | Bieber Song Title | Copyright | Highest Rank Billboard Hot 100 | Song Key | Intro Sing | Intro Speak | First Measure V or C | Beat Pattern Present in the Song Y or N | Lasts Entire Song Y or N | Verse Chord #1st Measure | Number of Measures | Chorus Chord # | # Chords |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | *Down to Earth* | 2009 | 79 | D | 1 | | V | N | N | 4 | 16 | 4 | 1 |
| 2 | *Bigger* | 2009 | 94 | Cm | 1 | | V | Y | N | 4 | 8 | 2 | 1 |
| 3 | *Overboard* | 2010 | DNC | Dm | | | V | Y | N | 1 | 16 | 1 | 1 |
| 4 | *Stuck in the Moment* | 2010 | DNC | Eb | 1 | | V | Y | N | 1 | 8 | 4 | 1 |
| 5 | *Up* | 2010 | DNC | Am | | | V | Y | N | 1 | 16 | 1 | 1 |
| 6 | *That Should be Me* | 2010 | 92 | Cm | 1 | | V | Y | N | 1 | 8 | 1 | 1 |
| 7 | *Baby* | 2010 | 5 | Eb | 1 | | V | Y | N | 1 | 16 | 1 | 1 |
| 8 | *Eenie Meenie* | 2010 | 15 | D | | 1 | V | Y | N | 6 | 15 | 1 | 1 |
| 9 | *U Smile* | 2010 | 27 | Eb | 1 | | V | N | N | 1 | 6 | 3 | 2 |
| 10 | *Runaway Love* | 2010 | DNC | Ab | | | V | N | N | 1 | 8 | 1 | 1 |

3 songs with same writers
2 songs with same writers
1 song lists writing credits to the Stereotypes.
1 songs uses a spoken entry
* 6 songs have a KBP with 0 songs using a KBP the entire song
* 5 songs use the same scalar chord number to begin the verse and the chorus
2 songs use the 4 chord to begin the verse
0 songs begin the chorus with a 7 chord
1 song begins the second chorus measure with a 4 chord
0 songs begin the second chorus measure with a 4^9 chord
1 song has an odd number of verse measures
1 song has an odd number of chorus measures
2 songs use tag lines
0 songs use call and response

*    indicates characteristic that may be considered typical for a Stereotypes song.  Size of population not large enough to test reliably.

AJM 10/20/12

Population of Songs with Writing Credits to Justin Bieber

"Somebody to Love" Excluded

Copyrighted 2007-2010

| 2 | | 3 | | 4 | | 5 | | 6 | | 7 | | 8 | | 9 | | 10 | | 11 | | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # |
| 1 | 1 | 5 | 1 | 5 | 2 | 4 | 1 | 1 | 1 | 5 | 1 | 5 | 2 | | | | | | | |
| 1 | 1 | 4 | 1 | 5 | 1 | 4 | 3 | 6 | 1 | 4 | 4 | 1 | 1 | 4 | 3 | 6 | 1 | 4 | 4 | 1 |
| 5 | 1 | 3 | 1 | 7 | 1 | 1 | 1 | 5 | 1 | 3 | 1 | 7 | 1 | | | | | | | |
| 5 | 1 | 6 | 1 | 1 | 1 | 4 | 1 | 5 | 1 | 6 | 1 | 5 | 1 | 1 | 1 | 5 | 1 | 6 | 1 | 5 |
| 6 | 1 | 3 | 2 | 7 | 1 | 1 | 1 | 6 | 1 | 3 | 2 | 7 | 1 | 1 | 1 | 6 | 1 | 3 | 2 | 7 |
| 5 | 1 | 3 | 1 | 6 | 2 | 3 | 1 | 5 | 1 | 3 | 1 | 6 | 2 | 1 | 2 | 3 | 2 | | | |
| 1 | 1 | 6 | 1 | 6 | 1 | 4 | 1 | 4 | 1 | 5 | 1 | 5 | 1 | 1 | 1 | 1 | 1 | 6 | 1 | 6 |
| 6 | 1 | 4 | 1 | 1 | 1 | 5 | 1 | 6 | 1 | 4 | 1 | 1 | 1 | 5 | 1 | 6 | 1 | 4 | 1 | 1 |
| 4 | 1 | 3 | 2 | 4 | 1 | | | | | | | | | | | | | | | |
| 6 | 1 | 6 | 1 | 1 | 1 | 1 | 1 | 6 | 1 | 6 | 1 | 1 | 1 | 1 | 1 | 6 | 1 | 6 | 1 | 7 |

AJM 10/20/12

Population of Songs with Writing Credits to Justin Bieber

"Somebody to Love" Excluded

Copyrighted 2007-2010

| # Chords | 13 | | 14 | | 15 | | 16 | | 17 | | 18 | | 19 | | 20 | | 21 | | 22 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords |
| 1 | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| 1 | 1 | 1 | 5 | 1 | 6 | 1 | 5 | 1 | | | | | | | | | | | | |
| 1 | 6 | 1 | 6 | 1 | 7 | 1 | 7 | 2 | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| 1 | 4 | 1 | 4 | 1 | 5 | 1 | 5 | 1 | | | | | | | | | | | | |
| 1 | 5 | 1 | 6 | 1 | 4 | 1 | 1 | 1 | 5 | 1 | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| 1 | 7 | 1 | 6 | 1 | 3 | 2 | 1 | 1 | | | | | | | | | | | | |

23

AJM 10/20/12

Appeal: 14-1427   Doc: 30   Filed: 08/01/2014   Pg: 175 of 317

Population of Songs with Writing Credits to Justin Bieber
"Somebody to Love" Excluded
Copyrighted 2007-2010

| 23 | | 24 | | 25 | | 26 | | 27 | | 28 | | 29 | | 30 | | 31 | | 32 | | 33 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |

AJM 10/20/12

Appeal: 14-1427   Doc: 30   Filed: 08/01/2014   Pg: 176 of 317

Population of Songs with Writing Credits to Justin Bieber
"Somebody to Love" Excluded
Copyrighted 2007-2010

| | | | Tag Lines | Call Response |
|---|---|---|---|---|
| | 34 | | use of | |
| # Chords | Chord # | # Chords | tag lines yes/no | Call/Response |
| | | | y | 0 |
| | | | N | 0 |
| | | | Y | 0 |
| | | | N | 0 |
| | | | N | 0 |
| | | | N | 0 |
| | | | N | 0 |
| | | | N | 0 |
| | | | N | 0 |
| | | | N | 0 |

AJM 10/20/12

Population of Stereotypes Songs Copyrighted 2007-2010

(Justin Bieber Songs Excluded)

| Song # | Song Title | Copyright | Highest Rank Billboard Hot 100 | Song Key | Intro Sing | Intro Speak | First Meas. V or C | Beat Pattern Present in the Song Y or N | Beat Pattern Lasts Entire Song Y or N | Verse Chord # 1st Measure | Verse Number of Measures | Chorus Measure 1 Chord # | Chorus Measure 1 # Chords | Chorus Measure 2 Chord # |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Wonderful | 2007 | DNC | Cm | 1 | 0 | V | Y | N | 1 | 14 | 6 | | 6 |
| 2 | Why Just be Friend | 2008 | DNC | Gb | 0 | 0 | C | N | N | 2 | 18 | 1 | | 4 |
| 3 | Why Does She Sta | 2008 | DNC | Gm | 1 | 0 | C | N | N | 1 | 16 | 4 | | 6 |
| 4 | Good Love | 2009 | DNC | F# | 0 | 1 | V | N | N | 6 | 16 | 4 | | 4 |
| 5 | Your love | Jun-09 | 14 | Bb m | 0 | 1 | V | N | N | 4m7 | 16 | 4m7 | | 5 |
| 6 | Again    6/8 time | 2009 | DNC | G | 0 | 0 | V | N | N | 1 | 16 | 4 | | 6 |
| 7 | Johnny | 2009 | DNC | Eb | 0 | 0 | V | Y | Y | 1 | 16 | 1 | | 3 |
| 8 | Even Angels | 2010 | DNC | Db | 0 | 0 | V | Y | N | 1 | 12 | 1 | | 3 |
| 9 | Celebration | 2010 | DNC | B | 1 | 0 | V | N | N | 6 | 8 | 2 | | 2 |
| 10 | We'll be Alright | Oct-10 | DNC | B | 1 | 0 | C | N | N | 6 | 16 | 1 | | 1 |
| 11 | 6 a.m. | 2008 | Cannot Find | Am | 1 | 0 | C | Y | N | 1 | 16 | 1 | | 7 |
| 12 | Cupid Shot You | 2007 | DNC | C | 1 | 0 | V | Y | N | 4 | 16 | 4 | | 4 |
| 13 | Damaged | 2007 | 14 | Ebm | 0 | 0 | V | Y | N | 1 | 16 | 1 | | 4 |
| 14 | Oh Yeah | 2009 | DNC | A | 1 | 0 | V | Y | N | 1 | 12 | 1 | | 4 |
| 15 | New Man | 2008 | DNC | Cm | 1 | 0 | V | Y | N | 1 | 16 | 1 | | 7 |
| 16 | Who Need a Dime | 2005 | DNC | Db | 0 | 1 | V | Y | Y | 2 | 8 | 2 | | 4 |
| 17 | Boys Go Crazy | 2009 | DNC | Gm | 0 | 1 | V | Y | N | 1 | 12 | 1 | | 1 |

**X** songs do not list credits to all of the Stereotypes members. Other writers may be listed in addition.

This makes it difficult to determine the contribution to the songs by the Stereotypes.

4 songs use a spoken entry

\* 10 songs have a KBP with 2 songs using a KBP the entire song

\* 10 songs use the same scalar chord number to begin the verse and the chorus

0 songs begin the chorus with a 7 chord

- 6 songs begin the second chorus measure with a 4 chord

0 songs begin the second chorus measure with a minor 4^9 chord

0 songs have an odd number of verse measures

2 songs have an odd number of chorus measures

- 6 songs use tag lines

2 songs begin the verse with a scalar 4-chord

2 songs uses call and response

\* indicates characteristic that may be considered typical for a Stereotypes song.  Size of population not large enough to test reliably.

- indicates the presence of the characteristic to a level that may be found to be typical given a larger number of songs

26

AJM 10/20/12

Population of Stereotypes Songs Copyrighted 2007-2010
(Justin Bieber Songs Excluded)

| # Chords | 3 Chord # | # Chords | 4 Chord # | # Chords | 5 Chord # | # Chords | 6 Chord # | # Chords | 7 Chord # | # Chords | 8 Chord # | # Chords | 9 Chord # | # Chords | 10 Chord # | # Chords | 11 Chord # | # Chords | 12 Chord # | # Chords | 13 Chord # | # Chords |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |  |  | 9 |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  | 8 |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  | 8 |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  | 8 |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | 10 |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | 12 |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | 10 |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  | 8 |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  | 8 |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  | 8 |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  | 8 |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  | 8 |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  | 8 |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  | 8 |  |  |  |  |  |  |  |  |  |  |  |

AJM 10/20/12

Population of Stereotypes Songs Copyrighted 2007-2010
(Justin Bieber Songs Excluded)

| 14 | | 15 | | 16 | | 17 | | 18 | | 19 | | 20 | | 21 | | 22 | | 23 | | 24 | | 25 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chord | # | Chord | # | Chord | # | Chord | # | Chord | # | Chord | # | Chord | # | Chord | # | Chord | # | Chord | # | Chord |
| # | Chord | # | Chord | # | Chord | # | Chord | # | Chord | # | Chord | # | Chord | # | Chord | # | Chord | # | Chord | # |
| | | | | | | | | | | 19 | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | 24 | | | |
| | | | | | | | | | | | | | | | | | | | | | |
| | | | | | 16 | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | |

AJM 10/20/12

Appeal: 14-1423      Doc: 30      Filed: 08/01/2014      Pg: 180 of 317

Population of Stereotypes Songs Copyrighted 2007-2010
(Justin Bieber Songs Excluded)

| | 26 | | 27 | | 28 | | 29 | | 30 | | 31 | | 32 | | 33 | | 34 | | Use of Tag Lines yes/no | Call/ Response |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | Chord # | # Chords | | |
| | | | | | | | | | | | | | | | | | | | N | 0 |
| | | | | | | | | | | | | | | | | | | | N | 0 |
| | | | | | | | | | | | | | | | | | | | Y | 0 |
| | | | | | | | | | | | | | | | | | | | Y | 0 |
| | | | | | | | | | | | | | | | | | | | N | 0 |
| | | | | | | | | | | | | | | | | | | | N | 0 |
| | | | | | | | | | | | | | | | | | | | Y | 0 |
| | | | | | | | | | | | | | | | | | | | N | 0 |
| | | | | | | | | | | | | | | | | | | | Y | 0 |
| | | | | | | | | | | | | | | | | | | | N | 0 |
| | | | | | | | | | | | | | | | | | | | N | 0 |
| | | | | | | | | | | | | | | | | | | | N | 0 |
| | | | | | | | | | | | | | | | | | | | Y | 1 |
| | | | | | | | | | | | | | | | | | | | N | 0 |
| | | | | | | | | | | | | | | | | | | | N | 0 |
| | | | | | | | | | | | | | | | | | | | N | 1 |
| | | | | | | | | | | | | | | | | | | | Y | 0 |

29

AJM 10/20/12

Population of Stereotypes Songs Copyrighted 2007-2010
(Justin Bieber Songs Excluded)

onse

| First Measure Chorus | First Measure Verse |
|---|---|
|  | 1 |
| 1 |  |
| 1 |  |
|  | 1 |
|  | 1 |
|  | 1 |
|  | 1 |
|  | 1 |
|  | 1 |
| 1 |  |
| 1 |  |
|  | 1 |
|  | 1 |
|  | 1 |
|  | 1 |
|  | 1 |
|  | 1 |

AJM 10/20/12

## Timings for Any Pickup Measure and the First Two Chorus Measures
### All Songs

**Time Value Notation**

| | | | | | |
|---|---|---|---|---|---|
| s | sixteenth | de | dotted eighth | dq | dotted quarter | dh | dotted half | w | whole |
| rs | rest sixteenth | e | eighth | q | quarter | h | half | | |
| | | re | rest eighth | rq | rest quarter | rh | rest half | rw | rest whole |
| | | eee | Triplet for one beat | qe | quarter&eighth triplet | | |

Indicates Tied Notes
Indicates Rest Notes

| # | Billboard Hot 100 Sampled Songs | Pickup Measure Beat 1 | Beat 2 | Beat 3 | Beat 4 | Measure 1 Beat 1 | Beat 2 | Beat 3 | Beat 4 | Measure 2 Beat 1 | Beat 2 | Beat 3 | Beat 4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Airplanes | rh | | | | rs s s s | de de | s s | s e | s e s | q | rs s s | s s s s |
| 2 | Bad Romance | | | | e e | re e | e e | e e | e e | e e | q | re e | e e |
| 3 | Alejandro | rh | | re e | e s s | e e | e s s | q | rs s s | de s | q | re e | e s s |
| 4 | Billionaire | rdh | | | q | q | q | q | q | h | | dq | e |
| 5 | Breakeven | | | | | rq | eee | e s | e e s | e s | de s | e e | s e s |
| 6 | Live Like We're Dying | rh | | rs e s | s s e | s s s s | e s s | s s e | s s s s | e s s | s s s e |
| 7 | California Gurls | | | | | q | q | q | e e | e e | | q | |
| 8 | Cooler Than Me | rh | | re e | e e | e e | e q | e | e e | re e | e dq | | e e |
| 9 | Hey, Soul Sister | | | | | q | q | re e | e e | e e | | | e e |
| 10 | Today Was A Fairytale | | | | | rh | | h | | h | | h | |
| 11 | Mine | | | | | re e | e e | e e | e e | e e | | e e | e e |
| 12 | Misery | | | | | rq | q | q | e e | q | e e | dq | re e |
| 13 | Need You Now | rdh | | | e e | e e | e e | q | re e | e q | e e | e e | re e |
| 14 | There Goes My Baby | | | | | e e | e q | dq | | q | | q | e e |
| 15 | Your Love Is My Drug | | | | | de de | | q | | de de | | dq | re e |
| 16 | What Ya Want From Me | | | | | rq | q | e e | e e | q | e e | e e | e e |
| 17 | When I Look At You  3/4 time | | rq | q | q | h | | rq | | h | | q | |
| 18 | Nothin On You | | | e e | e e | e e | e e | q | | rq | | q | e e |
| 19 | Just The Way You Are | | | | | rq | e e | e q | e | e e | h | | dh |
| 20 | Teenage Dream | | | | | dq | | q | re e | e e | e e | | q |
| 21 | Empire State Of Mind | rdh | | e e | e e | h | | rq | e e | e e | e e | e e |
| 22 | Replay | | | | | rq | q | q | e e | e e | | q | e e |
| 23 | Fireflies | | | re e | e s e | de | e s s | h | | re e | e e | e s s |
| 24 | Whatcha Say | | | | | q | e e | h | | h | | e e | |
| 25 | Back To December | rdh | | re e | e e | q | e e | q | | q | | e e | q |
| 26 | King Of Anything | | re e | dq | | e e | e q | e q | rq | e e | e e |
| 27 | Obsessed | | | | | rh | e e | e e | e e | e q | | e e | e e |
| 28 | Battlefield | | | re e | e s s | e e | e s s | s de | q | rq | rs s s s |
| 29 | Firework | rdq | e | e e | e e | dh | | e e | q | rq | | e e |
| 30 | Forget You | rh | | re e | e e | e e | q | e e | q | de | | e e |
| 31 | Give A Little More | rdh | | | q | e e | e e | e q | e e | | e e |
| 32 | Kiss A Girl | | | re e | e e | e e | e e | e e | re e | e e | e e | q |
| 33 | The House That Built Me | rdh | | re e | e | q | e dq | e e | e q | dq | q | e e |
| 34 | Little Lion Man | rh | | re e | e e | q | e e | q | e e | q | rdq | e e |
| 35 | Marry Me | w | | | | | h | | h | | |

AJM 10/20/12

## Timings for Any Pickup Measure and the First Two Chorus Measures
### All Songs

| # | Song | Pickup Measure | Measure 1 | Measure 2 |
|---|------|----------------|-----------|-----------|
| 36 | Raise Your Glass | rh ... re | e   e e | de de   de   de ... q | rc e   e e   q   q |
| 37 | Secrets | rh ... re e   s s s s | e   e   h   de   s s s s | e e   q   de s   s s s s |
| 38 | September | rde s   s   e   e e   e e | s de   s s s s s | s   de e   s e   e |
| 39 | We R Who We R | rdh   e   de de   de   de   q | rq   rq | rq   e e |
| 40 | What's My Name (NO IN | rh ... rde   e   de s   s   e s   de   e   de s   q | de s   q | e s   de   e |
| 41 | Already Gone | rq   rde   s   de de   s   s   q   rde s   e e   e s   s |
| 42 | Chances | rq   dq   s   q   q   es   s s s s   s e   de s   s |
| 43 | The Climb | rs s s s s   s   s s s s   s   s e   re s s s s s   s s e   q |
| 44 | Come Back To Me | rh ... re e   e e   e   q   q   q   e   q   dq   e e |
| 45 | Fallin' For You | re   q   re   q   e   e e   e e |
| 46 | Her Diamonds | de   s   de   e   e   e   e s   e e   e e   e e   s   e s |
| 47 | Here We Go Again | e   e   e   e   q   e e   e e   e e |
| 48 | Life After You 6/8 time | e   e   s   e e   s   s s   e e   s   e   de   rs s |
| 49 | New Divide | e   q   dq   e   q   re e   q   q   rc e |
| 50 | Party in the USA | s s s s   q   e   s e   de s   s s s e   e s   q   rds |
| 51 | Smile | rq   e   e q   q   e e   q   re e |
| 52 | You Belong With Me | e   e e   e   dq   e e   e e   q   q |

| | Song Titles | Pickup Measure | Measure 1 | Measure 2 |
|---|-------------|----------------|-----------|-----------|

| # | **Writing Credits to Justin Bieber** | Pickup: Beat 1 / Beat 2 / Beat 3 / Beat 4 | M1: Beat 1 / Beat 2 / Beat 3 / Beat 4 | M2: Beat 1 / Beat 2 / Beat 3 / Beat 4 |
|---|-------------|---|---|---|
| 1 | Down to Earth | rh ... re e   e e | re   q   q   e   e e | re   q   q   e   e e |
| 2 | Bigger | rdh ... re e | dh   e   e e | rs   s e   e s e   e s |
| 3 | Overboard | rh ... re e   e e | rh   re e   e e   e e | e   q   e   e e |
| 4 | Stuck in the Moment | rdh   e e   e e   q   s s e | e e   e e   q   s s s s |
| 5 | Up | q   q   q   q   rh   q   q |
| 6 | That Should be Me | rdh   eee   q   s s e   eee | q   s s e   de   eee |
| 7 | Baby | e e   e e   e e   e e   dq   e |
| 8 | Eenie Meenie | rdq   e e   e e   q   q |
| 9 | U Smile (12/8) | rdq   q   h   q e   dq   rq   dq   e e e e |
| 10 | Runaway Love | eeds   re e   e e   e e   e   dq   h |

**Legend:**
- (green) 3 songs with same writers
- (yellow) 2 songs with same writers
- (gray) 1 song lists writing credits to the Stereotypes.

32

AJM 10/20/12

Timings for Any Pickup Measure and the First Two Chorus Measures
All Songs

| | Song Titles | Pickup Measure | | | | Measure 1 | | | | Measure 2 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **Writing Credits to the Stereotypes** | Beat 1 | Beat 2 | Beat 3 | Beat 4 | Beat 1 | Beat 2 | Beat 3 | Beat 4 | Beat 1 | Beat 2 | Beat 3 | Beat 4 |
| 1 | Wonderful | | | | | rdq | s s | h | | q | e | h | re |
| 2 | Why Just be Friends | | | | | rq | e e | e e | e e | dq | re | re e | e e |
| 3 | Why Does She Stay | | | | | rh | | re e | e e | q | rq | rh | |
| 4 | Good Love | | | | | rq | eee | eee | eee | e | q | | rdq |
| 5 | Your Love | rh | | rdq | e | e | e q | | rdq | rh | | rdq | e |
| 6 | Again    6/8 time | | | | | q | e e | e | e | q | e | eee | e |
| 7 | Johnny | rh | | rq | s s s s | dq | re | e e | e e | q | dq | re | rq |
| 8 | Even Angels | | | | | q | q | s s e | q | s s s s e | e e | q | rq |
| 9 | Celebration | rh | | rq | rs s s s | s s s s e | e e | s s s s s | s s e | s s s s e | e e | s s s s s | s s e |
| 10 | We'll be Alright | rh | | re e | q | h | | q | | h | | re e | q |
| 11 | 6 a.m. | rh | | re | s s s s s s | e re | s s s s e | e re | s s s s | e rq | s s | e e | e re |
| 12 | Cupid Shot You | | | | | de | s q | de | s q | de | s q | de | s q |
| 13 | Damaged | | | | | e e | rq | rh | | e e | rh | | re e |
| 14 | Oh Yeah | rh | | rdq | s s | e | q | e e | s s e | e rq | s s e | e | rq |
| 15 | New Man | | | | | re e | e e | q | e e | q | q | e e | e e |
| 16 | Who Need a Dime | rq | | rs s s s s | s s s s s | s s s | rs s | s s s s s | s s s s s | s s s s s | s s e | | |
| 17 | Boys Go Crazy | | | | | e re | e re | e | e eee | eee | e eee | e | eee e |

Song Titles          Pickup Measure                     Measure 1                          Measure 2

| | **Somebody to Love Two Versions** | Beat 1 | Beat 2 | Beat 3 | Beat 4 | Beat 1 | Beat 2 | Beat 3 | Beat 4 | Beat 1 | Beat 2 | Beat 3 | Beat 4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B | Somebody to Love (B ) | | | | | e e | e e | e e | e e | dh | | | e e |
| C | Somebody to Love (C ) | | | | | e e | e e | e e | e e | w | | | |

B = Bieber, et. Al

C = Copeland

AJM 10/20/12

Timings for the Pickup Measure and First Two Measures of the Chorus Sorted by the First Measure
for the Billboard Hot 100 Song Set, the Bieber Credited Song Set and the Stereotypes Song Set



Time Value Notation

| s | sixteenth | de | dotted eighth | dq | dotted quarter | dh | dotted half | w | whole |
| rs | rest sixteenth | e | eighth | q | quarter | h | half | | |
| | | re | rest eighth | rq | rest quarter | rh | rest half | rw | rest whole |
| | | eee | Triplet for one beat | qe | quarter&eighth triplet | | | | |

Indicates tied notes
Indicates rest notes
1st measure timing matches "Somebody to Love"

34
-JA175-

AJM 10/20/12

Timings for the Pickup Measure and First Two Measures of the Chorus Sorted by the First Measure
for the Billboard Hot 100 Song Set, the Bieber Credited Song Set and the Stereotypes Song Set

AJM 10/20/12

Timings for the Pickup Measure and First Two Measures of the Chorus Sorted by the First Measure
for the Billboard Hot 100 Song Set, the Bieber Credited Song Set and the Stereotypes Song Set



| # | Song Titles | | | | |
|---|---|---|---|---|---|
| 13 | Damaged | | | | |
| 12 | Cupid Shot You | | | | |
| 16 | Who Need a Dime | | | | |
| 2 | Why Just be Friends | | | | |
| 6 | Again    6/8 time | | | | |
| 4 | Good Love | | | | |
| 8 | Even Angels | | | | |
| 1 | Wonderful | | | | |
| 7 | Johnny | | | | |
| 3 | Why Does She Stay | | | | |
| 10 | We'll be Alright | | | | |

| # | Song Titles / Writing Credits to Justin Bieber | Pickup Measure | Measure 1 | Measure 2 |
|---|---|---|---|---|
| 10 | *Runaway Love* | | | |
| 4 | *Stuck in the Moment* | | | |
| 7 | *Baby* | | | |
| 1 | *Down to Earth* | | | |
| 6 | *That Should be Me* | | | |
| 5 | *Up* | | | |
| 8 | *Eenie Meenie* | | | |
| 9 | *U Smile (12/8)* | | | |
| 3 | *Overboard* | | | |
| 2 | *Bigger* | | | |

3 songs with same writers

2 songs with same writers

1 song lists writing credits to the Stereotypes.

| | Song Titles / Somebody to Love Two Versions | Pickup Measure | Measure 1 | Measure 2 |
|---|---|---|---|---|
| B | Somebody to Love (B ) | | | |

36

AJM 10/20/12

-JA177-

Timings for the Pickup Measure and First Two Measures of the Chorus Sorted by the First Measure
for the Billboard Hot 100 Song Set, the Bieber Credited Song Set and the Stereotypes Song Set



B = Bieber, et. Al

C = Copeland

**Observations**
**Three** 1st measure timings in the Billboard "Hot 100" match the 1st measure timings of both versions of "Somebody to Love."
**Zero** 1st measure timings in the Bieber song set match the 1st measure timings of both versions of "Somebody to Love."
**Zero** 1st measure timings in the Stereotypes song set match the 1st measure timings of both versions of "Somebody to Love."

AJM 10/20/12

Timings for the Pickup Measure and First Two Measures of the Chorus Sorted by the Second Measure
for the Billboard Hot 100 Song Set, the Bieber Credited Song Set and the Stereotypes Song Set

Time Value Notation

| s | sixteenth | de | dotted eighth | dq | dotted quarter | dh | dotted half | w | whole |
|---|---|---|---|---|---|---|---|---|---|
| rs | rest sixteenth | e | eighth | q | quarter | h | half | | |
| | | re | rest eighth | rq | rest quarter | rh | rest half | rw | rest whole |
| eee | | Triplet for one beat | qe | quarter&eighth triplet | | | | | |

Indicates tied notes
Indicates rest notes

This page contains a large timing chart organized by song with columns for the Pickup Measure (Beats 1–4), Measure 1 (Beats 1–4), and Measure 2 (Beats 1–4) for the Billboard Hot 100 Sampled Songs.

| # | Song Titles | Pickup Measure | Measure 1 | Measure 2 |
|---|---|---|---|---|
| | **Billboard Hot 100 Sampled Songs** | | | |
| 6 | Live Like We're Dying | | | |
| 50 | Party in the USA | | | |
| 1 | Airplanes | | | |
| 38 | September | | | |
| 28 | Battlefield | | | |
| 43 | The Climb | | | |
| 5 | Breakeven | | | |
| 48 | Life After You 6/8 time | | | |
| 46 | Her Diamonds | | | |
| 31 | Give A Little More | | | |
| 21 | Empire State Of Mind | | | |
| 9 | Hey, Soul Sister | | | |
| 7 | California Gurls | | | |
| 32 | Kiss A Girl | | | |
| 20 | Teenage Dream | | | |
| 36 | Raise Your Glass | | | |
| 52 | You Belong With Me | | | |
| 2 | Bad Romance | | | |
| 8 | Cooler Than Me | | | |
| 27 | Obsessed | | | |
| 11 | Mine | | | |
| 37 | Secrets | | | |
| 22 | Replay | | | |
| 47 | Here We Go Again | | | |
| 13 | Need You Now | | | |
| 45 | Fallin' For You | | | |
| 30 | Forget You | | | |
| 26 | King Of Anything | | | |
| 44 | Come Back To Me | | | |
| 33 | The House That Built Me | | | |
| 40 | What's My Name (NO INTRO) | | | |

38

-JA179-

AJM 10/20/12

Timings for the Pickup Measure and First Two Measures of the Chorus Sorted by the Second Measure
for the Billboard Hot 100 Song Set, the Bieber Credited Song Set and the Stereotypes Song Set



39

-JA180-

AJM 10/20/12

Timings for the Pickup Measure and First Two Measures of the Chorus Sorted by the Second Measure
for the Billboard Hot 100 Song Set, the Bieber Credited Song Set and the Stereotypes Song Set



| | the Stereotypes |
|---|---|
| 16 | Who Need a Dime |
| 9 | Celebration |
| 8 | Even Angels |
| 13 | Damaged |
| 17 | Boys Go Crazy |
| 11 | 6 a.m. |
| 14 | Oh Yeah |
| 4 | Good Love |
| 12 | Cupid Shot You |
| 6 | Again    6/8 time |
| 1 | Wonderful |
| 15 | New Man |
| 3 | Why Does She Stay |
| 7 | Johnny |
| 2 | Why Just be Friends |
| 10 | We'll be Alright |
| 5 | Your Love |

| Song Titles | | | | | | | | | Measure 2 |
|---|---|---|---|---|---|---|---|---|---|
| **Somebody to Love** **Two Versions** | | | | | | | | | |
| B | Somebody to Love (B ) | | | | | | | | dh |
| C | Somebody to Love (C ) | | | | | | | | w |

**Observations**

**Zero** 2nd measure timings in the Billboard "Hot 100" match the 2nd measure timings of both versions of "Somebody to Love."

**Zero** 2nd measure timings in the Bieber song set match the 2nd measure timings of both versions of "Somebody to Love."

**Zero** 2nd measure timings in the Stereotypes song set match the 2nd measure timings of both versions of "Somebody to Love."

AJM 10/20/12

Billboard "Hot 100" Peak for Each Song in the Sample, Bieber Credited Set and Stereotypes Credited Song Set

| 52-Song Billboard Sample Song Title | Copyright | Recorded by | Hot 100 Peak |
|---|---|---|---|
| Alejandro | 2009 | Lady Gaga | 5 |
| Already Gone | 2009 | Kelly Clarkson | 13 |
| Bad Romance | 2009 | Lady Gaga | 2 |
| Battlefield | 2009 | Jordan Sparks | 10 |
| Chances | 2009 | Five for Fighting | 83 |
| Cooler Than Me | 2009 | Mike Posner | 6 |
| Empire State Of Mind | 2009 | Jay-Z | 1 |
| Fallin' For You | 2009 | Colbie Caillat | 12 |
| Fireflies | 2009 | Owl City | 1 |
| Her Diamonds | 2009 | Rob Thomas | 23 |
| Here We Go Again | 2009 | Demi Lavato | 15 |
| Hey, Soul Sister | 2009 | Train | 3 |
| Life After You | 2009 | Daughtry | 36 |
| Little Lion Man | 2009 | Mumford & Sons | 45 |
| Marry Me | 2009 | Pat Monahan | 34 |
| Need You Now | 2009 | Lady Antebellum | 2 |
| New Divide | 2009 | Linkin Park | 6 |
| Obsessed | 2009 | Mariah Carey | 7 |
| Party in the USA | 2009 | Miley Cryus | 2 |
| Replay | 2009 | Iyaz | 2 |
| Secrets | 2009 | One Republic Song | 21 |
| September | 2009 | Daughtry | 36 |
| Smile | 2009 | Uncle Kracker | 31 |
| The Climb | 2009 | Miley Cryus | 4 |
| The House That Built Me | 2009 | Miranda Lambert | 28 |
| What Ya Want From Me | 2009 | Adam Lambert | 10 |
| Whatcha Say | 2009 | Jason Derulo | 1 |
| When I Look At You | 2009 | Miley Cryus | 16 |

| | | | |
|---|---|---|---|
| | 2009 | Total | 455 |
| | | Count | 28 |
| | | Mean | 16.3 |
| | | Standard Deviation | 18.4 |

| | | | |
|---|---|---|---|
| | All Songs | Total | 754 |
| | | Count | 52 |
| | | Mean | 14.5 |
| | | Standard Deviation | 19.6 |

| 52 Song Billboard Sample Song Title | Copyright | Recorded by | Hot 100 Peak |
|---|---|---|---|
| Breakeven | 2008 | The Script | 12 |
| Come Back To Me | 2008 | David Cook | 63 |
| Kiss A Girl | 2008 | Keith Urban | 16 |
| Live Like We're Dying | 2008 | Kris Allen | 18 |
| You Belong With Me | 2008 | Taylor Swift | 2 |

| | | | |
|---|---|---|---|
| 2008 | Total | 111 | |
| | Count | 5 | |
| | Mean | 22.2 | |
| | Standard Deviation | 23.6 | |

| 52 Song Billboard Sample Song Title | Copyright | Recorded by | Hot 100 Peak |
|---|---|---|---|
| Airplanes | 2010 | B.o.B. | 2 |
| Back To December | 2010 | Taylor Swift | 6 |
| Billionaire | 2010 | Travie McCoy | 4 |
| California Gurls | 2010 | Katy Perry | 1 |
| Firework | 2010 | Katy Perry | 1 |
| Forget You | 2010 | Cee Lo Green | 2 |
| Give A Little More | 2010 | Maroon 5 | 86 |
| Just The Way You Are | 2010 | Bruno Mars | 1 |
| King Of Anything | 2010 | Sara Bareilles | 32 |
| Mine | 2010 | Taylor Swift | 3 |
| Misery | 2010 | Maroon 5 | 14 |
| Nothin On You | 2010 | B.o.B. | 1 |
| Raise Your Glass | 2010 | Pink | 1 |
| Teenage Dream | 2010 | Katy Perry | 1 |
| There Goes My Baby | 2010 | Usher | 25 |
| Today Was A Fairytale | 2010 | Taylor Swift | 2 |
| We R Who We R | 2010 | Kesha | 1 |
| What's My Name | 2010 | Rihanna | 1 |
| Your Love Is My Drug | 2010 | Kesha | 4 |

| | | | |
|---|---|---|---|
| 2010 | Total | 188 | |
| | Count | 19 | |
| | Mean | 9.9 | |
| | Standard Deviation | 20.4 | |

| Bieber Writing Credits Song Title | Copyright | Recorded by | Hot 100 Peak |
|---|---|---|---|
| Baby | 2010 | Justin Bieber | 5 |
| Eenie Meenie | 2010 | Justin Bieber | 15 |
| U Smile | 2010 | Justin Bieber | 27 |
| Down to Earth | 2009 | Justin Bieber | 79 |
| That Should be Me | 2010 | Justin Bieber | 92 |
| Bigger | 2009 | Justin Bieber | 94 |
| Overboard | 2010 | Justin Bieber | DNC |
| Stuck in the Moment | 2010 | Justin Bieber | DNC |
| Up | 2010 | Justin Bieber | DNC |
| Runaway Love | 2010 | Justin Bieber | DNC |

Sorted by "Hot 100 Peak"

| | | | |
|---|---|---|---|
| Charted Songs | Total Charted Songs | 312 | |
| | Count | 6 | |
| | Mean | 52.0 | |
| | Standard Deviation | 40.7 | |

| Stereotypes Credited Song Title | Copyright | Recorded by | Hot 100 Peak |
|---|---|---|---|
| Who Need a Dime | 2005 | Mic Little | DNC |
| Wonderful | 2007 | Marques Houston | DNC |
| Cupid Shot You | 2007 | Cupid | DNC |
| Damaged | 2007 | Danity Kane | 14 |
| New Man | 2008 | Joe Thomas | DNC |
| Why Just be Friends | 2008 | Joe Thomas | DNC |
| Why Does She Stay | 2008 | Ne-Yo | DNC |
| 6 a.m. | 2008 | Bueno | Cannot Find |
| Good Love | 2009 | Mary J. Blige | DNC |
| Your love | 2009 | Pleasure P | DNC |
| Again   6/8 time | 2009 | Natasha Bedingfield | DNC |
| Johnny | 2009 | Melanie Fiona | DNC |
| Oh Yeah | 2009 | Jaicko | DNC |
| Boys Go Crazy | 2009 | Paradiso Girls | DNC |
| Even Angels | 2010 | Fantasia Barrino | DNC |
| Celebration | 2010 | Tank | DNC |
| We'll be Alright | 2010 | Travie McCoy | DNC |

Listed Chronologically

| | | | |
|---|---|---|---|
| | | indicates writing credits could not be found | |
| | | indicates Stereotypes not given writing cred | |

| Somebody to Love | 2010 | Justin Bieber | 15 |
|---|---|---|---|

AJM 10/20/12

Billboard "Hot 100" Peak for Each Song in the Sample, Bieber Credited Set and Stereotypes Credited Song Set

Sorted by Peak Rank

| 52 Song Billboard Sample Song Title | Copyright | Recorded by | Billboard Hot 100 Peak Rank |
|---|---|---|---|
| Empire State Of Mind | 2009 | Jay-Z | 1 |
| Fireflies | 2009 | Owl City | 1 |
| Whatcha Say | 2009 | Jason Derulo | 1 |
| California Gurls | 2010 | Katy Perry | 1 |
| Firework | 2010 | Katy Perry | 1 |
| Just The Way You Are | 2010 | Bruno Mars | 1 |
| Nothin On You | 2010 | B.o.B. | 1 |
| Raise Your Glass | 2010 | Pink | 1 |
| Teenage Dream | 2010 | Katy Perry | 1 |
| We R Who We R | 2010 | Kesha | 1 |
| What's My Name (NO I | 2010 | Rihanna | 1 |
| Bad Romance | 2009 | Lady Gaga | 2 |
| Need You Now | 2009 | Lady Antebellum | 2 |
| Party in the USA | 2009 | Miley Cryus | 2 |
| Replay | 2009 | Iyaz | 2 |
| You Belong With Me | 2008 | Taylor Swift | 2 |
| Airplanes | 2010 | B.o.B. | 2 |
| Forget You | 2010 | Cee Lo Green | 2 |
| Today Was A Fairytale | 2010 | Taylor Swift | 2 |
| Hey, Soul Sister | 2009 | Train | 3 |
| Mine | 2010 | Taylor Swift | 3 |
| The Climb | 2009 | Miley Cryus | 4 |
| Billionaire | 2010 | Travie McCoy | 4 |
| Your Love Is My Drug | 2010 | Kesha | 4 |
| Alejandro | 2009 | Lady Gaga | 5 |
| Cooler Than Me | 2009 | Mike Posner | 6 | Median |
| New Divide | 2009 | Linkin Park | 6 |
| Back To December | 2010 | Taylor Swift | 6 |
| Obsessed | 2009 | Mariah Carey | 7 |
| Battlefield | 2009 | Jordan Sparks | 10 |
| What Ya Want From Me | 2009 | Adam Lambert | 10 |
| Fallin' For You | 2009 | Colbie Caillat | 12 |
| Breakeven | 2008 | The Script | 12 |
| Already Gone | 2009 | Kelly Clarkson | 13 |
| Misery | 2010 | Maroon 5 | 14 | Mean |
| Here We Go Again | 2009 | Demi Lavato | 15 |
| When I Look At You | 2009 | Miley Cryus | 16 |
| Kiss A Girl | 2008 | Keith Urban | 16 |
| Live Like We're Dying | 2008 | Kris Allen | 18 |
| Secrets | 2009 | One Republic Son | 21 |
| Her Diamonds | 2009 | Rob Thomas | 23 |
| There Goes My Baby | 2010 | Usher | 25 |
| The House That Built Mc | 2009 | Miranda Lambert | 28 |
| Smile | 2009 | Uncle Kracker | 31 |
| King Of Anything | 2010 | Sara Bareilles | 32 |
| Marry Me | 2009 | Pat Monahan | 34 |
| Life After You | 2009 | Daughtry | 36 |
| September | 2009 | Daughtry | 36 |
| Little Lion Man | 2009 | Mumford & Sons | 45 |
| Come Back To Me | 2008 | David Cook | 63 |
| Chances | 2009 | Five for Fighting | 83 |
| Give A Little More | 2010 | Maroon 5 | 86 |

Modal Table

| Hot 100 Peak | Number of Songs at Peak | |
|---|---|---|
| 1 | 11 | Mode |
| 2 | 8 | |
| 3 | 2 | |
| 4 | 3 | |
| 5 | 1 | |
| 6 | 3 | |
| 7 | 1 | |
| 10 | 2 | |
| 12 | 2 | |
| 13 | 1 | |
| 14 | 1 | |
| 15 | 1 | |
| 16 | 2 | |
| 18 | 1 | |
| 21 | 1 | |
| 23 | 1 | |
| 25 | 1 | |
| 28 | 1 | |
| 31 | 1 | |
| 32 | 1 | |
| 34 | 1 | |
| 36 | 2 | |
| 45 | 1 | |
| 63 | 1 | |
| 83 | 1 | |
| 86 | 1 | |

| Mean | 14.5 |
|---|---|
| Median | 6 |
| Mode | 1 |

35 songs had a higher peak than the Bieber song
16 songs had a lower peak than the Bieber song

its

AJM 10/20/12

**Outcomes Summary Table**
**for All Data Sets Investigated**

**Summary Table of Findings**

The outcomes of 15 song  characteristics considered in this research are shown in the table.  An analysis of the Copeland 2008 copyrighted song and the Bieber, et al. 2010 copyrighted song
produced 15 characteristics for testing.  Each characteristic was tested for each version of "Somebody to Love" as well as 52 songs taken from the "Billboard Hot 100"
from the years 2009 - 2010, the population of songs with writing credits to Justin Bieber and the population of songs with writing credits to the Stereotypes.
For the two versions of "Somebody to Love," an "X" indicates the presence of the characteristic in the song.
For the "Billboard Hot 100" sample, the sample size of 52 is above the minimum sample size needed to conduct statistical tests of significance.  An "X" indicates presence of the characteristic.
The population sizes of the Bieber songs (10) and the Stereotypes songs (17) are too small to draw conclusions from statistical testing.
An "*" is used to indicate occurances of a characteristic that could be considered typical of the writers.  The actual number is given in the notes column.
A "-" is used to indicate the occurance of a characteristic that is larger than a trivial number, yet cannot be said to typlify behavior of the writers.

| | Song characteristic | Somebody to Love Copeland 2008 N = 1 | Somebody to Love Bieber et al. 2010 Version N = 1 | Billboard Hot 100 2009-2011 Sample n = 52 | Bieber, et al. Written Songs 2009-2010 Population N =1 | Stereotypes, et al. Written Songs 2007 - 2010 Population N = 17 | Notes |
|---|---|---|---|---|---|---|---|
| 1 | Verse contains an odd number of measures | X (15) | X (15) | | | | **0** Stereotypes song and 1 Bieber song |
| 2 | Chorus contains an odd number of measures | X (9) | X (9) | | | | 2 Stereotypes song and 1 Bieber song |
| 3 | Chorus contains tag lines | | X | | | − | 6 Stereotypes songs and 2 Bieber songs |
| 4 | Presence of a KBP in the song | X | X | | * | * | 10 Stereotypes songs and 6 Bieber songs |
| 5 | If present, the KBP lasts the entire song | X | X | X | | | 2 Stereotypes songs and **0** Bieber song |
| 6 | Introduction is spoken | X | X | | | | 4 Stereotypes songs and 1 Bieber song |
| 7 | Songs begin with the verse after the introduction | X | X | X | * | * | All data groups started most songs with a verse. |
| 8 | Songs with same scalar chord number to begin the chorus & verse | | | X | * | * | 10 Stereotypes songs and 5 Bieber songs |
| 9 | The scalar 4-chord is used to begin the verse | X | X | | | | 2 Stereotypes songs and 2 Bieber songs |
| 10 | The scalar 7-chord is used to begin the first chorus measure | X | X | | | | **0** Stereotypes song and **0** Bieber song |
| 11 | The scalar 4-chord is used to begin the second chorus measure | X | X | | | − | 2 Stereotypes songs and 1 Bieber song |
| 12 | The scalar 4-chord used is the minor 9 | X | X | | | | **0** Stereotypes song and **0** Bieber song |
| 13 | Call and Response used in the song | X | X | | | | 2 Stereotypes songs and **0** Bieber song |
| 14 | First chorus measure uses all eighth notes | X | X | | | | **0** Stereotypes song and **0** Bieber song |
| 15 | Second chorus measure uses long held notes (whole or dotted | X | X | | | | 1 Stereotypes song and **0** Bieber songs |

Jeff Wilson of the Byers Law Group provided the list of Stereotypes and Justin Bieber credited songs. Information available on the internet does not show writing credits for Stereotypes for five songs.
The five songs remain part of this analysis under the assumption that the Stereotypes were involved in the writing.

**Comments and Conclusions**

1 Of the 17 songs credited to the Stereotypes, 12 listed additional writers to the Stereotypes.  Writing credits cannot be found for four songs.  One song did not give writing credits to the Stereotypes.
   Given the number of writers on each song the actual contribution of each writer is unknown.  Without this knowledge conclusions regarding the strength of the found similarities between the
   Stereotypes song characteristics and the two versions of "Somebody to Love" is difficult, if not impossible.  The Stereotypes produced all of the songs.  Production credits are not in question for this analysis.
   Thus, no conclusions can be made regarding the contribution of the Stereotypes to any of their credited songs, including the Bieber, et al. version of "Somebody to Love."

2 The Stereotypes songs were analyzed and tested using the same processes and tests applied to the other song sets.  Given the small size of the song set, statistical testing can not provide
   a reliable indicator of writing habits.  However, reviewing the number of songs displaying a particular characteristic can give an indicator of how often a characteristic was used.
   For example, Stereotypes song set used a KBP in 10 of the 17 songs.  One would not be surprised if a future Stereotypes associated song contained a KBP.

3 The Bieber credited songs were analyzed using the same processes applied to the other song sets.  Given the small size of the song set, statistical testing can not provide
   a reliable indicator of writing habits.  However, reviewing the number of songs displaying a particular characteristic can give an indicator of how often a characteristic was used.
   For example, the Bieber song set used a KBP in 6 of 10 songs.  One could conclude the use of a KBP is not unusual.  One would not be surprised if a future Justin Bieber associated song contained a KBP.

3 With only 2 occurances of the scalar 4-chord used to begin a verse, one could conclude this scalar chord is not something the Stereotypes associated songs typically use.

4 Four characteristics were not found in any of the Stereotypes songs.  Thus, to find them in the Bieber version of "Somebody to Love" is most unusual and not to be expected.

5 Six characteristics were not found in any of the Justin Bieber credited songs.  Thus, to find them in the Bieber version of "Somebody to Love" is most unusual and not to be expected.

6 Comparison of the Stereotypes songs and the Bieber songs with the two versions of "Somebody to Love" found very little in common.  Both tended to use a KBP in their songs and a KBP was found in the
   two versions of "Somebody to Love."  Use of a KBP in a hip-hop or dance song is not surprising and does not support or reject claims of song theft.

7 The Stereotypes songs also use tag lines frequently, including the Bieber version of "Somebody to Love".  Tag lines are a device used to stretch a song's chorus and provide more dance time.

8 The Stereotypes and  Bieber songs frequently used the same chord to begin both the verse and chorus of a song.  This was not the case for either version of "Somebody to Love."

9 In conclusion, the Bieber, et al. version of "Somebody to Love" had 14 of the 15 characteristics found in the original Copeland song.  Only 2 characteristics found in the Stereotypes' set and in Bieber's set.
   Only 2 characteristics were found in the Stereotypes song set and in the Bieber song set that were found in the Copeland song.  One (begin with a verse after the introduction) was common  to all song sets.  The
   second was the presence of a KBP, but not for the entire song.
   Likewise, the Stereotypes and  Bieber's song writing techniques/characteristics are **NOT** similar to those of  Bieber's version of "Somebody to Love," (2 each).  The data do not lend credence to the
   Stereotypes or Justin Bieber writing the Bieber version of "Somebody to Love" independently of the Copeland version.

AJM 10/20/12

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

|  |  |
|---|---|
| DEVIN COPELAND p/k/a DE RICO and MAREIO OVERTON,<br><br>        Plaintiffs,<br><br>v.<br><br>JUSTIN BIEBER, USHER RAYMOND IV p/k/a "USHER," HEATHER BRIGHT, Individually and d/b/a B-RHAKA PUBLISHING, RAY ROMULUS a/k/a RAYRO and d/b/a PLEASE ENJOY THE MUSIC, JONATHAN YIP, Individually and d/b/a PRODUCTS OF THE STREET, JEREMY REEVES, Individually and d/b/a SUMPHU, UNIVERSAL MUSIC CORP., SONY/ATV MUSICAL PUBLISHING, LLC, BIEBER TIME PUBLISHING, LLC, WB MUSIC CORP., THE ISLAND DEF JAM MUSIC GROUP, STAGE THREE MUSIC (U.S.), INC., STAGE THREE MUSIC, LLC AND JONETTA PATTON,<br><br>        Defendants. | Civil Action No. 2:13-cv-246 AWA/TEM |

**JOINDER BY DEFENDANT USHER RAYMOND IV
IN THE MOTION TO DISMISS THE COMPLAINT FILED
BY UNIVERSAL MUSIC CORP. AND THE ISLAND DEF JAM MUSIC GROUP**

PLEASE TAKE NOTICE that Defendant Usher Raymond IV ("Raymond"), by his undersigned counsel, and without prejudice to his Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or Motion to Dismiss or Strike Plaintiffs' Demand for Punitive Damages, joins in the motion by Defendants Universal Music Corp. and The Island Def Jam Music Group's ("Universal Defendants") to dismiss the Complaint (Doc. No. 17) ("Motion To Dismiss").

On June 28, 2013, the Universal Defendants, by their counsel, filed the Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

Defendant Raymond incorporates by reference, as if fully set forth herein, all facts, authorities, and arguments set forth therein and submitted in support thereof, including, without limitation, all facts, authorities, and arguments set forth in the memorandum, declarations, and exhibits submitted by the Universal Defendants in support of the Motion to Dismiss.

Based upon the facts, authorities, and arguments set forth in the Motion To Dismiss, Defendant Raymond respectfully requests that the Court grant the Motion To Dismiss and dismiss all of Plaintiffs' alleged causes of action against Defendant Raymond under Fed. R. Civ. P. 12(b)(6).

Nothing herein is intended to waive or relinquish, and Defendant Raymond expressly reserves, any and all of his defenses, challenges, and arguments to and relating to the alleged causes of action asserted against him, and specifically reserves his rights to challenge the sufficiency of the allegations in the Complaint should the purported claims against him not be dismissed.

Dated:  July 26, 2013                    Respectfully submitted,


                                          /s/ Stephen E. Noona
                                         Stephen E. Noona
                                         Virginia State Bar No. 25367
                                         Kaufman & Canoles, P.C.
                                         150 W. Main Street, Suite 2100
                                         Norfolk, VA  23510
                                         Telephone:  757-624-3239
                                         Facsimile:  757-624-3169
                                         senoona@kaufcan.com

2

Jonathan D. Davis, Esq. (*pro hac vice*)
Jonathan D. Davis, P.C.
99 Park Avenue, Suite 1600
New York, New York 10016
Telephone:  212- 687-5464
Facsimile:  212- 557-0565
jdd@jddavispc.com

*Attorneys for Defendant Usher Raymond, IV,
p/k/a Usher*

3

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2013, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Duncan G. Byers
Virginia State Bar No. 48146
Jeffrey D. Wilson
Virginia State Bar No. 75734
Byers Law Group
142 W. York Street, Suite 910
Norfolk, VA  23510
Phone:  757-227-3340
Facsimile:  757-227-3341
duncan.byers@byerslawgroup.com
jdwilson@byerslawgroup.com
admin@byerslawgroup.com

*Attorneys for Plaintiffs*
*Devin Copeland and Mareio Overton*

Stephen E. Noona
Virginia State Bar No. 25367
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com

*Attorney for Defendants Justin Bieber and*
*Bieber Time Publishing LLC, Universal Music*
*Corp., The Island Def Jam Music Group,*
*a division of UMG Recordings, Inc. and*
*Usher Raymond, IV, p/k/a Usher*

Howard Weitzman (*pro hac vice*)
Jeremiah T. Reynolds (*pro hac vice*)
Kinsella Weitzman Iser Kump & Aldisert
808 Wilshire Blvd., 3rd Floor
Santa Monica, CA  90401
Telephone:  310-566-9800
Facsimile:  310-566-9884
hweitzman@kwikalaw.com
jreynolds@kwikalaw.com

*Attorneys for Defendants Justin Bieber*
*and Bieber Time Publishing LLC*

Nathan Muyskens
Virginia State Bar No. 39168
Loeb & Loeb LLP
901 New York Avenue NW
Suite 300 East
Washington, DC  20001
Telephone:  202-618-5000
Facsimile:  202-618-5001
nmuyskens@loeb.com

Barry I. Slotnick *(pro hac vice)*
Cheng L. Chen *(pro hac vice)*
Loeb & Loeb LLP
345 Park Avenue
New York, NY  10154
Telephone:  212-407-4000
Facsimile:  212-407-4990
bslotnick@loeb.com
lchen@loeb.com

*Attorneys for Heather Bright, B-RHAKA*
*Publishing LLC, WB Music Corp. and*
*Sony/ATV Music Publishing LLC*

  */s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com

12539416v2

5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

---

DEVIN COPELAND p/k/a DE RICO and MAREIO
OVERTON,

       Plaintiffs,

v.

JUSTIN BIEBER, USHER RAYMOND IV p/k/a
"USHER," HEATHER BRIGHT, Individually and
d/b/a B-RHAKA PUBLISHING, RAY ROMULUS
a/k/a RAYRO and d/b/a PLEASE ENJOY THE
MUSIC, JONATHAN YIP, Individually and d/b/a
PRODUCTS OF THE STREET, JEREMY REEVES,
Individually and d/b/a SUMPHU, UNIVERSAL
MUSIC CORP., SONY/ATV MUSICAL
PUBLISHING, LLC, BIEBER TIME PUBLISHING,
LLC, WB MUSIC CORP., THE ISLAND DEF JAM
MUSIC GROUP, STAGE THREE MUSIC (U.S.),
INC., STAGE THREE MUSIC, LLC AND
JONETTA PATTON,

       Defendants.

Civil Action No. 2:13-cv-246
AWA/TEM

---

**REPLY IN SUPPORT OF UNIVERSAL MUSIC CORP. AND THE ISLAND DEF JAM
MUSIC GROUP, A DIVISION OF UMG RECORDINGS INC.'S RULE 12(b)(6)
MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM**

I.     **INTRODUCTION**

      Universal Music Corp. and The Island Def Jam Music Group, a division of UMG

Recordings Inc.'s (incorrectly named as "Island Def Jam Music Group") ("Defendants") motion

to dismiss demonstrated that the allegedly infringing song ("Defendants' Song") bears no

similarities whatsoever to Plaintiffs' Song aside from the fact that they each utilize some

variation of the lyric "I need somebody to love" in their choruses.  Even if the Court assumes for

purposes of this Motion that Defendants copied this lyrical phrase, Plaintiffs' infringement claim

still fails as a matter of law.  The law is clear that this phrase is too short and cliché to be

protected, and moreover, Defendants express the idea of this phrase differently in Defendants'

Song, using an entirely distinct melody together with a different tempo, rhythm, and feel.

Nothing Plaintiffs could say, or do say, in their Opposition can change what the Court will hear

with its own ears when it listens to the parties' recordings:  as a matter of law, no ordinary

listener—whether an end consumer, a music industry executive, or a professional musicologist—

could discern any meaningful similarities between the two works at issue so as to allow for a

finding that Defendants appropriated protected aspects of Plaintiffs' work.

      In opposing the Motion, Plaintiffs place all their eggs in the basket of the so-called expert

report of Duncan L. Wood.  It is axiomatic, however, that Wood's report must be disregarded on

a motion to dismiss.  Although the Court can consider matters that are relied upon by Complaint

or that are subject to judicial notice, this rule does <u>not</u> extend to expert reports prepared for

purposes of litigation.

      The end result would be no different even were the Court to consider Wood's report.  The

report is incompetent for purposes of a copyright analysis.  Wood's analysis repeatedly

contravenes well-established copyright law by highlighting as "similarities" elements of the

works that  he admits are generic, unoriginal, and unprotectable.  For example, Plaintiffs' Song

and Defendants' Song share the most common time signature in all of music, 4/4 timing; yet,

Wood deems this generic similarity as a point of "congruence," which, in Wood's opinion, is an

indicator of infringement.  In this repeatedly flawed analysis, Wood misunderstands the standard

for copyright infringement, under which similarities that are at a generic, unprotected level are absolutely irrelevant to (and to be disregarded in) the Court's analysis.

Notably, not once in Wood's report does he identify <u>any</u> protected <u>expression</u> from Plaintiffs' Song – to be contrasted with an unprotected <u>idea</u> – that appears in Defendants' Song. Moreover, try as he might as a paid advocate for Plaintiffs, Wood cannot help but to repeatedly confess the substantial <u>dissimilarities</u> in the parties' respective songs, including in their lyrics, melody, rhythm, and genre, that Defendants highlight in their Motion and that compel the dismissal of Plaintiffs' claim.

For the reasons set forth in the moving papers and further below, Defendants' motion to dismiss for failure to state a claim should be granted and Plaintiffs' claims dismissed with prejudice.

## II.    PLAINTIFFS' ERRONEOUS STATEMENT OF THE LEGAL STANDARD FOR EVALUATION OF THEIR COPYRIGHT CLAIM SHOULD BE DISREGARDED

Plaintiffs' Opposition makes two incorrect assertions concerning the standard for copyright infringement which must be addressed before turning to Plaintiffs' claims of substantial similarity.

### A.    The Standard Is "Substantial Similarity" And Nothing Less

Plaintiff cites cases from the First and Second Circuits for the proposition that "[i]f a plaintiff is able to show that the similarities are not *de minimis*, then they must be considered substantial for purposes of copyright law."  Opp. at 7.  Although some out-of-circuit courts have described "substantial similarity" as something "more than *de minimis*," the Fourth Circuit has never framed the test as such.  Under Fourth Circuit authority, Plaintiffs must plead and prove "<u>substantial</u> similarities in both ideas and expression."  *Universal Furniture Intern., Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 435-436 (4th Cir. 2010) (emphasis added).  To the

extent Plaintiffs intimate that the bar is lower than "substantial similarity," their argument must

be rejected.

But even accepting Plaintiffs' definition of "substantial similarity" as something "more

than *de minimis*," their claim fails.  As discussed in the moving papers and further below, the

parties' songs bear <u>no</u> similarities whatsoever except as to generic, unprotectable elements.

Focusing solely on the protected elements of Plaintiffs' work, as the law requires, there are <u>no</u>

<u>similarities at all</u> between the parties' songs, let alone similarities that could be described as

"more than *de minimis*."

### B.  <u>Ordinary Consumers Of Music Are The "Intended Audience" By Which Infringement Must Be Judged Here</u>

The moving papers describe that under Fourth Circuit law, the "intrinsic" test for

substantial similarity considers whether the intended audience of the works would find them, "as

a whole, to be substantially similar."  *Universal Furniture*, 618 F.3d at 437.  The intrinsic

analysis "looks to the 'total concept and feel of the works, but only as seen as through the eyes of

the . . . intended audience of the plaintiff's work.'"  *Id.* at 436.

Plaintiffs agree with this standard (and tacitly admit that the "lay observer" would find

the songs *not* to be substantially similar) but argue, in a demonstrably "Hail Mary" tactic, that

"[h]ere, the intended audience is not and has never been the lay public."  Opp. at 10.  Plaintiffs

state that their song "has never been sold or offered for sale to the public," and thus, "[w]hether

or not a 'lay' person would find substantial similarity between the works is thus not applicable to

the inquiry made by this Court."  *Id.*  Instead, the "appropriate question is whether or not a music

industry professional would find substantial similarity between the works," as it was these

industry executives, according to Plaintiffs, who were the intended audience of their music.

Plaintiffs' assertion that the intended audience for their work is more specialized than the average music listener is factually and legally untenable and is belied by their own allegations and the case upon which they rely, *Dawson v. Hinshaw Music Inc.*, 905 F.2d 731 (4th Cir. 1990). *Dawson* in fact cautions that courts should <u>rarely</u> depart from the ordinary observer standard, and the case makes clear that this is not the case for such a departure.  The plaintiff in *Dawson* owned the copyright to "an arrangement of the spiritual 'Ezekiel Saw De Wheel.'"  *Id.* at 732.  The plaintiff "d[id] not sell recordings" of that arrangement, but instead sold "sheet music arrangements to those who may make a purchasing decision on the basis of the sheet music" like "choral directors."  *Id.* at 737-738.  The plaintiff sued the defendant after it published an allegedly similar arrangement of that spiritual.  *Id.* at 732.

The Fourth Circuit reversed and remanded after a finding for the defendants, holding that the trial court should have considered whether to apply the intrinsic test for infringement from the perspective of someone with more specialized knowledge than the ordinary lay observer. The Court noted that traditionally the question under the intrinsic test was "'whether defendant took from plaintiff's works so much of what is pleading to the ears of lay listeners, <u>who comprise the audience for whom such popular music is composed</u>, that defendant wrongfully appropriated something which belongs to plaintiff.'"  *Id.* at 734 (quoting *Arnstein v. Porter*, 154 F.2d 464, 473 (2d Cir. 1946)) (emphasis in original).  The Court agreed that "[u]nder the facts before it, <u>with a popular composition at issue</u>, the *Arnstein* court appropriately perceived 'lay listeners' and the works' 'audience' to be the same."  *Id.* at 734 (emphasis added).  The Court recognized, however, that in some limited cases "where the intended audience is significantly more specialized than the pool of lay listeners, the reaction of the intended audience would be the relevant inquiry."  *Id.*; *see also id.* at 735 (discussing particular need in software infringement

cases to adjudge similarity based upon "people who are familiar with the media at issue," and noting that the "ordinary observer test [is] senseless" in this context).

*Dawson*, however, was careful to qualify its holding as the unique exception to the rule where, "<u>as will most often be the case</u>, the lay public fairly represents the intended audience." *Id.* at 736 (emphasis added).  In fact, *Dawson* expressed concern—presciently—that its holding would be "read as an invitation to every litigant in every copyright case to put before the court the seemingly unanswerable question of whether a product's audience is sufficiently specialized to justify departure from the lay characterization of the ordinary observer test." *Id.*  *Dawson* thus admonished that "a court <u>should be hesitant</u> to find that the lay public does not fairly represent a work's intended audience," and that such a departure is appropriate *only* where the plaintiff's intended audience has "specialized expertise" that "go[es] beyond mere differences in taste and instead . . . rise[s] to the level of the possession of knowledge that the lay public lacks." *Id.* at 737 (emphasis added).  *Dawson* reiterated that courts should "*routinely, and properly*, apply the ordinary lay observer test to music cases." *Id.* (emphasis added).

*Dawson* belies Plaintiffs' argument that the intrinsic test for infringement should be applied with reference to an audience possessing more specialized music knowledge than the ordinary listener.  Indeed, the Court there held that "with a popular composition at issue," similarity should be considered from the perspective of "lay listeners." *Id.* at 734; *see also id.* at 737 (stressing that the plaintiff "alleged infringement of a spiritual arrangement, not a popular recording").

This is not the exceptional case in which Plaintiffs intended to market in a specialized medium that is outside the comprehension of ordinary consumers.  To the contrary, Plaintiffs' own Complaint repeatedly alleges and admits that Plaintiffs sought to record and perform

popular music for the general, music-consuming public.  The Complaint alleges, *inter alia*, that

Plaintiff Devin Copeland, "who performs under the name 'De Rico,' is a writer and singer in the

[R&B] genre of music;" that "[i]n 2008, Plaintiffs began collaborating on a number of songs to

be professionally performed and recorded by Copeland and released as an album;" that

"Copeland recorded the song 'Somebody to Love,' which was included on his album 'My Story

II;'" and that Copeland communicated with representatives of Defendant Usher Raymond, who

"were interested in having Copeland re-record the album and tour with Usher that summer."

Compl. ¶¶ 26, 28, 29, 36.

   Plaintiffs' submission of the Declaration of Devin Copeland – who attempts to negate the

plain allegations of his own Complaint and asserts that it was never his intention to record or

perform his song for the public – is patently improper.[1]  *See, e.g., Gawlas v. King*, 2011 WL

4498961 *1 (W.D. Pa.) ("It was procedurally improper for Plaintiff's counsel to submit the

Declarations in response to the motion to dismiss and they will not be considered in ruling on the

pending motion.").

   This is not the rare case in which the intended audience for Plaintiffs' work is something

other than lay listeners, and even were the Court to accept that "music industry professionals"

were Plaintiffs' intended audience, the Opposition never explains how a music industry

professional might listen to Plaintiffs' R&B song and Defendants' upbeat dance track – with

their different melodies and lyrics, different rhythms and tempos, and different styles and moods

– and discern any more similarities than would a lay listener.  As detailed in the motion, no

listener—lay or professional, regardless of their musical background, could reasonably

---

[1]   It is also starkly at odds with Plaintiffs' own marketing efforts.  Copeland promotes his songs *and makes them available for download to the public* at the website http://www.reverbnation.com/play_now/song_8326200.  The Reverbnation website provides "Powerful digital tools to promote your music and connect with [your] fans." *Id.*

"overlook" the stark differences between Plaintiffs' Song and Defendants' Song and "regard

their aesthetic appeal as the same."  *Universal Furniture*, 618 F.3d at 436.

## III.  PLAINTIFFS' SUBMISSION OF AN "EXPERT" REPORT IS IMPROPER ON A RULE 12(b)(6) MOTION TO DISMISS AND THE REPORT IS EXCLUDABLE

Plaintiffs' Opposition relies almost entirely on a report from purported expert Duncan L.

Wood, who identifies himself as a teacher of guitar and bass, music theory, and composition

(hereinafter, the "Wood Report").  Plaintiffs' reliance upon the Wood Report in the context of a

Rule 12(b)(6) motion is improper.

The law is clear that an expert report is <u>not</u> among the kinds of documents that may be

considered on a motion to dismiss, even if the report is referenced in the Complaint as is the case

here.  *See*, *e.g.*, *City of Royal Oak Retirement Sys. v. Juniper Networks, Inc.*, 2013 WL 2156358

*7 (N.D. Cal.) ("Most district courts within the circuit have concluded that it is inappropriate to

consider an expert affidavit on a motion to dismiss under Rule 12(b)(6), whether or not the

affidavit is attached to the complaint."); *Demarco v. Depotech Corp.*, 149 F.Supp.2d 1212, 1221

(S.D. Cal. 2001); *In re Viropharma, Inc. v. Securities Lit.*, 2003 WL 1824914 *2 (E.D. Pa.)

(holding on a motion to dismiss that "Plaintiffs' submission of an expert report at this stage is

entirely improper").  One Court has even held as much specifically in a copyright infringement

suit concerning music recordings.  *See Gottwald v. Jones*, 2011 WL 5289471 *2 (S.D.N.Y.)

(denying motion to reconsider dismissal of copyright infringement claim and holding that the

Court's "analysis will not be changed by the movants' continued reliance on 'Dr. Stewart's

report'" because "reliance on expert testimony would have been doubly inappropriate," including

because the Court's "original decision [was] based on a <u>motion to dismiss</u>") (emphasis in

original).

The District Court in *Demarco* explained the logic of this sensible rule: "Considering an expert affidavit on a motion to dismiss, whether attached to a motion to dismiss or as an exhibit [to] the plaintiff's complaint, forces a district court to confront a myriad of complex evidentiary issues not generally capable of resolution at the pleading stage." 149 F.Supp.2d at 1221. Under the Federal Rules of Evidence, the district plays "the role of 'gatekeeper' with respect to expert testimony, requiring the court to ensure that the testimony is reliable and would assist the trier of fact." *Id.* For this to occur in most cases "would likely require a deposition [of the expert] and a subsequent *Daubert* hearing to determine the admissibility of his affidavit," all of which "would be improper at the pleading stage of any civil case." *Id.* "In sum, considering an expert affidavit would so complicate the procedural posture of a motion to dismiss that it would become virtually indistinguishable from a motion for summary judgment." *Id.*; *see also Viropharma*, 2003 WL 1824914 *2 (noting that submission of expert report in opposition to a motion to dismiss "attempts to circumvent the usual procedures for allowing expert testimony").

Here, Plaintiffs' submission of the Wood Report in opposing Defendants' Motion is "entirely improper." *Viropharma*, 2003 WL 1824914 *2. The Court should therefore not consider the Report in ruling upon Defendants' motion.[2]

---

[2] Even if this Court strays from the prevailing view that the consideration of expert reports in this context is improper, the facts and circumstances here would still compel exclusion of the Wood Report for failure to comply with several Rule 26 requirements for expert reports. *See, e.g.*, *U.S. ex rel. Mossey v. Pal-Tech, Inc.*, 231 F.Supp.2d 94, 98 (D.D.C. 2002) (striking expert report that "was not prepared in compliance with Rule 26(a)(2)(B)" because "there is no indication of how much plaintiff is paying [the expert]," "it is unclear whether [the expert] has published any articles," and the expert "makes no mention of any exhibits he intends to use during his testimony.")

## IV.    EVEN IF CONSIDERED, THE WOOD REPORT ONLY FURTHER COMPELS THE DISMISSAL OF THEIR CLAIM

Even assuming *arguendo* that the Court were inclined to consider the Wood Report at this stage[3], the Report is woefully incompetent, misapplies copyright law, is blatantly disingenuous in its attempts to draw comparisons between the parties' songs, and the Report is actually replete with admissions that <u>bolster</u> Defendants' motion to dismiss.

To start, the Court will note that Wood repeatedly errs by placing significance in similarities which are generic and not protectable under copyright law.  For example, although he admits (as he must) that the lyrics of the two songs are different, Wood states that "both compositions bear the same title" and that he "must consider this to be the **(1)** *first* **point of congruence**" supporting a finding of substantial similarity.  Wood Report p. 3 (emphasis in original).  It is axiomatic, however, that titles are not protected by copyright, particularly when they are short, stock phrases.  *See, e.g.*, *Pyatt v. Raymond IV*, 2011 WL 2078531 *8 (S.D.N.Y.); *Cottrill v. Spears*, 2003 WL 21223846 *10 (E.D. Pa.) ("While the titles of the songs and use of the lyric phrase are the same, this similarity is not probative of copying as the phrase is a cliché and can be found in prior art.")  In a <u>proper</u> analysis of copyright infringement, this similarity

---

[3] At best, the expert report would only be relevant at later stages for the extrinsic prong of the Fourth Circuit's two-prong substantial similarity test.  That first prong asks if "the works in question are **extrinsically** similar because they contain substantially similar ideas *that are subject to copyright protection…;*" but only to the extent that the similarities are protectable under Copyright law.  *Towler v. Sayles*, 76 F.3d 579, 584 (4th Cir. 1996).  Independent of that analysis and despite how the Court concludes on the first prong, the Court must dismiss the claim as a matter of law if the second prong is not satisfied—in that second prong "a plaintiff must satisfy the subjective, or **intrinsic**, portion of the test by showing substantial similarity in how those ideas are expressed…this portion of the test considers whether the intended audience could determine that the works are substantially similar, *usually without the aid of expert testimony.*"  *Id.* at 583-84 (emphasis added); *see also, Comins v. Discovery Commc'ns, Inc.*, 200 F.Supp.2d 512, 517 (D. Md. 2002).  In the end, the songs are different and the "total concept and feel" of the songs are not substantially similar no matter how many generic similarities are considered.  *Towler*, 76 F.3d at 584.

would be underlined disregarded altogether.  *Id.*; *see also Incredible Tech., Inc. v. Virtual Tech., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005) (holding that "the copyright laws preclude appropriation of only those elements of the work that are protected by the copyright"); *Towler*, 76 F.3d at 584.

Wood next notes that "[i]n both cases, the *time signature* is 4/4," which refers to there being four beats per measure.  Wood Report p. 4.  Wood accurately concedes: "However, 4/4 time is the most common time in composition."  *Id.*  He even stresses that it "is unreasonable to conclude anything definitive based on like time signatures."  *Id.*  And yet, shortly after admitting that it would "unreasonable" to liken songs based on a shared time signature – in fact, to do so would contravene copyright law – Wood inexplicably concludes that "since both compositions share the same time signature, this is **the (2) *second* point of congruence**."  *Id.*

Wood's analysis of the songs' rhythm patterns will similarly leave the Court scratching its head.  Under the heading "Tempos & Keystone Beat Patterns (KBP)," Wood discusses how Plaintiffs' song and Defendants' song *have different rhythms*.  Wood Report pp. 4-5.  He notes that Plaintiffs' song is at "101 bpm" and uses a "*syncopated* rhythm."  *Id.* p. 4.  Defendants' song, on the other hand, plays at "130 bmp" and "has a more straightforward 4/4 time up-tempo dance beat which lends itself to a more athletic style of dance that would be popular with an audience more interested in the dancing than the story being told."  *Id.*  Wood explicitly underlined distinguishes the two songs' beat styles, stating: "In contrast to [Defendants' song], the more complicated rhythm and slower pace of the Copeland version would likely appeal to an audience who might well be equally interested in the story as well as eliciting a slower, less athletic dance style."  *Id.* at pp. 4-5.  Wood then speculates that  "[i]f my goal were to modify [Plaintiffs'] version of 'Somebody to Love' into a stronger dance tune," the rhythm and tempo "are the first things I would change"— another confession by Wood of the songs' differences.  *Id.* at p. 5.

Wood is <u>confirming exactly what the moving papers argued</u>: these are very different songs with different rhythms, tempos, and feels.  Nevertheless, ignoring all of this, Wood concludes that there is a "third point of congruence" in that the Plaintiffs' and Defendants' rhythm patterns – as dissimilar as they are – repeat every two measures in their respective songs.  *Id.*  <u>This is absurd</u>.  The bare idea of a rhythm pattern repeating every two measures is not copyrightable.  Only a unique <u>expression</u> of that idea may be protected, and Wood admits that Plaintiffs and Defendants do so very differently.

Wood next finds that a "fourth point of congruence" is that "both introductions are *spoken*" in the parties' songs.  *Id.* p. 5.  Even if this were true, Wood does not deny that the <u>idea</u> of a spoken introduction is <u>expressed</u> differently by the parties, and so this is not probative of substantial similarity of copyrightable elements.  But it is simply <u>not true</u> that Defendants' song has a spoken introduction as Wood claims.  In Defendants' song, the beginning lyrics "Gotta keep you closer" and "feels so right" are sung in time with the song's beat.  They are <u>not</u> in the cadence of ordinary speech.

Wood then states: "The use of the hook, 'I . . . need somebody to love", in the chorus of the Bieber *et al.* version constitutes the **(5)** *fifth* **point of congruence**."  Wood Report p. 6.  In finding this to be probative of substantial similarity, Wood ignores the law that short, common phrases are not sufficiently original to enjoy copyright protection.  A proper analysis of infringement would <u>ignore</u> this so-called "point of congruence."  *See* Mot. at pp. 14-16[4].

---

[4] Indeed, the law is clear that the Court should not be comparing aspects of the works that are not protected by copyright law.  Importantly, before the comparison is made, the works at issue should be stripped of all aspects that are not protected by copyright, including unprotected ideas, unoriginal expressions, and public domain material.  *See, e.g.*, *Towler v. Sayles*, 76 F.3d 579, 584 (4th Cir. 1996); *Yankee Candle Co. v. Bridgewater Candle Co.,* 259 F.3d 25, 34 (1st Cir. 2001).

Wood's supposed **(6)** *sixth* **point of congruence** is the "use of one measure of strategic silence just prior to or at the beginning of the chorus."[5]  Wood Report p. 7.  Putting aside the unprecedented argument that silence, as opposed to expression is protectable under copyright law, Wood's analysis is still fatally flawed because he fixates on musical <u>ideas</u> rather than musical <u>expression</u>.  But regardless, he is again wrong about Defendants' song because there is <u>no</u> strategic silence just prior to the chorus in Defendants' song.  The lyric "I just need somebody to love" which leads into the chorus of Defendants' song is sung by the artist right into the chorus over heavy instrumentation and rhythm.

---

[5] Woods' report admits that the alleged "strategic silence" appears in *different measures* of the Defendants' song ( the first measure of the chorus) and the Plaintiffs' song ( the last measure of the verse.)  Beyond that, there is no "strategic silence" in the Defendants' song as the last note of the verse occurs on the fourth of four beats (4/4 time), the first note of the chorus begins on beat one of four, and the Defendants' artists sing and style the held notes (vibrato) right into the chorus (footnote continues on next page with musical example):



Wood identifies purported **seventh, eighth, and ninth points of congruence** by picking an isolated chord here or there in the Plaintiffs' and Defendants' songs that are similar (when the songs are transposed into the same key). Wood Report pp. 6-7. Wood concedes, though, that the chord progressions in the songs are different; they just happen to have a comparable chord somewhere in them. *See*, *e.g.*, *id.* p. 6 (describing Plaintiffs' verse as having a 4-measure progression consisting of a 4-chord, a 4-chord, a 1-chord, and a 1-chord, as contrasted with Defendants' verse which has a 4-chord, a 6-chord, a 7-chord, and a 7-chord). But Plaintiffs' and Defendants' songs could have identical chord progressions – Wood concedes they do not – and this would still not be probative of infringement given that such progressions are not protected under copyright law. *See* Mot. at 18-19.

Wood claims that a **tenth point of similarity** is that both songs "use the infrequently used 'call and response' form for the chorus-proper." Wood Report p. 10. Defendants disagree that their chorus is properly considered "call and response" since all of the lyrics are sung by Justin Bieber and Usher in their respective songs. Contrast this with Wood's definition of "call and response," which occurs when lyrics are sung by "different musicians" and when "the second phrase is heard as a direct commentary on or response to the first." Wood Report. p. 9 n.16. In any event, even if both parties use a "call and response" form, this is not probative of infringement. Far from being "infrequently used," as Wood claims, the Wikipedia page to which he cites describes the technique as "a basic element of musical form" and states: "The phenomenon of call and response is pervasive in modern Western popular music . . . ." Wood Report p. 9 n.16, citing  http://en.wikipedia.org/wiki/Call_and_response_(music)[6]. Pervasive or

---

[6] The same article notes that the musical trope of "call and response" is centuries old, was brought to the New World from Africa, and "has been transmitted over the centuries in various forms of cultural expression—in religious observance; public gatherings; sporting events; even

not, "call and response" is an age-old musical <u>idea</u>, and Defendants' use of that musical <u>idea</u> would only be probative of infringement if Plaintiffs had <u>expressed</u> the idea in a manner protectable by Copyright law and Defendants used an expression that was substantially similar to Plaintiffs' use. Clearly, that is not the case here.

Wood argues that the phrasing in the choruses of the parties' songs is similar, and he cites these alleged similarities as his **eleventh through seventeenth** "points of congruence." Wood Report pp. 10-15. In fact, apart from the fact that Plaintiffs' and Defendants' songs enter their choruses with the phrases "I need somebody to love" and "I just need somebody to love," respectively, there are no similarities in the choruses. In listening to the songs, the Court will hear that the primary voicing of the phrase "somebody to love" repeats at different places in the choruses of the parties' songs – every other measure in Plaintiffs' song, as opposed to every fourth measure in Defendants' song. The melodies of the choruses are completely different, which Wood admits. *See* Wood Report pp. 11-13. With these differences and the significant differences in rhythm, tempo, and music styles, the result is that the two choruses sound and feel nothing alike.

Lastly, Wood claims that Plaintiffs and Defendants use similar "melodic movement" in their singing of the phrase "I need somebody to love." Wood Report pp. 15-20. Specifically, despite admitting that Plaintiffs' and Defendants' melodies are different – which can be seen in the music notation in the Report – Wood nevertheless argues that a similarity can be discerned by calculating their "average pitch shift," which he does by: (1) assigning a zero to the first note in the phrase; (2) assigning a "+1" for any upward shift and a "-1" for any downward shift; (3)

---

in children's rhymes; and, most notably, in African-American music in its myriad forms and descendants including: gospel, blues, rhythm and blues, rock and roll, jazz and hip hop."

summing each upward and downward shift (*i.e.*, each "+1" and "-1"); and then (4) dividing by the number of pitch shifts.

This is an absurd attempt at sleight of hand. The fact that two melodies have a similar "average pitch shift" does not mean they are musically similar. The descending-ascending phrase C-B-A-G-A-B-C and the single-note phrase G-G-G-G-G-G-G bear no resemblance whatsoever but have an identical "average pitch shift" of zero.[7] Here, as in the preceding example, the average pitch shift of Plaintiffs' and Defendants' phrases may (or may not) be similar, but the phrases are musically unrelated.

In all, Wood's report <u>confirms</u> that Plaintiffs' Song and Defendants' Song have different lyrics, different melodies, different chord progressions, different rhythms and tempos, and represent different musical styles. Unwittingly, the Report makes a compelling case for dismissal of Plaintiffs' Complaint. No matter how many generic "points of congruence" Plaintiffs add to their substantial similarity calculus, the sum total cannot overcome the apparent and admitted conclusion that the lyrics, the melodies, the rhythms, the tempos, the genres, and the overall feel of these songs are different. As a result, the Plaintiffs' claims must be dismissed as a matter of law. *See Tessler v. NBC Universal, Inc.*, 2009 WL 866834 *3-6 (E.D. Va. 2009), *aff'd*, 364 F. App'x 5 (4th Cir. Feb. 4, 2010) (Jackson, J.) (dismissing copyright claim on Rule 12(b)(6) motion for lack of substantial similarity).

## V.    PLAINTIFFS' SECOND AND THIRD CLAIMS FOR CONTRIBUTORY AND VICARIOUS INFRINGEMENT FAIL

The Motion demonstrated that Plaintiffs have not pleaded any facts supporting their claims for contributory and vicarious infringement, instead formulaically reciting the elements of

---

[7] Under Wood's analysis, C-B-A-G-A-B-C would be written out as 0, -1, -1, -1, +1, +1, +1 (with an average pitch change of zero), and G-G-G-G-G-G-G would be written out as 0-0-0-0-0-0 (also with an average pitch shift of zero).

each cause of action.  In opposition, Plaintiffs argue that their factual allegations in Paragraphs 51 and 52 of the Complaint are enough to state claims for both contributory and vicarious infringement.  Plaintiffs are incorrect because neither paragraph contains sufficient "facts" to plead claims for contributory infringement or vicarious infringement against any defendant.

A.  **Plaintiffs Have Pled No Facts Showing Defendants' Knowledge Of Infringing Activity.**

Paragraph 51 of the Complaint broadly pleads that all of the Defendants have "claimed rights to" and "severally infringed" Plaintiffs' works.  Likewise, Paragraph 52 alleges that "[e]ach and every Defendant was either directly involved in recording and/or performing the infringing works, or was directly involved in obtaining and providing Plaintiffs' copyrighted work so that the infringing activities could take place."

These general, conclusory, allegations do not state a claim for contributory infringement because there are <u>no facts</u> pled showing that defendants "<u>with knowledge of the infringing activity</u>, induce[d], cause[d] or materially contribute[d] to the infringing conduct of another." *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) (emphasis added). Indeed, when the Complaint is read as a whole, it is clear that there are no allegations that could plausibly suggest that these <u>moving Defendants</u> had any knowledge that the songs had <u>allegedly</u> been copied from Plaintiffs.  Plaintiffs do not contend that the moving Defendants participated in the supposed "conspiracy" to copy Plaintiffs' song.  (*See* Compl., ¶ 38.)  Defendants' inadvertent participation in any alleged infringement was at best "inadvertent," which is not sufficient for contributory liability.  *Basketball Mktg. Co., Inc. v. FX Digital Media, Inc.*, 257 F. App'x 492, 495 (3d Cir. 2007).

**B.**    <u>**Plaintiffs Have Pled No Facts Showing Defendants Right And Ability To Supervise, or Direct Financial Interest In, Any Infringing Activity**</u>

Further, Plaintiffs have not pled facts sufficient to demonstrate vicarious liability by showing that Defendants had the "(1) the right and ability to supervise the infringing activity; and (2) an obvious and direct financial interest in the exploited copyrighted materials." *NelsonSabales, Inc. v. Morningside Dev.*, LLC, 284 F.3d 505, 513 (4th Cir. 2002).  Plaintiffs' efforts on page 20 of their Opposition to offer extrinsic evidence (*i.e.*, their contentions about information on the CD cover for "My World 2.0") to supplement their allegations should be disregarded.  These facts are no pled in the Complaint and cannot be considered in ruling on this Motion.

## VI.    <u>CONCLUSION</u>

For the reasons stated herein and in the moving papers, the Court should grant Defendants' motion and dismiss Plaintiffs' Complaint without leave.


Dated:  August 16, 2013                    Respectfully submitted,


                                 _/s/ Stephen E. Noona_____
                                 Stephen E. Noona
                                 Virginia State Bar No. 25367
                                 Kaufman & Canoles, P.C.
                                 150 W. Main Street, Suite 2100
                                 Norfolk, VA  23510
                                 Telephone:  757-624-3239
                                 Facsimile:  757-624-3169
                                 senoona@kaufcan.com

                                 Howard Weitzman (*pro hac vice*)
                                 Jeremiah T. Reynolds (*pro hac vice*)
                                 Kinsella Weitzman Iser Kump & Aldisert LLP
                                 808 Wilshire Blvd., 3rd Floor
                                 Santa Monica, CA  90401
                                 Telephone:  310-566-9800

10645.00014/184452.1                            18

Facsimile:  310-566-9884
hweitzman@kwikalaw.com
jreynolds@kwikalaw.com

*Attorneys for Defendants Justin Bieber, Universal
Music Corp., Bieber Time Publishing, LLC and The
Island Def Jam Music Group*

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2013, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Duncan G. Byers
Virginia State Bar No. 48146
Jeffrey D. Wilson
Virginia State Bar No. 75734
Byers Law Group
142 W. York Street, Suite 910
Norfolk, VA  23510
Phone:  757-227-3340
Facsimile:  757-227-3341
duncan.byers@byerslawgroup.com
jdwilson@byerslawgroup.com
admin@byerslawgroup.com

*Attorneys for Plaintiffs*
*Devin Copeland and Mareio Overton*

Stephen E. Noona
Virginia State Bar No. 25367
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com

*Attorney for Defendants Justin Bieber and*
*Bieber Time Publishing LLC,*
*Universal Music Corp., The Island Def Jam Music Group,*
*a division of UMG Recordings, Inc. and Usher Raymond, IV, p/k/a Usher*

Jonathan D. Davis, Esq. *(pro hac vice)*
Jonathan D. Davis, P.C.
99 Park Avenue, Suite 1600
New York, New York 10016
Telephone:  212- 687-5464
Facsimile:  212- 557-0565
jdd@jddavispc.com

*Attorneys for Defendant*
*Usher Raymond, IV, p/k/a Usher*

Nathan Muyskens
Virginia State Bar No. 39168
Loeb & Loeb LLP
901 New York Avenue NW
Suite 300 East
Washington, DC  20001
Telephone:  202-618-5000
Facsimile:  202-618-5001
nmuyskens@loeb.com

Barry I. Slotnick *(pro hac vice)*
Cheng L. Chen *(pro hac vice)*
Loeb & Loeb LLP
345 Park Avenue
New York, NY  10154
Telephone:  212-407-4000
Facsimile:  212-407-4990
bslotnick@loeb.com
lchen@loeb.com

*Attorneys for Heather Bright, B-RHAKA*
*Publishing LLC, WB Music Corp. and*
*Sony/ATV Music Publishing LLC*

           */s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

------------------------------------------------------------X
:
DEVIN COPELAND P/K/A DE RICO, and    :    No. 2:13cv246 (AWA/TEM)
MAREIO OVERTON,                      :
                                     :    **HEATHER BRIGHT, SONY/ATV**
              Plaintiffs,            :    **MUSIC PUBLISHING, LLC, WB**
                                     :    **MUSIC CORP., AND B-RHAKA**
       -against-                     :    **PUBLISHING, LLC'S JOINDER IN**
                                     :    **UNIVERSAL MUSIC CORP. AND THE**
JUSTIN BIEBER, USHER RAYMOND IV      :    **ISLAND DEF JAM MUSIC GROUP'S**
P/K/A USHER, HEATHER BRIGHT, RAY     :    **REPLY IN SUPPORT OF THEIR**
ROMULUS A/K/A RAYRO, JONATHAN        :    **MOTION TO DISMISS**
YIP, JEREMY REEVES, UNIVERSAL        :
MUSIC CORP., UNIVERSAL MUSIC         :
PUBLISHING, LLC, SONY/ATV MUSIC      :
PUBLISHING, LLC, BIEBER TIME         :
PUBLISHING, LLC, WB MUSIC CORP.,     :
THE ISLAND DEF JAM MUSIC GROUP,      :
STAGE THREE MUSIC (U.S.) INC., B-
RHAKA PUBLISHING, STAGE THREE
MUSIC, LLC, PLEASE ENJOY THE MUSIC,
PRODUCTS OF THE STREET, SUMPHU,
and JONETTA PATTON,

              Defendants.

------------------------------------------------------------X

PLEASE TAKE NOTICE that defendants Heather Bright, Sony/ATV Music Publishing,

LLC, WB Music Corp., and B-RHAKA Publishing, LLC join in defendants Universal Music

Corp. and The Island Def Jam Music Group's ("Universal Defendants") reply in support of their

motion to dismiss ("Reply In Support of the Motion to Dismiss").  (Docket Entry No. 58.)

On June 28, 2013, the Universal Defendants, by and through their counsel, filed a motion

to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule

of Civil Procedure 12(b)(6) ("Motion to Dismiss").  (Docket Entry No. 17.)  Heather Bright,

Sony/ATV Music Publishing, LLC, WB Music Corp., and B-RHAKA Publishing, LLC joined in

Universal Defendants' Motion to Dismiss on July 3, 2013. (Docket Entry No. 30.) On July 19, 2013, Plaintiffs, by and through their counsel, filed a memorandum in opposition to Universal Defendants' Motion to Dismiss. (Docket Entry No. 39.) On August 16, 2013, the Universal Defendants, by and through their counsel, filed the Reply In Support of the Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry No. 58.)

Defendants Heather Bright, Sony/ATV Music Publishing, LLC, WB Music Corp., and B-RHAKA Publishing, LLC incorporate by reference, as if fully set forth herein, all facts, authorities and arguments set forth therein and submitted in support thereof, including, without limitation, all facts, authorities and arguments set forth in the memorandum, declarations and exhibits submitted by the Universal Defendants in support of their Reply In Support of the Motion to Dismiss.

Based upon the facts, authorities and arguments set forth in the Reply In Support of the Motion to Dismiss, Defendants Heather Bright, Sony/ATV Music Publishing, LLC, WB Music Corp., and B-RHAKA Publishing, LLC respectfully request that the Court grant the Motion to Dismiss and dismiss all of Plaintiff's alleged causes of action against Defendants Heather Bright, Sony/ATV Music Publishing, LLC, WB Music Corp., and B-RHAKA Publishing, LLC pursuant to Federal Rule of Civil Procedure 12(b)(6).

Nothing herein is intended to waive or relinquish, and Defendants Heather Bright, Sony/ATV Music Publishing, LLC, WB Music Corp., and B-RHAKA Publishing, LLC expressly reserve, any and all of their defenses, challenges and arguments to and/or relating to the alleged causes of action asserted against each of them, and specifically reserve their rights to

challenge the sufficiency of the allegations in the Complaint should the purported claims against them not be dismissed.

                                        Respectfully submitted,

Dated:    New York, New York
          August 16, 2013              Loeb & Loeb LLP


                                   By: */s/ Nathan J. Muyskens*
                                       Nathan J. Muyskens (VA 39168)
                                       901 New York Avenue, NW
                                       Suite 300 East
                                       Washington, DC, 20001
                                       Telephone: 202.618.5000

                                       Barry I. Slotnick (*pro hac vice*)
                                       Linna Chen (*pro hac vice*)
                                       345 Park Avenue
                                       New York, NY  10154
                                       Telephone: 212.407.4000

                                       *Attorneys for Defendants*
                                       Heather Bright, Sony/ATV Music
                                       Publishing, LLC, WB Music Corp., and
                                       B-RHAKA Publishing, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2013, I will electronically file the foregoing with the
Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF)
to the following:

Duncan G. Byers
Jeffrey D. Wilson
Byers Law Group
142 W. York Street, Suite 910
Norfolk, VA 23510
duncan.byers@byerslawgroup.com
jdwilson@byerslawgroup.com
admin@byerslawgroup.com
*Attorneys for Plaintiffs*
*Devin Copeland and Mareio Overton*

Stephen E. Noona
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
senoona@kaufcan.com
*Attorney for Defendants Justin Bieber and*
*Bieber Time Publishing LLC,*
*Universal Music Corp., The Island Def Jam Music Group,*
*a division of UMG Recordings, Inc. and Usher Raymond, IV, p/k/a Usher*

Jonathan D. Davis, Esq. (*pro hac vice*)
Jonathan D. Davis, P.C.
99 Park Avenue, Suite 1600
New York, New York 10016
Telephone: 212- 687-5464
Facsimile: 212- 557-0565
jdd@jddavispc.com
*Attorneys for Defendant Usher Raymond, IV, p/k/a Usher*

Howard Weitzman (*pro hac vice*)
Jeremiah Tracy Reynolds (*pro hac vice*)
Kinsella, Weitzman, Iser, Kump & Aldisert, LLP
808 Wilshire Blvd
3rd Floor
Santa Monica, CA 90401
hweitzman@kwikalaw.com
jreynolds@kwikalaw.com
*Attorney for Justin Bieber, Bieber Time Publishing, LLC, The Island Def Jam Music Group, a*
*division of UMG Recordings, Inc., and Universal Music Corp.*

By: */s/ Nathan Muyskens*
Nathan Muyskens
Virginia State Bar No. 39168
901 New York Avenue NW
Suite 300 East
Washington, D.C. 20001
Telephone:  (202) 618-5000
Facsimile:  (202) 618-5001
nmuyskens@loeb.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

---

DEVIN COPELAND p/k/a DE RICO and MAREIO
OVERTON,

       Plaintiffs,

v.

JUSTIN BIEBER, USHER RAYMOND IV p/k/a
"USHER," HEATHER BRIGHT, Individually and
d/b/a B-RHAKA PUBLISHING, RAY ROMULUS
a/k/a RAYRO and d/b/a PLEASE ENJOY THE
MUSIC, JONATHAN YIP, Individually and d/b/a
PRODUCTS OF THE STREET, JEREMY REEVES,
Individually and d/b/a SUMPHU, UNIVERSAL
MUSIC CORP., SONY/ATV MUSICAL
PUBLISHING, LLC, BIEBER TIME PUBLISHING,
LLC, WB MUSIC CORP., THE ISLAND DEF JAM
MUSIC GROUP, STAGE THREE MUSIC (U.S.),
INC., STAGE THREE MUSIC, LLC AND
JONETTA PATTON,

       Defendants.

Civil Action No. 2:13-cv-246
AWA/TEM

---

**DEFENDANT USHER RAYMOND IV'S JOINDER IN**
**UNIVERSAL MUSIC CORP. AND THE ISLAND DEF JAM**
**MUSIC GROUP'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

      PLEASE TAKE NOTICE that Defendant Usher Raymond IV ("Raymond"), by his

undersigned counsel, and without prejudice to his Motion to Dismiss for Lack of Personal

Jurisdiction and Improper Venue and his Motion to Dismiss or Strike Plaintiffs' Demand for

Punitive Damages, joins in Defendants Universal Music Corp.'s and The Island Def Jam Music

Group's ("Universal Defendants") reply in support of their motion to dismiss the Complaint

("Reply In Support of the Motion to Dismiss"). (Docket Entry No. 58.)

On June 28, 2013, the Universal Defendants, by their counsel, filed the Motion to Dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss"). (Docket Entry No. 17.) (Docket Entry No. 49.)  On July 19, 2013, Plaintiffs, by their counsel, filed a memorandum in opposition to Universal Defendants' Motion to Dismiss.  (Docket Entry No. 39.)  Defendant Raymond joined in the Universal Defendants' Motion to Dismiss on July 26, 2013.  On August 16, 2013, the Universal Defendants, by their counsel, filed the Reply In Support of the Motion to Dismiss.  (Docket Entry No. 58.)

Defendant Raymond hereby incorporates by reference, as if fully set forth herein, all facts, authorities, and arguments in the Reply In Support of the Motion to Dismiss, including, without limitation, all facts, authorities, and arguments in the memorandum, declarations, and exhibits.

Based upon the facts, authorities, and arguments in the Reply In Support of the Motion to Dismiss, Defendant Raymond respectfully requests that the Court grant the Motion to Dismiss and dismiss all causes of action alleged against him under Fed. R. Civ. P. 12(b)(6).

Nothing herein is intended to waive or relinquish, and Defendant Raymond expressly reserves, any and all of his defenses, challenges, and arguments to the causes of action alleged against him in the Complaint, and he specifically reserves his rights to challenge the sufficiency of the allegations in the Complaint should the purported claims against him not be dismissed.

Dated:  August 16, 2013                          Respectfully submitted,


                                                   /s/ Stephen E. Noona
                                                  Stephen E. Noona
                                                  Virginia State Bar No. 25367
                                                  Kaufman & Canoles, P.C.
                                                  150 W. Main Street, Suite 2100

2

Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com

Jonathan D. Davis, Esq. (*pro hac vice*)
Jonathan D. Davis, P.C.
99 Park Avenue, Suite 1600
New York, New York 10016
Telephone:  212- 687-5464
Facsimile:  212- 557-0565
jdd@jddavispc.com

*Attorneys for Defendant Usher Raymond, IV,*
*p/k/a Usher*

3

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2013, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Duncan G. Byers
Virginia State Bar No. 48146
Jeffrey D. Wilson
Virginia State Bar No. 75734
Byers Law Group
142 W. York Street, Suite 910
Norfolk, VA  23510
Phone:  757-227-3340
Facsimile:  757-227-3341
duncan.byers@byerslawgroup.com
jdwilson@byerslawgroup.com
admin@byerslawgroup.com

*Attorneys for Plaintiffs*
*Devin Copeland and Mareio Overton*

Stephen E. Noona
Virginia State Bar No. 25367
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com

*Attorney for Defendants Justin Bieber and*
*Bieber Time Publishing LLC, Universal Music*
*Corp., The Island Def Jam Music Group,*
*a division of UMG Recordings, Inc. and*
*Usher Raymond, IV, p/k/a Usher*

Howard Weitzman (*pro hac vice*)
Jeremiah T. Reynolds (*pro hac vice*)
Kinsella Weitzman Iser Kump & Aldisert
808 Wilshire Blvd., 3rd Floor
Santa Monica, CA  90401
Telephone:  310-566-9800
Facsimile:  310-566-9884
hweitzman@kwikalaw.com
jreynolds@kwikalaw.com

4

*Attorneys for Defendants Justin Bieber*
*and Bieber Time Publishing LLC*

Nathan Muyskens
Virginia State Bar No. 39168
Loeb & Loeb LLP
901 New York Avenue NW
Suite 300 East
Washington, DC  20001
Telephone:  202-618-5000
Facsimile:  202-618-5001
nmuyskens@loeb.com

Barry I. Slotnick *(pro hac vice)*
Cheng L. Chen *(pro hac vice)*
Loeb & Loeb LLP
345 Park Avenue
New York, NY  10154
Telephone:  212-407-4000
Facsimile:  212-407-4990
bslotnick@loeb.com
lchen@loeb.com

*Attorneys for Heather Bright, B-RHAKA*
*Publishing LLC, WB Music Corp. and*
*Sony/ATV Music Publishing LLC*

  */s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DEVIN COPELAND, et al.,

        Plaintiffs,

    v.                                   Civil Action No. 2:13cv246

JUSTIN BIEBER, et al.,

        Defendants.

## ORDER

On May 2, 2013, Plaintiffs Devin Copeland and Mareio Overton brought this suit against the following Defendants: Justin Bieber; Bieber Time Publishing, LLC ("Bieber Time"); Usher Raymond, IV; Heather Bright d/b/a B-RHAKA Publishing; B-RHAKA Publishing ("B-RHAKA"); Ray Romulus d/b/a Please Enjoy the Music; Please Enjoy the Music; Jonathan Yip d/b/a Products of the Street; Products of the Street; Jeremy Rivers d/b/a Sumphu; Sumphu; Universal Music Corp. ("Universal"); Universal Music Publishing Group; Sony/ATV Music Publishing, LLC ("Sony"); WB Music Corp. ("WB"); The Island Def Jam Music Group ("Island"); Stage Three Music (U.S.) Inc.; Stage Three Music, LLC; and Jonetta Patton.

Plaintiffs assert that the song "Somebody to Love," recorded in 2010 by Mr. Bieber and Mr. Raymond infringes Plaintiffs' copyright to a song recorded by Mr. Copeland in 2008, which was also titled "Somebody to Love." Plaintiffs seek actual and profit damages in the amount of $10,000,000, as well as punitive damages.

With Plaintiffs' consent, Defendants were given extensions of time in which to answer the Complaint. Island and Universal then moved to dismiss the Complaint for failure to state a claim upon which relief could be granted (the "Island Motion to Dismiss"). ECF No. 17. Mr.

Bieber and Bieber Time moved to dismiss the Complaint for lack of personal jurisdiction and for improper venue (the "Bieber Motion to Dismiss"). ECF No. 20. Mr. Bieber and Bieber Time also filed a brief in support of the Island Motion to Dismiss.

Ms. Bright, B-RHAKA, Sony, and WB later moved to join in the Island Motion to Dismiss. ECF No. 30. Ms. Bright and B-RHAKA also moved to join in the Bieber Motion to Dismiss. ECF No. 31.

Mr. Raymond moved to dismiss the Complaint for lack of personal jurisdiction and for improper venue or, in the alternative, to transfer the case to the Central District of California pursuant to 28 U.S.C. § 1404(a) (the "First Raymond Motion to Dismiss"). ECF No. 43. Mr. Raymond also moved to dismiss the claim for punitive damages for failure to state a claim upon which relief could be granted (the "Second Raymond Motion to Dismiss"). ECF No. 47.

Mr. Raymond also moved to join in the Island Motion to Dismiss. ECF No. 49. Mr. Bieber, Bieber Time, Island, and Universal filed a brief in support of the Second Raymond Motion to Dismiss. ECF No. 55. Ms. Bright, B-RHAKA, Sony, and WB moved to join in the reply brief to the Island Motion to Dismiss. ECF No. 59. Ms. Bright and B-RHAKA moved to join in the reply brief to the Bieber Motion to Dismiss. ECF No. 60. Mr. Raymond moved to join in the reply brief to the Island Motion to Dismiss. ECF No. 61.

The parties received several unopposed extensions of the briefing deadlines. Briefing is now complete, and all pending motions are ripe for decision by the Court. Plaintiffs have not responded to the Second Raymond Motion to Dismiss or the motions for joinder.

Defendants' motions for joinder (ECF Nos. 30, 31, 49, 59, 60, 61) are **GRANTED** as unopposed. The following motions are now before the Court:

- The Bieber Motion to Dismiss, seeking dismissal for lack of personal jurisdiction and for improper venue, filed by Mr. Bieber, Bieber Time, Ms. Bright, and B-RHAKA. ECF No. 20.

- The First Raymond Motion to Dismiss, seeking dismissal for lack of personal jurisdiction and for improper venue or, in the alternative, to transfer the case to the Central District of California pursuant to 28 U.S.C. § 1404(a), filed by Mr. Raymond. ECF No. 43.

- The Second Raymond Motion to Dismiss, seeking dismissal of Plaintiffs' claim for punitive damages, filed by Mr. Raymond, and also supported by Mr. Bieber, Bieber Time, Island, and Universal. ECF No. 47.

- The Island Motion to Dismiss, seeking dismissal of the Complaint for failure to state a claim upon which relief can be granted, filed by Island, Universal, Ms. Bright, B-RHAKA, Sony, WB, and Mr. Raymond, and also supported by Mr. Bieber and Bieber Time. ECF No. 17.

The Court must resolve Defendants' personal jurisdiction, venue, and convenience arguments (the "non-merits" arguments) before considering whether the Complaint states a claim upon which relief can be granted. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–32 (2007). The Court begins by addressing the Bieber Motion to Dismiss and the First Raymond Motion to Dismiss, and then considers the unopposed Second Raymond Motion to Dismiss and the Island Motion to Dismiss.

## I. NON-MERITS ARGUMENTS

Mr. Bieber, Bieber Time, and Mr. Raymond argue that this Court lacks personal jurisdiction over them.[1]  Defendants also argue that venue is improper or, in the alternative, that this Court should exercise its discretion under 28 U.S.C. § 1404(a) to transfer the case to the Central District of California for the convenience of the parties.

### A. FACTUAL BACKGROUND

In deciding questions of personal jurisdiction and venue in the absence of jurisdictional discovery, "the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993) (personal jurisdiction); *accord Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012) (venue).

"[T]he allegations of the complaint . . . must be taken as true" unless the uncontroverted evidence contradicts them. *Wolf v. Richmond Cnty. Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984) (omission provided) (quoting *Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977)) (internal quotation marks omitted).

The Complaint and available evidence provide the following facts:

Mr. Bieber is a resident of California.  Bieber Decl. para. 1, ECF No. 22.  Bieber Time is a Delaware company "that was formed to hold [Mr. Bieber's] . . . copyrights and conduct [his] music publishing business."  *Id.* at para. 2.  Mr. Raymond is a resident of Georgia.  Raymond Decl. para. 4, ECF No. 46.

---

[1]  Ms. Bright and B-RHAKA have received joinder in the Bieber Motion to Dismiss.  It appears that these Defendants believe that the Court lacks personal jurisdiction over them.  However, the motion that they have joined does not argue that the Court lacks personal jurisdiction over them, nor has this issue been briefed in connection with that motion.  *See* Br. Supp. Bieber Mot. Dismiss 1, ECF No. 21 (arguing that the Court lacks personal jurisdiction over Mr. Bieber and Bieber Time, but not challenging the Court's jurisdiction over Ms. Bright and B-RHAKA).  Therefore, any challenge that Ms. Bright and B-RHAKA may have to the Court's personal jurisdiction over them is not before the Court.

Most of the remaining defendants are located in California, although some are in Delaware, Georgia, New York, or Tennessee. Compl. paras. 8–14, 16–24, ECF No. 1. Plaintiffs are residents of Virginia. *Id.* at paras. 4–5.

Mr. Copeland, Mr. Raymond, and Mr. Bieber are a musical performers and writers in the musical genre referred to as Rhythm and Blues. *Id.* at paras. 26, 35, 39. Mr. Overton is a songwriter. *Id.* at para. 27. Mr. Romulus, Mr. Yip, and Mr. Reeves are songwriters and music producers, and perform as "the Stereotypes." *Id.* at para. 38.

In early 2008, Plaintiffs wrote a song entitled "Somebody to Love" ("Plaintiffs' song") which Mr. Copeland recorded for his album "My Story II." *Id.* at paras. 28–29. Plaintiffs copyrighted this song on October 2, 2008. *Id.* at para. 30.

In October and November 2009, Plaintiffs met Peter Stockton, Kevin Lawson, and Malik Brooks of Sangreel Media ("Sangreel"). *Id.* at para. 33. Sangreel finds new musical artists for companies, including Island and Sony. *Id.* Sangreel expressed interest in promoting Plaintiffs' songs, and Plaintiffs provided Sangreel with copies of several songs, including "Somebody to Love," for promotional purposes. *Id.* at paras. 33–34. Sangreel provided these copies to other artists, including Mr. Raymond. *Id.* at para. 35.

On January 5, 2009, Mr. Copeland conversed with Mr. Lawson and Ms. Patton. *Id.* at para. 36. Ms. Patton is Mr. Raymond's mother and is his manager. *Id.* Ms. Patton indicated that she and Mr. Raymond had listened to "My Story II" and were interested in having Mr. Copeland rerecord the album with Mr. Raymond and go on a performance tour with him during the summer of 2009. *Id.* However, neither Ms. Patton nor any other representative of Mr. Raymond contacted Plaintiffs thereafter. *Id.* at para. 37.

Mr. Raymond then wrote a song entitled "Somebody to Love" ("the Raymond accused song"), which he produced with the Stereotypes and Ms. Bright. *Id.* at para. 38. The song was uploaded to the internet on February 28, 2010. *Id.* Ms. Bright claims to have co-written this song. *See* Bright Decl. para. 9, ECF No. 32. Plaintiffs assert the Raymond accused song is a direct and deliberate copy of Plaintiffs' song. Compl. para. 38, ECF No. 1.

Mr. Raymond, Mr. Bieber, and the Stereotypes then produced another recording of the Raymond accused song, which was released on Mr. Bieber's album "My World 2.0" in the spring of 2010 ("the Bieber accused song"). *Id.* at paras 41–43. This song was written and recorded in Los Angeles, California and Atlanta, Georgia. Holland Decl. Ex. B, ECF No. 64-2 (album cover stating that the vocals for this song were recorded in Atlanta and the music was recorded Los Angeles); *see also* Bieber Decl. para. 5, ECF No. 22 (stating that this song was written and produced in Los Angeles); 2d Wilson Decl. Ex. H, ECF No. 65-8 (interview in which Mr. Bieber states that "We did most of ['My World 2.0'] in Atlanta this time.").

Plaintiffs allege that Defendants knew that their actions were infringing, and have profited from those actions. Compl. paras. 53–55, ECF No. 1.

The Bieber accused song performed well in the market. *Id.* at para. 44. Mr. Raymond and Mr. Bieber later recorded a remix of this song, which was released on June 25, 2010. *Id.* at para. 45. Mr. Bieber has performed the Bieber accused song on numerous occasions, and continues to perform it as of the date of the Complaint. *Id.* at paras. 49–50. On November 13, 2010, Mr. Bieber performed the Bieber accused song at a concert in Norfolk, Virginia. Bieber Decl. para. 4, ECF No. 22.

On December 1, 2010, Mr. Bieber filmed part of a music video in Norfolk, Virginia, but this music video contained no potentially infringing content. 1st Wilson Decl. Ex. L, ECF No.

40-13. In 2011, Mr. Bieber appeared in a film which featured clips of the Bieber accused song. *See* 1st Wilson Decl. Ex. N, ECF No. 40-15; 1st Wilson Decl. Ex. P, ECF No. 40-17. On December 11, 2012, Mr. Bieber performed at a concert in Fairfax, Virginia, but no potentially infringing activity occurred. Bieber Decl. para. 4, ECF No. 22.

Mr. Bieber and Mr. Raymond have each appeared on national television on several occasions. 1st Wilson Decl. Exs. E, F, G, ECF Nos. 41-6, 41-7, 41-8 (Mr. Bieber); 2d Wilson Decl. Ex. A, ECF No. 65-1 (Mr. Raymond). One of these appearances, during which Mr. Bieber performed the Bieber accused song, is viewable on the website "YouTube." 1st Wilson Decl. para. 13, ECF No. 40. A video of the remix of the Bieber accused song, depicting both Mr. Bieber and Mr. Raymond, is also on YouTube. 2d Wilson Decl. Ex. C, ECF No. 65-3.

Mr. Bieber has an active account on the social website "Twitter." 1st Wilson Decl. Ex. A, ECF No. 40-2. There are also several websites related to Mr. Bieber, including an online store where users can purchase the Bieber accused song. 1st Wilson Decl. Exs. H, J, K, ECF Nos. 40-9, 40-11, 40-12. However, Mr. Bieber does not own or operate these websites. Scarinzi Decl. para. 4–5, ECF No. 57. An album by Mr. Raymond including the remix of the Bieber accused song is also available for purchase online. 2d Wilson Decl. Ex. G, ECF No. 65-7.

## B. PERSONAL JURISDICTION

### 1. Standard of Law

Defendants first assert that the Court lacks personal jurisdiction over them. "A federal district court may only exercise personal jurisdiction over a foreign [litigant] if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). "Because Virginia's long-

arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry." *Id.*

Personal jurisdiction under the Due Process Clause can exist in two ways: general jurisdiction or specific jurisdiction. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002). "To establish general jurisdiction over [a] defendant, the defendant's activities in the State must have been 'continuous and systematic[.]'" *Id.* at 712.

"If the defendant's contacts with the State are also the basis for the suit, those contacts may establish specific jurisdiction," with the Court considering "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id.* (alteration in original) (quoting *Christian Science Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 216 (4th Cir. 2001)).

"Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of 'fair play and substantial justice' is not thereby offended." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (quoting *Nichols v. G.D. Searle & Co.*, 783 F. Supp. 233, 238 (D. Md. 1992)). However, such a contact must involve purposeful conduct, and not a mere "'random, fortuitous, or attenuated'" connection. *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 392 (4th Cir. 2012) (quoting *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997)). If the contact involves the sale of a defendant's product in the forum state, specific jurisdiction exists "only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *J.*

*McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2788 (2011) (plurality opinion); *see also ESAB v. Zurich*, 685 F.3d at 392 (citing this plurality holding as binding).

The third prong of the test for specific jurisdiction requires that "the exercise of personal jurisdiction . . . be constitutionally 'reasonable.'" *ALS Scan*, 293 F.3d at 712 (quoting *Christian Science Bd. of Dirs.*, 259 F.3d at 216). This requirement will be met unless the defendant presents "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Factors considered in this analysis include:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Consulting Eng'rs Corp.*, 561 F.3d at 279.

2. Analysis

For clarity, the Court will analyze personal jurisdiction with respect to each Defendant separately.

a. Mr. Bieber

Mr. Bieber performed the Bieber accused song at a concert in Virginia. Bieber Decl. para. 4, ECF No. 22. He argues that this contact fails to give rise to specific jurisdiction because it does not form the gravamen of Plaintiffs' claims. Br. Supp. Bieber Mot. Dismiss 9, ECF No. 21. Mr. Bieber argues that specific jurisdiction is present only in California, where the allegedly infringing works were composed. *Id.*

This argument misconstrues the requirements of specific jurisdiction. Where infringement occurs in multiple states, specific jurisdiction can be present in each of those states, even if the infringing product was not developed there. *See Mavrix Photo, Inc. v. Brand Techs.,*

*Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (holding that the plaintiff's copyright claim arose out of the viewing of the defendant's infringing photographs in the forum state, even though the uploading of those photographs to the internet occurred elsewhere); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994) (holding that specific jurisdiction was present in Virginia because the plaintiff alleged that the "defendants purposefully shipped the accused [product] into Virginia through an established distribution channel"). Plaintiffs' claims arise out of Mr. Bieber's allegedly infringing acts. These acts include his concert performance in Norfolk, Virginia. Plaintiffs' claims arise out of Mr. Bieber's activities in Virginia.[2]

Mr. Bieber also argues that this Court's exercise of jurisdiction would be constitutionally unreasonable because litigation in Virginia would be "highly burdensome" to him. Br. Supp. Bieber Mot. Dismiss 9 n.3, ECF No. 21. Mr. Bieber cites no difficulties involved in his litigation of this case beyond the ordinary inconvenience involved in litigating outside one's home state. *See id.* Such ordinary inconvenience fails to render the exercise of specific jurisdiction unreasonable. *See Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 529–30 (4th Cir. 1987). Moreover, Mr. Bieber's contention that Virginia lacks an interest in this dispute because the accused songs were composed in another state is unpersuasive. *See id.* at 525 ("[A] State has an obvious interest in providing a forum for its resident to redress injuries inflicted by

---

[2] Mr. Bieber asserts in his reply brief that because each act of copyright infringement is a separate claim, an allegedly infringing performance can only establish specific jurisdiction with respect to that performance. Reply Bieber Mot. Dismiss 5, ECF No. 56 (citing *Stone v. Williams*, 970 F.2d 1043, 1049–50 (2d Cir. 1992) (holding, for purposes of the statute of limitations, that each infringing act is an independent claim)). Such a limitation is unsupported by the case law. *See Luv N'care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006) (expressing no such limitation when finding personal jurisdiction based on the sale of infringing products in the forum state); *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59, 65 (1st Cir. 2002) (same).

Moreover, an argument that is raised for the first time in a reply brief will generally be regarded as untimely because "the opposing party is [thereby] prejudiced in its ability to respond to the argument." *Touchcom, Inc. v. Bereskin & Parr*, 790 F. Supp. 2d 435, 446 (E.D. Va. 2011). By failing to timely raise this argument, Mr. Bieber denied Plaintiffs an opportunity to respond to a theory which, if adopted, would limit a copyrightholder's ability to sue infringers outside the infringer's home state. This argument is untimely and is rejected.

non-residents."). Therefore, this Court concludes that exercising jurisdiction over Mr. Bieber is constitutionally reasonable.

Mr. Bieber's allegedly infringing performance in Virginia gives this Court specific personal jurisdiction over him. The Bieber Motion to Dismiss (ECF No. 20) is **DENIED** with respect to Mr. Bieber's defense of personal jurisdiction.

b. Bieber Time

Bieber Time also asserts the defense of personal jurisdiction. Plaintiffs have not responded to this assertion. The available information regarding Bieber Time indicates that it is located in Delaware and conducts business for Mr. Bieber. Compl. para. 15, ECF No. 1; Bieber Decl. para. 2, ECF No. 22. There is no evidence that it has any contacts with Virginia.

Because Plaintiffs have failed to advise the Court as to what, if any, connection they believe Bieber Time may have to Virginia, the Bieber Motion to Dismiss (ECF No. 20) is **GRANTED** with respect to Bieber Time. The case is **DISMISSED WITHOUT PREJUDICE** with respect to Bieber Time.

c. Mr. Raymond

Mr. Raymond also challenges this Court's personal jurisdiction over him. He argues that his connections to Virginia are insufficient to support a finding of personal jurisdiction.

Plaintiffs respond that this Court has specific jurisdiction over Mr. Raymond under the reasoning presented in *Calder v. Jones*, 465 U.S. 783 (1984). "In *Calder* . . . , the Supreme Court held that a court may exercise specific personal jurisdiction over a nonresident defendant acting outside of the forum when the defendant has intentionally directed his tortious conduct toward the forum state, knowing that that conduct would cause harm to a forum resident." *Carefirst*, 334 F.3d at 397–98.

> This "effects test" of specific jurisdiction is typically construed to require that the plaintiff establish that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

*Id.* at 398 n.7.

Under *Calder*, specific jurisdiction exists when a defendant intentionally infringes a copyright belonging to a resident of the forum state, but not when the infringement is merely negligent. *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 787 (D. Md. 2000). Mr. Raymond does not dispute this standard, but argues that the Complaint's allegations regarding his intent are conclusory. Reply 1st Raymond Mot. Dismiss 7–9, ECF No. 66.

The Complaint alleges that "[e]ach and every Defendant knew of the infringing activity." Compl. para. 54, ECF No. 1. Standing alone, this allegation might be conclusory. However, the Complaint also alleges that Plaintiffs discussed their song with Ms. Patton, Mr. Raymond's mother and manager, shortly before Mr. Raymond recorded his allegedly infringing song. *Id.* at para. 36, ECF No. 1. These allegations are sufficient to permit the "reasonable inference[]" that Mr. Raymond was aware of Plaintiffs' copyright at the time of the alleged infringement.[3] *Mylan Labs.*, 2 F.3d at 60.

Because the Complaint alleges facts indicating that Mr. Raymond was aware of Plaintiffs' copyright at the time of the alleged infringement, specific jurisdiction is established under *Calder*, and the First Raymond Motion to Dismiss (ECF No. 43) is **DENIED** with respect to personal jurisdiction.

---

[3] The Court does not yet reach the question of whether the Complaint states a claim of copyright infringement. The Court holds only that the Complaint alleges adequately that any infringement that may have occurred was intentional.

## 3. Conclusion

This case arises in part out of Mr. Bieber's performance of an allegedly infringing song in this state, and the Complaint alleges that Mr. Raymond knowingly infringed a copyright held by Virginia residents. However, there is no evidence presented regarding any connection Bieber Time may have to Virginia or to the events of this case.

Therefore, the Bieber Motion to Dismiss (ECF No. 20) is **GRANTED IN PART AND DENIED IN PART** with respect to personal jurisdiction, and the First Raymond Motion to Dismiss (ECF No. 43) is **DENIED** with respect to personal jurisdiction.

Defendants' claims against Bieber Time are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

## C. VENUE

Defendants also argue that venue is improper. "Civil actions . . . arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant . . . may be found." 28 U.S.C. § 1400(a) (2013). "The term 'may be found' in 1400(a) is interpreted to mean any district which may assert personal jurisdiction over a defendant." *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 773 (D. Md. 2009); *accord Palmer v. Braun,* 376 F.3d 1254, 1259 (11th Cir. 2004); *see also Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1126 (9th Cir. 2010) ("This circuit interprets [§ 1400(a)] to allow venue in any judicial district where, if treated as a separate state, the defendant would be subject to personal jurisdiction.");[4] *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.,* 8 F.3d 441, 445–46 (7th Cir. 1993) (applying the same standard).

---

[4]   The Court notes that Defendants' ties to Virginia that give rise to personal jurisdiction—Mr. Bieber's allegedly infringing performance in Norfolk, Virginia and Mr. Raymond's alleged willful infringement of a copyright belonging to residents of Chesapeake, Virginia—are all localized to this District. Therefore, if this District were a separate state, it would have jurisdiction over Defendants just as Virginia does.

As discussed above, the Court has personal jurisdiction over Mr. Bieber and Mr. Raymond. Although Plaintiffs have failed to establish this Court's personal jurisdiction over Bieber Time, Bieber Time is no longer in this case. The Court's personal jurisdiction over the other Defendants has not been challenged. Therefore, venue is proper under § 1400(a).[5]

The Bieber Motion to Dismiss (ECF No. 20) and the First Raymond Motion to Dismiss (ECF No. 43) are **DENIED** with respect to venue.

### D. TRANSFER UNDER 28 U.S.C. § 1404(a)

Finally, the First Raymond Motion to Dismiss requests that this Court exercise its discretion under 28 U.S.C. § 1404(a) to transfer this case to the Central District of California on the basis of convenience.

### 1. Standard of Law

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2013). The decision whether to transfer a case under this statute "is committed to the discretion of the district court." *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984).

"[I]n considering whether to transfer venue, a district court must make two inquiries: (1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003).

---

[5]    Even if § 1400(a) were not available, venue would be proper under 28 U.S.C. § 1391(b) because several of the events giving rise to this case, including the writing of Plaintiffs' song and Mr. Bieber's performance of the Bieber accused song in Norfolk, Virginia, occurred in this District. *See Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (quoting *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001)) ("[I]n determining whether events or omissions are sufficiently substantial to support venue . . . , a court should not focus only on those matters that are in dispute or that directly led to the filing of the action. Rather, it should review 'the entire sequence of events underlying the claim.'").

The latter inquiry weighs "the plaintiff's choice of forum, witness convenience and access, party convenience, and the interest of justice." *Koh*, 250 F. Supp. 2d at 633. The burden of proof on each of these factors rests with the moving party. *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 592 (E.D. Va. 1992).

2. Analysis

Plaintiffs do not contest that their claims could have been brought in the Central District of California. *See* Resp. 1st Raymond Mot. Dismiss 18–20, ECF No. 63. Therefore, the Court need only consider whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum.

Mr. Raymond's request to transfer the case under § 1404(a) is premised solely on the argument that the Central District of California is more convenient for the parties. *See* Br. Supp. 1st Raymond Mot. Dismiss 13–14, ECF No. 44 (not discussing the convenience of the witnesses or the interests of justice).

A plaintiff's choice of forum "is typically entitled to 'substantial weight,' especially where the chosen forum is the plaintiff's home forum." *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010) (quoting *Koh*, 250 F. Supp. 2d at 633). As a result, "when plaintiffs file suit in their home forum, convenience to parties rarely, if ever, operates to justify transfer." *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1259 (E.D. Va. 1988).

Plaintiffs are residents of this District. Many, but not all, Defendants are residents of California. Other Defendants are residents of Delaware, Georgia, New York, and Tennessee, all

of which are closer to this District than they are to the Central District of California.[6] Therefore, this District is more convenient for Plaintiffs, and the Central District of California is more convenient for some, but not all, Defendants.

Even if the Central District of California were more convenient for all Defendants, transfer would be unwarranted. "[T]ransfer is not appropriate where it would likely only serve to shift the balance of inconvenience" from the defendants to the plaintiffs. *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 738 (E.D. Va. 2007) (alteration provided) (quoting *Sheet Metal Workers Nat'l Fund*, 702 F. Supp. at 1259) (internal quotation marks omitted). Because transfer in this case "would simply shift the balance of inconvenience" from some parties to others, transfer is unwarranted. *Id.*

3.  Conclusion

A party seeking to transfer a case under § 1404(a) must "demonstrate that transfer does more than merely 'shift the inconvenience' to the other party." *Id.* at 736. Mr. Raymond has failed to do so here. Therefore, the First Raymond Motion to Dismiss (ECF No. 43) is **DENIED** with respect to Mr. Raymond's request to transfer the case under § 1404(a).

E.  CONCLUSION

For the foregoing reasons, the Bieber Motion to Dismiss (ECF No. 20) is **GRANTED IN PART AND DENIED IN PART** and the First Raymond Motion to Dismiss (ECF No. 43) is **DENIED**. The claims against Bieber Time are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

---

[6]  The Court takes judicial notice of the proximity of these states to this District and to the Central District of California. *See United States v. Johnson*, 726 F.2d 1018, 1021 (4th Cir. 1984) ("[G]eographical information is especially appropriate for judicial notice.").

## II. FAILURE TO STATE A CLAIM

### A. SECOND RAYMOND MOTION TO DISMISS

The Second Raymond Motion to Dismiss argues that Plaintiffs have failed to state a claim for punitive damages. ECF No. 47. Plaintiffs have not responded to this motion.

It is well-settled that "the Copyright Act does not authorize punitive damages." *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 545 (4th Cir. 2007). Therefore, the Second Raymond Motion to Dismiss (ECF No. 47) is **GRANTED**. Plaintiffs' request for punitive damages is **DISMISSED WITH PREJUDICE**.

### B. ISLAND MOTION TO DISMISS

The Island Motion to Dismiss argues that Plaintiffs have failed to state a claim of copyright infringement. ECF No. 17. Specifically, Defendants assert the following: (1) Defendants' accused songs are not extrinsically similar to Plaintiffs' song; (2) Defendants' accused songs are not intrinsically similar to Plaintiffs' song; and (3) Plaintiffs' claims of contributory and vicarious infringement are inadequately pled.

### 1. Standard of Law

In deciding a motion to dismiss for failure to state a claim, the Court "must accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009)) (internal quotation marks omitted). The Court may also consider any documents that are "integral to and explicitly relied on in the complaint," if their authenticity is uncontested. *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because conclusory allegations "necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief,'" a "'formulaic recitation of the elements of a cause of action will not do.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 557).

Plaintiffs allege that Defendants copied certain elements of their work. "Not all copying, however, is copyright infringement." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "To prove copyright infringement, a plaintiff must show first that he owned the copyright to the work that was allegedly copied, and second, that the defendant copied protected elements of the work." *Bouchat v. Balt. Ravens, Inc.*, 241 F.3d 350, 353 (4th Cir. 2001). "Where direct evidence of copying is lacking, [a] plaintiff may prove copying by circumstantial evidence in the form of proof that the alleged infringer had access to the work and that the supposed copy is substantially similar to the author's original work." *Id.* at 353–54.

Defendants do not challenge Plaintiffs' allegations that Plaintiffs possessed a valid copyright to their song and that Defendants had access to this song. Instead, the Island Motion to Dismiss argues that the accused songs are not substantially similar to Plaintiffs' songs.

"Substantial similarity analysis is 'largely a matter of fact' . . . ." *Innovative Legal Mktg., LLC v. Mkt. Masters-Legal*, 852 F. Supp. 2d 688, 702 (E.D. Va. 2012) (quoting *Ganz Bros. Toys v. Midwest Imps. of Cannon Falls, Inc.*, 834 F. Supp. 896, 899–900 (E.D. Va. 1993)); *accord X-*

*IT Prods., L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 614 (E.D. Va. 2001). However, even at the pleadings stage of the case, "this Court has the authority to dismiss [a] copyright infringement claim if no reasonable jury could find substantial similarity." *Tessler v. NBC Universal, Inc.*, No. 2:08cv234, 2009 WL 866834, at *3 (E.D. Va. Mar. 31, 2009) (unpublished) (citing *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941–42 (10th Cir. 2002); *Nelson v. PRN Prods.,* 873 F.2d 1141, 1143–44 (8th Cir. 1989); *Christianson v. W. Publ'g Co.,* 149 F.2d 202, 203 (9th Cir. 1945)), *affirmed*, 364 F. App'x 5 (2010).

"Proving substantial similarity requires a two-part analysis." *Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir. 1996). "First, a plaintiff must show—typically with the aid of expert testimony—that the works in question are extrinsically similar because they contain substantially similar ideas that are subject to copyright protection." *Id.* "Second, a plaintiff must satisfy the subjective, or intrinsic, portion of the test by showing substantial similarity in how those ideas are expressed." *Id.* at 583–84.

In determining extrinsic similarity, "a list comparing 'random similarities scattered throughout the works' is 'inherently subjective and unreliable.'" *Id.* at 584 (quoting *Litchfield v. Spielberg,* 736 F.2d 1352, 1356 (9th Cir. 1984)). "Instead, a court must analyze both [works] and the record, searching for extrinsic similarities such as those found in" the various aspects of the work. *Id.* (listing, in the context of screenplays, such aspects as "plot, theme, dialogue, mood, setting, pace, [and] sequence").

"Because the requirement is one of substantial similarity to *protected* elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). However, even

common, unprotected elements can be protected when combined in a unique manner. *Bouchat*, 241 F.3d at 356.

Determining intrinsic similarity requires the Court to "consider[] whether the intended audience could determine that the works are substantially similar, usually without the aid of expert testimony." *Towler*, 76 F.3d at 584; *see also Ganz Bros.*, 834 F. Supp. at 901 (asking whether an observer who has not "'set out to detect the disparities, would be disposed to overlook them, and regard [the works'] aesthetic appeal as the same'" (alteration provided) (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2nd Cir. 1960))). In deciding questions of intrinsic similarity as a matter of law, "the infringing [work] must be viewed or juxtaposed against the copyrighted [work] and then an essentially aesthetic judgment must be made as to whether reasonable jurors would not differ in concluding that the overall appearance of the [works] are substantially similar." *Id.* at 899–900.

"In most cases, when a copyrighted work will be directed at the public in general, the court need only" consider whether the general public would find the works to be substantially similar. *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001). "However, if the intended audience is more narrow in that it possesses specialized expertise, relevant to the purchasing decision, that lay people would lack, the court's inquiry should focus on whether a member of the intended audience would find the two works to be substantially similar." *Dawson v. Hinshaw Music Inc.*, 905 F.2d 731, 736 (4th Cir. 1990). "[I]n any given case, a court should be hesitant to find that the lay public does not fairly represent a work's intended audience." *Id.* at 737.

## 2. Analysis

### a. extrinsic similarity

The Complaint lists a number of similarities between the Bieber accused song[7] and Plaintiffs' song. Compl. para. 47, ECF No. 1. The Complaint further asserts that "a statistical analysis of (i) a 52-song sample of 2009[–]2011 Billboard 'Hot 100' Songs, (ii) both versions of 'Somebody to Love,' (iii) [s]ongs with Writing Credits to Justin Bieber *et al.*, and (iv) [s]ongs with Writing Credits to the Stereotypes *et al.* reveal[ed] that" the statistical probability of two songs randomly having the listed similarities is "essentially . . . zero" and that "a statistically negligible" number of songs in the above samples contained those attributes. *Id.* at para. 48.

Plaintiffs have also submitted an expert report stating that it is statistically unlikely that two unrelated songs would contain every element that is shared by the songs at issue in this suit. Defendants argue that this report is inadmissible at this stage of the case, and, additionally, that the report indicates that the similarities between the songs are too broad to be protectable.

The question of whether the accused songs are extrinsically similar to Plaintiffs' song depends on the significance of the alleged similarities. A hearing is necessary to determine whether expert testimony is needed on this issue, and whether the Island Motion to Dismiss should be converted to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d) in order to facilitate the gathering and presentation of relevant testimony.

### b. intrinsic similarity

The parties dispute whether the intended audience of Plaintiffs' song is the general public or industry professionals. Mr. Copeland attests that he did not intend to release his recording of Plaintiffs' song to the general public, but instead intended to use it to obtain a recording contract or find a more established artist to record it. Copeland Aff. paras. 4–5, ECF No. 39-1.

---

[7]   The Complaint does not discuss any similarities in the Raymond accused song.

Therefore, Plaintiffs argue, the intended audience of Plaintiffs' song consists of members of the music industry, not the general public.

In determining whether the intended audience is the general public, the Court's guiding consideration is "the effect of the defendant's work on the plaintiff's market." *Id.* at 737. In other words, the Court must determine whether any harm caused to Plaintiffs by Defendants' songs came from the general public viewing the songs as similar, or from industry professionals viewing the songs as similar. *See Lyons*, 243 F.3d at 803.

If Plaintiffs are correct in stating that the intended audience consists of industry professionals, expert testimony may assist in determining whether those professionals would consider the songs to be similar. Because complex questions are presented by this issue, a hearing is warranted.

c.  contributory and vicarious infringement

Defendants also argue that Plaintiffs' allegations regarding contributory and vicarious infringement are conclusory. This is a common claim and does not require oral argument. Because it is possible that the resolution of the question of substantial similarity will resolve the claims of contributory and vicarious infringement, whereas resolution of the contributory and vicarious infringement claims cannot obviate the need for a hearing on the issue of substantial similarity, the Court refrains from addressing these claims until the issues of intrinsic and extrinsic similarity are resolved.

C. CONCLUSION

For the foregoing reasons, oral argument is **ORDERED** on the issue of whether the accused songs are extrinsically or intrinsically similar to Plaintiffs' song. An Order resolving the Island Motion to Dismiss (ECF No. 17) will issue thereafter.

## III. CONCLUSION

Defendants' motions for joinder (ECF Nos. 30, 31, 49, 59, 60, 61) are **GRANTED**.

The Bieber Motion to Dismiss (ECF No. 20) is **GRANTED IN PART AND DENIED IN PART**.

The First Raymond Motion to Dismiss (ECF No. 43) is **DENIED**.

The unopposed Second Raymond Motion to Dismiss (ECF No. 47) is **GRANTED**.

The claims against Bieber Time are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

Plaintiffs' claims for punitive damages are **DISMISSED WITH PREJUDICE**.

The parties are **ORDERED** to confer and then contact the Courtroom Deputy at 757-222-7212 to set a date for the hearing on the Island Motion to Dismiss (ECF No. 17). This hearing shall address the following issues:

- Whether the accused songs are extrinsically similar to Plaintiffs' song.

- Whether the accused songs are intrinsically similar to Plaintiffs' song.

- Whether the Island Motion to Dismiss should be converted into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d) in order to facilitate the admission of expert testimony.

The parties are **ADVISED** that this hearing will not address Defendants' challenge to Plaintiffs' claims of contributory and vicarious infringement, because this issue is addressed adequately in the briefs.

**IT IS SO ORDERED.**

December 16, 2013
Norfolk, Virginia

/s/
Arenda L. Wright Allen
United States District Judge
Arenda L. Wright Allen
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DEVIN COPELAND, *et al.*,
    Plaintiffs,

v.                                          Civil Action No. 2:13cv246

JUSTIN BIEBER, *et al.*,
        Defendants.

ORDER

Plaintiffs Devin Copeland and Mareio Overton have brought this copyright infringement suit against the following Defendants: Justin Bieber; Usher Raymond, IV; Heather Bright d/b/a B-RHAKA Publishing; B-RHAKA Publishing ("B-RHAKA"); Ray Romulus d/b/a Please Enjoy the Music; Please Enjoy the Music; Jonathan Yip d/b/a Products of the Street; Products of the Street; Jeremy Rivers d/b/a Sumphu; Sumphu; Universal Music Corp. ("Universal"); Universal Music Publishing Group; Sony/ATV Music Publishing, LLC ("Sony"); WB Music Corp. ("WB"); The Island Def Jam Music Group ("Island"); Stage Three Music (U.S.) Inc.; Stage Three Music, LLC; and Jonetta Patton.

Plaintiffs assert that three versions of the song "Somebody to Love," recorded in 2010 by Mr. Bieber and Mr. Raymond, infringe Plaintiffs' copyright to a similarly-titled song recorded by Mr. Copeland in 2008. Plaintiffs seek actual and profit damages in the amount of $10,000,000, as well as punitive damages.

With Plaintiffs' consent, Defendants were given extensions of time in which to answer the Complaint. Island and Universal then moved to dismiss the Complaint for failure to state a claim upon which relief could be granted. ECF No. 17. This motion asserts that Defendants' accused songs are not extrinsically or intrinsically similar to Plaintiffs' song, and that Plaintiffs'

1

claims of contributory and vicarious infringement are inadequately pled. Ms. Bright, B-RHAKA, Sony, WB, and Mr. Raymond later moved to join in this motion.

On December 17, 2013, the Court issued an Order granting the requests for joinder and ordering a hearing on the issues of extrinsic and intrinsic similarity. This hearing was held on March 7, 2014. Having listened to the songs at issue and heard arguments from counsel, the Court **FINDS** that the songs are not intrinsically similar. The Motion to Dismiss is **GRANTED** and the case is **DISMISSED WITH PREJUDICE.**

## I. FACTUAL BACKGROUND

In deciding a motion to dismiss for failure to state a claim, the Court "must accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)) (internal quotation marks omitted). The Court may also consider any documents that are "integral to and explicitly relied on in the complaint," if their authenticity is uncontested. *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Plaintiffs allege the following facts:

Mr. Copeland, Mr. Raymond, and Mr. Bieber are musical performers and writers in the musical genre referred to as Rhythm and Blues. Compl. paras. 26, 35, 39, ECF No. 1. Mr. Overton is a songwriter. *Id.* at para. 27. Mr. Romulus, Mr. Yip, and Mr. Reeves are songwriters and music producers, and perform as "the Stereotypes." *Id.* at para. 38.

In early 2008, Plaintiffs wrote a song entitled "Somebody to Love" ("Plaintiffs' song"), which Mr. Copeland recorded for his album "My Story II." *Id.* at paras. 28–29. Plaintiffs copyrighted this song on October 2, 2008. *Id.* at para. 30.

In October and November 2009, Plaintiffs met Peter Stockton, Kevin Lawson, and Malik Brooks of Sangreel Media ("Sangreel"). *Id.* at para. 33. Sangreel finds new musical artists for companies, including Island and Sony. *Id.* Sangreel expressed interest in promoting Plaintiffs' songs, and Plaintiffs provided Sangreel with copies of several songs, including "Somebody to Love," for promotional purposes. *Id.* at paras. 33–34. Sangreel provided these copies to other artists, including Mr. Raymond. *Id.* at para. 35.

On January 5, 2009, Mr. Copeland conversed with Mr. Lawson and Ms. Patton. *Id.* at para. 36. Ms. Patton is Mr. Raymond's mother and manager. *Id.* Ms. Patton indicated that she and Mr. Raymond had listened to "My Story II" and were interested in having Mr. Copeland rerecord the album with Mr. Raymond and go on a performance tour with him during the summer of 2009. *Id.* However, neither Ms. Patton nor any other representative of Mr. Raymond contacted Plaintiffs thereafter. *Id.* at para. 37.

Mr. Raymond then wrote a song entitled "Somebody to Love" ("the Raymond accused song"), which he produced with the Stereotypes and Ms. Bright. *Id.* at para. 38. The song was uploaded to the internet on February 28, 2010. *Id.* Plaintiffs assert the Raymond accused song is a direct and deliberate copy of Plaintiffs' song. *Id.*

Mr. Raymond, Mr. Bieber, and the Stereotypes then produced another recording of the Raymond accused song, which was released on Mr. Bieber's album "My World 2.0" in early 2010 ("the Bieber accused song"). *Id.* at paras 41–43.

Plaintiffs allege that Defendants knew that their actions were infringing, and have profited from those actions. *Id.* at paras. 53–55.

The Bieber accused song performed well commercially. *Id.* at para. 44. Mr. Raymond and Mr. Bieber later recorded a remix of this song, which was released on June 25, 2010. *Id.* at

3

para. 45. Mr. Bieber has performed the Bieber accused song on numerous occasions, and continues to perform it as of the date of the Complaint. *Id.* at paras. 49–50.

## II. STANDARDS OF LAW

### A. FAILURE TO STATE A CLAIM

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2013). A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Requiring a claim to be plausible "does not impose a probability requirement at the pleading stage." *Id.* at 556. However, it does require more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Because conclusory allegations "necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief,'" a "'formulaic recitation of the elements of a cause of action will not do.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 557).

A 12(b)(6) motion "test[s] the sufficiency of a complaint" and does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (alteration provided) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotation marks omitted). As noted, a court should assume the truth of well-pleaded factual allegations. *Iqbal*, 556 U.S. at 679. Although the truth of the facts alleged is assumed, and the facts are taken in the light most

favorable to the plaintiff, courts are not bound by "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2) (2013), so as to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly* 550 U.S. at 555 (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 570 (internal citations and footnote omitted). A complaint may survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)) (internal quotation marks omitted).

## B. COPYRIGHT INFRINGEMENT

Plaintiffs allege that Defendants copied certain elements of their work. "Not all copying, however, is copyright infringement." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "To prove copyright infringement, a plaintiff must show first that he owned the copyright to the work that was allegedly copied, and second, that the defendant copied protected elements of the work." *Bouchat v. Balt. Ravens, Inc.*, 241 F.3d 350, 353 (4th Cir. 2001). "Where direct evidence of copying is lacking, [a] plaintiff may prove copying by circumstantial evidence in the form of proof that the alleged infringer had access to the work and that the supposed copy is substantially similar to the author's original work." *Id.* at 353–54.

Defendants do not challenge Plaintiffs' allegations that Plaintiffs possessed a valid copyright to their song and that Defendants had access to this song. Instead, the Motion to Dismiss argues that the accused songs are not substantially similar to Plaintiffs' song.

"Substantial similarity analysis is 'largely a matter of fact' . . . ." *Innovative Legal Mktg., LLC v. Mkt. Masters-Legal*, 852 F. Supp. 2d 688, 702 (E.D. Va. 2012) (quoting *Ganz Bros. Toys v. Midwest Imps. of Cannon Falls, Inc.*, 834 F. Supp. 896, 899–900 (E.D. Va. 1993)); *accord X-IT Prods., L.L.C. v. Walter Kidde Portable Equip., Inc.,* 155 F. Supp. 2d 577, 614 (E.D. Va. 2001). However, even at the pleadings stage of the case, "this Court has the authority to dismiss [a] copyright infringement claim if no reasonable jury could find substantial similarity." *Tessler v. NBC Universal, Inc.*, No. 2:08cv234, 2009 WL 866834, at *3 (E.D. Va. Mar. 31, 2009) (citing *Jacobsen v. Deseret Book Co., 287* F.3d 936, 941–42 (10th Cir. 2002); *Nelson v. PRN Prods.,* 873 F.2d 1141, 1143–44 (8th Cir. 1989); *Christianson v. W. Publ'g Co.,* 149 F.2d 202, 203 (9th Cir. 1945)), *affirmed*, 364 F. App'x 5 (2010).

"Proving substantial similarity requires a two-part analysis." *Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir. 1996). "First, a plaintiff must show—typically with the aid of expert testimony—that the works in question are extrinsically similar because they contain substantially similar ideas that are subject to copyright protection." *Id.* "Second, a plaintiff must satisfy the subjective, or intrinsic, portion of the test by showing substantial similarity in how those ideas are expressed." *Id.* at 583–84.

Determining intrinsic similarity requires the Court to "consider[] whether the intended audience could determine that the works are substantially similar, usually without the aid of expert testimony." *Id.* at 584; *see also Ganz Bros.,* 834 F. Supp. at 901 (asking whether an observer who has not "'set out to detect the disparities, would be disposed to overlook them, and

regard [the works'] aesthetic appeal as the same'" (alteration provided) (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2nd Cir. 1960))).    In deciding questions of intrinsic similarity as a matter of law, "the infringing [work] must be viewed or juxtaposed against the copyrighted [work] and then an essentially aesthetic judgment must be made as to whether reasonable jurors would not differ in concluding that the overall appearance of the [works] are substantially similar." *Ganz Bros.*, 834 F. Supp. at 899–900.

"In most cases, when a copyrighted work will be directed at the public in general, the court need only" consider whether the general public would find the works to be substantially similar.  *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001). "However, if the intended audience is more narrow in that it possesses specialized expertise, relevant to the purchasing decision, that lay people would lack, the court's inquiry should focus on whether a member of the intended audience would find the two works to be substantially similar." *Dawson v. Hinshaw Music Inc.*, 905 F.2d 731, 736 (4th Cir. 1990).  "[I]n any given case, a court should be hesitant to find that the lay public does not fairly represent a work's intended audience." *Id.* at 737.

## III. ANALYSIS

### A. EVIDENCE PRESENTED

Plaintiffs attached certain evidentiary documents to their response to the Motion to Dismiss. ECF Nos. 39-1, 39-2, 39-3.  Such evidence is not permitted when considering a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(d).

The evidence attached to Plaintiffs' response brief, and any other evidence submitted in connection with this motion, except the copies of the songs at issue, is **EXCLUDED**.  This prohibition is inapplicable to the copies of Plaintiffs' song and the accused songs because those

songs are "integral to and explicitly relied on in the [C]omplaint" and their authenticity is uncontested. *Phillips*, 190 F.3d at 618.

B. INTRINSIC SIMILARITY

The Court first considers whether the accused songs are intrinsically similar to Plaintiffs' song. Works are intrinsically similar if "the intended audience could determine that the works are substantially similar." *Towler*, 76 F.3d at 584.

1. Intended Audience

Defendants argue that the intended audience of the works in this case is the general public. Plaintiffs argue that because Mr. Copeland intended to market his song to industry professionals, the intended audience of Plaintiffs' song consists of those professionals, not the general public. *See generally Dawson*, 905 F.2d at 737–38 (holding that the general public was not the intended audience of choral arrangements because those arrangements were marketed to choir directors, each of whom would likely perform the arrangement differently).

In determining whether the intended audience is the general public, the Court's guiding consideration is "the effect of the defendant's work on the plaintiff's market." *Id.* at 737. The Court must determine whether any harm caused to Plaintiffs by Defendants' songs came from the general public construing the songs as similar, or from industry professionals construing the songs as similar. *See Lyons*, 243 F.3d at 803.

The Fourth Circuit's analysis in *Lyons* is instructive. In that case, the defendants released a costume that resembled a character copyrighted by the plaintiffs who was popular among children. *Id.* at 795–96. Although the costume was designed to entertain children, the district court reasoned that the intended audience consisted of adults who would purchase the costume for the children's benefit. *Id.* at 802. The district court distinguished this case from infringement

8

involving other children's products because children generally would not be present when the costume was purchased or rented. *Id.* at 803. The Fourth Circuit rejected this reasoning, holding that because the infringing product could erode children's positive perception of the plaintiffs' character, the economic harm to plaintiffs came from confusion among children, not among adults. *Id.*

Plaintiffs' argument has the same flaws as the district court's reasoning in *Lyons*. If, as Plaintiffs fear, industry professionals reject Plaintiffs' song because it is too similar to the Defendants' songs, it would be because those companies fear that the *public* will find the songs to be overly similar. *See* Resp. Mot. Dismiss 10, ECF No. 39 ("Industry professionals need to be concerned about marketability and avoiding competition in the marketplace for music."). Just as the harm caused to the plaintiffs in *Lyons* came from confusion among children rather than confusion among the adults purchasing the accused product, any harm caused by confusion between Plaintiffs' song and Defendants' songs would come from confusion among the public, not among industry professionals.

Plaintiffs' reliance on *Dawson* is misplaced. *Dawson* expressly distinguished cases involving "popular recordings." 905 F.2d at 737–38. The court noted that spiritual arrangements, unlike popular recordings, are sometimes purchased based on considerations other than their general appeal, and may be altered by each individual purchaser. *Id.* These alterations preclude the seller from presenting a single recording of the arrangement as a typical version that is enjoyed by the general public. *Id.* at 738.

Such concerns are absent in this case. Plaintiffs concede that industry professionals, unlike the choral directors in *Dawson*, make their purchasing decisions based on a song's expected appeal to the general public. Resp. Mot. Dismiss 10, ECF No. 39. To the extent to

which Plaintiffs argue that the released version of their song would feature a different vocalist, this change would not introduce significant differences from Plaintiffs' original work. *Cf. Dawson*, 905 F.2d at 738 (stating that in that case, the changes made by the choral directors were of such significance that "differences and similarities in the sound of performances of two arrangements may represent something other than differences and similarities in the arrangements themselves"). *Dawson* is inapplicable.

Although the immediate purchasers of Plaintiffs' song may be industry professionals, their purchasing decisions are based on the song's expected appeal to consumers, and any harm caused to Plaintiffs by the accused songs would be caused by the public construing Plaintiffs' song as similar to the accused songs. Therefore, the Court finds the "intended audience" for purposes of determining intrinsic similarity is the general public.

2. Similarity

The Court must grant the motion to dismiss if the songs are so dissimilar that no reasonable juror could believe that a member of the public would overlook the differences between the songs and construe their aesthetic appeal as being similar. *Ganz Bros.,* 834 F. Supp. at 901.

Having examined Plaintiffs' song and the three accused songs, the Court finds that the songs cannot be reasonably construed as being substantially similar. Although the accused songs have some elements in common with Plaintiffs' song, their mood, tone, and subject matter differ significantly. This is not a case where a listener who had not "set out to detect the disparities[] would be disposed to overlook them, and regard [the songs'] aesthetic appeal as the same." *Id.* (alterations provided) (quoting *Peter Pan Fabrics*, 274 F.2d at 489) (internal quotation marks omitted). Instead, any listener who had not set out to detect the songs' *similarities* would be

inclined to overlook them, and regard the songs' aesthetic appeal as different. Therefore, a reasonable juror could not conclude that a member of the public would construe the aesthetic appeal of the songs as being similar.

Because the accused songs could not be found to be intrinsically similar to Plaintiffs' song, the Motion to Dismiss is **GRANTED**.

## C. OTHER ISSUES

The Motion to Dismiss also argues that the disputed songs are not extrinsically similar and that the Complaint alleges insufficient facts to state claims of contributory and vicarious infringement. As discussed above, the accused songs are noninfringing because they are not intrinsically similar to Plaintiffs' song. Because the accused songs do not infringe Plaintiffs' copyright, Plaintiffs cannot state claims of contributory or vicarious infringement based on those songs. Therefore, the Court does not reach the extrinsic similarity of the songs or the adequacy of Plaintiffs' allegations regarding contributory and vicarious infringement.

## IV. CONCLUSION

The evidence attached to Plaintiffs' response brief, and any other evidence submitted in connection with this motion, except the copies of Plaintiffs' song and the accused songs, is **EXCLUDED**. Defendants' Motion to Dismiss (ECF No. 17) is **GRANTED**. The case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Arenda L. Wright Allen
United States District Judge

March 28, 2014
Norfolk, Virginia

AO 450 (Rev. 11/11)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

| | | |
|---|---|---|
| DEVIN COPELAND, et al, | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  2:13cv246 |
| JUSTIN BIEBER, et al., | ) | |
| *Defendant* | ) | |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐  the plaintiff *(name)* _____ recover from the
defendant *(name)* _____ the amount of
_____ dollars ($ _____ ), which includes prejudgment
interest at the rate of _____ %, plus post judgment interest at the rate of _____ % per annum, along with costs.

☐  the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____
_____ recover costs from the plaintiff *(name)* _____
_____ .

☑  other:   The evidence attached to Plaintiffs' response brief, and any other evidence submitted in
connection with this motion, except the copies of Plaintiffs' song and the accused songs, is
EXCLUDED. Defendants' Motion to Dismiss is GRANTED. The case is DISMISSED WITH PREJUDICE.

This action was *(check one)*:

☐  tried by a jury with Judge _____ presiding, and the jury has
rendered a verdict.

☐  tried by Judge _____ without a jury and the above decision
was reached.

☑  decided by Judge  Arenda L. Wright Allen _____ on a motion for
          ECF No. 17: Motion to Dismiss

Date:    MAR  2 8  2014                          CLERK OF COURT

                                                 _____
                                                 *Signature of Clerk or Deputy Clerk*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

DEVIN COPELAND P/K/A DE RICO and
MAREIO OVERTON,

     Plaintiffs,

v.

                                        Case No.: 2:13cv00246

JUSTIN BIEBER, USHER RAYMOND IV p/k/a
USHER, HEATHER BRIGHT, B-RHAKA
PUBLISHING, RAY ROMULUS, SUMPHU,
JONATHAN YIP, PLEASE ENJOY THE MUSIC,
JEREMY REEVES, PRODUCTS OF THE STREET,
UNIVERSAL MUSIC CORP, UNIVERSAL MUSIC
PUBLISHING GROUP,SONY/ATV MUSIC
PUBLISHING, LLC, BIEBER TIME PUBLISHING,
LLC, WB MUSIC CORP., THE ISLAND DEF JAM
MUSIC GROUP, STAGE THREE MUSIC (US) INC,
STAGE THREE MUSIC, LLC, and JONETTA PATTON,

     Defendants.

**NOTICE OF APPEAL**

       NOTICE is hereby given that Devon Copeland and Mareio Overton, Plaintiffs in the

above-named case, hereby appeal to the United States Court of Appeals for the Fourth Circuit

from the Order (Dkt No. 72) and Final Judgment (Dkt No. 73) entered in this action on the 28th

day of March, 2014, which granted Defendants' Motion to Dismiss.

       Dated: April 23, 2014

                                      Respectfully submitted,

                                      */s/Duncan G. Byers*
                                      Duncan G. Byers
                                      Virginia State Bar No. 48146
                                      Jeffrey D. Wilson
                                      Virginia State Bar No. 75734
                                      BYERS LAW GROUP
                                      142 W. York Street, Suite 910

1

Norfolk, VA  23510
Phone:  757-227-3340
Facsimile:  757-227-3341
duncan.byers@byerslawgroup.com
jdwilson@byerslawgroup.com
admin@byerslawgroup.com

*Attorneys for Plaintiffs*
*Devin Copeland and Mareio Overton*

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2014, I will electronically file the foregoing, with the

Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF)

to the following:

Stephen E. Noona
Virginia State Bar No. 25377
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: 757-624-3239
Facsimile: 757-624-3169
senoona@kaufcan.com

Howard Weitzman
Jeremiah T. Reynolds
Kinsella Weitzman Iser Kump & Aldisert
808 Wilshire Blvd., 3'd Floor
Santa Monica, CA 90401
Telephone: 310-566-9800
Facsimile: 310-566-9884
hweitzman@kwikalaw.com
jreynolds@kwikalaw.com

*Attorneys for Defendants Justin Bieber, Universal Music*
*Corp., Bieber Time Publishing, LLC and The Island Def*
*Jam Music Group*

Jonathan D. Davis, Esq. (*pro hac vice* application to be filed)
Jonathan D. Davis, P.C.

2

99 Park Avenue, Suite 1600
New York, New York 10016
Telephone: 212- 687-5464
Facsimile: 212- 557-0565
jdd@jddavispc.com

*Attorneys for Defendant Usher Raymond, IV p/k/a Usher*


Nathan Muyskens
Virginia State Bar No. 39168
Loeb & Loeb LLP
901 New York Avenue NW
Suite 300 East
Washington, DC  20001
Telephone:  202-618-5000
Facsimile:  202-618-5001
nmuyskens@loeb.com

Barry I. Slotnick *(pro hac vice)*
Cheng L. Chen *(pro hac vice)*
Loeb & Loeb LLP
345 Park Avenue
New York, NY  10154
Telephone:  212-407-4000
Facsimile:  212-407-4990
bslotnick@loeb.com
lchen@loeb.com

*Attorneys for Heather Bright, B-RHAKA*
*Publishing LLC, WB Music Corp. and*
*Sony/ATV Music Publishing LLC*

                              */s/Duncan G. Byers*
                              Duncan G. Byers
                              Virginia State Bar No. 48146
                              Jeffrey D. Wilson
                              Virginia State Bar No. 75734
                              BYERS LAW GROUP
                              142 W. York Street, Suite 910
                              Norfolk, VA  23510
                              Phone:  757-227-3340
                              Facsimile:  757-227-3341
                              duncan.byers@byerslawgroup.com
                              jdwilson@byerslawgroup.com
                              admin@byerslawgroup.com

3

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 269 of 317
Case 2:13-cv-00246-AWA-TEM  Document 77   Filed 04/24/14   Page 1 of 39 PageID# 792

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA
 2                      Norfolk Division

 3

 4   - - - - - - - - - - - - - - - - - - -
                                        )
 5     DEVON COPELAND, et al.,          )
                                        )
 6           Plaintiffs,                )   CIVIL ACTION NO.
                                        )   2:13 cv 246
 7     v.                               )
                                        )
 8     JUSTIN BIEBER, et al.,           )
                                        )
 9           Defendants.                )
     - - - - - - - - - - - - - - - - - - -

10

11

12                 TRANSCRIPT OF PROCEEDINGS

13                    Norfolk, Virginia

                       March 7, 2014
14

15

16   BEFORE:  THE HONORABLE ARENDA WRIGHT ALLEN
             United States District Judge

17

18   APPEARANCES:

19           BYERS LAW GROUP
             By:  Duncan Byers
20               Counsel for the Plaintiffs

21           KAUFMAN & CANOLES, P.C.
             By:  Stephen Noona
22           JONATHAN D. DAVIS, P. C.
             By:  Jonathan Davis
23           LOEB & LOEB LLP (DC)
             By:  Nathan J. Muyskens
24               Barry Slotnick
                 Counsel for the Defendants
25
```

```
 1              (Hearing commenced at 9:06 a.m.)

 2         THE CLERK:  Copeland, et al., versus Bieber, et al.

 3  Civil Case Number 2:13CV246.  Mr. Byers, are the plaintiffs

 4  ready to proceed?

 5         MR. BYERS:  We are, Your Honor.

 6         THE COURT:  All right.  Good morning.

 7         THE CLERK:  Mr. Noona, are the defendants ready to

 8  proceed?

 9         MR. NOONA:  We are.

10         THE COURT:  All right.  Good morning, Mr. Noona.

11         MR. NOONA:  Good morning, Your Honor.

12         THE COURT:  Good to see you.

13         MR. NOONA:  May it please the court.

14         THE COURT:  Yes.

15         MR. NOONA:  Matter of introductions first.  Your

16  Honor, my name is Stephen Noona.  I'm here today on behalf of

17  several of the defendants.  I'm going to tell you who they

18  are because there is a large group of them:  Universal Music

19  Corp, the Island Def Jam Music Group, Mr. Justin Bieber, and

20  Mr. Usher Raymond, which I may reverse.  That's a hard one to

21  keep straight.

22         THE COURT:  It is.

23         MR. NOONA:  I have Ms. Lauren Tallent with me from

24  my office.

25         THE COURT:  Good to meet you.
```

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 271 of 317
Case 2:13-cv-00246-AWA-TEM  Document 77  Filed 04/24/14  Page 3 of 39 PageID# 794

3

```
 1              MR. NOONA:  And also on behalf of Mr. Raymond is
 2     Jonathan Davis.
 3              MR. DAVIS:  Good morning, Your Honor.
 4              THE COURT:  Good to meet you, Mr. Davis.
 5              MR. DAVIS:  Thank you for letting me appear in your
 6     court.
 7              THE COURT:  No problem.
 8              MR. NOONA:  He is admitted before the court and may
 9     have comments today in addition to mine.
10              THE COURT:  All right.
11              MR. NOONA:  There is another defendant or defendants
12     and I'll let them introduce.
13              MR. MUYSKENS:  Good morning, Your Honor.
14              THE COURT:  Good morning.
15              MR. MUYSKENS:  I'm Nathan Muyskens from Loeb and
16     Loeb.  I'm here with my colleague Barry Slotnick.  We
17     represent Heather Bright, B-Rhaka Entertainment, Sony and
18     Warner Brothers.
19              THE COURT:  Good to have you both in our court.
20              MR. SLOTNICK:  Thank you.
21              MR. NOONA:  One more housekeeping matter, Your
22     Honor.  I have a printout of the PowerPoint that I have.  I
23     have four copies, or three copies.  Be happy to hand those
24     up.
25              THE COURT:  Thank you, Mr. Noona.
```

Appeal: 14-1437    Doc: 30    Filed: 08/01/2014    Pg: 272 of 317
Case 2:13-cv-00246-AWA-TEM  Document 77  Filed 04/24/14  Page 4 of 39 PageID# 795

4

1        **MR. NOONA:**  I hand those up and I will argue from
2   them but I will not be going line by line.

3        Your Honor, we're here today on the motion to
4   dismiss that's been filed and joined by the various
5   defendants.  More particularly, we're here to answer some of
6   the questions you have raised in partially ruling on that
7   motion.

8        Because you are familiar with the extensive
9   briefing, I'm going to try to focus on some of the central
10  issues that I think will help you dispose of this case.

11       In sum, Your Honor, it's our position that under the
12  applicable Fourth Circuit law, the claim of copyright
13  infringement should be dismissed as a matter of law because
14  there is no substantial similarity between the copyrighted
15  work and the accused work.

16       In particular, Your Honor, as you know, there are
17  two prongs to the Fourth Circuit's test.  And although we
18  have briefed both of them, today we want to focus on one
19  prong.  Because we think if you focus on the intrinsic prong,
20  which is known as the subjective prong, that you, as the
21  court, as the lay public, can listen to the copyrighted song
22  and the accused song and come to the clear conclusion that
23  they are not substantially similar and dismiss this matter as
24  a matter of law.

25       Now because this is a motion to dismiss, I want to

Appeal: 14-1437    Doc: 30    Filed: 08/01/2014    Pg: 273 of 317
Case 2:13-cv-00246-AWA-TEM  Document 77  Filed 04/24/14  Page 5 of 39 PageID# 796

5

1    start out looking at some of the key allegations in the

2    complaint.  There is a lot of facts floating around in this

3    case.  What we really need to focus on is what is appropriate

4    for Your Honor to consider in making her decision.

5         This is a 12(b)(6).  There is no dispute that the

6    allegations in the complaint are central and that many things

7    that are referenced in the complaint can also be referred to,

8    for example, the works.  And if you look at the Tessler case

9    and several other cases you can find support for the position

10   that at 12(b)(6) you can actually look at the works in

11   question for the substantial similarity question.

12        Now in this case what is important to point out is

13   what allegations the plaintiff actually makes about the

14   copyrighted work.  And what I have done is tried to lay out

15   the specific allegations that regard the copyrighted

16   material.

17        First, the plaintiffs claim that they performed

18   quote rhythm and blues, that genre, under the name De Rico.

19        Second, that the work in question was to be

20   performed professionally and recorded by Copeland and

21   released on an album.  An album is sold to the public.

22   Recorded -- it was recorded on an album known as My Story II.

23   It is available on the internet.  If you go to the website

24   that's listed here -- I'll show it to you in a second -- it

25   is available.  You can access it.  You can listen to it.

1    Presumably, if you try hard enough, you can get a copy of it.
2    And it's further important that the plaintiffs sought help in
3    getting their works, the music that they wrote, promoted.  So
4    everything about what the plaintiff says is that he -- I'll
5    say plaintiff.  It's two of them, but the plaintiff tried
6    every way possible to record a song, perform that song, and
7    sell that song to the public.  That is the focus of what the
8    plaintiff was doing.
9         Now there is an allegation in the declaration,
10   that's not in the complaint, that the plaintiff was trying to
11   sell this to the executives.  We will deal with that in a
12   bit.  But what is important to point out is what is actually
13   pled in the case.
14        It's also important -- and you can see here this is
15   the website.  There is no question that you go to this cite
16   and get the song in question.
17        It's also important to point out the facts that are
18   not in dispute.  If you look at the briefing, while there is
19   some dispute as to some of the details, it is clear that the
20   accused work and the copyrighted work have different
21   melodies, different tempos, different rhythms, different
22   lyrics and different genres.  One is an R and B song, as
23   we'll hear in a while, and one is an upbeat dance song.
24        It is clear that the plaintiff is pointing to the
25   use of a similar phrase, somebody to love or I need somebody

1   to love, in the chorus of both and the title.  We have argued

2   that that's not copyrightable.  I'm going to show you why

3   it's not important in a moment.

4          And also that the other similarities that they point

5   to, which really fall under this extrinsic test, are general

6   music ideas that can't be copyrighted.  Now we may save that

7   for a different day but we have addressed those issues and we

8   believe that those are not adequately pled either.

9          What I want to focus on, as I said, the first

10  prong -- the second prong, this objective prong.  I set

11  before you the test that the Fourth Circuit has and you might

12  ask yourself why does the Fourth Circuit break this down into

13  two parts.  The question is are these two songs substantially

14  similar?

15         Well the reason the Fourth Circuit breaks it down

16  the way they do is just to prevent what's happening in this

17  case.  Yes, you need to look at a song and see what ideas are

18  expressed.  Copyright law only protects ideas as they are

19  expressed.  Not the ideas themselves.  I can't copyright a

20  four four time signature.  That just doesn't work.  I can

21  copyright the way I express music itself but not the idea.

22  So the copyright law says wait a minute, even though you go

23  down into these details, we have to have a check.  We need to

24  know at the end of the day if the people listening to, in

25  this case, a song, think that the two are substantially

Appeal: 14-1437   Doc: 30   Filed: 08/01/2014   Pg: 276 of 317
Case 2:13-cv-00246-AWA-TEM  Document 77  Filed 04/24/14  Page 8 of 39 PageID# 799

8

1    similar or not.  And so what the test says is, okay, for all

2    the details that you look at over here in the extrinsic

3    prong, you got to have a check.  You got to listen to these

4    songs.  The intended audience needs to be in a position where

5    if they come in and just listen, they are not looking for

6    differences, that they come away with a firm belief that

7    these are substantially similar?  Or do they think they are

8    different?  That's your role, Your Honor, and that's why in

9    this case, under this test, you can apply the subjective

10   prong and find that the songs in question are not

11   substantially similar at this stage in the litigation.

12          Now there is also no question from the case law that

13   you have to prove both prongs, and therefore our argument is

14   if you can't prove the intrinsic prong, there is no need to

15   move forward to the other prong, despite all of our

16   arguments.

17          All right.  Again, what is it?  The court gives us

18   some guidance but what you should take away from it is that

19   it's the total look and feel, or in this case the sound and

20   feel of the two songs.  It's not a dissection of its pieces.

21   It is what is the overall impression that you get listening

22   to the two songs.  Are they substantially similar?  And the

23   court has sort of set out a few extra points to help us.  It

24   tells us that it's to be the ordinary observer, coming in

25   listening to it without the goal of trying to find

1    differences, just listening for similarities.  It doesn't

2    require expert testimony.  There is a long line of cases we

3    have cited that say that you as the fact -- as the court can

4    listen to these things and find that.  And we believe that in

5    this case you should.

6         All right.  One more thing I'll give you as guidance

7    because I find it helpful, in the Damiano case, which we

8    cited and which I have the quote here.  After all is said and

9    done, after all the legal wrangling, this Judge put it right:

10   "The overall effect of the two pieces is quite dissimilar --

11   put simply, they just don't sound alike."  That's, that

12   really is what is going on because again this is a check at

13   the end of the day would the ordinary observer think these

14   things are substantially similar.  And you are in a position

15   to make that.

16        Now we have the songs here, and I'd like to play two

17   of them.  I recognize there is more but I just think it's

18   helpful for our discussion to do that.  Let's play the first

19   one.  This is Mr. Copeland's track.  Track three of Exhibit C

20   in the brief.

21        (Song playing:  Yes, I guess I got to accept the

22   consequences that life throws at me.  I can't believe I'm

23   upset.  We're through.  I thought I had the best thing in the

24   world.  You don't want to go there.  Do your thing.  I guess

25   I got to let you, let you.  No need for me to keep you in

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 278 of 317
Case 2:13-cv-00246-AWA-TEM   Document 77   Filed 04/24/14   Page 10 of 39 PageID# 801

10

```
 1   this bind, so you can go.  Don't wait.  No need for you to

 2   take up my space.  I'm on the way to find someone for me.

 3   It's not right.  I know I got to go.  Don't want you if

 4   you're here and not happy.  I need somebody to love.

 5   Somebody to love.  I keep going through the same old thing.

 6   Somebody to love.  Somebody to love.  Because I keep going

 7   through the same old thing.  It's a rap.  It's a rap.  Hold

 8   me back, hold me back, game ain't the same no more.  Put the

 9   move and we're through.  So glad I broke up with you.  Does

10   it hurt?  No way.  Do you believe I wanted to stay with you

11   so blue, and still be happy too.  See it was no romance and

12   we don't live in France.  There is no love around here

13   floating in the air.  So you can go.  I'm okay.  It wasn't

14   working anyway.  This man need somebody to love because I

15   keep going through the same old thing.  Somebody to love.

16   Somebody to love.  Because I keep going through the same old

17   thing.  Was there someone?  That someone I long for.  Know

18   there's somebody.  There is somebody to love.  I need

19   somebody to love.  Somebody to love.)

20        MR. NOONA:  And the chorus will continue for awhile,

21   Your Honor.

22        THE COURT:  Okay.

23        MR. NOONA:  I'd like to have you listen to the next

24   track which is Somebody to Love.  This is track one to

25   Exhibit A.  I believe this is the Justin Bieber version.
```

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 279 of 317
Case 2:13-cv-00246-AWA-TEM   Document 77   Filed 04/24/14   Page 11 of 39 PageID# 802

11

1          **THE COURT:**  Okay.

2              (Music playing:  Feels so right.  Feels so right.

3     For you I'd write a symphony.  I'd tell the violin it's time

4     to sink or swim.  Watch me play for ya.  For you I'd be

5     running a thousand miles just get to where you are.

6     Step to the beat of my heart.  I don't need a whole lot.

7     But for you I need, I'd rather give you the world

8     Or we can share mine.  I know I won't be the first one

9     giving you all this attention.  Baby, listen.  I just need

10    somebody to love.  I, I don't need too much, just somebody to

11    love.  Somebody to love.  I don't need nothing else, I

12    promise, girl, I swear I just need somebody to love.  I need

13    somebody  I, I need somebody.  I need somebody.  I, I need

14    somebody to love.  Everyday I'd bring the sun around.  I'll

15    sweep away the clouds.  Smile for me.  I would take every

16    second, every single time, spend it like my last dime.

17    Step to the beat of my heart.  I don't need a whole lot

18    But for you I need, I'd rather give you the world

19    Or we can share mine.  I know I won't be the first one

20    giving you all this attention

21    Baby, listen, I just need somebody to love.

22    I, I don't need too much, just somebody to love.

23    Somebody to love.  I don't need nothing else, I promise,

24    girl, I swear.  I just need somebody to love.  I need

25    somebody, I, I need somebody, I need somebody

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 280 of 317
Case 2:13-cv-00246-AWA-TEM  Document 77   Filed 04/24/14   Page 12 of 39 PageID# 803

12

1    I, I need somebody to love.  I need somebody,

2    I, I need somebody, I need somebody, I, I need somebody to

3    love.  And you can let it out --)

4          MR. NOONA:  Your Honor, I'm going to stop it there.

5    Again, the chorus and verses will repeat.

6          Your Honor, listening to those two songs with an eye

7    towards the intrinsic prong, I think it's apparent that the

8    mood and theme of the two songs are completely different.  I

9    mean one of them is lamenting a painful relationship and

10   moving on and the other is excitedly looking forward to, you

11   know, some new relationship and trying to impress.  I mean

12   you listen to one and you want to cry and you listen to the

13   other and you want to dance.  I mean, you know, I was trying

14   to hold back.  I'm tapping, and Mr. Byers wanted to dance,

15   and.

16         But the point is that the feel is different.  It is

17   completely different.  The lyrics are completely different

18   except for the phrase.  And there is an argument that

19   Mr. Byers will make that somewhere in the chorus the word

20   love is extended, but the way it comes off in a macro level,

21   remember the check, is completely different.  And that is why

22   from an intrinsic point of view, the intrinsic prong, that

23   this -- these two songs and the other songs which are

24   variance, pretty much the same, are dissimilar.  Again

25   concept, feel, melodies, tempos, rhythm, lyrics, genres, you

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 281 of 317
Case 2:13-cv-00246-AWA-TEM  Document 77   Filed 04/24/14   Page 13 of 39 PageID# 804

13

can parse it in a lot of ways but the important point is when
you listen to the two songs the overall concept and feel is
different.  Therefore, they are not substantially similar.

Again, I like the Damiano case where the Judge says
they just don't sound alike.  I mean you go back to that and
in a great sense you can feel that.

Now what does the defendants -- the plaintiffs say
in this case?  Why are we here?  The reason we are here is
because implicitly, implicitly -- I don't want to put words
in my learned counsel's mouth -- but implicitly if you apply
the lay test, if you apply the ordinary observer test, these
two songs are dissimilar.  They are not substantially
similar.

So what Mr. Copeland has done, what the plaintiffs
have done is they tried to shoehorn this case into a very
narrow exception.  That exception comes out of the Dawson
case, which is a Fourth Circuit case that dealt with a very,
very specialized situation.

In Dawson you had a case where it did involve music
but it specifically did not involve sound recordings.  It
involved sheet music, and I'm going to get into why that's
important.  But what the plaintiff is doing is he is trying
to take the narrow exception from Dawson and say it applies
in this case and therefore you, Judge, are not able to listen
to these two songs and decide that they are not substantially

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 282 of 317  Case 2:13-cv-00246-AWA-TEM  Document 77  Filed 04/24/14  Page 14 of 39 PageID# 805

14

1    similar.  You have to be quote an industry professional to

2    recognize these overall similarities between the two songs

3    and only an industry professional could do that.

4         Now, we disagree obviously and we think that there

5    are several reasons but the first I want to start with is the

6    plaintiffs own words.  I would direct -- the defendants own

7    words, excuse me.  I would direct you to page 12 of the

8    opposition brief where the following statement is, or exists,

9    the defendant -- the plaintiff says while the similarities of

10   the songs are obvious when heard by an industry professional,

11   they are also obvious when heard by a lay person, especially

12   in the structure and feel of the chorus.  So right there the

13   plaintiff is saying that a lay person can listen to these two

14   songs and determine whether they are substantially similar or

15   not.  You don't need an executive professional from the

16   industry to tell that.

17        Now more importantly, you don't need it under the

18   law and here's why.  The very, very strong rule, the general

19   rule is that the lay observer is the person that should be

20   listening and making the decision under the intrinsic prong.

21   It is only when you have very specific circumstances, two of

22   them, where the intended audience possesses a specialized

23   expertise and that specialized expertise goes beyond mere

24   differences in taste and rises to the level of possession of

25   knowledge that the lay public lacks.

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 283 of 317
Case 2:13-cv-00246-AWA-TEM  Document 77   Filed 04/24/14   Page 15 of 39 PageID# 806

15

```
 1           Now let me explain why Dawson went where it went.
 2   In almost every other circuit out there, the lay observer is
 3   the test.  This narrow exception comes about because
 4   according to the Fourth Circuit there are rare cases in which
 5   you are comparing things that the lay observer can't compare.
 6           Let me give you an example they talk about which
 7   brings it home for me.  They talk about source code, computer
 8   software.  If you handed me two pieces, two pages from source
 9   code or two pieces of objective code even, I would have a
10   hard time comparing them, and I do patent cases all the time
11   and I look at that stuff.  It's difficult.  It's hard.  The
12   average person on the street doesn't encounter on a regular
13   daily basis computer code.
14           So in the Weyland case -- the Dawson case said look
15   this is different.  We can't just say somebody off the street
16   can compare these two things.  That doesn't make sense.
17           In his case, in Dawson's case, you had not the sound
18   recordings to compare, but you had two pieces of sheet music.
19   They weren't popular music where you were comparing notes.
20   They were arrangements of choral music for a spiritual.  And
21   that spiritual -- I'm sure Your Honor is familiar with it,
22   Ezekiel Saw the Wheel, is sort of a song that has a lots of
23   round-robin in it.  And you can as a chorus director, as a
24   choral director you can do all sorts of things with that
25   song.  It's just a template, okay.  The average person on the
```

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 284 of 317
Case 2:13-cv-00246-AWA-TEM  Document 77   Filed 04/24/14   Page 16 of 39 PageID# 807

16

1    street is not going to be able to pick up two pieces of sheet

2    music and tell whether A the first one is alto centric or B

3    is, you know, base centric.  Or whether it's got, you know,

4    an emphasis on, you know, these cords here versus these cords

5    here.  That type of stuff is hard to do if you just have

6    sheet music.  You can't hear it.  A trained musician,

7    somebody who buys and sells sheet music who arranges choruses

8    they can hear that in their mind.  You know, it's a language

9    to them.  So they look at it and they say oh, okay, this is

10   what he is doing.  And yes, A is similar to B, or no, A is

11   not similar to B.

12        In this case and in Dawson, you're talking about

13   sound recordings of popular music.  Reread Dawson.  Dawson

14   says 16 times almost.  It says several times, not 16.  I'm

15   exaggerating.  That popular music should be listened to by

16   the lay listener.  Why?  Because every day we listen to the

17   radio.  Every day we listen to music.  We can tell the

18   difference between Somebody to Love in an R and B melancholy

19   syncopated rhythm versus Somebody to Love in an upbeat dance

20   completely different type of pop music, and therefore the

21   exception here shouldn't apply.

22        Now less there be any doubt, you know, I've provided

23   in this PowerPoint the, you know, the quotes that come right

24   out of it but, Your Honor, Your Honor hit the nail on the

25   head in her opinion when she said you have to be hesitant to

```
 1    apply this exception, because here's the reason why you would
 2    have to do that.  If you apply Dawson as the plaintiff asks
 3    you to apply it, then in every single case you will not be
 4    applying the lay listener.  Because every time somebody
 5    records a piece of music, they are going to say, well, okay,
 6    yes, I have an album.  Yes, I copyrighted that album.  Yes, I
 7    say in my pleadings that I want to perform it and I want to
 8    tour it and I want to play it for the public, and I put it on
 9    the internet so you can get it but I wasn't selling it to the
10    public.  So the public can't tell whether they are similar.
11    You have to go to the A and R, the music executive, because
12    they can listen to it and tell how to change it or move it
13    around or whatever.  That's not the test.  The test is who
14    can listen to it and tell from that check that I talked about
15    earlier whether they are substantially similar.
16            You and I and everybody in this room can listen to
17    those two songs and tell they are not substantially similar.
18    You don't need to be an executive in the music industry to do
19    that.  What is that music executive listening to anyway?
20    What are they listening for?  They are listening for what
21    will sell to the public.  They are not listening to for some
22    other reason.  They are the ear to the public.  It is the
23    sounds that sells to the public.  So ultimately you are back
24    to the same place.  Who's going to listen to it?  Who's going
25    to consume it?  And can they tell if they are substantially
```

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 286 of 317
Case 2:13-cv-00246-AWA-TEM  Document 77  Filed 04/24/14  Page 18 of 39 PageID# 809

18

1    similar?  And again this is not computer.  This is not a

2    specialized situation like children's toys.  This is very

3    simply one of the most common commodities that people compare

4    copyright, music.  And people are not comparing notes under

5    this prong.  They are comparing sound.  They can hear it.

6    They can tell it's the same.

7          So, Your Honor, we would say that you should not

8    apply that exception and there is no good reason to do it.

9          Incidentally, if you read the Dawson case you will

10   see that the district court in that case did exactly what I'm

11   asking you to do here today.  The district court found that

12   although there might be some similarities from an extrinsic

13   point of view, there was no -- I mean for extrinsic point of

14   view, there was no intrinsic substantial similarly.  So he

15   dismissed the claim.

16         The Fourth Circuit said well you may be right, but

17   in this instance we want you to go back and look and see if

18   that's the right audience that should have looked at it.

19   They didn't even decide that.  But they approved doing what

20   I'm asking you to do in essence which is if the lay person is

21   the right audience and the works are not substantially

22   similar from the intrinsic prong, the case is over.  And

23   that's why we think Your Honor should go there and do that.

24         Your Honor, it's clear, as I've said before, that we

25   have arguments on the other issues, but we believe once you

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 287 of 317
Case 2:13-cv-00246-AWA-TEM  Document 77   Filed 04/24/14   Page 19 of 39 PageID# 810

19

1    look back at Dawson and decide that the lay observer is the

2    right person, listen to these two musics as you have done,

3    you will determine that they are not substantially similar

4    and dismiss the case.

5              Thank you, Your Honor.

6         **THE COURT:**  Thank you.

7         **MR. DAVIS:**  Good morning, Your Honor.  Jonathan

8    Davis.

9         **MR. BYERS:**  I'm sorry.

10        **MR. DAVIS:**  Your Honor, I don't have much.

11   Mr. Noona did such a wonderful job in presenting it.  I don't

12   want to repeat what he said.

13             But I do think that what is really important is that

14   the argument that the plaintiff has made here is really a

15   makeshift argument.  It is one that has been formulated to

16   avoid dismissal of the claim.  And I say that because I

17   think -- I submit to you that in plaintiff's papers they

18   undermine their own claim.  And it was the very quote that

19   Mr. Noona read to you, which was while the similarities of

20   the songs are obvious when heard by an industry professional,

21   they are also obvious when heard by a lay person.

22             So he is -- the plaintiff is admitting, the public

23   can decide this.  There is no reason to go to the situation

24   where you need any form of expert testimony or people from

25   the purported intended audience that would be deciding on the

1   similarity of the two.

2           As Mr. Noona said, the industry professional and the

3   public here are one in the same.  They have the same goal.

4   Do they like it or don't they like it?

5           The other thing that I would point out, Your Honor,

6   is Dawson is the most narrow circumstance, and I think the

7   Judge was -- the panel was very clear in pointing out the

8   hesitancy to use the rule and that the outlier situations are

9   the computer cases, children's toy cases, and in this one

10  particular situation which is unique in the music area, where

11  you have a choral arrangement, and it's for the very reason

12  that Mr. Noona has said.  We can't, unless we are trained

13  musicians, look at sheet music and be able to decide as

14  between them whether they are not -- whether or not they are

15  the same.  And because our minds don't work like choral

16  directors where we can see the music in our head.

17          Now I'm studying piano and I am familiar with the

18  notes and everything like that, but I can't look at the music

19  and hear the music in my mind, contrary to the oral

20  experience of listening to recordings.  And that's why the

21  rule is for music generally for recordings the lay listener.

22  The public can decide that issue.

23          So I would urge the court to read Dawson as I

24  believe the court intended, in the narrowest circumstances,

25  and that it is the exceptional case where you need to resort

Appeal: 14-1427    Doc: 39    Filed: 08/01/2014    Pg: 289 of 317
Case 2:13-cv-00246-AWA-TEM  Document 77  Filed 04/24/14  Page 21 of 39 PageID# 812

21

| | |
|---|---|
| 1 | to experts.  Your Honor, you have the power and ability to |
| 2 | decide this question yourself and we ask you to do so. |
| 3 | **THE COURT:**  All right.  Thank you. |
| 4 | **MR. DAVIS:**  Thank you, Your Honor. |
| 5 | **MR. SLOTNICK:**  Good morning, Your Honor. |
| 6 | **THE COURT:**  Good morning. |
| 7 | **MR. SLOTNICK:**  Even more briefly, which is a |
| 8 | challenge for me usually. |
| 9 | Mr. Noona said it at the very beginning.  The |
| 10 | plaintiff and the defendants agree on one very important |
| 11 | thing.  The melody, the lyrics, the tempo, the genre, the |
| 12 | rhythms are different.  That's all that this court needs to |
| 13 | understand and needs to address.  He was right.  Mr. Davis is |
| 14 | right.  There is no need for special test.  There is no need |
| 15 | for specialized audiences.  Once the parties acknowledge that |
| 16 | there is no substantial similarity in any of those key |
| 17 | elements and once Your Honor listens to works and recognizes |
| 18 | that the two works don't sound alike, this case should be |
| 19 | over because there is no substantial similarity. |
| 20 | Thank you, Your Honor. |
| 21 | **THE COURT:**  All right.  Thank you. |
| 22 | **MR. NOONA:**  Your turn. |
| 23 | **MR. BYERS:**  It always works out this way.  Good |
| 24 | morning, Your Honor. |
| 25 | **THE COURT:**  Good morning. |

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 290 of 317
Case 2:13-cv-00246-AWA-TEM Document 77   Filed 04/24/14   Page 22 of 39 PageID# 813

22

```
 1              MR. BYERS:  Duncan Byers for the plaintiff in this
 2    case.  I think I'm going to be a bit briefer than my
 3    colleagues.  And I'd like to thank you for not dancing.
 4              THE COURT:  Oh, I wanted to dance since you brought
 5    it up.  Let's see the wobble competition.
 6              MR. BYERS:  I told Mr. Noona he does not want to see
 7    me dance.
 8              THE COURT:  That's funny.
 9              MR. BYERS:  First off I'd like to thank opposing
10    counsel for making part of our argument, and that is the
11    issue of the details that are picked out by industry
12    professionals that are not picked out by the lay person.  And
13    that is one of the huge issues in this case.  And the
14    industry would love this court to toss out cases like this
15    simply by listening to a song and having the court scratch
16    her or his head collectively and say well I'm not sure that I
17    hear anything there.  And so I don't think it's got enough
18    there to go forward.
19              The reason the industry would like the court to do
20    that is because in a situation like this you have a work that
21    is submitted to an industry professional -- and not an
22    industry professional that's in the business of making albums
23    for other people and distributing albums for other people and
24    the like.  No, Mr. Usher is an industry professional that
25    produces and works with one artist basically in particular
```

Appeal: 14-1427   Doc: 30   Filed: 08/01/2014   Pg: 291 of 317   Case 2:13-cv-00246-AWA-TEM   Document 77   Filed 04/24/14   Page 23 of 39 PageID# 814

23

1   and some others but Mr. Usher is not responsible for

2   marketing to the general public and the like.  There are

3   other professionals in the industry that do that.

4          What Mr. Usher does and what the people that work

5   with him do is work in the studio to create songs that will

6   then appeal to the general public.  The general public

7   doesn't pick up an album and listen to a song and say, hey,

8   wait a minute, both of these songs have a scale or seven-cord

9   to start the chorus.  The lay audience does not say, hey,

10  both of these songs use a scaler four minor nine cord in the

11  second measure of the chorus.  These are details that I can't

12  pick out when I'm listening to it.

13         But it's very, very similar to soda products and

14  things like that.  There are elements to flavors that the

15  general public cannot identify and doesn't have a trained

16  pallet to identify but are there and that create -- and that

17  create a desire in the public to drink the sodas.  In this

18  case desire of the public to listen to the songs.

19         And one of the things that the defendants skipped

20  over and is important to this case is that there aren't only

21  three versions of this song.  There are actually four

22  versions to this song.

23         My client recorded a song -- and granted the Bieber

24  versions are obviously much better produced than my clients

25  version.  Goes without saying.  But he had a little help from

Appeal: 14-1427     Doc: 30     Filed: 08/01/2014     Pg: 292 of 317
Case 2:13-cv-00246-AWA-TEM  Document 77   Filed 04/24/14   Page 24 of 39 PageID# 815

24

1    Mr. Raymond doing that.  But before Mr. Bieber recorded a

2    version, Mr. Raymond recorded a version.  Curiously that

3    version has never been released to the public.  It was

4    posted, not by him but apparently by somebody that had worked

5    with him as an -- I believe it was a You Tube video but it's

6    never been released on an album, never been released as a

7    single.

8            Even more curious is the fact that as far as I know

9    this is the only case where Mr. Raymond has produced and

10   worked on a song, released by Mr. Bieber or somebody else,

11   where he didn't claim any copyrights to it whatsoever,

12   including the version that he performs on.  No claim to

13   copyright whatsoever.  And I think it's important for the

14   court to hear that first version to get an idea of why we're

15   probably talking about this.

16           Is it possible to --

17           **MR. NOONA:**  There should be a second port for that.

18   Then you have to go to computer.

19           **MR. BYERS:**  Excuse me.

20           **MR. NOONA:**  Yeah, he can.

21           **MR. BYERS:**  There is a folder.  Oh, you got it up

22   over there.

23           **MR. NOONA:**  I'm putting it up on the VGA which is

24   ours.  Go to computer.  Click on computer.  All right.  Go

25   over to the E.

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 293 of 317
Case 2:13-cv-00246-AWA-TEM   Document 77   Filed 04/24/14   Page 25 of 39 PageID# 816

25

1          **MR. BYERS:**  There.

2          **MR. NOONA:**  Click it and it should play.

3          (Song playing:  Oh, feels so right.  Oh.  For you

4   I'd write a symphony.  I'd tell the violin it's time to sink

5   or swim.  Watch me play for you.  For you I'd be running a

6   thousand miles just to get where you are.  Step to the beat

7   of my heart.  I don't need a whole lot.  But for you I admit

8   I have to give you the world or we can share mine.  I know I

9   want to be the first one giving you all this attention.

10  Baby, listen.  I just need somebody to love.  I don't need

11  too much just somebody to love.  Somebody to love.  I need

12  nothing else.  I promise, girl, I swear.  I just need

13  somebody to love.  I need somebody.  I need somebody.)

14         **MR. NOONA:**  Stop.

15         **MR. BYERS:**  Will you do me a favor and play my

16  client's version, De Rico Copeland's.

17         Your Honor, I'm not going to play the whole thing,

18  just through the first chorus.

19         **MR. NOONA:**  The first one?

20         **MR. BYERS:**  Yeah.

21         (Song playing:  I guess I got to accept the

22  consequences that life throws at me.  I can't believe I'm

23  upset.  Don't want to have to say this.  I thought I had the

24  best thing in the world.  If you don't want to go and do your

25  thing, I guess I got to let you.  No need for me to keep you

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 294 of 317
Case 2:13-cv-00246-AWA-TEM  Document 77   Filed 04/24/14   Page 26 of 39 PageID# 817

26

1    in this bind, so you can go.  Don't wait.  No need for you to

2    take up my space.  I'm on the way to find someone for me.

3    It's not right.  I know I got to go.  Don't want you if

4    you're here and not happy.  I need somebody to love.

5    Somebody to love.  Because I keep going through the same old

6    thing.  Somebody to love.)

7             **MR. BYERS:**  Thank you.  Thank you for not dancing.

8             **THE COURT:**  That's funny.

9             **MR. BYERS:**  What's important to note in that, Your

10   Honor, is, as I said, these are industry experts and they

11   have argued that we are trying to shoehorn this into Dawson

12   when the facts of this case show that clearly we are talking

13   about a situation where you have got industry experts that

14   got their hands on my client's song, and I don't have an

15   opinion obviously with regards to the structure and the

16   comparison.  My expert does.  And I have to rely on the

17   expert and what the expert is saying in this matter.  But

18   what's really telling about those two versions is that there

19   is an incredible amount of similarity in the way that

20   Mr. Raymond and my client sing.  There is a great deal of

21   similarity in how they sound, how they approach the words and

22   their tone.  Their overall feeling and how they actually sing

23   it.

24             Now we don't know.  We haven't had discovery in this

25   case or the like to know exactly what happened but it's

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 295 of 317
Case 2:13-cv-00246-AWA-TEM  Document 77   Filed 04/24/14   Page 27 of 39 PageID# 818

27

1  curious that the industry is saying you should listen to the

2  final version with Bieber and the very first version with

3  Mr. Copeland and you can clearly tell that they are

4  different.  Well they are not quite so different when you

5  hear Mr. Raymond and Mr. Copeland perform them back to back.

6  We don't know what the reason for the nondistribution of

7  Mr. Raymond's version was.  I'm sure that will come out in

8  discovery.

9       In terms of where we are today though, obviously

10  with regards to the motion to dismiss, the court takes as

11  true all the facts that are alleged in the complaint as well

12  as documents that are incorporated into the complaint.  And

13  we have incorporated explicitly the expert's assessment of it

14  and the comparison between the two songs, the structural

15  comparisons and the like.  At the beginning of his

16  presentation Mr. Noona pointed that out.  That they are not

17  really arguing about the extrinsic matter.  It's really the

18  intrinsic matter that they are concerned about.

19       But even if they are correct, and the lay public

20  might look at this and say well I'm not sure.  They really

21  don't sound alike.  That doesn't exclude the fact that

22  industry professionals would look at it and say, no, they are

23  the same.  And I know that because that's what our expert

24  said.  And pointed out the parts where there were points of

25  divergence but the points where they were convergence between

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 296 of 317
Case 2:13-cv-00246-AWA-TEM   Document 77   Filed 04/24/14   Page 28 of 39 PageID# 819

28

```
 1    the songs.  So just because lay people might look at it and
 2    might not hear the same thing, the lay person has not sat
 3    down and listened to an album that contains Mr. Raymond's
 4    version, number one, and number two, these are industry
 5    professionals that took my client's work that intentionally
 6    modified it and when we move on in the case the court will
 7    hear my expert testify as to the fingerprints that were left
 8    behind of their attempts to cover up the copying in it so
 9    that they wouldn't have to answer for having taken my
10    client's work.
11           As far as whether or not the court can compare this
12    works or we need the intended audience, the industry experts,
13    is an interesting question because obviously in the majority
14    of cases where you have two songs that are released to the
15    general public, the court is qualified to sit in the shoes of
16    the lay person and listen to them.  But that's not what we
17    are talking about here.  We are talking about two different
18    intended audiences and whether or not there is actually a
19    difference between the lay public and industry experts is a
20    matter that was raised by the defendants in their pleadings.
21    It's outside of our complaint.  It's outside of the -- it's
22    outside of the initial matter that was brought before the
23    court, and so in order to even make an initial determination
24    as to whether or not it should be an industry expert or lay
25    person, I would submit to the court that we are going to have
```

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 297 of 317
Case 2:13-cv-00246-AWA-TEM  Document 77   Filed 04/24/14  Page 29 of 39 PageID# 820

29

1    to hear from industry experts who are going to determine

2    whether or not there actually is a difference.  Whether or

3    not the industry experts under these circumstances where a

4    record producer that's not an A and R rep, that's not in the

5    business of pulling in entire albums and putting together

6    marketing package and cleaning it up and setting up time with

7    a producer in the studio to clean up the album, get it to the

8    public, you're talking about a producer and artist.  It's

9    completely different world.

10           And so if the court is considering whether or not

11   this is something that can be compared by the court as a lay

12   person or the court should compare them in the shoes of an

13   industry expert, I don't know whether or not the court is

14   qualified to do that or not, and I'm not asking the question

15   or making a judgment on it, but if it needs to be viewed in

16   that light, if the court needs to make a determination on

17   that point, I would submit that at a minimum we have to hear

18   from the industry experts.  Not arguments of counsel but

19   industry experts to say, no, we look at exactly the same

20   thing.  We listen to songs the same way the lay public does

21   or no, we are looking at them differently.  We are looking at

22   the hooks.  We are looking at what we can do to modify them

23   and change them to catch the public's eye and we also have a

24   better ear to hear what's the same and what's different.  For

25   example, the scaler seven cords, starting a chorus.  The

Appeal: 14-1427   Doc: 30   Filed: 08/01/2014   Pg: 298 of 317
Case 2:13-cv-00246-AWA-TEM   Document 77   Filed 04/24/14   Page 30 of 39 PageID# 821

30

```
 1    scaler four minor nine cord in the second measure of the
 2    chorus.  I had to get my expert to explain to me what that
 3    was and to try to point out to me how that sounds the same
 4    underneath the structure of the whole song.  And it was
 5    difficult for me.  Granted I probably have a tin ear.  But
 6    it's a very, very difficult process going through something
 7    that has been cleaned up and modified in order to cover up
 8    the copying and that's exactly what the industry wants the
 9    court to do is help them continue this process whereby they
10    will take works from lesser known or minor artists who don't
11    have the resources, they don't have the studio time or
12    anything else, do a little manipulation to it and get it out
13    in the public with just enough difference so that the
14    untrained public ear is not sure about the comparisons and
15    sometimes simply changing the tempo of a song is enough to
16    throw the lay person off.  But as the court has seen from my
17    expert's report on this matter that's not enough to throw off
18    the industry experts.
19              THE COURT:  Thank you.  Mr. Noona.
20              MR. NOONA:  Thank you, Your Honor.  I'll be brief.
21    I just want to make a couple of brief comments in response.
22              First off, just so the record is clear, we do
23    dispute -- obviously we have briefed the intrinsic prong.  We
24    do dispute and we would challenge the qualifications of
25    Mr. Byers' experts.
```

1          What we are trying to do here though is focus upon

2     the intrinsic prong which allows you to dispose of this case

3     without having to sort through the issues of experts.

4          I found it pretty interesting that an industry

5     expert is going to listen for nuances that apparently are

6     unimportant to the people that are going to buy the album.

7     They listen to the music for the same reason that you and I

8     do.  They want to know what is popular, what sells.

9          The reason we relied upon the Bieber song, played

10    the Bieber version to compare, was because in the complaint,

11    paragraph 47, there is a comparison of the copyrighted work

12    to the Bieber work.  So my thought was to be consonant with

13    the complaint we would play that.

14          There are obviously several versions of this song

15    and the briefs go into them.  I would challenge Your Honor to

16    listen to the Usher version because I think the Usher version

17    is almost the same as the Bieber version.  It certainly

18    evokes the same concept, look, feel, sound.  It made you want

19    to dance versus the melancholy syncopated rhythms of the --

20    of Mr. Copeland's work.

21          Finally, the ipse dixit argument that we have to get

22    an expert to see if we need an expert.  That's not the test

23    under Dawson.  Read Dawson.  Dawson says in most cases the

24    lay person is right.  It's only where you meet specific

25    circumstances that you go to this.  And this is not one of

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 300 of 317
Case 2:13-cv-00246-AWA-TEM Document 77 Filed 04/24/14 Page 32 of 39 PageID# 823

32

```
1    those for all the reasons that I've said.

2            Your Honor, I'll go back to where I started.  It's

3    the last point I'll make.  The copyright law in the Fourth

4    Circuit is set up in two prongs for a purpose.  Remember I

5    discussed the check.  You can go through and you can try to

6    make lots of things look similar by pointing out a whole

7    punch of details that things may share in common but at the

8    end of the day you have to pass the second prong.  You have

9    to play those two songs, from somebody who's supposed to

10   listen to them, in this case the lay public, and they have to

11   listen to them and say they are substantially similar without

12   looking for dissections and little parts.  That's the test.

13   And if you can't meet that, now is the time to dismiss the

14   case.  And that's what we are asking you to do.

15           Thank you, Your Honor.

16           THE COURT:  All right.  Thank you.

17           MR. DAVIS:  Thank you, Your Honor.  The one point

18   that I want to address is the somewhat about face that

19   Mr. Byers is making with respect to the nature of the work

20   and what its intended purpose was.  The complaint, which is

21   what we have to base this entire motion on, says that the

22   work, somebody to love, was presented through Jones to this

23   Sangreel group, and he defines -- the plaintiffs define the

24   Sangreel group as a company that scouts and recruits new

25   musical artists for recording labels.  That's paragraph 43 of
```

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 301 of 317
Case 2:13-cv-00246-AWA-TEM  Document 77  Filed 04/24/14  Page 33 of 39 PageID# 824

33

1    the complaint.

2          What was happening here is that Mr. Byers' clients

3    were trying to shop a record deal.  They wanted to be an act.

4    They wanted to get a record -- recording agreement and be

5    recording artists.  Mr. Byers is suggesting now that the real

6    purpose of this plan that they had was to have a recording, a

7    composition that could be changed.  That they were really

8    just song writers.  That's not what the complaint says.  And

9    I think that they were open to multiple opportunities but

10   what they wanted was a record deal and to have their song

11   performed.  There is nothing in here that says that their

12   plan was to use that as the predicate for some other work.

13         And I think this is reinforced later on in the

14   complaint at paragraph 36 where he makes the allegation that

15   what was offered to him, which we dispute, was for him to

16   rerecord the song, rerecord it, not change it but rerecord

17   it, and for the very reason that I think Mr. Byers alluded

18   to, he is saying that the production wasn't that great.  I

19   don't agree with him.  I think the production is fine on his

20   song, but perhaps the plaintiffs were not satisfied with the

21   production and perhaps anybody who listened to it wasn't

22   satisfied.  But it was to rerecord that song, not to make the

23   substantial changes that -- that Mr. Byers is suggesting were

24   made to his song.  These are not substantially similar works.

25   They are substantially different works.

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 302 of 317
Case 2:13-cv-00246-AWA-TEM  Document 77   Filed 04/24/14   Page 34 of 39 PageID# 825

34

1            So I see this again as an agenda to change the

2    landscape because Mr. Byers recognizes that when you listen

3    to the songs, which is all that the court needs to do, they

4    are substantially different.  And that's where it ends.  And

5    any illusion to the constituent parts of each song is a way

6    to distract the court's attention from the fact that the test

7    here on substantial similarity is two parts, extrinsic and

8    intrinsic, and if you fail on one, you're done.

9            The only other issue that I will address, Your

10   Honor, is with respect to Mr. Byers suggestion that we need

11   discovery, we need testimony.  To the extent that the court,

12   and I would urge the court not to go in that direction, that

13   because this case can be decided solely on the music, that

14   any discovery that is permitted here would be only on the

15   substantial similarity issue and nothing further.  The costs

16   of litigating these types of cases are immense, particularly

17   when you add in the financial component as well.  Talk about

18   experts.  There are multiple experts that are necessitated in

19   these cases.  The burden on the defendants would be immense

20   in terms of what we would have to do in order to pull records

21   and have analysis done with respect to financial issues.  And

22   I would say the same thing with respect to access.  The

23   artists do not need to be involved at this stage of the case.

24   We are saying that these songs are not substantially similar.

25   To the extent there is going to be any further activity in

Appeal: 14-1427   Doc: 30   Filed: 08/01/2014   Pg: 303 of 317
Case 2:13-cv-00246-AWA-TEM   Document 77   Filed 04/24/14   Page 35 of 39 PageID# 826

35

```
 1    this case it should be limited to solely that issue.
 2          But we rest on the fact that Your Honor can make
 3    this decision herself.  And that just having heard the songs
 4    I think are visceral reaction, all of us in the room, were
 5    completely different when we heard the two songs.  And that's
 6    not a coincidence.  It only happens when you see something
 7    that distinguish itself from something else and that's they
 8    are light years apart these two songs and to suggest that
 9    because there may have similar elements -- I mean the
10    plaintiff urges that they have the same four four time.
11    These are the most common elements in building blocks of
12    songs.  To the extent there is any commonality between these
13    songs, it's those very common elements that are found in
14    every single song.
15          And if you take Mr. Byers' argument to the level he
16    wishes it to go, you would require an expert in every
17    situation.  There would be a specific intended audience for
18    every type of song infringement case there is.  That can't be
19    the law.  It's not what Dawson said.  Dawson is the outlier
20    situation.
21          Thank you, Your Honor.
22          **THE COURT:**  Thank you.
23          **MR. MUYSKENS:**  Your Honor, I was troubled by one of
24    the things that Mr. Byers seemed to suggest.  Said that the
25    Usher Raymond version and the plaintiff's version of these
```

```
 1    songs, that their voices sounded alike.  That there was a
 2    similarity in the way they performed the song.  I'm not sure
 3    if that's exactly what he was -- what he was saying but
 4    that -- the vocal attributes of the two performers is not
 5    part of the copyright in a musical composition.  It may be
 6    part of a copyright in a sound recording which is not part of
 7    this case.  And sound recording copyrights are unique in that
 8    unlike any other kind of work it is limited.  So that, for
 9    example, if someone consciously went out to sound exactly
10    like the plaintiff, and recorded a work that sounded exactly
11    like the plaintiff, that's permissible under the law.  What
12    is not permissible is taking plaintiff's sound recording and
13    physically reproducing the sound recording.  But that's not
14    part of this case at all.
15            We should focus on, as Mr. Byers said, what's in the
16    complaint.  They sued for the underlying musical composition,
17    not the rendition or the similarities of a rendition by two
18    people who may or may not sound alike.  I don't think they
19    sound alike at all but even if they did, even if they sounded
20    exactly alike, that is outside the parameters of this case
21    and should not be something that the court considers.
22            Thank you, Your Honor.
23            THE COURT:  Thank you.  Anything else from the
24    defense, Mr. Noona?
25            MR. NOONA:  Nothing further, Your Honor, other than
```

1    to say on the discovery thing, we agree with Mr. Davis that

2    acts should not be deposed and if it there is any discovery,

3    it should be severely limited.  We don't think it's

4    necessary.  Thank you, Your Honor.

5              **THE COURT:**  Thank you.  Sir, anything else from you?

6              **MR. BYERS:**  Just one really quick point, Your Honor.

7    Sorry, Mr. Noona is a little taller than I am.

8              Of course they are bothered by the similarities of

9    the sound between the Raymond version and my client's version

10   because that goes to the heart of the intrinsic comparison,

11   whether or not a lay person would hear the similarities

12   between the songs.  And the entirety of the song goes into

13   that.  It's the overall impression.  Of course they are

14   bothered by that and of course they don't want the court to

15   listen to those simultaneously.

16             And the question of similarity and the question of

17   what is protectable, the court needs to keep in mind that

18   what is protectable in copyright works is the expression of

19   an idea.  And the expression of an idea covers how vocals are

20   approached.  How notes are sung, not differences in voices

21   and the like, but how the notes are sung.

22             And so listening to those two versions, one can hear

23   that the manner of expression is very, very similar.  It's

24   much more similar between those two versions than it is

25   between my client's version and the Bieber version.

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 306 of 317
Case 2:13-cv-00246-AWA-TEM    Document 77    Filed 04/24/14    Page 38 of 39 PageID# 829

38

```
 1            Now at this point the court can make of that what it
 2   will but like I said I just wanted to make the point that of
 3   course they are bothered by that and of course they want the
 4   court to ignore that.
 5            As far as the discovery matter goes, Your Honor,
 6   obviously we're at the motion to dismiss stage.  Possibly
 7   converting it to a motion for summary judgment.  We don't
 8   have any opposition to reasonable limitations on discovery
 9   except to say that there is always a danger in that to end up
10   duplicating effort where it's not necessary.  We don't have
11   any intention whatsoever of doing more than is necessary to
12   allow the court to make the determination that it's going to.
13   I have no intentions of flying out to California or Georgia
14   or wherever and taking depositions if they are not necessary,
15   especially given the circumstances of the case and the --
16   it's me.  So whatever the court rules in that obviously we'll
17   go along with and we'll be eminently reasonable in terms of
18   discovery and assisting them with reducing the burden.  But I
19   will say their burden in discovery is far less than my
20   client's burden in discovery just given the nature of who
21   they are and the relative differences in resources.
22            **THE COURT:**  All right.  Thank you.
23            All right.  You guys will be hearing from me.  Have
24   a good rest of your day and good weekend.
25            **MR. NOONA:**  Thank you, Your Honor.
```

Appeal: 14-1427    Doc: 30    Filed: 08/01/2014    Pg: 307 of 317
Case 2:13-cv-00246-AWA-TEM   Document 77   Filed 04/24/14   Page 39 of 39 PageID# 830

39

```
 1          MR. BYERS:  Thank you, Your Honor.

 2          (Hearing adjourned at 10:05 a.m.)

 3                       CERTIFICATION

 4

 5      I certify that the foregoing is a correct transcript

 6   from the record of proceedings in the above-entitled matter.

 7

 8

 9          X_____/s/ Tamora Tichenor___x

10                 Tamora Tichenor

11               X__4/24/2014__x

12                     Date

13

14

15

16

17

18

19

20

21

22

23

24

25
```

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| DEVIN COPELAND p/k/a DE RICO and MAREIO OVERTON,<br><br>        Plaintiffs,<br><br>v.<br><br>JUSTIN BIEBER, USHER RAYMOND IV p/k/a "USHER," HEATHER BRIGHT, Individually and d/b/a B-RHAKA PUBLISHING, RAY ROMULUS a/k/a RAYRO and d/b/a PLEASE ENJOY THE MUSIC, JONATHAN YIP, Individually and d/b/a PRODUCTS OF THE STREET, JEREMY REEVES, Individually and d/b/a SUMPHU, UNIVERSAL MUSIC CORP., SONY/ATV MUSICAL PUBLISHING, LLC, BIEBER TIME PUBLISHING, LLC, WB MUSIC CORP., THE ISLAND DEF JAM MUSIC GROUP, STAGE THREE MUSIC (U.S.), INC., STAGE THREE MUSIC, LLC AND JONETTA PATTON,<br><br>        Defendants. | Civil Action No. 2:13-cv-246 (AWA-TEM) |

**ORDER CORRECTING THE RECORD AND ALLOWING THE FILING OF SUBSTITUTE COPIES OF PREVIOUSLY FILED EXHIBITS**

On this day came the parties, by counsel, upon the Motion to Correct the Record and Allow the Filing of Substitute Copies of Previously Filed Exhibits ("Motion to Correct the Record") and, it appearing to the Court that:

1.      On March 28, 2014, this Court entered an Order (ECF No. 72) and Final Judgment (ECF No. 73) that granted a Motion to Dismiss for Failure to State a Claim as a Matter of Law Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by the Defendants The Island Def Jam Music Group, Universal Music Corp. and joined in by the other Defendants in this action ("Motion to Dismiss") (ECF No. 17). In connection with the Motion to Dismiss,

the moving Defendants filed a Declaration of Jeremiah T. Reynolds ("Reynolds Declaration") on June 28, 2013 (ECF No. 19).  Attached to the Reynolds Declaration were certain exhibits including:

- Exhibit A, a true and accurate copy of a compact disc ("CD") containing the song "Somebody to Love," performed by Justin Bieber and written by Justin Bieber, Heather Bright, Ray Romulus, Jonathan Yip, and Jeremy Reaves, along with a re-mixed version of "Somebody to Love," performed by Justin Bieber and featuring Usher Raymond, IV, p/k/a "Usher"; and

- Exhibit C, a true and accurate copy of a certification letter and CD from the United States Copyright Office certifying that the CD is a true representation of the work entitled, "My Story II" as deposited by Devin Copeland with a claim of copyright registered under PAu 3-554-480.

(ECF Nos. 19-1 and 19-3).

2.      Physical copies of the CDs referenced in Exhibits A and C were filed with the Court by hand on June 28, 2013, and signed for by the Clerk, all as set forth in the transmittal letter and signed receipt attached as **Exhibits 1 and 2** to this Order.  Although appropriately filed with the record of this action, no electronic notation of the filing of these physical exhibits was made in the electronic docket.  In addition, although the physical copies of Exhibits A and C were considered by this Court in its decision on the Motion to Dismiss, the Clerk is unable to locate those exhibits at present.

3.      In addition, during the argument held by this Court on the Motion to Dismiss, counsel for Plaintiffs tendered a recording of a version of the song "Somebody to Love" demoed by the Defendant, Usher Raymond, IV ("Demo Version of 'Somebody to Love'"), and referenced in Plaintiffs' Complaint.  Although that Demo Version of "Somebody to Love" was tendered to the Court and considered in connection with the ruling on the Motion to Dismiss, the Clerk is unable to locate a copy of that exhibit.

4.      Because the parties have requested that this Court clarify the record, and for good cause shown, it is,

ORDERED THAT:

1.      The Clerk is to make a notation in the electronic record, *nunc pro tunc* as of June 28, 2013, of the filing of the physical Exhibits A and C to the Declaration of Jeremiah T. Reynolds in Support of the Motion to Dismiss (ECF No. 17);

2.      The Clerk is to place into the Court's file substitute physical copies of Exhibits A and C and attach them to this Order;

3.      The Clerk is directed to make a notation in the electronic docket, *nunc pro tunc* as of March 7, 2014, that the Demo Version of "Somebody to Love" was tendered to the Court at the March 7, 2014 hearing, and shall file in the Court's file a substitute copy of the Demo Version of "Somebody to Love" and attach this to this Order.

Dated: _____, 2014

_____
Arenda Wright Allen, Judge
United States District Court
Eastern District of Virginia

**WE ASK FOR THIS:**

*/s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: 757-624-3239
Facsimile: 757-624-3169
senoona@kaufcan.com

Howard Weitzman (*pro hac vice*)
Jeremiah T. Reynolds (*pro hac vice*)
Kinsella Weitzman Iser Kump & Aldisert
808 Wilshire Blvd., 3rd Floor
Santa Monica, CA 90401
Telephone: 310-566-9800
Facsimile: 310-566-9884
hweitzman@kwikalaw.com
jreynolds@kwikalaw.com

*Attorneys for Defendants Justin Bieber,*
*Universal Music Corp., Bieber Time Publishing, LLC*
*and The Island Def Jam Music Group*

*/s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: 757-624-3239
Facsimile: 757-624-3169
senoona@kaufcan.com

Jonathan D. Davis, Esq. *(pro hac vice)*
Jonathan D. Davis, P.C.
10 Rockefeller Plaza, Suite 1015
New York, NY 10020
Telephone: 212-687-5464
Facsimile: 212-697-2521
jdd@jddavispc.com

*Attorneys for Defendant Usher Raymond IV*
*p/k/a "Usher"*

*/s/ Nathan Muyskens*
Nathan Muyskens
Virginia State Bar No. 39168
Loeb & Loeb LLP
901 New York Avenue NW
Suite 300 East
Washington, DC  20001
Telephone:  202-618-5000
Facsimile:  202-618-5001
nmuyskens@loeb.com

Barry I. Slotnick *(pro hac vice)*
Cheng L. Chen *(pro hac vice)*
Loeb & Loeb LLP
345 Park Avenue
New York, NY  10154
Telephone:  212-407-4000
Facsimile:  212-407-4990
bslotnick@loeb.com
lchen@loeb.com

*Attorneys for Defendants Heather Bright,*
*Individually and d/b/a B-RHAKA Publishing LLC,*
*WB Music Corp. and Sony/ATV Music Publishing LLC*


**WE ASK FOR THIS:**

*/s/ Duncan G. Byers*
Duncan G. Byers
Virginia State Bar No. 48146
Jeffrey D. Wilson
Virginia State Bar No. 75734
Byers Law Group
142 W. York Street, Suite 910
Norfolk, VA  23510
Phone:  757-227-3340
Facsimile:  757-227-3341
duncan.byers@byerslawgroup.com
jdwilson@byerslawgroup.com
admin@byerslawgroup.com

*Attorneys for Plaintiffs*
*Devin Copeland and Mareio Overton*

13329250v1

Exhibit 1

# KAUFMAN & CANOLES
attorneys at law

Kaufman & Canoles, P.C.
150 West Main Street
Suite 2100
Norfolk, VA 23510

*Mailing Address*
Post Office Box 3037
Norfolk, VA 23514

T (757) 624.3000
F (757) 624.3169

kaufCAN.com

Stephen E. Noona
(757) 624.3239
senoona@kaufcan.com

June 28, 2013

**VIA HAND DELIVERY**

Fernando Galindo, Clerk
Attn: Lara
United States District Court
600 Granby Street
Norfolk, VA 23510

Re:     **Devin Copeland p/k/a De Rico, and Mareio Overton v. Justin Bieber, et. al.**
        **Case No. 2:13-cv-00246 (AWA)**
        **Our Matter No. 0153308**

Dear Lara:

Enclosed are the following exhibits in support of the Declaration of Jeremiah T. Reynolds in support of the Motion to Dismiss Copyright Claims as a Matter of Law Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by Defendants Universal Music Corp. and The Island Def Jam Music Group (Dkt. No. 17) in the above matter:

1.      Exhibit A – Compact disc ("CD") containing the song, "Somebody to Love," performed by Justin Bieber, and the remix version of "Somebody to Love," featuring Usher; and

2.      Exhibit C – Certification Letter and CD from the United States Copyright Office certifying that the CD is a true representation of the work entitled, "My Story II" as deposited by Devin Copeland with a claim of copyright registered under PAu 3-554-480.

Please call me should you have any questions.

Very truly yours,

*Stephen E. Noona / lt*

Stephen E. Noona

SEN:lat

Disclosure Required by Internal Revenue Service Circular 230: This communication is not a tax opinion. To the extent it contains tax advice, it is not intended or written by the practitioner to be used, and it cannot be used by the taxpayer, for the purpose of avoiding tax penalties that may be imposed on the taxpayer by the Internal Revenue Service.

12483584v1

Fernando Galindo, Clerk
Attn: Lara
June 28, 2013
Page 2

Enclosures

cc:     All counsel of record (via email)

Exhibit 2

## Courier Request

Run Date/Time:     **6/28/2013 (Special Time – Additional Fees Apply)**
Submitted:         **6/28/2013 3:52:16 pm**

Request Type:      **Delivery**
                   ☐ Pick up en route to Norfolk office
                   ☐ Pick up at Norfolk office, then deliver

Delivery Address:  **Civil Clerk's Office**
                   **ATTN: Lara**
                   **United States District Court**
                   **600 Granby Street**
                   **Norfolk, VA 23510**
Delivery Phone:    **757-222-7201 (clerk)**

Delivery:          **OK to leave with Receptionist**
                   ☑ Signed Confirmation Requested
                   ☐ Notary Service Requested (Additional $5.00 Charge)

Special Instructions:
Item(s)/Document   **CD exhibits to Reynolds Declaration re: Dkt. No. 17**
(s):

Requested by:      <u>**Leslie A. Thibeault**</u>              **(757) 624-3345**
Entered by:        <u>**Leslie A. Thibeault**</u>              **(757) 624-3345**
Matter No          **0153303**

Signature:         _____
                              │Date│                    Time

Courier Use Only:  _____
                   Miles